**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**



DONNA LOU and DAREN PARSA, on their
own behalf and on behalf of their deceased
minor child, E.P.
        Plaintiffs,
      v.

SHERIFF JOSEPH P. LOPINTO, III, CHAD
PITFIELD, RYAN VAUGHT, STEVEN
MEHRTENS, SHANNON GUIDRY, NICK
VEGA, MANUEL ESTRADA, MYRON
GAUDET, JOHN DOES 1-3, VICTORY
REAL ESTATE INVESTMENTS LA, LLC
and WESTGATE INVESTORS NO LLC
D/B/A WESTGATE SHOPPING CENTER,
ABC INSURANCE COMPANY, and XYZ
INSURANCE COMPANY,

        Defendants.

Case No. 2:21-cv-00080
Judge Wendy B. Vitter
Jury Demanded

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION TO DETERMINE CONFLICT-FREE**
**REPRESENTATION**

COME NOW, the Plaintiffs, through undersigned counsel, who submit the

Memorandum in Support of Plaintiffs' Motion to Determine Conflict-Free

Representation.

**INTRODUCTION**

This case arises from the in-custody death of a 16-year-old severely autistic

obese child while being restrained face-down, in the prone position, for over 9

minutes, hand-cuffed and shackled by deputies of the Jefferson Parish Sheriff's Office

after he experienced a "melt-down" related to his autism. As a result of this incident,

Plaintiffs filed the instant action on January 14, 2021, against the Defendants. (RE

1

1). The JPSO Defendants filed an Answer on February 22, 2021. (RE 9). The Answer indicates that Martiny & Associates, LLC, through Danny Martiny and Jeff Martiny, represented all of the Defendants with respect to all of Plaintiffs' claims. On August 11, 2021, a Motion to Enroll Additional Counsel was filed seeking to add Franz Zibilich as additional counsel for all Defendants.[1] (E 14-15). Accordingly, the same law firm and attorneys represent all the Defendants on all of Plaintiffs' claims.

The Complaint alleges causes of actions for violating E.P.'s and Plaintiffs[2] constitutional rights under the First, Fourth, Ninth and Fourteenth Amendments against JPSO Deputies Pitfield, Vaught, Mehrtens, Vega, Guidry and Estrada for excessive force/restraint and failure to intervene. (DE 1 – Count I). Further, the Complaint brings both individual claims and *Monell* claims against Sheriff Joseph P. Lopinto, III for his customs and practices, including his failure to adequately train, supervise and discipline his deputies. (DE 1 - Count II). In addition, the Complaint brings claims against Sheriff Lopinto in his official capacity for violating the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. (DE 1 – Count 3). Finally, the Complaint asserts state law claims against the Defendants under the Louisiana Constitution and state law. (DE 1 – Count IV).

Despite these various claims against the numerous Defendants based on different theories, currently all defendants in this matter are represented by the same attorneys affiliated with the same law firm: Martiny & Associates, LLC. Plaintiffs are

---

[1] The Motion to Enroll Additional Counsel was signed by Danny Martiny and Franz Zibilich under the firm name Martiny & Associates, LLC.
[2] E.P.'s parents were present during this encounter with JPSO deputies.

2

concerned that this concurrent representation of the Sheriff in his individual capacity and official capacity, as well JPSO supervisory and lower-level deputies, is an actual conflict of interest in violation of Louisiana Rule of Professional Conduct 1.7 that threatens the integrity of the proceedings, and puts a successful Plaintiffs' verdict at risk on appeal. *See, e.g.*, *Dunton v County of Suffolk,* 729 F.2d 903 (2nd Cir.1984), *amended in part on other grounds*, 748 F.2d 69 (2nd Cir. 1984) (reversing plaintiffs' verdict against police officer in a civil rights case where the same attorneys represented the officer and municipality); *Shadid v. Jackson,* 521 F. Supp. 87 (E.D. Tex 1981) (finding joint representation of police officer and city by same attorney was conflict of interest, and that in the circumstances, the "potential for abuse is far too serious to permit joint representation to continue, even in the face of an apparent waiver signed by both of these defendants"); *Nagle v. Gusman, et al.,* No. CIV.A. 12-1910, 2015 WL 1525827, at *1 (E.D. La. Apr. 2, 2015) ("First, in section 1983 cases, the interests of a municipality and the interests of its employees are adverse to one another. *See Van Ooteghem v. Gray,* 628 F.2d 488, 495 n. 7 (5th Cir.1980), *aff'd in part, vacated in part on other grounds,* 654 F.2d 304 (5th Cir.1981) (*en banc*) (*per curiam*). Thus, plaintiffs' section 1983 claim under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), creates a potential conflict of interest between Sheriff Gusman in his official capacity, and the employee defendants in their individual capacities.")

At the very least, this is a potential conflict of interest that must be addressed and resolved before this case proceeds further.

At the beginning of this case, Plaintiffs' counsel raised this conflict with counsel

for the defendants via a telephone call, which was simply dismissed by defense counsel. However, as pre-trial discovery and trial preparation has progressed, further discussions pertaining to potential conflicts were held between Plaintiffs' counsel, Andrew C. Clarke, and Defendants' counsel, Franz Zibilich, without resolution. Given this impasse, Plaintiffs submitted Requests for Admissions to the Defendants to determine whether there was a joint representation agreement, to determine whether Sheriff Lopinto and the individual Defendants had any available insurance coverage and to determine whether Sheriff Lopinto would indemnify the individual Defendants for both compensatory and punitive damages.[3]

In response to these Request for Admissions, the Defendants admitted that there is no available insurance coverage and that the Sheriff is "self-insured." Defendant Lopinto also admitted that he has agreed to indemnify the Defendant deputies for both compensatory and punitive damages,[4] but objected and refused to answer whether the individual Defendants have signed a written waiver of conflicts of interest regarding joint representation in this case. (See Ex. A – Resp. to RFA No. 63).

---

[3] A copy of Defendants' Response to Plaintiffs' First Request for Admissions is attached as Exhibit A.

[4] While Defendant Sheriff Lopinto has admitted in response to Request for Admissions that he will indemnify the individual deputies for any judgment for punitive damages,(an obligation which could not lawfully be imposed upon the Sheriff in his official capacity under 42 USC 1983), there is a serious issue as to the enforceability of this admission, given the Louisiana constitutional prohibition of the pledge or donation of public funds by a political subdivision to any person under Article 7, Section 14. See also *Board of Directors of the Industrial Development Board of the City of Gonzales, Louisiana, Inc v All Taxpayers, Property Owners, Citizens of the City of Gonzales, et al* 938 So2d 11, 2005-2298 (La. 9/6/06) (the "Cabela's" case). There are serious concerns that this pledge is against the public interest, is not a binding contract and will be unenforceable should punitive damages be assessed against the individual deputies and the Sheriff or any successor Sheriff refuses to pay. It is also not clear whether the Sheriff intends to indemnify himself, at taxpayer expense, if the jury finds that he is personally liable for punitive damages due to his own reckless or wanton behavior in this case.

The parties have engaged in written discovery.  During written discovery, Plaintiffs' counsel has obtained significant information pertaining to their *Monell* claims, including training records, which raises additional  concerns concerning joint representation. In particular, Plaintiffs' concerns regarding conflicts have been heightened after receipt of the JPSO training materials concerning the use of restraints and the Total Appendage Restraint Procedure (TARP) through the use of the RIPP Hobble.[5]  The materials include PowerPoints and videos produced in 1994 which fail to take into consideration the advancement in knowledge and training in this area that has occurred in the last 30 years.  The importance of proper training in the use of restraints and the potentially deadly effects of prone restraint on individuals in police custody have been known for years in the law enforcement community. The 5th Circuit has repeatedly warned law enforcement agencies and officers of these dangers and the obvious risk of serious harm.  *See Gutierrez v. City of San Antonio,* 139 F.3d 441 (5th Cir. 1998); *Goode v. Bagget,* 811 Fed.Appx. 227 (5th Cir. 2020); *Timpa v. Dillard*, 20 F.4th 1010 (5th Cir. 2021).  The video footage of the in-custody death of Mr. George Floyd and the subsequent murder conviction of former Minneapolis police officer Derek Chauvin has since confirmed, for the entire world to see, the terrible consequences of officers acting in gross disregard for the life and safety of a subdued, non-resisting person who is improperly restrained by law

---

[5] The training provided to the individual defendants involved the use of a police restraint device called a RIPP Hobble.  However, none of the individual defendants used a RIPP Hobble while restraining E.P. Instead, they physically held E.P. in a prone position for a prolonged period of time, applying pressure to hold him down and restrain him, along with handcuffs and shackles. This restraint persisted despite E.P. not resisting. Significantly, Sheriff Lopinto did not even conduct a critical incident review or an internal affairs investigation of the circumstances of E.P.'s restraint and death to determine whether there had been any violations of JPSO training or policies by any of the seven (7) deputies on the scene or whether the JPSO policies and training were inadequate.

enforcement officers.

The parties have agreed to start commencing depositions during the week of April 18-22, 2022. Plaintiffs are concerned about proceeding with those depositions without having resolved these potential conflicts and without assurance that the individual defendants are in fact represented on all of Plaintiffs' claims by conflict-free counsel. Prior to the taking of these depositions, Plaintiffs now respectfully requests that the Court address the conflict of interest caused by the concurrent representation of both the Sheriff and the other individual defendants under the circumstances of this case. Specifically, Plaintiffs request that the Court determine whether joint representation in this case by these attorneys representing all of these defendants, each of whom played various, and in some instances, potentially conflicting roles in this matter, is permitted under the Louisiana Rules of Professional Conduct.

## LEGAL STANDARDS

"Ideally, conflict of interest problems should be settled between the attorney and his client . . . [however,] it is generally proper for an opposing party to bring conflict of interest matters to the attention of the court." U F.D.I.C. v. U.S. Fire. Ins. Co., 50 F.3d 1304, 1315 (5th Cir. 1995)).

Federal courts assessing conflicts of interest apply local ethical rules, which may be adopted by the court, although ultimately the issue is one of federal law. *In re American Airlines,Inc.*, 972 F.2d 605, 610 (5th Cir. 1992). The United States District Court for the Eastern District of Louisiana has adopted the Rules of Professional Conduct of the Louisiana State Bar Association. *See* Local Civil Rules of the U.S.

6

District Court for the Eastern District of Louisiana(revised Sept. 1, 2014), Rule 83.2.3.

The applicable Louisiana Rule of Professional Conduct governing conflicts of interest

is Rule 1.7 which states:

    (a)  Except as provided in paragraph (b), a lawyer shall not represent a client if therepresentation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

        (1)    the representation of one client will be directly adverse to another client; or

        (2)    there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client,a former client, or a third person or by a personal interest of the lawyer.

    (b)  Notwithstanding the existence of a concurrent conflict of interest under paragraph (a),a lawyer may represent a client if:

        (1)    the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

        (2)    the representation is not prohibited by law;

        (3)    the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or otherproceeding before a tribunal; and

        (4)    each affected client gives informed consent, confirmed in writing.

Louisiana's rule is identical to the ABA Model Rule of Professional Conduct

1.7 (2002). The Comments to the ABA Model Rule 1.7 further explain that, with

respect to concurrent representation of codefendants, "A conflict may exist by reason

of substantial discrepancy in the parties' testimony, incompatibility in positions in

relation to an opposing party or the fact that there are substantially different

possibilities of settlement of the claims or liabilities in question."

The ABA's Model Code also addresses concurrent conflicts of interest. It

provides, in relevant part:

> Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who *may* have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.

Ethical Canon 5–14 (emphasis added).

The Code states the duty of an attorney in this situation:

> If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, *he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided* if he accepts or continues the employment. *He should resolve all doubts against the propriety of the representation.* A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. If a lawyer accepted such employment and the interests did become actually differing, he would have to withdraw from employment with likelihood of resulting hardship on the clients; and for this reason it is preferable that he refuse the employment initially.

Ethical Canon 5–15 (emphasis added).

Even after an attorney representing clients with potentially differing interests has weighed the risks and determined that representation may continue, he or she nevertheless owes each client a full explanation of the issues involved. Specifically:

> In those instances in which a lawyer is justified in representing two or more clients having differing interests, it is nevertheless essential that each client be given the opportunity to evaluate his need for representation free of any potential conflict and to obtain other counsel if he so desires. *Thus before a lawyer may represent multiple clients, he should explain fully to each client the implications of the common representation and should accept or continue employment only if the clients consent.*

Ethical Canon 5–16.

In sum, both the applicable rules and the Model Code suggest that, here, concurrent representation of clients with potentially conflicting interests may continue only if (1) the firms reasonably believe that they can provide competent, diligent, and unimpaired representation to both sets of clients and (2) the clients have given their

8

informed consent. Moreover, the rules require that this consent be "confirmed in writing." RPC 1.7(b)(4).  Here, however, there is no evidence that Sheriff Lopinto and the individual deputy Defendants Deputies Pitfield, Vaught, Mehrtens, Vega, Guidry and Estrada have been informed of any potential conflict, much less consented to it. Absent this showing, the current defense counsel and law firm runs afoul of the ethical standards applicable to concurrent conflicts of interest.

In addition, conflicts are imputed to all members of a law firm. Under Louisiana Rule of Professional Conduct 1.10, when lawyers are associated in a firm, "none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 [concurrent conflicts] or 1.9 [former clients], unless the prohibition is based on a personal interest of the prohibited lawyer and does not represent a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." In the Fifth Circuit, "there is an irrebuttable presumption that 'confidences obtained by an individual lawyer will be shared with the other members of his firm.'" *Hampton v. Daybrook Fisheries, Inc.*, CIV. A. 01-1913, 2001 WL 1444933, at *2 (E.D. La. Nov. 14, 2001) (quoting *In re American Airlines*, 972 F.2d at 614).

## ARGUMENT

### A. Concurrent representation of the Sheriff and the Individual Deputy Defendants is an actual, or at least significant potential conflict of interest.

Defense counsel's concurrent representation of all the Defendants in this case, including the Sheriff himself, as well as deputies, presents several clear conflicts of interest under Rule 1.7 and federal law.

9

First, the interests of the Sheriff in his official capacity, with respect to Plaintiffs' *Monell* claim, and the interests of the other deputy defendants, are directly adverse to one another. As the Fifth Circuit explained in *Van Ooteghem v. Gray*, 628 F.2d 488, 495 n.7 (5th Cir. 1980), *aff'd in part, vacated in part on other grounds,* 654 F.2d 304 (5th Cir. 1981) (*en banc*) (per curiam), after the Supreme Court's decision in *Monell* allowed suits against local governmental entities, a "serious problem of conflict of interest could exist" in cases where "one attorney represents both a county and a county official individually," due to the parties' adverse interest.  The Second Circuit, relying on *Van Ooteghem*, explained why those interests may be adverse in *Dunton v. Suffolk County*, 729 F.2d 903, 907 (2nd Cir. 1984):

> A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense to a section 1983 action.

In *Dunton*, a similar situation as here was present: the same counsel represented both an individual defendant and the County as a municipality. After the trial ended in a jury verdict for plaintiffs, the Second Circuit reversed the jury verdict based on the inherent conflict of interest between the individual Defendants and the municipality.  The County had pursued a defense which was in *its* interest, that the individual officer was acting outside the scope of his duties, but failed to present a good-faith defense on the individual officer's behalf: "This was a good defense for the county, which eventually was dismissed from the action.  However, it was not in the

10

best interest of Pfeiffer, who was ultimately found liable in his individual capacity." *Id.* The County indemnified the individual for compensatory damages, but because the jury had also imposed punitive damages which the County did not indemnify, a new trial was required. *Id.* at 909–10.

In addition to the Fifth Circuit decision in *Van Ooteghem*, courts within the Fifth Circuit have also recognized this conflict. In *Shadid v. Jackson*, 521 F. Supp. 87 (E.D. Tex. 1981), the parties raised the conflicts issue before trial. The District Court recognized that there was an "obvious potential for conflict of interest" where the same counsel represented an individual police officer and the city. *Id.* at 88–89. "It is in the interests of this individual defendant to contend that if the events alleged did in fact occur, he was acting at all times in good faith within the scope of his lawful, official duties. Conversely, the City of Clarksville might try to avoid liability by proving that this police officer was acting without authority and outside the scope of his employment." *Id.* The Court held that the individual officers and municipality must be represented by separate counsel, because "an attorney seeking to represent both of these defendants with utmost zeal might find himself in an untenable position." *Id.* at 89.

Finally, Judge Sarah Vance of this district addressed a Motion for Conflict Free Counsel in *Nagle v. Gusman, et al.,* No. CIV.A. 12-1910, 2015 WL 1525827, at *1 (E.D. La. Apr. 2, 2015) holding:

> First, in section 1983 cases, the interests of a municipality and the interests of its employees are adverse to one another. *See Van Ooteghem v. Gray,* 628 F.2d 488, 495 n. 7 (5th Cir.1980), *aff'd in part, vacated in part on other grounds,* 654 F.2d 304 (5th Cir.1981) (en banc) (per curiam). Thus, plaintiffs' section 1983 claim under *Monell v. Department of Social Services,* 436 U.S. 658 (1978),

11

creates a potential conflict of interest between Sheriff Gusman in his official capacity, and the employee defendants in their individual capacities. The Second Circuit has succinctly summarized the conflict:

> A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality may be wholly liable because it cannot assert the good faith immunity of its employees as a defense to a section 1983 action. *Dunton v. Suffolk Cnty., State of N.Y.,* 729 F.2d 903, 907 (2d Cir.) amended, 748 F.2d 69 (2d Cir.1984) (relying on *Van Ooteghem,* 628 F.2d 488).

*Nagle v. Gusman,* No. CIV.A. 12-1910, 2015 WL 1525827, at *1 (E.D. La. Apr. 2, 2015).

The conflict identified in *Van Ooteghem*, *Dunton*, *Shadid* and *Nagle* is present here, and if not addressed, has the potential to negatively affect a future verdict. Plaintiffs have a claim against the Sheriff, individually and under *Monell*, as well as claims against individual deputies who serve under the Sheriff and at his will. It is in the interest of the Sheriff to defend against the *Monell* claim by attempting to show that the individual defendants who were involved in the incident with E.P. were adequately trained on the proper use of force and restraint and the dangers of asphyxia associated with restraining obese suspects in the prone position.[6] The Sheriff also has an interest in showing that his policies and procedures were consistent with the constitution and that if deputies deviated from those policies, it

---

[6] Plaintiffs concerns with respect to this issue are heightened after receipt of the JPSO training materials concerning restraints and the Total Appendage Restraint Procedure (TARP). The materials include power points and videos produced in 1994 which fail to take into consideration the advancement in knowledge and training that has occurring in the last 30 years. The importance of this training and the effects of prone restraint have been highlighted in the criminal trial stemming from the death of George Floyd which resulted in the murder conviction of Derick Chauvin and the current trial of the other officers on the scene, Officers Kueng, Lane and Thao, for failing to intervene to prevent the murder.

wasn't due to any fault of his, either individually or in his official capacity. [7]

However, if the Sheriff's policies, training and supervision were deficient (which the Plaintiffs intend to attempt to prove), it is in the individual Defendants best interests to pursue a good faith defense by arguing that they relied on the training and policies even if those policies and training were defective. However, joint representation prevents the individual Defendants from effectively raising this issue because it is contrary to the defense that Sheriff Lopinto is attempting to make in defense of the *Monell* claims. These positions are adverse and irreconcilably in tension. If it is in the best interest of each group of defendants to take these respective positions, one attorney would not be able to pursue them both at the same time, which would materially limit his or her representation of at least one set of these defendants. This poses a classic conflict of interest for the attorney representing all of the defendants, as an argument which would inure to the benefit of one set of defendants would be in conflict and detrimental to the interest of the others.

Further, the joint representation of so many individual Defendants raises serious conflict concerns based on their testimony concerning the facts of this case. The deputies in this case have not yet been deposed. However, they each provided statements to the JPSO concerning the events. These statements are not entirely consistent as to many facts including whether the deputies were advised of the facts before they arrived, which officers used force against E.P. and the exact application of force used, which officers were involved in the restraint of E.P. and how they were

---

[7] Sheriff Lopinto also has potential personal exposure in this case as punitive damages are also sought against him individually.

involved in the restraint, what each officer did on the scene, whether a deputy utilized any type of head/neck/choked hold during restraint, whether any deputy was monitoring E.P.'s condition during the restraint, whether E.P.'s feet were shackled, who was in charge of the scene, what the later arriving deputies knew, etc. These differing facts and their impact on liability for each of the individual deputy Defendants is substantial and obvious.

For example, Deputy Vega provided a statement to JPSO Sgt. Dowling on January 19, 2020. In this statement, Deputy Vega notes that there were complaints made by Plaintiffs (E.P.'s parents) that he was choking E.P. (Statement of Vega attached as Exhibit B). Deputy Vega denies that he was choking E.P. *Id.* In Deputy Gaudet's statement taken by Sgt. Dowling shortly after the incident, Deputy Gaudet stated that he "saw when Nick Vega was on top of him, Nick's arm was circled around his head, shoulder and *neck* and Nick was clearly trying to stop him from biting people…" (Statement of Gaudet attached as Exhibit C) (*Italics added*). However, neither Deputy Vega's nor Deputy Gaudet's sworn Supplemental Discovery Responses, submitted by their joint counsel, even acknowledge this fact. (Vega's Supplemental Discovery Responses are attached as Exhibit D; Gaudet's Supplemental Discovery Responses are attached as Exhibit E). This is significant because Plaintiffs' complaint alleges that E.P. was choked and the autopsy report reflects injuries to or around E.P.'s neck, esophagus and hyoid bone.

Based on the discovery responses filed by joint counsel, it is clear that there is an attempt to shape a narrative that disregards the actual actions and potential exposure of the individual deputies in order to protect the group, as well as the

14

Sheriff. This becomes a particular problem when the attorneys and law firm involved have been long-term counsel for the Sheriff and the JPSO institutionally.[8]   The discovery responses filed on behalf of all of the defendant deputies by their joint counsel omit the fact that E.P. was choked despite evidence that Deputy Vega had some sort of hold around E.P.'s head/neck and that Gaudet saw it.  While this new omission of critical facts in this incident may be helpful to Deputy Vega, it is not in Deputy Gaudet's best interest to now have provided discovery responses that contradict the statement he made shortly after the incident and to fail to even mention conduct by Deputy Vega which was the subject of immediate concern and controversy at the scene and which could have directly caused and/or contributed to the death of E.P.  This effort undermines Deputy Gaudet's credibility and raises issues regarding his participation in a cover-up of the actual events, to the benefit of Deputy Vega, and is exactly the kind of conflict created when counsel is conflicted and where parties do not have independent, conflict-free counsel representing them. Accordingly, there are a myriad of factual circumstances that can, and most likely will, arise at depositions regarding the individual deputy Defendants' conduct which may also pose a real risk of conflicts and possibly expose the testimony given at these depositions to later challenges on the grounds of ineffective counsel due to these conflicts.

---

[8] In *U.S. v Schwarz,* 283 F3d 76, 91 (2nd Cir 2002) the Court reversed a criminal conviction of a police officer due to representation by a police union attorney which violated his right to conflict-free counsel. In that case the police union was being sued civilly for the incident which was also involved in the criminal case. Despite the fact that the officer had waived the conflict pre-trial, the appellate court found that the fact that the defense attorney had an "unalloyed duty" to the union as his client "to refrain from any conduct injurious to its interests" rendered the conflict unwaivable.

## B. Indemnification for punitive damages does not resolve the conflicts.

While Sheriff Lopinto has admitted that he will indemnify the individual Defendants for both compensatory and punitive damages, this does not resolve the conflicts.

In order for an individual deputy to be found liable for punitive damages under 42 USC 1983, the jury must be convinced, by a preponderance of the evidence, that the deputy acted in a manner that was willful, wanton, punitive, and/or malicious. While an award of compensatory damages is mandatory once liability is found, the jury has discretion on whether to award punitive damages. *Smith v Wade 461 US 30,52 (1983)* . Municipalities and other governmental entities, such as the Sheriff in his official capacity, are not subject to punitive damages under 42 USC 1983. *City of Newport v Fact Concerts, Inc.* 453 U.S. 247 (1981).

As the U.S. Supreme Court noted, "Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious and to deter him and others from similar extreme conduct. (citation omitted). Regarding retribution, it remains true that an award of punitive damages against a municipality 'punishes' only the taxpayers, who took no part in the commission of the tort. Indeed, punitive damages imposed on a municipality are in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason not justice suggests that such retribution should be visited upon the shoulders of blameless or unknowing taxpayers." *City of Newport v Fact Concerts, Inc.* 453 U.S. 247, 267 (1981).

.

16

Sheriff Lopinto's admission that he intends to indemnify the individual JPSO deputies in this case if they are found liable for punitive damages is of highly doubtful validity under the Louisiana constitution as previously noted, and is also counter to the public interest. Rather than act as a deterrent to other deputies who may choose to engage in malicious and wanton misconduct, the pledge to use taxpayer money to pay punitive damages for the deputies in this case sends a clear signal to other deputies that they too can act in a similar fashion as these defendants did, without any personal consequence to themselves.

In addition, while Sheriff Lopinto has stated that he will indemnify individual deputies in this case who are found liable for punitive damages for the monetary consequences of such a judgment, there are also serious reputational issues involved for any deputy who might be cited by a jury for punitive damages. While Sheriff Lopinto may have no qualms about paying taxpayer money to cover individual deputies who have acted with gross and callous disregard for the life and safety of a 16-year-old severely autistic child, it is submitted that any deputy who has such a judgment entered against him or her, will find it extremely difficult to be hired by any other law enforcement agency.  If such a judgment is entered against them, they could also have to face appropriate and no doubt uncomfortable scrutiny from their colleagues, family and friends. As the U.S. Supreme Court noted, "Under ordinary principles of retribution, it is the wrongdoer himself who is made to suffer for his unlawful conduct. If a government official acts knowingly and maliciously to deprive others of their civil rights, he may become the appropriate object of the community's vindictive sentiments." *City of Newport v Fact Concerts, Inc.* 453 U.S. 247, 267 (1981).

17

Rule 1.7(b) provides that in certain circumstances, a concurrent conflict of interest may be waived. But waiver is only permitted when a lawyer "reasonably believes" that he can provide "competent and diligent representation to each affected client." Rule 1.7(b)(1). However, to waive a conflict, defendants must give informed consent in writing. *See* Rule 1.7(b)(4). There is no indication that any defendant has done so in this case as the Defendants objected to responding to this request for admission by objecting, claiming it calls for the disclosure of attorney/client communications. (Ex. A – Response to No. 63). Therefore, even if the Sheriff's office indemnifies all individual defendants for compensatory and punitive damages, in order to satisfy Rule 1.7(b) each individual defendant must provide *informed* consent in writing.

Plaintiffs submit that the circumstances in this case represent an un-waivable conflict of interest requiring the disqualification of counsel for the Defendants. Given the clearly adverse positions described above, no lawyer could reasonably believe that concurrent representation would allow him or her to provide competent and diligent representation to each client. In *Shadid v. Jackson*, 521 F. Supp. 87 (E.D. Tex. 1981), for example, the court held that the "unfairness inherent in the multiple representation of clients with potentially adverse interests" may not be curable even if there had been a "knowing and intelligent waiver by the defendants of their right to separate counsel." *Id.* at 90.

The Fifth Circuit, "sensitive to preventing conflicts of interest," has made clear that a "[d]istrict [c]ourt is obliged to take measures against unethical conduct occurring in connection with any proceeding before it." *In re Am. Airlines, Inc.*, 972

F.2d at 611 (quotation omitted). If these conflicts are not addressed now, Plaintiffs are very concerned about the possibility of having a successful verdict in this matter susceptible to challenge on appeal due to an issue of conflicts in representation of any of the defendants at trial. *See, e.g., Dunton*, 729 F.2d 903 (reversing plaintiff's verdict in civil rights case on basis of conflict of interest where same lawyers had represented municipality and individual defendants); *Marderosian v. Shamshak*, 170 F.R.D. 335 (D.Mass. 1997) (same).

Facing a similar situation as this case, Judge Vance in *Nagle v. Gusman, et al.,* No. CIV.A. 12-1910, 2015 WL 1525827, at *1 (E.D. La. Apr. 2, 2015) addressed this issue. First, Judge Vance acknowledged that there was an inherent conflict of interest with respect to representing the interests of individual defendants and a municipality. *Id.* at 1. Further, Judge Vance recognized the inherent conflict of interest between individual defendants and their co-defendants based on differing factual circumstances that could result in liability. *Id.* Thereafter, Judge Vance reviewed the applicable ethical rules and held:

> In sum, both the applicable rules and the Model Code suggest that, here, concurrent representation of clients with potentially conflicting interests may continue only if (1) the firms reasonably believe that they can provide competent, diligent, and unimpaired representation to both sets of clients and (2) the clients have given their informed consent. Moreover, the rules require that this consent be "confirmed in writing." Here, however, there is no evidence that Sheriff Gusman, Dr. Gore, Dr. Higgins, or any of the fully indemnified defendants have been informed of the potential conflict, much less consented to it. Absent this showing, the firms run afoul of the ethical standards applicable to concurrent conflicts of interest.
>
> Both of the potential ethical violations identified by the Court are "open and obvious"; thus, this case fits within *In re Yarn* 's narrow exceptions, and the Court can intervene. *In re Yarn,* 530 F.2d at 89.

19

Thereafter, Judge Vance required defense counsel to meet with their client's individually to specifically address all of the potential conflicts of interest to determine if the individual defendants desired to waive any potential conflicts of interest. If the individual defendants wished to waive any potential conflicts of interest, Judge Vance required the individual defendants to submit an affidavit certifying their informed consent to waive any potential conflict. Thereafter, defense counsel was required to submit an affidavit under seal to the court "explaining how they can 'provide competent and diligent representation to each affected client'—that is, to their clients in this case." Finally, defense counsel was required to submit a signed conflict waiver by the Sheriff. After receipt of this information, the Court was to review the materials to determine whether the conflict is waivable, and if so, whether joint representation could continue or whether the individual Defendants would need their own counsel.

Plaintiffs submit that this Honorable Court should follow the process employed by Judge Vance in *Nagle* or a similar process to determine whether the conflicts of interest are waivable and joint representation of the defendants is proper and ethical or whether the conflicts are not waivable, requiring the withdrawal of current counsel and the enrollment of conflict-free counsel for the defendants in this case.

## Conclusion

This issue, if unresolved, has the potential to cause great harm to an ultimate, just resolution of this dispute. The claims against the individual deputy Defendants and the *Monell* claims against the Sheriff are based on separate conduct and separate theories of liability and create an actual conflict of interest making joint representation improper. Plaintiffs do not wish to run the risk and expense of trial

with the possibility of a reversal of a favorable verdict due to allegations of conflicted representation. Certainly, defense counsel would not wish to be placed in a situation where one of their clients may have potential grounds to assert claims of disloyal representation. It is in the interest of the Court, the public, the parties and all counsel, that there be confidence that any verdict rendered inthis matter has been arrived at through a fair and equitable process with conflict-free representation.

It is respectfully requested that this Motion be granted.

RESPECTFULLY SUBMITTED,

/s/Andrew C. Clarke
Andrew C. Clarke (TN BPR # 15409)
The Cochran Firm Midsouth
One Commerce Square, Suite 1700
(901) 523-1222 (Telephone)
aclarke@cochranfirmmidsouth.com

/s/ William Most
WILLIAM MOST (BPR # 36914)
Law Office of William Most, L.L.C.
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (504) 509-5023
williammost@gmail.com

21