UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

******************************************
| | |
|---|---|
| **DONNA LOU, ET AL** * | **CIVIL ACTION** |
| * | |
| **PLAINTIFFS** * | |
| * | **NO. 21-80** |
| **VERSUS** * | |
| * | **SECTION "D-4"** |
| * | |
| **SHERIFF JOSEPH P. LOPINTO, III, ET AL** * | |
| * | |
| **DEFENDANTS** * | |

******************************************

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY, R. DOC. 21

**MAY IT PLEASE THE COURT**,

Defendants, SHERIFF JOSEPH P. LOPINTO, III, CHAD PITFIELD, RYAN VAUGHT, STEVEN MEHRTENS, SHANNON GUIDRY, NICK VEGA, MANUEL ESTRADA, and MYRON GAUDET respectfully submit the following Memorandum in Opposition to Plaintiff's Motion to Compel, R. Doc. 21.

## BRIEF STATEMENT OF THE POSTURE AND BACKGROUND

This case involves the death of an individual (E.P.) who violently attacked his father and the responding Deputy that was called to the scene in the parking

lot of the Westgate Shopping Center in Metairie, La. on January 19, 2020. The call for service was made by a horrified onlooker. R. Doc. 1.

The Defendants were called to the scene based upon a report from a business manager that E.P. was violently out of control and severely beating his own father, Plaintiff, in the parking lot.

Defendants arrived to find a horrifying scene. E.P. had severely injured his father. E.P. had bitten his fathers face, leaving open and obvious trauma. E.P. then attacked the Defendants.

The Defendants did as best they could to manage E.P., who never stopped resisting their efforts. Defendants at no time used any force beyond that needed to restrain E.P. They did not deploy the use of any intermediate or lethal force devices, weapons or tactics.

As a result of his fierce and violent attack on his father and the officers, his sustained resistance to arrest, and other underlying medical factors, E.P. died.

The only issue in this case is whether any force was used by the Defendant Deputies that was excessive to the need.

The incident was documented by video. While Plaintiffs incredulously refer to the incident as analogous to recent events involving other law

enforcement agencies, Defendants submit that the Court can rest assured, as the video clearly shows, that no such analogy is warranted. Not in an honest world.

## DOCUMENTS IN DISPUTE

Plaintiff seeks an order compelling Defendants to "supplement" their responses to Interrogatories Nos. 8, 9, 10, and 11, and Requests for Production Nos. 6, 7, 15, 25, and 26. R. Doc. 21-1, p. 3-7. Plaintiff's recite those discovery requests verbatim, *Id*., and attach the same, as well as the Defendants' responses thereto, to their Motion. R. Doc. 21-4.

## LAW AND ARGUMENT

### I. PLAINTIFFS' MOTION SHOULD BE DENIED BECAUSE THEIR DISCOVERY IS IMPROPER

Foremost, Defendants submit that the Plaintiffs' Interrogatories were not properly propounded and therefore never required an answer - thus, Plaintiffs' Motion should be denied outright for Plaintiffs' failure to respect the Federal and Local Rules and this Court.

Indeed, Plaintiffs' interrogatories, with sub-parts, far exceed the limit of 25 as prescribed by Federal Rule of Civil Procedure 33(a) and Local Rule 33.1. Quite honestly, Interrogatory No. 8 alone exceeds the cap.

3

Yet, Plaintiffs failed to file for, or be granted leave of Court as required by the federal and local rules.

Fed. R. Civ. P. 33(a)(1) provides, in pertinent part, to wit: "Unless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts. Leave to serve additional interrogatories may be granted to the extent consistent with Rule 26(b) (1) and (2)." Further, L.R. 33.1 provides: "Before serving more than 25 interrogatories, the discovering party must file a motion for leave setting forth the proposed additional interrogatories and the reasons for their use."

Plaintiffs' never sought leave of Court to propound three times the amount of Interrogatories permitted by law.

Accordingly, because the Plaintiffs' Interrogatories were improperly propounded the Defendants submit that same should not require an answer. Defendants pray that the Court DENY Plaintiffs' Motion and that the Court admonish Plaintiffs to comply with the federal and local rules.

Alternatively, Defendants submit that Plaintiffs' Motion should be denied on the merits. Defendants address each of the Plaintiffs' contested discovery responses individually.

## II. INTERROGATORIES NOS. 8, 9, and 10, and RFP NO. 6

Notwithstanding the foregoing, it simply jumps off the page how absurd the Plaintiffs' requests are in Interrogatories Nos. 8-10 and Request for Production No. 6. Indeed, the requests conflate all manner of conduct not at issue here and parties not party to this case.

The requests also ask for information wholly unattainable. Plaintiffs know full well from the numerous discovery conferences had that the JPSO does not maintain records in a manner that could possibly allow for any mechanism to respond to Plaintiffs' request. Moreover, as the Court well knows, the JPSO is under no legal obligation, and is certainly not required in this case to create such a mechanism.

Second, to the extent that Plaintiffs are seeking any complaints against the Defendant officers that simply bear absolutely nothing in common with the allegations against the officers in the present suit, namely the use of excessive force, same cannot possibly lead to the discovery of relevant, admissible evidence. Thus, defendants ask that Plaintiffs be precluded from examining same.

Third, Plaintiffs are not legally entitled to view the records of non-sustained complaints, complaints in which the officers were exonerated, or

5

otherwise unsubstantiated allegations. Further, even if there were instances in which the defendant officers were disciplined for the use of unauthorized force, which is not the case here, same would still not lead to the discovery of relevant, admissible evidence.

Indeed, Pursuant to Rule 404(a) of the Federal Rules of Evidence, evidence of a person's character or a trait of character is *not* admissible for the purpose of proving action in conformity therewith on a particular occasion, except as provided in Rule 608. Rule 608(a) provides that the credibility of a witness may be attacked so long as the evidence refers *only* to the character for truthfulness or untruthfulness. Rule 608(b) forbids extrinsic evidence of specific instances of the conduct of a witness for the purpose of attacking or supporting his credibility.

> Rule 608 (b) provides in pertinent part:
>
> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross examined has testified.

Fed. R. Evid. 608(b).  In interpreting Rule 608(b), the Fifth Circuit has held:

> This language prohibits proof by extrinsic evidence even where the prosecutor "inquires into" prior acts on cross-examination.  The cross-examining attorney must take the witness' answer.  This result is consistent with the long-standing doctrine that a witness may not be impeached with extrinsic evidence as to a collateral matter.  Prior wrongful acts not resulting in a criminal conviction ordinarily are collateral matters. (*citations omitted*).[1]

It is supremely well established in this circuit that a witness may not be impeached by inquiry into specific acts of misconduct not resulting in a conviction. *See, e. g., U.S. v. Cox*, 536 F.2d 65 (5th Cir. 1976)(emphasis added); *U.S. v. Alvarado*, 519 F.2d 1133 (5th Cir. 1975); *Truman v. Wainwright*, 514 UF.2d 150 (5th Cir. 1975); *United States v. Park*, 525 F.2d 1279, 1283-84 (5th Cir. 1976); *United States v. Garber*, 471 F.2d 212, 215-16 (5th Cir. 1972); *United States v. Davenport*, 449 F.2d 696, 699-700 (5 Cir., 1971); *Brown v. Coating Specialists, Inc.*, 465 F.2d 340, 341 (5 Cir., 1972); *Roberson v. United States*, 249 F.2d 737, 742 (5 Cir., 1957), *cert. denied*, 356 U.S. 919, 78 S.Ct. 704, 2 L.Ed.2d 715 (1958).

In an analogous case, namely *U.S. v. Davis*, United States District Court Judge Sarah S. Vance determined that internal affairs complaints were

---

[1] *United States v. Herzberg*, 588 F.2d 1219 (5th Cir. 1977).

inadmissible at trial because they were not probative of the officers' truthfulness or untruthfulness.[2]  In *Davis*, the defendant was charged with conspiracy to possess with the intent to distribute heroin, conspiracy to use firearms in furtherance of the heroin conspiracy, and crimes relating to the heroin conspiracy.[3]  The defense argued that the officers planted drugs, paid witnesses for testimony, lied to witnesses and threatened witnesses to procure false testimony against the defendant.[4]  To support this allegation, defendant requested all disciplinary actions, complaints, write-ups, and other forms of reprimand relating to nine officers.[5]  He argued that the files were relevant and necessary because they would be used to elicit testimony at trial concerning misconduct on the part of federal agents and the nine police officers.[6]  The Magistrate Judge allowed the production of one informal complaint and two formal complaints against the officers.

Judge Vance, reversing the ruling, noted that the "probative value that could arguably attach to … [the] unsubstantiated complaints against the NOPD officers [was] clearly and substantially outweighed by the danger of unfair

---

[2] *U.S. v. Davis*, United States District Court, Eastern District. of LA, Case No. 01-282.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] *Id.*

8

prejudice, confusion of the issues, or misleading the jury.[7] Not only was there no conviction of a crime, there was no finding of wrongdoing of any kind against the officers."[8] Citing *Truman v. Wainwright,* the court quoted, "[It] is firmly established in this circuit that a witness may not be impeached by inquiry into specific acts of misconduct not resulting in a conviction."[9]

Similarly, in *Cloud v. Thomas,* the United States Court of Appeals held that evidence of prior bad acts could not be used to impeach a police officer.[10] In *Cloud,* the government called a single officer to testify against a defendant charged with public lewdness.[11] The defense attempted to impeach the officer's general credibility using a prior incident that had resulted in the officer's suspension, specifically, a false report he had written in an unrelated "vice undercover operation."[12] The Court determined the report was inadmissible, noting that it was "written by the officer between the time of defendant's arrest and trial and that although the officer had been suspended and reassigned to traffic control, no criminal charges were brought against him."[13]

---

[7] *Id.*
[8] *Id.*
[9] *Truman*, 514 F.2d 150 (5th Cir. 1975).

[10] 627 F.2d 742 (5th Cir. 1980).
[11] *Id.*
[12] *Id.*
[13] *Id.*

9

In this case, as in the foregoing, Plaintiffs are precluded from introducing any of the requested documents as extrinsic evidence or from inquiring about the requested documents for purposes of seeking to impeach the Defendant Deputies by inquiry into specific acts that did not result in a conviction for purposes of proving the underlying tort. Likewise, Plaintiffs are precluded from offering "prior bad acts" evidence in order to bolster their underlying tort claims.

Indeed, pursuant to Rule 404(a) of the Federal Rules of Evidence, evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except as provided in Rule 608 (*supra*). Moreover, evidence of other crimes, wrongs or acts is inadmissible under Fed. R. Evid. 404(b), which provides as follows:

> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The rule follows the venerable principle that evidence of extrinsic offenses should not be admitted solely to demonstrate the defendant's bad character. "[T]he principle prohibits such evidence because it is inherently prejudicial." *U.S. v.*

*Beechum*, 582 F.2d 898 (5th Cir. 1978); *citing, e. g., Michelson v. United States*, 335 U.S. 469, 475-76, 69 S.Ct. 213, 218, 93 L.Ed. 168 (1948).

In *Segura v. City of Reno* Plaintiffs sought discovery of personnel files of two police officers who were named as defendants in a civil rights action.[14] The Plaintiffs alleged excessive force and wanted to obtain documents where the officers were disciplined for past incidents of excessive force.[15] When reaching a decision, the court opined that Plaintiffs would contend that the documents could lead to admissible evidence against the individual officers in question, as these past incidents of excessive force might bear on the case at issue.[16] However, Plaintiff's request was denied and the court held that the documents were not likely to lead to admissible evidence, because, "the liability of the individual police officer arises out of this particular incident and as such evidence of other similar incidents could only show a propensity for excessive use of force. This is the sort of "conduct in conformity with character" evidence which 404(b) prohibits."[17]

---

[14] *Segura v. City of Reno*, 116 F.R.D. 42, 44 (U.S.D.C. 1987).
[15] *Id.*
[16] Id
[17] *Id.*

11

In the present case, as in *Segura*, the requested documents cannot lead to the discovery of relevant, admissible evidence. As in *Segura*, any liability on the part of the Defendants in this case arises out of ***the particular incident sued upon***.

Accordingly, the Defendants submit that they should not be compelled to produce the information sought by Plaintiffs' Interrogatories 8, 9 and 10, and RFP 6.

Accordingly, the Defendants submit that Plaintiffs' Motion should be DENIED.

### III.  INTERROGATORY No. 11

Simply, this request calls for the production of privileged information. *See Jaffee v. Redmond*, 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996).

Therefore, Plaintiff's Motion should be DENIED.

### IV.  REQUEST FOR PRODUCTION No. 7

The Defendants do not believe there is a genuine dispute about this claim. As Plaintiffs indicated, there were discussions held in person over certain documents. Defendants submit that they have (or will have, mail service depending) provided all documents responsive to Plaintiffs' request prior to the submission date on Plaintiffs' Motion.

Therefore, Plaintiff's Motion should be DENIED.

## V. REQUEST FOR PRODUCTION No. 15

Again, as above, and as discussed *ad nauseum* in numerous discovery conferences with Plaintiffs, the JPSO ***does not have, keep, or maintain*** the records requested. Period. Plaintiffs' Motion should be DENIED.

Further, Federal Rule of Civil Procedure 34 in no way requires a party to go out and create a document that is already not in existence in response to a discovery request. *Morris v. Copart*, Civ. A. No. 15-724, 2016 WL 11472826, at *4 (E.D. Tex. Sept. 22, 2016), report and recommendation adopted, 2016 WL 6608874 (E.D. Tex. Nov. 9, 2016) ("Rule 34(a) does not require a party to create documents that do not exist."); *Marchese v. Sec'y, Dep't of the Interior*, Civ. A. No.03-3082, 2004 WL 2297465, at *4 (Wilkinson, M.J.) (E.D. La. Oct. 12, 2004) ("Rule 34 does not require a party responding to discovery to create responsive materials, only to produce those in its possession, custody or control.").

Likewise, Rule 33 also provides that when the burden is substantially the same in compiling and summarizing the requested information that the responding party may point to specific documents or set of documents that contain sufficient information from which the answering party can derive such

13

information. *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 579 (N.D. Tex. 2018). Here, Plaintiffs have been directed to, and are just as able to visit PACER and JeffNet and compile the requested information as are the Defendants.

Therefore, Plaintiff's Motion should be DENIED.

## VI.  REQUEST FOR PRODUCTION Nos. 25 AND 26

Defendants submit that this is a waste of the Court's time. Indeed, if Plaintiffs were reasonable and responsible, this would not be an issue.

Nonetheless, if the Plaintiffs' insist on forcing the Court to involve itself, Defendants would simply suggest that the Court limit any order to allow for the discovery of only that information which is not privileged and which relates to the actual case at issue.

## VII.  CONCLUSION

For the foregoing reasons, Defendants respectfully pray that Plaintiffs' motion to compel be DENIED.

Respectfully submitted,

/s/ **Daniel Martiny**

_____
**DANIEL R. MARTINY,LSB#9012**
MARTINY & ASSOCIATES, LLC
131 Airline Drive
Suite 201
Metairie, Louisiana 70001
Telephone: (504) 834-7676

14

Facsimile: (504) 834-5409
Email: danny@martinylaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing pleading has been served upon all counsel of record via electronic filing this 1st day of March 2022.

/S/ Daniel Martiny

_____
**DANIEL R. MARTINY**