UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

DONNA LOU, ET AL.                    *          CIVIL ACTION

VERSUS                               *          NO. 21-80

SHERIFF JOSEPH P, LOPINTO, III,      *          SECTION "D" (2)
ET AL.

### ORDER AND REASONS

Before me is Plaintiffs' Motion to Compel seeking full and complete responses to Interrogatory Nos. 8, 9, 10 and 11 and Requests for Production Nos. 6, 7, 15, 25 and 26. ECF No. 21. Defendants timely filed an Opposition Memorandum. ECF No. 26. Plaintiffs sought leave and filed a Reply Memorandum. ECF No. 32. No party requested oral argument in accordance with Local Rule 78.1, and the Court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Plaintiffs' Motion to Compel is GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

## I.     BACKGROUND

Donna Lou and Daren Parsa, the parents of E.P., an autistic 16-year old, sued Jefferson Parish Sheriff Joseph Lopinto III, several JPSO officers (Deputies Pitfield, Vaught, Mehrtens, Guidry, Vega, Estrada, and Gaudet), their insurer, Victory Real Estate Investments LA, LLC and Westgate Investors NO, LLC and their insurers after their son died while being subdued by police officers during a severe, acute sensory episode on January 19, 2020. ECF No. 1, ¶¶ 2, 17–28. After playing a game of laser gate at Westgate shopping center, Plaintiffs and their son went to the parking lot where their son experienced a melt-down caused by and related to his autism during which he slapped, grabbed and bit his father. *Id.* at ¶¶ 29–40. When the manager observed the

1

interaction, he asked if Plaintiffs wanted him to call the police, and they responded affirmatively. *Id.* at ¶ 41.  Plaintiffs contend that, despite knowledge that the call was to assist with a severely autistic child, after being slapped, Officer Pitfield improperly took the child to the ground, and applied physical force and restraint, which resulted in the child's death.  *Id.* ¶¶ 3–9, 48, 68–69. After taking E.D. down, he bit Officer Pitfield who realized he needed another pair of handcuffs during which E.D.'s father held E.D. down, after which Officer Pitfield sat on E.D. for approximately 7 minutes.  *Id.* ¶¶ 70–76.  Plaintiffs contend that, once E.D. had de-escalated, Defendants should have placed him in a recovery position by turning him on his side or sitting him up rather than continue to maintain force on him and ensured that he could breathe.  *Id.* ¶¶ 103–104, 117–18, 151–56, 164–181.  They also contend that Officer Vega, who relieved Officer Pitfield, improperly used a pain compliance, neck hold, and choke hold, all of which were unnecessary.  *Id.* ¶¶ 192–214.  In the process of another officer relieving Officer Vega, it was discovered that the child had gone limp, urinated on himself, and was dying.  *Id.* ¶¶ 217–20.

Plaintiffs premise their claims on 42 U.S.C. § 1983; Title II of the Americans With Disabilities Act, 42 U.S.C. §§ 12131, 12132; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the First, Fourth, Ninth and Fourteenth Amendments.  ECF No. 1, at ¶ 12.  Plaintiffs contend that the JPSO officers used excessive and unreasonable force, failed to intervene, and unlawfully seized Plaintiffs by preventing them from going to the hospital to be with their son, in violation of the Constitution and § 1983 (*id.* ¶¶ 386, 390), Sheriff Lopinto failed to (a) determine whether his deputies were qualified, (b) provide proper policies or guidance for dealing with persons with disabilities, (c) provide proper training on dealing with persons with disabilities, (d) properly monitor and supervise his deputies, (e) to investigate and discipline deputies for violations of JPSO policies, practices and customs (*id.* ¶ 409), and they violated the ADA and Rehabilitation

2

Act by failing to provide reasonable accommodation and failing to adopt appropriate policies (*id.* ¶¶ 452–53).  Plaintiffs also contend that Defendants are liable under Louisiana tort law.  *Id.* ¶¶ 458–59.

Plaintiffs issued interrogatories and requests for production.  Plaintiffs initiated a discovery conference to address issues even before the response was due.  ECF No. 21-5, at 1–2.  Plaintiffs modified the discovery requests, as summarized in an April 15, 2021 email.  ECF No. 21-6, at 8.  Although the documents attached to Plaintiffs' motion reflect that Defendants submitted written responses on May 17, 2021 (ECF No. 21-4, at 23), in a series of emails[1] between counsel, Plaintiff's counsel asserted that, as of June 16, 2021, no responses or documents had been provided to him and only to local counsel while Defendants indicated that discovery had been sent since they sent to local counsel.  *See, e.g.*, ECF No. 21-5, at 12, 16–17.  Regardless, the attached documents also indicate later verifications and supplements provided.  ECF No. 21-6, at 1, 19–20, 23, 27–29.

## II.   **Parties' Positions on Motion to Compel**

Plaintiffs contend that Defendants' responses to Interrogatories Nos. 8, 9, 10 and 11 and Requests for Production Nos. 6, 7, 15, 25 and 26 are deficient.  ECF No. 21-1, at 3–7.  Plaintiffs argue that these requests should be fully answered and are relevant as this case raises not only individual claims but also *Monell* claims, which they contend may be established by (1) an express municipal policy, (2) widespread practice that, though not authorized or express, is so permanent and settled as to constitute a custom or usage with the force of law, (3) the decision by the final

---

[1] The Court notes the unprofessional emails exchanged between counsel and directs them to review not only the Louisiana Rules of Professional Conduct but also the Code of Professionalism.  Personal attacks and unprofessional conduct will not be tolerated.

policymaking authority, (4) failure to act where the policymaker can reasonably be said to have been deliberately indifferent, or (5) ratification. *Id.* at 8–9.

Defendants oppose the motion, arguing that it is procedurally and substantively unfounded. Procedurally, Defendants argue that Plaintiffs' use of interrogatory subparts resulted in the issuance of more than 25 interrogatories without leave of court, in violation of Rule 33(a)(1), and as such, Defendants should not be compelled to answer.  ECF No. 26 at 3–4.  Substantively, Defendants contend that Plaintiffs' discovery requests seek information regarding events unrelated to the issues in this case, seek information that is "wholly unattainable," seek information regarding complaints against the officers that are not related to events at issue, seek confidential records of non-sustained complaints in which officers were exonerated or that would purport to establish character or trait in violation Fed. R. Evid. 404(a), and seek privileged information.  *Id.* at 5–12.  Defendants assert that they have (or will) produce all documents responsive to Request for Production No. 7 (*id.* at 12–13) and that they have repeatedly advised that they do not have, keep or maintain the documents sought by Request for Production No. 15 (*id.* at 13).  With regard to Requests for Production Nos. 25 and 26, Defendants ask that the requests be limited to information relating to the actual case that is not privileged.  *Id.* at 14.

In Reply, Plaintiffs contend that Defendants' view of relevance fails to recognize that, in addition to an excessive force claim, they also assert claims for illegal seizure, improper investigation, discrimination and failure to accommodate under the ADA and Rehabilitation Act, failure to intervene and state law torts.  ECF No. 32, at 2.  Plaintiffs also contend that Defendants waived the objection based on interrogatories in excess of the 25-interrogatory limit by failing to include that objection in their discovery responses.  *Id.* at 3.  They also argue Defendants waived any relevance objection to Interrogatory No. 9 by failing to raise that objection.  *Id.*  Plaintiffs'

4

counter Defendants' "character evidence" argument with their assertion that the information sought is to address the *Monell* claim, which requires evidence of a pattern or lack of investigation or discipline, not for character purposes. *Id.* at 3–4. Plaintiffs also contend that Defendants are not truthful in their assertion that they do not maintain records of settlements. *Id.* at 5. Plaintiffs note Defendants' failure to address whatsoever the request for ESI. *Id.* at 6.

## III.   LAW AND ANALYSIS

### A.   The Scope of Discovery

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). This broad duty of disclosure extends to all documents that fit the definition of relevance for the purposes of discovery—whether the documents are good, bad, or indifferent.[2] The disclosure duty is a central concept of the discovery process and finds expression not only in the rules of discovery, but also in the Rules of Professional Conduct, which prohibit an attorney from suppressing any evidence subject to a legal obligation to reveal or produce.[3]

Information need not be admissible into evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). Rather, the information merely needs to be proportional and relevant to any claim or defense. *Id.* The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage.[4] This broader scope is necessary given

---

[2] *Yelton v. PHI, Inc.*, 279 F.R.D. 377, 384 (E.D. La. 2011), *objections overruled*, 284 F.R.D. 374 (E.D. La. 2012) (citation omitted).
[3] *Id.*
[4] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted).

the nature of litigation, where determinations of relevance for discovery purposes are made well in advance of trial.[5]  At the discovery stage, relevance includes "[a]ny matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."[6] Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[7]  If relevance is in doubt, the court should be permissive in allowing discovery.[8]  Facts that are not considered in determining the ultimate issues may be eliminated in due course of the proceeding.[9]

A party seeking discovery must comply with Rule 26(b)(1)'s proportionality limits on discovery requests and is subject to Rule 26(g)(1)(B)'s requirement to certify that the discovery request is "(i) consistent with these rules . . . ; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action."  Fed. R. Civ. P. 26(g)(1)(B).  If discovery requests fall outside the Rule 26(b)(1) scope of discovery, the serving party may face Rule 26(g)(3) sanctions if it made the certification without substantial justification.[10]  "Substantially justified" means justified to a degree that could satisfy a reasonable person[11] and requires a reasonable basis in both law and fact, such that there is a

---

[5] *Id.* at 590 n.5 (citation omitted).
[6] *Id*. at 590 (citations omitted).
[7] *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017) (citing *Merrill v. Waffle House, Inc*., 227 F.R.D. 467, 470 (N.D. Tex. 2005)).
[8] *E.E.O.C. v. Simply Storage Mgmt.*, *L.L.C*., 270 F.R.D. 430, 433 (S.D. Ind. 2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987)).
[9] *Rangel*, 274 F.R.D. at 590 n.5.
[10] *Samsung Elecs. Am. Inc. v. Yang Kun Chung*, 325 F.R.D. 578, 594 (N.D. Tex. 2017) (citing Fed. R. Civ. P. 26(g)(1)(B), 26(g)(3); *Heller v. City of Dallas*, 303 F.R.D. 466, 475–77 (N.D. Tex. 2014) ("Rule 26(g) is thus designed to curb discovery abuse by explicitly encouraging the imposition of sanctions.")).
[11] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

genuine dispute or reasonable people could differ as to the appropriateness of the contested action.[12]

The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them."  Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment.  Thus, it bears the burden of making a specific objection and showing that the discovery fails Rule 26(b)'s proportionality calculation by coming forward with specific information to address the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[13]  "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery."  Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment.

While the discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials,[14] discovery does have "'ultimate and necessary boundaries.'"[15]  The parties and the court have a collective responsibility to ensure that discovery is proportional, and Rule 26(b)(2)(C) *mandates* that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: "(i) the discovery sought is unreasonably cumulative

---

[12] *Id.*; *accord De Angelis v. City of El Paso*, 265 F. App'x 390, 398 (5th Cir. 2008); *Black Ass'n of New Orleans Fire Fighters (Banoff) v. City of New Orleans*, No. 86-1512, 1990 WL 163565, at *3 (E.D. La. Oct. 23, 1990).
[13] *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016).
[14] *Herbert v. Lando*, 441 U.S. 153, 176 (1979) (citations omitted).
[15] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."[16]   Further, Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."[17]   While relevancy in the discovery context is broader than in the trial context, that legal tenet should not be misapplied to allow fishing expeditions in discovery.[18]

### B.  <u>Duties in Responding to Discovery</u>

### 1.  **Full and Complete Responses**

"Discovery by interrogatory requires candor in responding. . . .   The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information. A partial answer by a party reserving an undisclosed objection to answering fully is not candid. It is evasive."[19]   The fact that an interrogatory calls for a thorough response—one that will take time and effort to answer—does not make it improper.[20]   A party is not required to make an extensive investigation in responding to an interrogatory, but must review all sources of responsive information reasonably available and provide the responsive, relevant facts reasonably available.[21]   Where an interrogatory answer as a whole discloses "a conscientious endeavor" to understand the question and to fully answer it, a party's obligation under Rule 33 is satisfied.[22]

---

[16] Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).

[17] *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (citation omitted).

[18] *Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, No. 16-17277, 2017 WL 3011144, at *4 (E.D. La. July 14, 2017) (citations omitted); *see also Crosby*, 647 F.3d at 264; *Ganpat v. E. Pac. Shipping, PTE, Ltd.*, No. 18-13556, 2020 WL 1046336, at *3 (E.D. La. Mar. 4, 2020).

[19] *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616–17 (5th Cir. 1977).

[20] *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016) (citing *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 307–08 (5th Cir. 1973)).

[21] *Id.* (citing 8B WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2174 (3d ed. 2013)).

[22] *Id.* (citing *Meltzer/Austin Rest. Corp. v. Benihana Nat'l. Corp.*, No. 11-542, 2013 WL 2607589, at *3 (W.D. Tex. June 10, 2013) (quoting 8B WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE & PROCEDURE § 2177 (3d ed. 2010))).

### 2.   Objections Must be Stated with Specificity

A party served with written discovery must fully answer each request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and explain whether any responsive information or documents have been withheld.[23]   The Federal Rules of Civil Procedure take a "demanding attitude toward objections,"[24] and courts have long interpreted the rules to prohibit general, boilerplate objections.[25]   Boilerplate objections use standardized, ready-made or all-purpose language without regard to the particular discovery request.[26]   General objections refer to objections that a party responding to discovery asserts as applicable to multiple individual requests set forth in a given set of discovery requests.[27]   A general objection untethered to specific requests (and is thus also a boilerplate objection) is improper.[28]   In some instances, however, general objections may serve as an efficient response whereby the court may consider

---

[23] *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018) (citation omitted).

[24] 8B CHARLES WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2173 (3d ed. 2021).

[25] *See, e.g.*, *Chevron Midstream Pipelines LLC v. Settoon Towing LLC*, Nos. 13-2809, 13-3197, 2015 WL 269051, at *3 (E.D. La. Jan. 21, 2015) (noting that an objection is boilerplate and insufficient "when it merely states the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request.") (citation omitted); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485–86 (5th Cir. 1990) (simply objecting to requests as "overly broad, burdensome, oppressive and irrelevant," without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive" is inadequate to "voice a successful objection.").

[26] *See Tim Long Plumbing, Inc. v. Kinsale Ins. Co.*, No. 2042, 2020 WL 6559869, at *3 (E.D. Tex. Nov. 9, 2020) (providing examples for boilerplate language, such as "Defendant objects to this Request, as it is overly broad and vague" and "Defendant objects to this Request to the extent it seeks discovery of information that is irrelevant and not proportional to the needs of the case."). Objections are deemed "boilerplate" when they are identical and not tailored to the specific discovery request. *Amazing Ins., Inc. v. DiManno*, No. 19-1349, 2020 WL 5440050, at *5 (E.D. Cal. Sept. 10, 2020) (citation omitted).

[27] *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 134 n.16 (3d Cir. 2009).

[28] *See DL v. Dist. of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008) (citation omitted) ("When faced with general objections, the applicability of which to specific document requests is not explained further, this Court will not raise objections for the responding party, but instead will overrule the responding party's objections on those grounds." (internal quotations omitted)).

and rule upon general objections raised against sets of interrogatories or requests for production.[29] To serve this purpose and to comply with the Federal Rules of Civil Procedure, however, the general objections must raise specific objections and correspond to specific discovery requests.[30]

Where a general objection is connected both to the facts of the case and specific discovery requests, they are proper; when they are disconnected from either the facts or the discovery requests, they are not proper.[31]  Thus, the party objecting must state how the objection "relates to the particular request being opposed, and not merely that it is 'overly broad and burdensome' or 'oppressive' or 'vexatious' or 'not reasonably calculated to lead to the discovery of admissible evidence.'"[32]  The objection must clearly state how the information sought is not relevant to any claim or defense, or how the request is overbroad, burdensome or oppressive.[33]  When a party objects to a request for production, the "objection must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request must specify the

---

[29] *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 304 (D. Kan. 1996) (citations omitted).

[30] *Dickey v. Apache Indus. Servs., Inc.*, No. 18-572, 2019 WL 4261117, at *3 (M.D. La. Sept. 9, 2019) (collecting cases); *see Hall v. Louisiana*, No. 12-657, 2014 WL 2560579, at *1 (M.D. La. June 6, 2014) ("Defendants initially gave general objections applicable to all of Plaintiff's discovery requests.  But critically, after providing their general objections, Defendants addressed each and every discovery request individually, making specific objections before providing detailed and informative responses, notwithstanding those objections.").

[31] Likewise, the practice of responding to discovery requests "subject to" and/or "without waiving" objections is manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure. *Heller v. City of Dallas*, 303 F.R.D. 466, 486–87 (N.D. Tex. 2014) (citation omitted).  Such an objection paired with a response "preserves nothing and serves only to waste the time and resources of both the Parties and the Court."  *Id.* at 487.  To the extent any response or production is done "subject to" or "without waiving" objections other than privilege or work product, such objections are waived.  *Id.*  Copying and pasting an objection by itself does not render an objection a boilerplate objection.  *Tim Long Plumbing*, 2020 WL 6559869, at *4.

[32] *Cheshire v. Air Methods Corp*, No. 15-933, 2015 WL 7736649, at *2 (W.D. La. Nov. 30, 2015) (quotations omitted).

[33] *Chevron Midstream Pipelines v. Settoon Towing, LLC*, Nos. 13-2809, 13-3197, 2015 WL 269051 at *3 (E.D. La. Jan. 20, 2015) (noting objections are boilerplate and insufficient if they merely state "the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond.") (citation omitted).

part and permit inspection of the rest."[34]   Objections interposed without also indicating whether any document or information is being withheld are improper.[35]

### C. Waiver

The failure to provide timely written answers to interrogatories and requests for production[36] may, and generally does, result in a waiver of objections.[37]   To avoid a finding of waiver, the party must establish good cause.[38]   That said, the court retains discretion to decline to compel production when the request "far exceeds the bounds of fair discovery, even if a timely objection has not been made."[39]   Accordingly, whether a party has previously objected to the number of interrogatories is not decisive as Rule 33(a) makes clear that a party may not serve

---

[34] Fed. R. Civ. P. 34(b)(2)(C); *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016), *objections overruled sub nom. Orchestratehr, Inc. v. Trombetta*, No. 3:13-2110, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016).

[35] *See Chevron*, 2015 WL 269051 at *4 (holding that objections fall woefully short of objecting party's burden when party objected to documents and information protected by privilege but did not describe whether any documents were withheld or the nature of withheld documents).

[36] Fed. R. Civ. P. 33(b)(4); 34(b)((2).

[37] *See In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989) ("[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived."); *see also* 8 WRIGHT, A. MILLER, AND R. MARCUS, FEDERAL PRACTICE & PROCEDURE § 2016.1 n.1 (3d ed. 2021); *B&S Equip. Co. v. Truckla Servs., Inc.*, Nos. 09-3862, 10-0832, 10-1168, 10-4592, 2011 WL 2637289, at *5 (E.D. La. July 6, 2011).

[38] *See, e.g.*, *Solorzano v. Shell Chem Co.*, No. 00-31191, 2001 WL 564154 (5th Cir. May 18, 2001) (upholding lower court's order allowing party to respond to interrogatories with objections after failure to respond or raise any objections within the 30-day period); *see also Nugent v. Scott Fetzer Co.*, No. 19-14759, 2020 WL 1322268, at *5 (E.D. La. Mar. 20, 2020) (citation omitted) ("[T]he failure to act timely will not bar consideration of objections in unusual circumstances and for good cause shown."); *Seals v. Shell Oil Co.*, No. 12-1983, 2013 WL 12439172, at *3 (E.D. La. June 21, 2013) (citation omitted) (failure to respond to discovery requests operates as a "waiver of its objections, unless the court excuses that failure for good cause.").

[39] *Meche v. Maint. Dredging, Inc.*, No. 10-3653, 2012 WL 519882, at *2 (E.D. La. Feb. 16, 2012) (citing *Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*, No. 2:05-01059, 2007 WL 1726558, at *4 (D. Nev. June 11, 2007); *Lucero v. Martinez*, No. 03-1128, 2006 WL 1304945, at *2 (D.N.M. Mar. 11, 2006); *Kolenc v. Bellizzi*, No. 95-4494, 1999 WL 92604, at *3 (S.D.N.Y. Feb. 22, 1999); *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988)); *Young v. United States*, 149 F.R.D. 199, 206 (S.D. Cal. 1993); *Schooler v. Wal-Mart Stores, Inc.*, No. 14-2799, 2015 WL 4879434, at *1 (E.D. La. Aug. 14, 2015) (Wilkinson, M.J.).

interrogatories in excess of the presumptive limit unless it first obtains leave of court.[40]  For that reason, the court may enforce Rule 33(a)(1)'s limitation even in the absence of an objection.[41]

Rule 33(a)(1)'s 25-interrogatory limit cannot be evaded through the use of "subparts" that seek information about discrete separate subjects.[42]  Although there is no "clear and easily applied rule" for counting discrete subparts, courts look to whether the subparts are logically or factually "subsumed within" or "necessarily related to" the "primary question."[43]  Genuine subparts should not be counted as separate interrogatories.  Courts assess whether subsequent questions within a single interrogatory are subsumed and related by examining whether the first question is primary and subsequent questions are secondary to the primary question or whether the subsequent question could stand alone, independent of the first question.[44]  For instance, "a question asking about communications of a particular type should be treated as a single interrogatory even though it requests that the time, place, persons present, and contents be stated separately for each such communication."[45]  If the subsequent question stands alone or is independent of the first question,

---

[40] *Rainey v. State Farm Fire & Cas. Ins. Co.*, No. 09-698, 2009 WL 10680066, at *1 (E.D. La. Sept. 23, 2009) (Wilkinson, M.J.).  Indeed, the fact that a party abdicates its role in controlling excessive discovery does not authorize the court to shirk its own responsibility under the 2015 Amendments to the Federal Rules of Civil Procedure.  *Vinet v. BP Expl. & Prod. Inc.*, No. 18-9527, 2019 WL 3574294, at *6 (E.D. La. Aug. 6, 2019) (citing Fed. R. Civ. P. 26(b)(2)(C)(iii)).  Even before the 2015 amendments, courts always retained discretion to decline to compel production of requested discovery "when the request far exceeds the bounds of fair discovery, even if a timely objection has not been made."  *Id.* (citing *Schooler,* 2015 WL 4879434, at *1; *Meche,* 2012 WL 519882, at *2 (citing *Fifty-Six Hope Road Music, Ltd.*, 2007 WL 1726558, at *4; *Lucero*, 2006 WL 1304945, at *2; *Kolenc*, 1999 WL 92604, at *3)).
[41] *Gautier v. Plains Bros. Pipeline, LP*, No. 12-1064, 12-1186, 2013 WL 1787559, at *2 n.3 (E.D. La. Apr. 25, 2013) (noting that objections were untimely but nevertheless considering whether subparts of interrogatories resulted in violation of Rule 33(a)(1)); *see also Amir Athletic, LLC v. State Farm Fire & Cas. Co.*, No. 11-2082, 2012 WL 520658, at *2 (E.D. La. Feb. 16, 2012) (citations omitted) ("Of course, the court retains discretion to decline to compel requested discovery when the request far exceeds the bounds of fair discovery, even if a timely objection has not been made.").
[42] Fed. R. Civ. P. 33 advisory committee's note to the 1993 amendment.
[43] *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (citing *Kendall v. GES Exposition Servs., Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) (quoting *Ginn v. Gemini, Inc.*, 137 F.R.D. 320, 321–22 (D. Nev. 1991))); *Clark v. Burlington N.R.R.*, 112 F.R.D. 117, 120 (N.D. Miss. 1986); *Myers v. U.S. Paint Co.,* 116 F.R.D. 165, 165–66 (D. Mass. 1987)); Fed. R. Civ. P. 33(a) advisory committee's note to the 1993 amendment; 8B CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2168.1  (3rd ed. 2021).
[44] *Estate of Manship v. U.S.*, 232 F.R.D. 552, 554 (M.D. La. 2005) (citing *Kendall*, 174 F.R.D. at 684), *aff'd* 2006 WL 594521 (M.D. La. Jan. 13, 2006).
[45] Fed. R. Civ. P. 33 advisory committee's note to the 1993 amendment.

it would be considered a discrete or separate question even when joined by a conjunctive word and related to the primary question.[46]

     This numerical limitation on the number of interrogatories is intended to protect against potentially excessive use of interrogatories, not to prevent necessary discovery.[47]  It forces a party to narrow their requests to the important issues in the case, to avoid cumulative or duplicative requests, and to seek relevant information from more convenient, less burdensome sources, including depositions.[48]  Courts have recognized that a party receiving excessive interrogatories may respond to the "first" 25 Interrogatories that constitute discrete questions, and strike the rest.[49] When the Court is presented with a request for leave to issue more than 25 interrogatories, the court is guided by Rule 26(b)(2).[50]

### D.  <u>The Requirement for a Privilege Log</u>

     A party withholding information by claiming privilege or work product "***must*** (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things

---

[46] *Safeco*, 181 F.R.D at 445 (quoting *Kendall,* 174 F.R.D. at 685).

[47] *Manship*, 232 F.R.D. at 554 n.1 (citation omitted); *Lower River Marine, Inc. v. USL-497 Barge*, No. 06-04083, 2007 WL 4590095, at *2 (E.D. La. Dec. 21, 2007) (Roby, M.J.) (citation omitted); *see also* Fed. R. Civ. P. 33(a) advisory committee's note to 1993 amendment ("The aim is not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device.").

[48] *King v. Univ. Healthcare Sys., L.C.*, No. 08-1060, 2008 WL 11353694 (E.D. La. Oct. 31, 2008) (Wilkinson, M.J.) (citations omitted).

[49] *Stephens v. Fla. Marine Transporters, Inc.*, No. 12-1873, 2013 WL 12120393, at *3 (E.D. La. Feb. 21, 2013) (Roby, M.J.) (citing *Lower River Marine, Inc.*, 2007 WL 4590095, at *2; *Paananen v. Cellco P'ship*, No. C08-1042, 2009 WL 3327227, at *5 (W.D. Wash. Oct. 8, 2009) ("The best rule . . . is that a responding party must answer the first 25 interrogatories."))

[50] Rule 26(b)(2)(C) instructs to limit discovery if: (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from another more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to discover the information during the proceedings; or (3) the proposed discovery is outside the scope of Rule 26(b)(1), which limits discovery if the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R. Civ. P. 26(b)(2)(C).  The balancing of the burden and expense or the likely benefit of the proposed discovery requires the Court to consider: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the action; and (5) the importance of the discovery in resolving the issues.  *Cubellis, Inc. v. LIFT (La. Ins. of Film Tech.)*, No. 07-7959, 2008 WL 11355010, *2 (E.D. La. Oct. 27, 2008) (Roby, M.J.).  This determination often turns on whether "the requesting party has adequately shown that the benefits of additional interrogatories outweigh the burden to the opposing party."  *Manship*, 232 F.R.D. at 559.

not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the claim." Fed. R. Civ. P. 26(b)(5) (emphasis added). The use of the word "must" indicates that production of a privilege log, including the detail specified by Rule 26(b)(5)(A)(i) and (ii), is mandatory. Indeed, the "privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test[ ] the merits of' the privilege claim."[51] "A privilege log . . . should not only identify the date, the author, and all recipients of each document listed therein, but should also 'describe the document's subject matter, purpose for its production, and specific explanation of why the document is privileged or immune from discovery.'"[52] The party asserting privilege bears the burden of proof sufficient to substantiate its claims.[53]

### E. **Motion to Compel**

In addressing a motion to compel, the moving party bears the burden to establish that the materials requested are within the scope of permissible discovery, after which the burden shifts to the party resisting discovery to show why the discovery is irrelevant, why discovery should not be permitted, and/or to substantiate its objections.[54] If a party resists discovery on the grounds of

---

[51] *EEOC v. BDO USA, L.L.P.*, 876 F.3d 690, 697 (5th Cir. 2017) (citing *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982); *N.L.R.B. v. Interbake Foods, LLC*, 637 F.3d 492, 502 (4th Cir. 2011) ("When a party relies on a privilege log to assert these privileges, the log must 'as to each document . . . set[] forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity that is claimed.'") (quoting *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993))).

[52] *Peacock v. Merrill*, No. 08-01, 2008 WL 687195, at *3 (M.D. La. Mar. 10, 2008) (quoting *Jones v. Hamilton Cty. Sheriff's Dept.*, No. 02-0808, 2003 WL 21383332, at *4 (S.D. Ind. 2003)).

[53] *United States v. Newell*, 315 F.3d 510, 525 (5th Cir. 2002) (citing *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001)); *see Hodges, Grant & Kaufman v. United States*, 768 F.2d 719, 721 (5th Cir. 1985).

[54] *Wymore v. Nail*, No. 14-3493, 2016 WL 1452437, at *1 (W.D. La. Apr. 13, 2016) ("Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections.") (citation omitted); *Tingle v. Hebert*, No. 15-626, 2016 WL 7230499, at *2 (M.D. La. Dec. 14, 2016) ("'[T]he moving party bears the burden of showing that the materials and information sought are relevant to the action . . . .'") (citation omitted); *Davis v. Young*, No. 11-2309, 2012 WL 530917, at *3 (E.D. La. Feb. 16, 2012) (same) (citing *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).

proportionality, it bears the burden of making a specific objection and showing that the discovery fails Rule 26(b)'s proportionality calculation by coming forward with specific information to address the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[55]

## IV.   SPECIFIC DISCOVERY REQUESTS AND ANALYSIS

### A.  Analysis

Exercising its independent obligation to limit the frequency or extent of discovery as required by Fed. R. Civ. P. 26(b)(2)(C), the Court has reviewed the entirety of the Interrogatories. Although Plaintiffs' use of subparts requires that certain interrogatories be counted as more than one question, many of the subparts are related to the primary question and would not each constitute separate questions.   Applying the relatedness versus independent test discussed previously, Interrogatory No. 4 constitutes 4 separate interrogatories (subparts a, b & c; d, e, & f; g; h, i, &j), Interrogatory No. 8 must be counted as 3 separate questions (subparts a, b, c & d; e, f & g; g, h & i), and Interrogatory No. 9 counts as 2 interrogatories (a, b,  c, d, & e; f, g & h)  Thus, Interrogatory Nos. 1 through 10 must be counted as 16 interrogatories.  In light of the general rule that the responding party must address the first 25 interrogatories, however, Rule 33(a)(1) does not relieve Defendants from responding to Interrogatory Nos. 8 through 10 as, even counting subparts as separate questions, the 25-interrogatory limit was not exceeded.

In the Answer, Defendants raised the defense of qualified immunity.  ECF No. 9, at 2 (Eighth Defense).  A government official is entitled to qualified immunity unless a plaintiff

---

[55] *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016).

establishes "that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation."[56]   Courts will deny even limited discovery in the face of a qualified immunity defense absent a determination that deferring the qualified immunity ruling and allowing further factual development is necessary to ascertain the availability of that defense.[57]   The two-step procedure requires the court to determine whether the pleadings assert facts which, if true, would overcome the defense of qualified immunity,[58] and, if so, enter a narrowly tailored discovery order to address only those facts needed to rule on the immunity claim.[59]   Although Defendants raised qualified immunity, Defendants did not file a motion seeking to limit discovery nor did they object to discovery on this basis.

Courts addressing discovery-related disputes in cases involving *Monell* claims routinely recognize that such claims often require a broad and substantial amount of discovery that would not be involved if the plaintiff had sued only the individuals directly involved in the alleged deprivation of rights given the heavy burden on that claim.[60]   To recover under § 1983, plaintiff must establish that the conduct that caused the deprivation is part of a widespread policy or custom.[61]   While a detailed catalogue of similar incidents may not always be available, a plaintiff is typically required to identify similar incidents demonstrating a persistent, widespread practice

---

[56] *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 480 (5th Cir. 2021) (citing *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) (internal quotations omitted)).

[57] *Id.* at 481 (citing *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)).

[58] This is not satisfied by a broad request for information that might impeach the defendants' version of events.  *Id.* (citing *Backe*, 691 F.3d at 648).

[59] *Id.* (citations omitted).

[60] *See Maurer v. St. Tammany Par. Sch. Bd.*, No. 19-13479, 2020 WL 12801030, *2 (E.D. La. June 26, 2020) (Douglas, M.J.) (citing cases).

[61] *See Piotrowski v. City of Houston*, 237 F.3d 567, 578–79 (5th Cir. 2001); *see also Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021) (discussing extremely narrow exception for single incidents).

to prove a § 1983 claim.[62]  Thus, prior complaints against defendants are discoverable in a § 1983 action so long as the complaints are similar to the constitutional violations alleged in the complaint or are relevant to the defendant's truth or veracity.[63]  Accordingly, Plaintiffs are entitled to discovery relevant to establish these requirements.

Defendants' objections that Interrogatory Nos. 8 and 10 and Requests for Production Nos. 6, 15, 25 and 16 "are overly broad and unduly burdensome," however, are wholly insufficient. Defendants fail to connect that objection to the facts of the case and specific discovery requests. To validly object, Defendants must state how the objection relates to the request (i.e., how the information sought is not relevant or how the request is overbroad, burdensome or oppressive). Further, the fact that an interrogatory calls for a thorough response that takes time and effort to answer does not make it improper.  That said, Defendants are only obliged to review all sources of responsive information *reasonably available* and provide the responsive, relevant facts.  For any interrogatory to which Defendants fail to fully respond, Defendants must outline their "conscientious endeavor" to understand the question and review all reasonably available information to fully answer it.

**B.  Specific Discovery Requests**

**1.  Claims and Complaints Over a 10-15 Year Period**

Interrogatory No. 8 reads:

Please identify any and all claims and/or complaints made against the Defendant Lopinto, the JPSO or its employees or any investigation performed by the Defendant Lopinto or the JPSO and/or its employees or agents with respect to the

---

[62] *See Skyy v. City of Arlington*, 712 F. App'x 396, 401 (5th Cir. 2017) (citation omitted); *Williams v. Connick*, No. 12-1274, 2014 WL 1246771, at *3 (E.D. La. Mar. 25, 2014) (finding that defendant need only produce documents that relate to *Brady* claims similar to those alleged in the complaint).

[63] *Wymore v. Nail*, No. 14-3493, 2016 WL 1452437, *2 (W.D. La. Apr. 13, 2016) (citation omitted) (denying motion to compel insofar as it seeks information concerning constitutional violations beyond those alleged in the complaint but allowing discovery into documents regarding complaints against the specific officer for failure to protect from violence of another inmate); *see also Whitfield v. Riley*, No. 09-1877, 2009 WL 10679761, *7 (E.D. La. Oct. 6, 2009).

issues involved in this case including, but not limited to, criminal conduct, arrests, use of force, use of hand-cuffs, use of leg restraints, use of restraints, use of body weight, use of choke holds, use of neck holds, compression asphyxia, positional asphyxia, hog-tie, excited delirium, encounters with persons with disabilities, encounters with emotional disturbed persons, etc. With respect to each claim or complaint, please state the following:

      a. The date of the complaint/investigation;
      b. The name, address and telephone number of the person making the complaint;
      c. The nature of the complaint or investigation;
      d. The officers involved;
      e. Whether the complaint was investigated;
      f. The persons or entity performing the investigation;
      g. The disposition of the matter i.e. case closed, discipline rendered, criminal charges, result of criminal charges, civil litigation, result of civil litigation, settlements, etc.
      g. Whether a civil claim or lawsuit was instituted and the docket or claim number;
      h. The disposition of the civil action or claim; and
      i. Whether the case was settled without litigation.

ANSWER: Defendant objects to Interrogatory No. 8 on the grounds that said request is overly broad and unduly burdensome.

Interrogatory No. 9[64] reads:

Identify any and all law enforcement officers working for the Defendant Lopinto and the JPSO who have been reprimanded, admonished, disciplined, charged with criminal offenses, indicted, terminated for violating policy or other misconduct or terminated due to a criminal conviction during the last ten years, and please state the following:

      a. The full name and present address of each person;
      b. The date of the reprimand, admonishment, discipline, criminal charges, indictment or termination;
      c. The reason for the reprimand, admonishment, discipline, criminal charges, indictment or termination;
      d. Whether criminal charges were instituted and the docket number;
      e. The disposition of the criminal charges;
      f. Whether a civil lawsuit was instituted and the docket number;
      g. The disposition of the civil action; and
      h. Whether the case was settled without litigation.

ANSWER: Defendant attaches a list of all JPSO employees terminated in the last 10 years. Unfortunately, this data is not stored in the format requested.

---

[64] Plaintiff agreed to reduce the time period of Interrogatory No. 9 to a 10-year period.  ECF No. 21-5, at 2.

Interrogatory No. 10 reads:

> Please state whether the Defendant and/or JPSO has ever been a Plaintiff or Defendant in a civil or criminal case during the last fifteen years. With respect to each action, please state the following:
>
> a. The style of the case;
> b. The Docket Number of the case;
> c. The nature of the case; and
> d. The disposition of the case
>
> ANSWER: Defendant objects to Interrogatory No. 10 on the grounds that said request is overly broad and unduly burdensome. Subject to the above objection, Defendant would suggest that any civil lawsuit brought against the Defendant and JPSO deputies would be accessible through the PACER services for cases filed within the United States District Court for the Eastern District of Louisiana and the JeffNet system in place with the 24th Judicial District Court for the Parish of Jefferson.

Request for Production No. 6 reads:

> Please produce a copy of all files involving and investigations of any prior claim or complaint made against JPSO or any officer identified in response to Interrogatory Nos. 8-10.
>
> RESPONSE: Defendant objects to Request No. 6 on the grounds that said request is overly broad.

Courts regularly limit the time periods subject to discovery involving *Monell* claims.[65]

Plaintiffs' requests for information covering a 10- to 15-year period are overly broad and will be temporally limited to the past 5-year period.  Further, these interrogatories are in large part duplicative of one another.

Discovery must be tethered to the issues raised by the pending case.  Interrogatory Nos. 8–10 purport to seek information well beyond that at issue.  Interrogatory No. 8 is ambiguous as to

---

[65] *See, e.g., Mayfield v. Brewer*, No. 2:13-73, 2014 WL 11515052, at *2 (S.D. Miss. Jan. 10, 2014) (reducing request for excessive force complaints over a 10-year period to 3-year period); *Adams v. City of New Orleans*, No. CV 15-1543, 2017 WL 713853, at *2 (E.D. La. Feb. 23, 2017) (limiting discovery to a 5-year period); *Williams v. Connick*, No. 12-1274, 2014 WL 1246771, at *5 (E.D. La. Mar. 25, 2014) (limiting discovery to a 10-year period, five years before the incident to five years after).

whether the request for information regarding claims and complaints is limited by the "relevant to the issues in this case" provision.  Even if so, Plaintiffs' "including but not limited to" listing includes topics with no relevance to the case.  Such broad subjects without any connection to the facts of this case are improper.  Interrogatory No. 8 must be limited to claims, complaints or investigations regarding efforts to subdue with use of force or restraints (such as hand-cuffs, leg restraints, body weight, choke holds, neck holds) persons resisting arrest, experiencing excited delirium, experiencing an episode due to a disability, emotionally disturbed persons, or persons suffering compression asphyxia or positional asphyxia.

Interrogatory No. 9 seeks the identity of, among others, any officer reprimanded, admonished or disciplined *for any reason*, or charged with *any* criminal offenses, indicted *for any reason* during the last ten years, without regard to any alleged excessive force, improper restraint, or interaction with a person with a disability.  Interrogatory No. 9 is totally untethered to situations involving allegations similar to this case and requests the same information as the first listed No. 8(g).  To the extent Interrogatory No. 9 is not duplicative of Interrogatory No. 8, it seeks information that is not relevant to any claim or defense and thus exceeds the scope of permissible discovery.  As such, it is improper.

Interrogatory No. 10 similarly exceeds the scope of permissible discovery to the extent that it is not tethered to the facts of this case and is also duplicative of Interrogatory No. 8(g), (g) and (h) when tied to the facts of this case.  Accordingly, Interrogatory No. 10 is improper.

### 2.  Settlements

Request for Production No. 15 reads:

> Produce a copy of all documents which reflect the settlement of any claim or case, whether confidential or not, by the Defendant Lopinto or the JPSO based on criminal conduct; arrests; use of force; use of restraints; use of body weight; use of chokehold; use of other neck holds such as LVNR; excited delirium; dealing with

disabled persons; dealing with persons with intellectual disabilities; dealing with persons of diminished capacity; dealing with persons who are mentally incompetent; dealing with delusional or emotionally disturbed persons; early warning procedures; internal affairs procedures; investigation of in-custody deaths; etc.

RESPONSE: Defendant objects to Request No. 15 on the grounds that said request is overly broad and unduly burdensome. Defendant further objects on the grounds that said request seeks information which is not relevant nor material to the incident sued upon.

While the subject matter, existence and fact of resolution of lawsuits may be relevant to Plaintiffs'

*Monell* claims, the actual terms of any settlement are not relevant to Plaintiffs' claims.

Accordingly, Defendants need not respond any further to this request.

### 3. EAP and Early Warning Information

Interrogatory No. 11 reads:

State with specificity any and all procedures or early warning systems, including EAP and EIS, utilized to effectively and adequately monitor and evaluate the performance of law enforcement personnel with regard to their law enforcement applications and state whether the Individual Defendants were ever flagged or monitored by early warning.

ANSWER: Objection, as this request is confidential, privileged, and not subject to discovery.

The existence of a procedure or early warning system to monitor and evaluate law enforcement

personnel is not itself privileged or protected from discovery for the 5-year period.  As to any

names of officers, Defendants must provide a proper privilege log identifying any responsive

document withheld.

### 4. Training Records

Request for Production No. 7 reads:

Produce a copy of any and all training records for all officers identified in response to Interrogatory No. 2, including, but not limited to, all records from any law enforcement training program, all records regarding in-service training, street survival training seminars, re-certifications, CIT, C.P.R certifications, etc. This

request includes the actual training material used in any training identified herein and not merely a listing a training courses.

RESPONSE: The training records of the defendant deputies are produced herewith.

As drafted, Request for Production No. 7 makes no sense.  Interrogatory No. 2 does not call for the identity of any officers, and thus, Request for Production No. 7 is incomprehensible.  To the extent Plaintiffs were actually seeking training records for all officers identified in response to Interrogatory No. 1 (i.e, those involved in the incident), Defendants' response indicates that it provided the officers' training records.  Defendants are ordered to provide copies of the training materials associated with the training indicated on the officers' named in Interrogatory No. 1 training records during the preceding 5 years.

### 5. Emails, Text Messages and Other ESI

Request for Production No. 25 reads:

All emails, text messages, or other correspondence regarding the incident.

ANSWER: Defendant objects to Request No. 25 on the grounds that said request is overly broad and unduly burdensome.

Request for Production No. 26 reads:

All emails, text messages, or other correspondence containing any of the following keywords: "parsa", "autism," "autistic," "mental episode," "special needs", "special-needs", "can't breathe", "eric garner", or "george floyd".

ANSWER: Defendant objects to Request No. 26 on the grounds that said request is overly broad and unduly burdensome.

Consistent with Fed. R. Civ. P. 26(b)(2), Defendants must search electronically stored information from sources that are reasonably accessible, as set forth herein, for information dated after January 18, 2020.  To the extent that Plaintiff seeks information from any JPSO officer, the request exceeds the scope of permissible discovery.  When limited to the named Defendants, the request is designed to discover information relevant to the claims.  Accordingly, Defendant shall search all emails,

text messages and other correspondence between any of the named officers, excluding any communications with counsel, regarding the incident in response to No. 25.  Similarly, Defendants must conduct a search of electronically stored information from reasonably accessible sources containing the terms "parsa", "autism," "autistic," "mental episode," "special needs", "special-needs" in response to No. 26 for the same time period.

## V.   **CONCLUSION**

For the foregoing reasons, Defendants must respond to Plaintiffs' discovery related to the *Monell* claim.  Those requests, however, are limited as set forth herein.  Accordingly,

IT IS ORDERED that Plaintiffs' Motion to Compel (ECF No. 21) is GRANTED IN PART AND DENIED IN PART as stated herein.

IT IS FURTHER ORDERED that Defendants provide supplemental responses, including a privilege log, and documents, as outlined above, in response to Interrogatory Nos. 8, 9, 10 and 11 and Request for Production Nos. 6, 7, 15, 25 and 26, within 21 days.

New Orleans, Louisiana, this 24th day of March, 2022.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE