UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| DONNA LOU, ET AL. | * | CIVIL ACTION |
|---|---|---|
| VERSUS | * | NO. 21-80 |
| SHERIFF JOSEPH P, LOPINTO, III, ET AL. | * | SECTION "D" (2) |

## ORDER AND REASONS

Before me is Plaintiffs' Motion to Compel Defendant Lopinto, in his individual capacity, to respond to discovery. ECF No. 36. Defendant Lopinto filed an Opposition Memorandum. ECF No. 64. Plaintiffs sought leave and filed a Reply Memorandum. ECF No. 73. No party requested oral argument in accordance with Local Rule 78.1, and the Court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Plaintiffs' Motion to Compel is GRANTED IN PART AND DENIED IN PART for the reasons stated herein.

## I. BACKGROUND

Donna Lou and Daren Parsa are the parents of E.P., an autistic 16-year old, who sued Jefferson Parish Sheriff Joseph Lopinto III, several JPSO officers (Deputies Pitfield, Vaught, Mehrtens, Guidry, Vega, Estrada, and Gaudet), their insurer, Victory Real Estate Investments LA, LLC and Westgate Investors NO, LLC and their insurers after their son died while being subdued by police officers during a severe, acute sensory episode on January 19, 2020. ECF No. 1, ¶¶ 2, 17–28. After playing a game of laser tag at Westgate shopping center, Plaintiffs and their son went to the parking lot where their son experienced a melt-down caused by, and related to, his autism during which he slapped, grabbed and bit his father. *Id.* at ¶¶ 29–40. When the manager observed

the interaction, he asked if Plaintiffs wanted him to call the police, and they responded affirmatively. *Id.* at ¶ 41. Plaintiffs contend that, despite knowledge that the call was to assist with a severely autistic child, after being slapped, Officer Pitfield improperly took the child to the ground, and applied physical force and restraint, which resulted in the child's death. *Id.* ¶¶ 3–9, 48, 68–69. After taking E.D. down, E.D. bit Officer Pitfield who realized he needed another pair of handcuffs during which E.D.'s father held E.D. down, after which Officer Pitfield sat on E.D. for approximately 7 minutes. *Id.* ¶¶ 70–76. Plaintiffs contend that, once E.D. had de-escalated, Defendants should have placed him in a recovery position by turning him on his side or sitting him up rather than continue to maintain force on him and they should have ensured that he could breathe. *Id.* ¶¶ 103–104, 117–18, 151–56, 164–181. They also contend that Officer Vega, who relieved Officer Pitfield, improperly used a pain compliance technique, neck hold, and choke hold, all of which were unnecessary. *Id.* ¶¶ 192–214. When another officer was relieving Officer Vega, the child was discovered to have gone limp, urinated on himself, and was dying. *Id.* ¶¶ 217–20.

Plaintiffs premise their claims on 42 U.S.C. § 1983; Title II of the Americans With Disabilities Act, 42 U.S.C. §§ 12131, 12132; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the First, Fourth, Ninth and Fourteenth Amendments. ECF No. 1, at ¶ 12. Plaintiffs contend that the JPSO officers used excessive and unreasonable force, failed to intervene, and unlawfully seized Plaintiffs by preventing them from going to the hospital to be with their son, in violation of the Constitution and § 1983 (*id.* ¶¶ 386, 390), Sheriff Lopinto failed to (a) determine whether his deputies were qualified, (b) provide proper policies or guidance for dealing with persons with disabilities, (c) provide proper training on dealing with persons with disabilities, (d) properly monitor and supervise his deputies, (e) to investigate and discipline deputies for violations of JPSO policies, practices and customs (*id.* ¶ 409), and they violated the ADA and

2

Rehabilitation Act by failing to provide reasonable accommodation and failing to adopt appropriate policies (*id.* ¶¶ 452–53). Plaintiffs also contend that Defendants are liable under Louisiana tort law. *Id.* ¶¶ 458–59.

## II. PARTIES' POSITIONS ON MOTION TO COMPEL

Plaintiffs issued interrogatories and requests for production to Sheriff Lopinto in his individual capacity, and he responded. ECF No. 36-4. After Plaintiffs identified deficiencies in the responses, Sheriff Lopinto agreed to supplement the response to Interrogatory No. 11. ECF No. 36-1, at 2. Plaintiffs now seek to compel full responses to Interrogatory Nos. 6, 12, 17 and 18 and Requests for Production Nos. 11, 14, 18, 20 and 21. *Id.* at 3–5. The requests relate to Sheriff Lopinto's (1) employment information; (2) tax returns and financial documents; (3) social media and ESI; (4) past litigation; and (5) reasonable accommodation measures taken with regard to E.P. *Id.* Plaintiffs assert that Sheriff Lopinto's prior employment positions are relevant to his knowledge and understanding of the law, civil rights law, and deliberate indifference to same and that his prior disciplinary history is relevant to past complaints, grievances or incidents. *Id.* at 10–11. Plaintiffs assert that Sheriff Lopinto's tax returns and financial documents are relevant because they seek punitive damages against him in his individual capacity, and he has agreed to indemnify the officers. *Id.* at 8–9. Likewise, Plaintiffs argue electronic and social media discovery is common and relevant. *Id.* at 11–15.

Sheriff Lopinto now objects to discovery based on his invocation of qualified immunity and his pending motion for partial dismissal or alternative summary judgment on all individual capacity claims based on the absence of any facts suggesting that Sheriff Lopinto was personally involved in the underlying events. ECF No. 64, at 4–8; ECF No. 49-1, at 6–8. The Sheriff further argues that he too has been fully indemnified in this case and thus his personal information is not

relevant and that he already produced his disciplinary and personnel files. *Id.* at 8–9. He further argues that, in response to this Court's prior Order, Defendants produced electronic discovery in response to Request Nos. 20 and 21 (emails and text messages), mooting that issue. *Id.* at 9. Likewise, this Court previously denied Plaintiffs' request for information regarding any and all lawsuit or legal actions as overly broad and seeking information not relevant to any claim or defense in this case as the request is not tethered to the facts of the case. *Id.* at 10–12. Sheriff Lopinto argues that unfettered access to social media is improper and that he adequately addressed Plaintiffs' inquiry regarding accommodations. *Id.* at 12–13.

In Reply, Plaintiffs argue that Sheriff Lopinto's pending motion does not raise the issue of qualified immunity and he failed to object to discovery on that basis. ECF No. 73, at 1–4. Contrary to Sheriff Lopinto's assertion that he too has been fully indemnified in this case, Plaintiffs contend that Sheriff Lopinto has personally indemnified the other officers. *Id.* at 8–9. Plaintiffs' Reply largely repeats the same arguments previously raised regarding the other requests. *Id.* at 6-9.

### III.   LAW AND ANALYSIS

#### A.  The Scope of Discovery

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). This broad duty of disclosure extends to all documents that fit the definition of relevance for the purposes of discovery—whether the documents are good, bad, or indifferent.[1] The disclosure duty

---
[1] *Yelton v. PHI, Inc.*, 279 F.R.D. 377, 384 (E.D. La. 2011), *objections overruled*, 284 F.R.D. 374 (E.D. La. 2012) (citation omitted).

4

is a central concept of the discovery process and finds expression not only in the rules of discovery, but also in the Rules of Professional Conduct, which prohibit an attorney from suppressing any evidence subject to a legal obligation to reveal or produce.[2]

Information need not be admissible into evidence to be discoverable. Fed. R. Civ. P. 26(b)(1). Rather, the information merely needs to be proportional and relevant to any claim or defense. *Id.* The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissibility of evidence at the trial stage.[3] This broader scope is necessary given the nature of litigation, where determinations of relevance for discovery purposes are made well in advance of trial.[4] At the discovery stage, relevance includes "[a]ny matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."[5] Discovery should be allowed unless the party opposing discovery establishes that the information sought "can have no possible bearing on the claim or defense of the party seeking discovery."[6] If relevance is in doubt, the court should be permissive in allowing discovery.[7] Facts that are not considered in determining the ultimate issues may be eliminated in due course of the proceeding.[8]

A party seeking discovery must comply with Rule 26(b)(1)'s proportionality limits on discovery requests and is subject to Rule 26(g)(1)(B)'s requirement to certify that the discovery request is "(i) consistent with these rules . . . ; (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior

---

[2] *Id.*
[3] *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 590 (S.D. Tex. 2011) (citations omitted).
[4] *Id.* at 590 n.5 (citation omitted).
[5] *Id*. at 590 (citations omitted).
[6] *Dotson v. Edmonson*, No. 16-15371, 2017 WL 11535244, at *2 (E.D. La. Nov. 21, 2017) (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005)).
[7] *E.E.O.C. v. Simply Storage Mgmt., L.L.C.*, 270 F.R.D. 430, 433 (S.D. Ind. 2010) (quoting *Truswal Sys. Corp. v. Hydro–Air Eng'g, Inc.*, 813 F.2d 1207, 1212 (Fed. Cir. 1987)).
[8] *Rangel*, 274 F.R.D. at 590 n.5.

discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Fed. R. Civ. P. 26(g)(1)(B). If discovery requests fall outside the Rule 26(b)(1) scope of discovery, the serving party may face Rule 26(g)(3) sanctions if it made the certification without substantial justification.[9] "Substantially justified" means justified to a degree that could satisfy a reasonable person[10] and requires a reasonable basis in both law and fact, such that there is a genuine dispute or reasonable people could differ as to the appropriateness of the contested action.[11]

The party claiming it would suffer an undue burden or expense is typically in the best position to explain why, while the party claiming the information is important to resolve the issues in the case should be able "to explain the ways in which the underlying information bears on the issues as that party understands them." Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment. Thus, it bears the burden of making a specific objection and showing that the discovery fails Rule 26(b)'s proportionality calculation by coming forward with specific information to address the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[12] "The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery." Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment.

---

[9] *Samsung Elecs. Am. Inc. v. Yang Kun Chung*, 325 F.R.D. 578, 594 (N.D. Tex. 2017) (citing Fed. R. Civ. P. 26(g)(1)(B), 26(g)(3); *Heller v. City of Dallas*, 303 F.R.D. 466, 475–77 (N.D. Tex. 2014) ("Rule 26(g) is thus designed to curb discovery abuse by explicitly encouraging the imposition of sanctions.")).
[10] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).
[11] *Id.*; accord *De Angelis v. City of El Paso*, 265 F. App'x 390, 398 (5th Cir. 2008); *Black Ass'n of New Orleans Fire Fighters (Banoff) v. City of New Orleans*, No. 86-1512, 1990 WL 163565, at *3 (E.D. La. Oct. 23, 1990).
[12] *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016).

While the discovery rules are accorded broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials,[13] discovery does have "'ultimate and necessary boundaries.'"[14] The parties and the court have a collective responsibility to ensure that discovery is proportional, and Rule 26(b)(2)(C) *mandates* that the Court limit the frequency or extent of discovery otherwise allowed, if it determines: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)."[15] Likewise, the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.[16]

Rule 26(b) "has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition."[17] While relevancy in the discovery context is broader than in the trial context, that legal tenet should not be misapplied to allow fishing expeditions in discovery.[18]

### B. Duties in Responding to Discovery

#### 1. Full and Complete Responses

"Discovery by interrogatory requires candor in responding. . . . The candor required is a candid statement of the information sought or of the fact that objection is made to furnishing the information. A partial answer by a party reserving an undisclosed objection to answering fully is

---

[13] *Herbert v. Lando*, 441 U.S. 153, 176 (1979) (citations omitted).
[14] *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).
[15] Fed. R. Civ. P. 26(b)(2)(C)(i)–(iii).
[16] Fed. R. Civ. P. 26(c)(1). In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (quoting United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); Holdridge v. Estee Lauder Companies, Inc., No. CV 19-37-SDD-RLB, 2019 WL 6717022, at *1 (M.D. La. Dec. 10, 2019)
[17] *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (citation omitted).
[18] *Trident Mgmt. Grp., LLC v. GLF Constr. Corp.*, No. 16-17277, 2017 WL 3011144, at *4 (E.D. La. July 14, 2017) (citations omitted); *see also Crosby*, 647 F.3d at 264; *Ganpat v. E. Pac. Shipping, PTE, Ltd*., No. 18-13556, 2020 WL 1046336, at *3 (E.D. La. Mar. 4, 2020).

not candid. It is evasive."[19] The fact that an interrogatory calls for a thorough response—one that will take time and effort to answer—does not make it improper.[20] A party is not required to make an extensive investigation in responding to an interrogatory, but must review all sources of responsive information reasonably available and provide the responsive, relevant facts reasonably available.[21] Where an interrogatory answer as a whole discloses "a conscientious endeavor" to understand the question and to fully answer it, a party's obligation under Rule 33 is satisfied.[22]

### 2. Objections Must be Stated with Specificity

A party served with written discovery must fully answer each request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and explain whether any responsive information or documents have been withheld.[23] The Federal Rules of Civil Procedure take a "demanding attitude toward objections,"[24] and courts have long interpreted the rules to prohibit general, boilerplate objections.[25] Boilerplate objections use standardized, ready-made or all-purpose language without regard to the particular discovery request.[26] General

---

[19] *Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613, 616–17 (5th Cir. 1977).
[20] *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 437 (N.D. Tex. 2016) (citing *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 307–08 (5th Cir. 1973)).
[21] *Id*. (citing 8B WRIGHT, MILLER & MARCUS, FED. PRAC. & PROC. § 2174 (3d ed. 2013)).
[22] *Id.* (citing *Meltzer/Austin Rest. Corp. v. Benihana Nat'l. Corp.*, No. 11-542, 2013 WL 2607589, at *3 (W.D. Tex. June 10, 2013) (quoting 8B WRIGHT, MILLER & MARCUS, FEDERAL PRACTICE & PROCEDURE § 2177 (3d ed. 2010))).
[23] *Lopez v. Don Herring Ltd*., 327 F.R.D. 567, 580 (N.D. Tex. 2018) (citation omitted).
[24] 8B CHARLES WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2173 (3d ed. 2021).
[25] *See, e.g.*, *Chevron Midstream Pipelines LLC v. Settoon Towing LLC*, Nos. 13-2809, 13-3197, 2015 WL 269051, at *3 (E.D. La. Jan. 21, 2015) (noting that an objection is boilerplate and insufficient "when it merely states the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request.") (citation omitted); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485–86 (5th Cir. 1990) (simply objecting to requests as "overly broad, burdensome, oppressive and irrelevant," without showing "specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive" is inadequate to "voice a successful objection.").
[26] *See Tim Long Plumbing, Inc. v. Kinsale Ins. Co*., No. 2042, 2020 WL 6559869, at *3 (E.D. Tex. Nov. 9, 2020) (providing examples for boilerplate language, such as "Defendant objects to this Request, as it is overly broad and vague" and "Defendant objects to this Request to the extent it seeks discovery of information that is irrelevant and not

objections refer to objections that a party responding to discovery asserts as applicable to multiple individual requests set forth in a given set of discovery requests.[27] A general objection untethered to specific requests (and is thus also a boilerplate objection) is improper.[28] In some instances, however, general objections may serve as an efficient response whereby the court may consider and rule upon general objections raised against sets of interrogatories or requests for production.[29] To serve this purpose and to comply with the Federal Rules of Civil Procedure, however, the general objections must raise specific objections and correspond to specific discovery requests.[30]

Where a general objection is connected both to the facts of the case and specific discovery requests, they are proper; when they are disconnected from either the facts or the discovery requests, they are not proper.[31] Thus, the party objecting must state how the objection "relates to the particular request being opposed, and not merely that it is 'overly broad and burdensome' or 'oppressive' or 'vexatious' or 'not reasonably calculated to lead to the discovery of admissible evidence.'"[32] The objection must clearly state how the information sought is not relevant to any

---

proportional to the needs of the case."). Objections are deemed "boilerplate" when they are identical and not tailored to the specific discovery request. *Amazing Ins., Inc. v. DiManno*, No. 19-1349, 2020 WL 5440050, at *5 (E.D. Cal. Sept. 10, 2020) (citation omitted).
[27] *Grider v. Keystone Health Plan Cent., Inc*., 580 F.3d 119, 134 n.16 (3d Cir. 2009).
[28] *See DL v. Dist. of Columbia*, 251 F.R.D. 38, 43 (D.D.C. 2008) (citation omitted) ("When faced with general objections, the applicability of which to specific document requests is not explained further, this Court will not raise objections for the responding party, but instead will overrule the responding party's objections on those grounds." (internal quotations omitted)).
[29] *Pulsecard, Inc. v. Discover Card Servs., Inc*., 168 F.R.D. 295, 304 (D. Kan. 1996) (citations omitted).
[30] *Dickey v. Apache Indus. Servs., Inc*., No. 18-572, 2019 WL 4261117, at *3 (M.D. La. Sept. 9, 2019) (collecting cases); *see Hall v. Louisiana*, No. 12-657, 2014 WL 2560579, at *1 (M.D. La. June 6, 2014) ("Defendants initially gave general objections applicable to all of Plaintiff's discovery requests. But critically, after providing their general objections, Defendants addressed each and every discovery request individually, making specific objections before providing detailed and informative responses, notwithstanding those objections.").
[31] Likewise, the practice of responding to discovery requests "subject to" and/or "without waiving" objections is manifestly confusing (at best) and misleading (at worse), and has no basis at all in the Federal Rules of Civil Procedure. *Heller v. City of Dallas*, 303 F.R.D. 466, 486–87 (N.D. Tex. 2014) (citation omitted). Such an objection paired with a response "preserves nothing and serves only to waste the time and resources of both the Parties and the Court." *Id.* at 487. To the extent any response or production is done "subject to" or "without waiving" objections other than privilege or work product, such objections are waived. *Id.* Copying and pasting an objection by itself does not render an objection a boilerplate objection. *Tim Long Plumbing*, 2020 WL 6559869, at *4.
[32] *Cheshire v. Air Methods Corp*, No. 15-933, 2015 WL 7736649, at *2 (W.D. La. Nov. 30, 2015) (quotations omitted).

9

claim or defense, or how the request is overbroad, burdensome or oppressive.[33] When a party objects to a request for production, the "objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."[34] Objections interposed without also indicating whether any document or information is being withheld are improper.[35]

### C. Waiver

The failure to provide timely written answers to interrogatories and requests for production[36] may, and generally does, result in a waiver of objections.[37] To avoid a finding of waiver, the party must establish good cause.[38] That said, the court retains discretion to decline to compel production when the request "far exceeds the bounds of fair discovery, even if a timely objection has not been made."[39]

---

[33] *Chevron Midstream Pipelines v. Settoon Towing, LLC*, Nos. 13-2809, 13-3197, 2015 WL 269051 at *3 (E.D. La. Jan. 20, 2015) (noting objections are boilerplate and insufficient if they merely state "the legal grounds for the objection without: (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond.") (citation omitted).

[34] Fed. R. Civ. P. 34(b)(2)(C); *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 507 (N.D. Tex. 2016), *objections overruled sub nom. Orchestratehr, Inc. v. Trombetta*, No. 3:13-2110, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016).

[35] *See Chevron*, 2015 WL 269051 at *4 (holding that objections fall woefully short of objecting party's burden when party objected to documents and information protected by privilege but did not describe whether any documents were withheld or the nature of withheld documents).

[36] Fed. R. Civ. P. 33(b)(4); 34(b)((2).

[37] *See In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989) ("[A]s a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived."); *see also* 8 WRIGHT, A. MILLER, AND R. MARCUS, FEDERAL PRACTICE & PROCEDURE § 2016.1 n.1 (3d ed. 2021); *B&S Equip. Co. v. Truckla Servs., Inc.*, Nos. 09-3862, 10-0832, 10-1168, 10-4592, 2011 WL 2637289, at *5 (E.D. La. July 6, 2011).

[38] *See, e.g.*, *Solorzano v. Shell Chem Co.*, No. 00-31191, 2001 WL 564154 (5th Cir. May 18, 2001) (upholding lower court's order allowing party to respond to interrogatories with objections after failure to respond or raise any objections within the 30-day period); *see also Nugent v. Scott Fetzer Co.*, No. 19-14759, 2020 WL 1322268, at *5 (E.D. La. Mar. 20, 2020) (citation omitted) ("[T[he failure to act timely will not bar consideration of objections in unusual circumstances and for good cause shown."); *Seals v. Shell Oil Co.*, No. 12-1983, 2013 WL 12439172, at *3 (E.D. La. June 21, 2013) (citation omitted) (failure to respond to discovery requests operates as a "waiver of its objections, unless the court excuses that failure for good cause.").

[39] *Meche v. Maint. Dredging, Inc.*, No. 10-3653, 2012 WL 519882, at *2 (E.D. La. Feb. 16, 2012) (citing *Fifty-Six Hope Road Music, Ltd. v. Mayah Collections, Inc.*, No. 2:05-01059, 2007 WL 1726558, at *4 (D. Nev. June 11, 2007); *Lucero v. Martinez*, No. 03-1128, 2006 WL 1304945, at *2 (D.N.M. Mar. 11, 2006); *Kolenc v. Bellizzi*, No. 95-4494, 1999 WL 92604, at *3 (S.D.N.Y. Feb. 22, 1999); *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988)); *Young v. United States*, 149 F.R.D. 199, 206 (S.D. Cal. 1993); *Schooler v. Wal-Mart Stores, Inc.*, No. 14-2799, 2015 WL 4879434, at *1 (E.D. La. Aug. 14, 2015) (Wilkinson, M.J.).

**D. Motion to Compel**

In addressing a motion to compel, the moving party bears the burden to establish that the materials requested are within the scope of permissible discovery, after which the burden shifts to the party resisting discovery to show why the discovery is irrelevant, why discovery should not be permitted, and/or to substantiate its objections.[40] If a party resists discovery on the grounds of proportionality, it bears the burden of making a specific objection and showing that the discovery fails Rule 26(b)'s proportionality calculation by coming forward with specific information to address the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.[41]

**IV. SPECIFIC DISCOVERY REQUESTS AND ANALYSIS**

**A. Stay of Discovery based on Qualified Immunity Defense**

A government official sued in his individual capacity is entitled to qualified immunity unless a plaintiff establishes "that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation."[42] One of the most salient benefits of qualified immunity is protection from

---

[40] *Wymore v. Nail*, No. 14-3493, 2016 WL 1452437, at *1 (W.D. La. Apr. 13, 2016) ("Once a party moving to compel discovery establishes that the materials and information it seeks are relevant or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections.") (citation omitted); *Tingle v. Hebert*, No. 15-626, 2016 WL 7230499, at *2 (M.D. La. Dec. 14, 2016) ("'[T]he moving party bears the burden of showing that the materials and information sought are relevant to the action . . . .'") (citation omitted); *Davis v. Young*, No. 11-2309, 2012 WL 530917, at *3 (E.D. La. Feb. 16, 2012) (same) (citing *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)); *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990).
[41] *Mir v. L–3 Commc'ns Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016).
[42] *Hutcheson v. Dallas Cnty.*, 994 F.3d 477, 480 (5th Cir. 2021) (citing *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) (internal quotations omitted)).

costly, time-consuming and intrusive pretrial discovery.[43] Courts will deny even limited discovery in the face of a qualified immunity defense absent a determination that deferring the qualified immunity ruling and allowing further factual development is necessary to ascertain the availability of that defense.[44] The two-step procedure requires the court to determine whether the pleadings assert facts which, if true, would overcome the defense of qualified immunity,[45] and, if so, enter a narrowly tailored discovery order to address only those facts needed to rule on the immunity claim.[46]

In this case, Sheriff Lopinto raised the defense of qualified immunity in the Answer ( ECF No. 9, at 2 (Eighth Defense), ¶ XIV, ¶ XVI). He did not, however, seek to dismiss any claims based on qualified immunity. Rather, he seeks to dismiss the claims asserted against him in his individual capacity for lack of personal involvement in the underlying events. ECF No. 49. While there is no vicarious liability for the wrongful acts of subordinates such that Plaintiffs would need to establish personal involvement in the wrongdoing to hold Sheriff Lopinto personally liable for that conduct, Sheriff Lopinto has not yet sought dismissal of the individual capacity claims asserted against him based on *Monell*. In *Williams v. Biggs*, No. 21-333, 2022 WL 834781 (E.D. La. March 21, 2022), Judge Roby recently recognized that a defendant is not entitled to limit discovery based on qualified immunity when the defendant has not yet raised that issue by motion:

> In order to seek a stay based on the qualified immunity defense, Defendants must first raise the issue in a dispositive motion. *See, e.g., Rowe v. Romero*, 225 F.R.D. 640, 644 (D. Colo. 2004) (Holding that it may be appropriate to stay discovery only after the issue of qualified immunity is presented to the Court for adjudication). The government official who does not raise qualified immunity in a motion to dismiss "cannot be said to be unduly burdened if he foregoes an

---

[43] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citing *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir. 1986)).
[44] *Hutcheson*, 994 F.3d at 481 (citing *Backe*, 691 F.3d at648).
[45] This is not satisfied by a broad request for information that might impeach the defendants' version of events. *Id.* (citing *Backe*, 691 F.3d at 648).
[46] *Id.* (citations omitted).

12

opportunity to address the issue prior to the commencement of discovery, and instead waits to assert it until some point later in the litigation." *Id.*

. . . . [T]he case law in this area weighs against the position of the defendants. As the defendants have only raised the issue of qualified immunity as an affirmative defense and has not yet officially present [sic] the issue to the court for consideration, an order limiting discovery would not be appropriate. While there are no cases in this district on the issue, the available authorities suggest that the more prudent approach is to deny such a request where the issue has not been raised in either a motion to dismiss or motion for summary judgment. *See also Scherbarth v. Woods*, Civil Action No. 16–CV–2391–KHR, 2018 WL 851344, (S.D. Col. 2018) (where the court held that if there is no pending motion to resolve whether qualified immunity applies, the Plaintiff's interest in proceeding expeditiously and the convenience of the court outweigh the burden to Defendants); *Migliacio v. City of Plaquemine*, Civil Action No. 18-621-SDD-RLB, 2019 WL 267915 (M.D. La. Jan. 18, 2019) (where Judge Bourgeois in the Middle District Court denied Defendant's request to limit discovery solely based on the assertion of qualified immunity as an affirmative defense).

Until Sheriff Lopinto raises the issue of qualified immunity by dispositive motion, he cannot rely on that defense to stay discovery.

### B. Employment Information

Interrogatory No. 6 reads:

> Please list your employment history through your present employer and the date of employment, area where assigned, rate of pay, each and every disciplinary charge leveled against you by your employer, each and every disciplinary charge sustained against you by your employer, each and every disciplinary actions taken by your employer and all bonds (including the issuing company and amount of bond) under which you have served as an officer of the JPSO.
>
> ANSWER: Defendant has been the Sheriff of Jefferson Parish since September 1, 2017.

Sheriff Lopinto's answer to Interrogatory No. 6 is incomplete and does not provide responsive information to all subparts of the question. Although Sheriff Lopinto did not lodge an objection to the improper portions of the interrogatory, a partial answer reserving an undisclosed objection is not candid and does not provide a full and complete response. That said, the

13

interrogatory is improper insofar as it seeks information that is not relevant or proportional to this case.

Discovery must be tethered to the issues raised by the pending case. The information sought in this request purports to seek information beyond the issues, claims or defenses raised in this case. For instance, the request fails to contain any date restriction. Likewise, information regarding Sheriff Lopinto's area assignment and pay rate for every employment position he has ever held cannot possibly uncover evidence relevant to any claim or defense nor is such information proportional to the needs of the case.

Sheriff Lopinto must, however, supplement his response to Interrogatory No. 6 to include his law enforcement work history (i.e., employer, dates, and job titles). He must also include any law enforcement employer's disciplinary action taken against him individually involving facts similar to those at issue in this case (i.e., use of force or restraints (such as hand-cuffs, leg restraints, body weight, choke holds, neck holds) involving persons resisting arrest, experiencing excited delirium, experiencing an episode due to a disability, emotionally disturbed persons, or persons suffering compression asphyxia or positional asphyxia). Other than the information specified herein, the request is improper and need not be answered any further.

C. **Tax Returns and Financial Information**

Request for Production No. 11 reads:

Produce a copy of your tax returns for the last five years.

ANSWER: Defendant objects to Request No. 7 [sic] as written, in that said request seeks information which is irrelevant and immaterial to the proceedings in question herein, and is not calculated to lead to relevant, discoverable, admissible evidence. Further, Punitive damages have not been alleged against the Sheriff in his individual capacity. Moreover, punitive damages do not lie against the Sheriff in his official capacity.

Request for Production No. 18 reads:

> All documents reflecting your net worth, in any of the years 2018 to the present.
>
> ANSWER: Defendant objects to this request as written, in that said request seeks information which is irrelevant and immaterial to the proceedings in question herein.

When punitive damages are sought, tax returns are relevant to that claim.[47] Some courts require a minimal showing (less than *prima facie*) of entitlement to punitive damages before allowing pretrial discovery of sensitive financial information.[48] Courts that do not require a preliminary showing, however, do require that the requesting party satisfy a two-prong test before obtaining highly sensitive documents such as tax returns: the movant must demonstrate that (1) the tax information is "relevant" to the subject matter of the action; and (2) there is a "compelling need" for the information because the information contained in the tax returns is not "otherwise readily obtainable through alternative forms of discovery, such as depositions or sworn interrogatory answers.[49] Once the party seeking production of the tax returns shows the relevance of the tax returns, the burden shifts to the party opposing production to show other sources exist from which the information contained in the returns may be readily obtained.[50]

Initially, it is unclear whether Sheriff Lopinto *individually* has indemnified anyone or whether he is an indemnified party for all damages, including punitive damages. His financial

---

[47] *See, e.g.*, *Tingle v. Hebert*, No. 15-626, 2017 WL 2335646, at *4 (M.D. La. May 26, 2017).
[48] *Jackson v. Wilson Welding Serv., Inc.*, No. 10-2843, 2011 WL 5024360, at *3 (citing *D'Onofrio v. Sfx Sports Grp., Inc.*, 247 F.R.D. 43, 45 (D.D.C. 2008)); *see also Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 151 (D. Kan. 1990) (citing cases) ("When a punitive damages claim has been asserted by the plaintiff, a majority of federal courts permit pretrial discovery of financial information of the defendant without requiring plaintiff to establish a prima facie case on the issue of punitive damages.").
[49] *Williams v. U.S. Envtl. Servs., LLC*, No. 15-168, 2016 WL 684607, at *2 (M.D. La. Feb. 12, 2016) (citing *Butler v. Exxon Mobile Refin. & Supply Co.*, No. 08-386, 2008 WL 4059867, at *2 (M.D. La. Aug. 28, 2008) (citing *Nat'l Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993))).
[50] *Rafeedie v. L.L.C., Inc.*, No. A-10-CA-743, 2011 WL 5352826, at *2 (W.D. Tex. Nov. 7, 2011) (citation omitted); *Gondola v. USMD PPM, LLC*, 223 F. Supp. 3d 575, 587 (N.D. Tex. May 27, 2016); *see also F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995) (applying a similar two-part test to determine whether tax returns are available during post-judgment discovery under Rule 69(a)).

condition becomes unnecessary to the extent that Sheriff Lopinto has been indemnified for any damage award in his individual capacity. Even if Sheriff Lopinto's net worth and financial position were relevant due to the punitive damages issue, it would appear that information regarding his financial condition could be readily obtainable through alternative forms of discovery, such as verified interrogatory responses. Thus, there is no "compelling need" for production of Sheriff Lopinto's tax returns and other sensitive financial information when that information is available through alternative, less burdensome sources. Additionally, Request for Production No. 18 is overly broad as written, and Plaintiffs should be specific in the financial documents they are requesting or request financial information through interrogatories. In the event that Sheriff Lopinto has not been personally indemnified and his financial information is not provided through other readily available and less intrusive means, production of tax returns and other financial information may be ordered in the future.

### D. Social Media and ESI

Interrogatory No. 17 reads:

> Are you a member of any social networking sites (for example including but not limited to Facebook, Instagram, Snapchat, Twitter etc.)? If your answer is in the affirmative, please provide information as to what sites you are a member of, your username, your password and the internet path where that site can be found.
>
> ANSWER: Objection, as this request is irrelevant and immaterial, and is not likely to lead to discoverable information.

Request for Production No. 14 reads:

> Provide complete digital/electronic copies of all information contained on your social networking accounts, including, but not limited to, a complete copy of all information maintained in your Facebook, Twitter, Instagram, Twitter, etc. account or other social networking sites. This request includes, but is not limited to, all profile information, photographs/images and comments on photographs/images, comments on a post and/or status posts, comments on a "life event" on the wall and/or timeline and email/chat communications

maintained through Facebook and other social networking sites. For Facebook, you may download and print your Facebook data by logging onto your Facebook account, selecting "Account Settings" under the "Account" tab on your homepage, clicking on the "Download Your Information" tab, and following the directions on the "Download Your Information" page.

ANSWER: Defendant objects to this request, as this request is overly broad and unduly burdensome.

Request for Production No. 20 reads:

All emails, text messages, or other correspondence regarding the incident.

ANSWER: Defendant objects to this request, as this request is overly broad and unduly burdensome.

Request for Production No. 21 reads:

All emails, text messages, or other correspondence between you and any other person containing any of the following keywords: "parsa", "autism," "autistic," "mental episode," "special needs", "special-needs", "can't breathe", "eric garner", "george floyd"

ANSWER: Defendant objects to Request No. 21 on the grounds that said request is overly broad and unduly burdensome. Further, the information sought is irrelevant, immaterial and unlikely to lead to discoverable information.

Plaintiffs recognize that their Motion is moot with respect to Requests for Production Nos. 20 and 21. ECF No. 73, at 6.

While social media content is not considered privileged or protected by a right to privacy, courts do not endorse extremely broad requests for all social media content.[51] Further, courts generally deny requests for computer passwords and user names as same poses privacy and confidentiality concerns that go far beyond allowing production of published social media

---

[51] *Moore v. Wayne Smith Trucking Inc.*, No. 14-1919, 2015 WL 6438913, at *2 (E.D. La. Oct. 22, 2015) (Roby, M.J.) (citation omitted) ("A party is no more entitled to such 'unfettered access' to an opponent's social networking communications than it is to 'rummage through the desk drawers and closets in his opponent's home.'").

matters.[52] When, however, social media discovery is limited in time and seeks information related directly to the claims or defenses in the case, discovery will be allowed.[53]

Plaintiffs' social media requests are overly broad and includes requests for information (e.g., passwords) that are wholly improper. When limited to social media sites and usernames used by Sheriff Lopinto after the date of this incident and reflect postings related to the incident in this case or facts similar to those at issue in this case (i.e., use of force or restraints (such as handcuffs, leg restraints, body weight, choke holds, neck holds) involving persons resisting arrest, experiencing excited delirium, experiencing an episode due to a disability, emotionally disturbed persons, or persons suffering compression asphyxia or positional asphyxia), the request is proper. Accordingly, Sheriff Lopinto must provide a list of his social media sites and usernames for any sites on which he has posted information after January 19, 2020 that reflect any discussions or comments on issues relevant to this case as described above.

### E. Past Litigation (Int. 12)

Interrogatory No. 12 reads:

> Please state whether you have ever been involved as a Plaintiff or Defendant in any type of lawsuit or legal action and/or whether your employer has been sued as a result of your actions. If the answer is in the affirmative, please state the following:
>
>     a. The style of the case;
>     b. The docket number of the Complaint;
>     c. The nature of the case; and
>     d. The disposition of the case

---

[52] *See, e.g.*, *NOLA Spice Designs, LLC v. Haydel Enters., Inc.*, No. 12-2515, 2013 WL 3974535 (E.D. La. Aug. 2, 2013) (Wilkinson, M.J.) (denying request for passwords and user names); *Farley v. Callais & Sons, Inc.*, No. 14-2550, 2015 Wl 4730729 (E. D. la. Aug. 10, 2015) (North, M.J.) (denying request for log-in or passwords); *Marsteller*, 2017 WL 5769903, at *4 (requiring social media passwords constitutes a "wholesale invasion of ...privacy[ ]"); *see also Giacchetto v. Patchogue-Medford Union Free Sch. Dist.*, 293 F.R.D. 112, 115-16 (E.D.N.Y. 2013) (Tomlinson, MJ) (denying "unfettered access to [p]laintiff's social networking history).
[53] *See, e.g.*, *Scott v. United States Postal Serv.*, No. 15-712, 2016 WL 7440468, *5 (M.D. La. Dec. 27, 2016) (Wilder-Doomes, M.J.).

> ANSWER: As Sheriff of the Parish of Jefferson, Defendant Lopinto has been named as a Defendant in a number of lawsuits. The J.P.S.O. does not maintain a record of all lawsuits filed against them. Counsel would direct Plaintiffs' counsel to the 24th Judicial Court Clerk's Office or to the PACER system for the Eastern District of Louisiana.

Plaintiffs' requests seeking information about lawsuits of any nature at any time are overly broad as such suits may have no connection to the underlying facts. Sheriff Lopinto must identify any suits filed within the last five years that name him as a defendant and involve use of force or restraints (such as hand-cuffs, leg restraints, body weight, choke holds, neck holds) on persons resisting arrest, experiencing excited delirium, experiencing an episode due to a disability, emotionally disturbed persons, or persons suffering compression asphyxia or positional asphyxia, as previously ordered. *See* ECF No. 47, at 20.

### F. Reasonable Accommodation Measures (Int. 18).

Interrogatory No. 18 reads:

> Identify all accommodations, if any, you contend you provided to accommodate his disability.
>
> ANSWER: The factual backdrop for the incident sued upon did not implicate a need for an accommodation.

Sheriff Lopinto's answer is ambiguous and not directly responsive to the question. The response implies that, since the facts did not implicate a need for an accommodation, none was provided. Sheriff Lopinto is therefore directed to supplement this response to make clear that he does not contend that he provided any accommodation in this matter.

### V. CONCLUSION

For the foregoing reasons, Defendant must respond to Plaintiffs' discovery related to the *Monell* claim. Those requests, however, are limited as set forth herein. Accordingly,

19

**IT IS ORDERED** that Plaintiffs' Motion to Compel (ECF No. 36) is **GRANTED IN PART AND DENIED IN PART** as stated herein.

**IT IS FURTHER ORDERED** that Defendant provide supplemental responses as outlined above in response to Interrogatory Nos. 6, 12, 17 and 18, and Request for Production Nos. 14, within 21 days.

New Orleans, Louisiana, this 31st day of May, 2022.

                                                                                      _____
                                                                                      DONNA PHILLIPS CURRAULT
                                                                                      UNITED STATES MAGISTRATE JUDGE