**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DONNA LOU, ET AL**               *          **CIVIL ACTION**

**VERSUS**                         *          **NO. 21-80**

**SHERIFF JOSEPH P. LOPINTIO, III, ET AL**  *    **SECTION "D-2"**

*      *      *      *      *      *      *      *      *

**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR**
**<u>PARTIAL SUMMARY JUDGMENT, R. DOC.  93</u>**

**MAY IT PLEASE THE COURT:**

Defendant, Sheriff Joseph P. Lopinto, III, in his official capacity as the Sheriff of Jefferson Parish ("Sheriff Lopinto"), opposes Plaintiffs' Motion for Partial Summary Judgment (R. Doc. 93). Sheriff Lopinto is the only Defendant against whom relief is sought by Plaintiffs' Motion. Sheriff Lopinto submits: (1) Plaintiffs lack standing to sue for any alleged search of E.P.'s records; (2) Plaintiffs did not plead a cause of action and otherwise have no actionable privacy right with regard to the records sought from WWLTV; (3) Plaintiffs did not plead a cause of action for any alleged unlawful search of Mr. Darren Parsa's medical records; and (4) Plaintiffs have failed to demonstrate that Sheriff Lopinto had an unconstitutional policy or practice that was the moving force behind any alleged Constitutional violation because there was no underlying Constitutional violation.

1

## BRIEF STATEMENT OF THE BACKGROUND

This case involves the death of a minor (E.P.) who violently attacked his father and the responding Deputy that was called to the scene in the parking lot of the Westgate Shopping Center in Metairie, La. on January 19, 2020. The call for service was made by a horrified onlooker. R. Doc. 1.

The Defendant J.P.S.O. Deputies were called to the scene based upon a report from a business manager that E.P. was violently out of control and severely beating his own father, Plaintiff, in the parking lot. Plaintiff, Mr. Darren Parsa, E.P.'s father and victim, sustained severe injuries.

The Defendant J.P.S.O. Deputies arrived to find a horrifying scene. E.P. had severely injured his father. E.P. had bitten his fathers face, leaving an open wound and other obvious injuries and trauma.

The Defendant J.P.S.O. Deputies did as best they could to manage E.P., who never stopped resisting their efforts.

Regrettably, E.P. expired on the scene.

In their Motion for Partial Summary Judgment, Plaintiffs claim that non-Defendants secured search warrants in violation of the Fourth Amendment to the U.S. Constitution. Plaintiffs allege that the "JPSO obtained and served criminal search warrants on E.P.'s doctor, even though JPSO conceded that it was not

investigating a crime." R. Doc. 1, at ¶ 314. They allege that the "JPSO caused St. Charles Parish Sheriff's Office to request and obtain a search warrant for E.P.'s school records, on the basis of a 'violation of a pending death investigation" and "generalized law enforcement inspection.'" R. Doc. 1, at ¶ 314.

## LAW AND ARGUMENT

First, Plaintiffs lack standing to sue for any alleged unlawful search of E.P.'s records.  Second, Plaintiffs did not plead a cause of action and otherwise have no actionable privacy right with regard to the records sought from WWLTV.  Third, Plaintiffs did not plead a cause of action for any alleged unlawful search of Mr. Parsa's medical records.  Fourth, Plaintiffs have failed to demonstrate that Sheriff Lopinto had an unconstitutional policy or practice that was the moving force behind any alleged Constitutional violation because there was no underlying Constitutional violation.

## I.    THE SEARCH WARRANTS

Plaintiffs attach seven applications for and search warrants to their Motion. R. Doc. 93-4. The Sheriff lists them here in the same order as they are attached to Plaintiffs' Motion.

The first search Warrant ("warrant 1") is for EMS records for E.P. on January 19, 2020. *See* Warrant 1, attached as Exhibit 1.

The second search Warrant ("warrant 2") is for E.P.'s medical records from East Jefferson General Hospital on January 19, 2020. *See* Warrant 2, attached as Exhibit 2.

The third search warrant ("Warrant 3") is for E.P.'s medical records from Ormond Pediatrics in St. Charles Parish. *See* Warrant 3, attached as Exhibit 3.

The fourth search warrant ("Warrant 4") is for Mr. Parsa's medical records from East Jefferson General Hospital on January 19, 2020. *See* Warrant 4, attached as Exhibit 4.

The fifth search warrant ("Warrant 5") is for records from WWLTV regarding the subject incident on January 19, 2020. *See* Warrant 5, attached as Exhibit 5.

The sixth search warrant ("Warrant 6") is for E.P.'s school records from Destrehan High School. *See* Warrant 6, attached as Exhibit 6.

The seventh Search warrant ("Warrant 7") is for other records relative to E.P. from Destrehan High School. *See* Warrant 7, attached as Exhibit 7.

## II.   PLAINTIFFS HAVE NO STANDING TO SUE FOR ANY ALLEGED HARM ARISING OUT OF WARRANTS 1-3, 6 AND 7

Indeed, Warrants 1 (E.P.'s EMS records), 2 (E.P.'s EJGH records), 3 (E.P.'s Pediatric records) and 6 and 7 (E.P.'s Destrehan High School records) all sought E.P.'s records, not the Plaintiffs. The Plaintiffs do not have standing to challenge

these warrants.

## A.    PLAINTIFFS LACK ARTICLE III STANDING

To establish standing under Article III of the United States Constitution, a plaintiff must demonstrate:

> 1 that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant…
>
> 2 that the injury "fairly can be traced to the challenged action" and
>
> 3 that the injury "is likely to be redressed by a favorable decision."

*Cramer v. Skinner*, 931 F.2d 1020, 1024 (5th Cir.), cert. denied, 502 U.S. 907, 112 S.Ct. 298, 116 L.Ed.2d 242 (1991) (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)).

In making a determination under this framework, "a court should consider three prudential concerns:

> 1) whether the plaintiffs' complaint falls within the zone of interests protected by the statute or constitutional provision at issue;
>
> 2) whether the complaint raises abstract questions amounting to generalized grievances which are more appropriately resolved by the legislative branches; and
>
> 3) whether the plaintiff is asserting his or her own legal rights and interests rather than the legal rights and interests of third parties."

*Cramer*, 931 F.2d at 1024-25 (citations omitted).

In the context of a Section 1983 claim, "[i]t is clear that one may not recover damages for the violation of another's civil rights." *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).   Indeed, it is a well-settled principle that a section 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else. *Dohaish v. Tooley*, 670 F.2d 934, 936 (10th Cir.)("[T]he Sec. 1983 civil rights action is a personal suit. **It does not accrue to a relative, even the father of the deceased."**)(emphasis added) cert. denied, 459 **U.S.** 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *see also Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Cir.1986); *Trujillo v. Board of County Commissioners*, 768 F.2d 1186, 1187 (10th Cir.1985).

Therefore, Plaintiffs' Motion as to Warrants 1-3, 6 and 7 (E.P.'s records) should be DENIED.

### B.   PLAINTIFFS LACK FOURTH AMENDMENT STANDING

Likewise, and more specifically, "the application of the Fourth Amendment depends on whether the person invoking its protection can claim a justifiable, a reasonable, or a legitimate expectation of privacy that has been invaded by government action." *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)(internal quotation marks omitted). This is the plaintiff's burden to prove. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 65

L.Ed.2d 633 (1980).

"Unlike the Article III standing that enables federal courts to exercise the judicial power, Fourth Amendment standing 'is not a jurisdictional question.'" *United States v. Beaudion*, 979 F.3d 1092, 1097 (5th Cir. 2020); citing *Byrd v. United States*, ─── U.S. ───, 138 S. Ct. 1518 1526, 200 L.Ed.2d 805 (2018) (emphasis added) (quotation omitted). "It is instead 'more properly subsumed under substantive Fourth Amendment doctrine,' *Rakas v. Illinois*, 439 U.S. 128, 139, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), an outgrowth of the historical focus on people's security in 'their' persons, houses, papers, and effects, see *Minnesota v. Carter*, 525 U.S. 83, 92, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (Scalia, J., concurring) ('The obvious meaning of the provision is that each person has the right to be secure ... in his own person, house, papers, and effects.') *Beaudion*, at 1097.

The Supreme Court has long held that a claimant alleging a Fourth Amendment violation "must have a cognizable Fourth Amendment interest"—a concept known as "Fourth Amendment standing." *Byrd v. United States*, ─── U.S. ───, 138 S.Ct. 1518 1530, 200 L.Ed.2d 805 (2018). This is so because **"Fourth Amendment rights are personal rights which... may not be vicariously asserted."** *Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 58 L.Ed.2d 387

(1978)(emphasis added)(quoting *Alderman v. United* States, 394 U.S. 165, 174, 89

S.Ct. 961, 22 L.Ed.2d 176 (1969), and collecting cases).

In this case, again, Warrants 1-3 and 6 and 7 sought E.P.'s records, not the

Plaintiffs. The Plaintiffs do not have standing under the Fourth Amendment to

challenge these warrants.

Therefore, Plaintiffs' Motion as to these warrants should be DENIED.

## II.   PLAINTIFFS DID NOT PLEAD AND OTHERWISE FAIL TO ALLEGE A CAUSE OF ACTION ARISING OUT OF SEARCH WARRANT 5 (WWLTV FOOTAGE)

First, Plaintiffs simply did not plead any cause of action relative to the

WWLTV Warrant. Indeed, nowhere in their 80 page, 486 paragraph Complaint do

Plaintiffs even mention any WWLTV records or any claim arising out of same.

The list in Fed. R. Civ. P. 7(a) is exhaustive. *Yuhasz v. Brush Wellman, Inc.*,

341 F.3d 559, 569 (6th Cir. 2003)(Rule 7 provides the exhaustive list of pleadings).

Assuming no counter-claim or cross-claim is filed, the pleadings are closed once a

complaint and an answer have been filed.   *Doe v. U.S.*, 419 F.3d 1058, 1061 (9th

Cir. 2005).   Accordingly, motions for summary judgment are not pleadings. *See*

*Principal Healthcare of Louisiana, Inc. v. Lewer Agency, Inc.*, 38 F.3d 240, 244

(5th Cir. 1994).   A brief or memoranda are not pleadings. *Bush v. Barnett Bank of*

*Pinellas County*, 916 F.Supp. 1244, 1249 (M.D. Fla. 1996). A reply brief or

opposition memorandum are not pleadings. *Nwachukwu v. Rooney*, 362 F.Supp. 2d 183, 190 (D.D.C. 2005).   Summary judgment statements are not pleadings. *Carlson v. Reed*, 249 F.3d 876, 878 n. 1 (9th Cir. 2001).   Affidavits are not pleadings. *See Martin v. Town of Westport*, 558 F.Supp. 2d 228 (D. Conn. 2008).

There is no claim asserted vis-a-vis any footage sought or obtained from WWLTV in Plaintiffs' Complaint, and Plaintiffs' Motion regarding Warrant 5 should therefore be DENIED.

Further, and notwithstanding the foregoing, Plaintiffs would otherwise fail to allege a cause of action concerning the WWLTV Warrant (Warrant 5). First, there is no question that Plaintiffs' have no standing to assert a privacy interest in the place (WWLTV), which is a third party, or the items (video footage taken from the scene). Second, the Plaintiffs do not have a property interest that is actionable insofar as the WWLTV footage was obtained independently by that third party, from another third party, and entered into the public record. *See* Exhibit 5.  Indeed, the Affidavit expressly states that the "video of the incident on WWLTV.com [was] published on January 19, 2020 by Paul Murphy, Eyewitness News. This segment of video appears to be taken from a vehicle and different vantage point than the surveillance footage obtained by law enforcement."  Exhibit 5. The video was taken by a third party and was produced to a third party. At the time the

Affidavit was made, January 23, 2020, the video had already been aired and was a matter of public record.

Moreover, there is no question that Warrant 5 was supported by probable cause. "A magistrate judge could... infer that any video surveillance... would be relevant" because it "may have recorded the disputed encounter between [E.P.] and the officers." *Nevarez v. Coleman*, No. 21-1855 (E.D. L. July 7, 2022)(Vance, S.).

Therefore, Plaintiffs' Motion regarding Warrant 5 should be DENIED.

## III. PLAINTIFFS DID NOT PLEAD A CAUSE OF ACTION ARISING OUT OF WARRANT 4 (MR. DARREN PARSA'S MEDICAL RECORDS FROM JANUARY 19, 2020)

As above, Plaintiffs simply did not plead in their exhaustive Complaint any claim arising out of any alleged search of Mr. Darren Parsa's medical records from January 19, 2020. R. Doc. 1. There is no issue before the Court to resolve.

Therefore, Plaintiffs' Motion as to Warrant 4 should be DENIED.

## IV. ALTERNATIVELY, PLAINTIFFS' MOTION VIS-A-VIS WARRANT 4 (MR. DARREN PARSA'S MEDICAL RECORDS FROM JANUARY 19, 2020) SHOULD BE DENIED ON THE MERITS

As demonstrated above, Plaintiffs did not plead a claim regarding Warrant 4. Thus, it is not before the Court and Plaintiffs' Motion should be DENIED outright.

However, out of an abundance of caution, Sheriff Lopinto submits that Plaintiffs' "argument" in their Motion regarding Warrant 4 would fail on the

merits.

Plaintiff did not sue the affiant of the warrant or anyone that participated in its drafting or presentation to the judge. Plaintiffs move for summary judgment solely against Sheriff Lopinto in his official capacity under a *Monell* (*infra*) theory of liability – they allege that Sheriff Lopinto has a policy or practice of obtaining warrants without probable cause and that said policy violated Plaintiffs' rights.

## A. STANDARD OF LIABILITY

A suit against a government official in his official capacity is treated as a suit against the entity. *See Lee v. Morial,* 2000 WL 726882 at *2 (E.D.La. June 2, 2000). No liability exists for governmental entities based on a vicarious liability or a *respondeat superior* theory. *Price v. Housing Authority of New Orleans,* 2002 WL 179193 (E.D.La. Oct. 11, 2002) Instead the municipality will be liable only when an official policy or custom inflicts the injury of which the plaintiff complains. *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A plaintiff seeking to impose liability on a municipality under § 1983 must show that there was either an official policy or an unofficial custom, adopted by the municipality, that was the moving force behind the claimed constitutional violation. *Duvall v. Dallas Cnty.*, 631 F.3d 203, 209 (5th Cir. 2011) (citing *Monell*, 436 U.S. 658, at 694. A municipality is almost never

liable for an isolated unconstitutional act on the part of an employee but rather is liable only for acts directly attributable to it "through some official action or imprimatur." *Peterson v. City of Ft. Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

The "official policy" requirement can be met in three different ways. *Piotrowski v. City of Houston,* 237 F.3d 567, 579 (5th Cir. 2001) *citing Bennett v. City of Slidell,* 728 F.2d 762, 768 n. 3 (5th Cir.1984). First, when the municipality promulgates a generally applicable statement of policy and the injury resulted from that policy. *Id*. Second, when no "official policy" exists, but the action of the policy maker violated a constitutional right and third, when the policymaker fails to act to control its agents when it was "so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] ... can reasonably be said to have been deliberately indifferent to the need." *Id*. at 471. Deliberate indifference of this sort is a stringent test, and "a showing of simple or even heightened negligence will not suffice" to prove municipal culpability. *Id.; citing Bryan County*, 520 U.S. at 407, 117 S.Ct. at 1389, 1390.  The single incident exception is a very narrow one that courts have been reluctant to expand. *Pineda v. City of Houston*, 291 F.3d 325, 334- 35 (5th Cir.2002) ("Charged to administer a regime without *respondeat superior*, we

necessarily have been wary of finding municipal liability on the basis of [the single-incident] exception for a failure to train claim.").

There are two fundamental requirements for holding a municipality liable: culpability and causation. *Snyder v. Trapagnier*, 142 F. 3d 791 (5th Cir. 1998) (*citing Monell*, 436 U.S. 658, 98 S.Ct. 2018, L.Ed. 2d 611 (1978)). A Plaintiff must establish both the causal link ("moving force") and the municipality's degree of culpability ("deliberate indifference" to federally protected rights), declaring "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Board of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed. 2d 626 (1997).

Thus, plaintiffs seeking to prevail must first prove a direct causal link between the municipal policy and the constitutional deprivation; they then must establish that the city consciously enacted a policy reflecting "deliberate indifference" to the constitutional rights of its citizens. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. at 1205 (1989); *See also Watson v. City of New Orleans*, 2000 WL 126921 (E.D.La. 2/3/2000).

> In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." Permitting a lesser standard than

deliberate indifference would "engage the federal courts in an endless exercise of second-guessing municipal employee training programs. This is an exercise we believe the federal courts are ill suited to undertake as well as one that would implicate serious questions of federalism."

*City of Canton,* 489 U.S. at 392, 109 S.Ct. 1197.

### B.   PLAINTIFFS CANNOT MEET THE ABOVE STANDARD BECAUSE THERE EXISTS NO UNDERLYING TORT[1]

Indeed, where a Plaintiff has failed to prove an underlying constitutional violation it is irrelevant whether the municipality had an official policy or custom that would have authorized the unconstitutional conduct. *See City of Los Angeles v. Heller*, 475 U.S. 797, 811 (1986); *McKee v. City of Rockwall*, 877 F.2d 409, 414 (5th Cir. 1990). It is the clearly established law of this circuit that all of Plaintiffs' inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation. *See Whitley v. Hanna,* 726 F.3d 631 (5th Cir. 2013); *citing Bustos v. Martini Club, Inc.,* 599 F.3d 458, 467 (5th Cir. 2010) ("Because [plaintiff] has alleged no constitutional injury attributable to the Officers, [plaintiff] has failed to state a claim that a City policy was the moving force behind a violation of his constitutional rights.").

---

1 By no means does the Defendant waive any argument that Plaintiffs' failed to establish that there actually exists an unconstitutional policy or practice. Indeed, on the record before the Court, there is no evidence beyond argument that any such policy exists; there is no evidence on summary judgment of other instances of civil rights violations similar to those alleged here. Rather, in the interest of economy, and because it is not necessary to address these claims as set forth below, it is enough that there was no Constitutional violation in this case to dispense with Plaintiffs' Motion.

Here, Plaintiffs move for summary judgment under Section 1983 and the Fourth Amendment to the U.S. Constitution alleging that Warrant 4 was sought and obtained without probable cause and that this action was driven by the Sheriff's official policy or practice.   However, the Plaintiffs fail to show that Warrant 4 was sought and obtained in violation of the clearly established law. Thus, Plaintiffs are unable to meet the first requirement of the *Monell* claim – the underlying violation.

Section 1983 of Title 42 of the United States Code provides a cause of action for plaintiffs whose federal rights are violated under the color of state law. 42 U.S.C. § 1983; *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). To state a claim under section 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting "under color of state law." *Id.* "The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)(quoting U.S. Const. amend. IV). There was simply not an unreasonable search in this case.

The Fifth Circuit "has recognized two different kinds of claims against government agents for alleged Fourth Amendment violations in connection with a

search or arrest warrant: (1) claims under *Franks v. Delaware*, 438 U.S. 154 (1978)," and "(2) claims under *Malley v. Briggs*, 475 U.S. 335 (1986)." *Melton v. Phillips*, 875 F.3d 256, 270 (5th Cir. 2017) (en banc) (J. Dennis dissenting); see also *Wilson v. Stroman*, 33 F.4th 202, 206 (5th Cir. 2022) (analyzing plaintiffs' "two alternative" Fourth Amendment claims, "one premised on *Malley*. . . and the other premised on *Franks*").

Under the first type of claim, known as *Franks* liability, "a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (quoting *Franks*, 438 U.S. at 155-56); see also *Terwilliger v. Reyna*, 4 F.4th 270, 281-82 (5th Cir. 2021) (applying the *Franks* framework to a plaintiff's section 1983 claim at the motion-to-dismiss stage). The Fifth Circuit has likewise held that "the intentional or reckless omission of material facts from a warrant application [or affidavit] may amount to a Fourth Amendment violation." *Kohler v. Englade,* 470 F.3d 1104, 1113 (5th Cir. 2006). To determine whether the false statements or omissions are necessary to the probable-cause finding, courts look to whether "'there remains sufficient content in the warrant affidavit to support a finding of

probable cause' after the 'material that is the subject of the alleged falsity or reckless disregard is set to one side.'" *Terwilliger*, 4 F.4th at 281-82 (quoting *Franks*, 438 U.S. at 171-72).

Under the second type of claim, premised on the Supreme Court's holding in *Malley v. Briggs*, "an officer can be held liable for a search authorized by a warrant when the affidavit presented to the magistrate was 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" *Mayfield v. Currie,* 976 F.3d 482, 487 (5th Cir. 2020) (quoting *Malley*, 475 U.S. at 344-45). If a "reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant," the officer's "shield of immunity [will] be lost." *Malley*, 475 U.S. at 344-45. Unlike *Franks*, the "*Malley* wrong is not the presentment of false evidence, but the obvious failure of accurately presented evidence to support the probable cause required for the issuance of a warrant." *Melton*, 875 F.3d at 264.

Probable cause exists "when there are reasonably trustworthy facts which, given the **totality of the circumstances**, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities, or evidence of a crime." *Kohler*, 470 F.3d at 1109 (emphasis added)(citing *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). Thus, the officer's affidavit must make it clear that

"there is some nexus" between the areas to be searched and the alleged criminal activity being investigated. *Id.* (citing *Warden v. Hayden*, 387 U.S. 294, 302 (1967)). The courts accord "great deference" to a magistrate judge's finding of probable cause. *United States v. Leon*, 468 U.S. 897, 914-15 (1984) (quoting *Gates*, 462 U.S. at 239).

In this case, the Plaintiffs do not allege that the subject warrants and affidavits in support thereof contained false statements or material omissions; Plaintiffs do not allege a *Franks* violation. Rather, Plaintiffs seem to allege that the Sheriff has a policy and practice of submitting affidavits in support of, and obtaining search warrants that lack any indicia of probable cause; Plaintiffs seem to allege a *Malley* violation occurred that was policy driven.

To determine whether an affidavit was facially lacking in probable cause, the Court looks to whether the affidavit "establish[es] a nexus between the [place] to be searched, and the evidence sought." *United States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003).

To comply with constitutional stricture, an affidavit supporting the application for a search warrant "must provide the [judge] with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 2332, 76 L. Ed. 2D 527 (1983); *see also*, *e.g.*, *United States v.*

*Brown*, 567 F. App'x 272, 282 (5th Cir. 2014) (quoting *id*.);*United States v.Marion*, 547 F. App'x 283, 285 (4th Cir. 2013) (same). The Supreme Court has reiterated on many occasions that "the probable-cause standard is a 'practical, nontechnical conception' that deals with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Maryland v. Pringle,* 540 U.S. 366, 370 (2003)(quoting *Illinois v. Gates,* 462 U.S. 213, 231 (1983)). The probable cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the **totality of the circumstances**. *Id.* (citing *Gates*, 462 U.S. at 232)(emphasis added).

As Plaintiffs rightly aver, "because Fourth Amendment claims are evaluated on an objective rather than subjective standard, it does not matter what the officers' actual purpose for the search warrants was. The actual intent of the officers involved does not enter the Fourth Amendment analysis."[2] *See* Plaintiffs' memorandum, R. Doc. 93-1, p. 13-14; see also *Graham*, *infra*.

"Assuming no problems exist with respect to time," an affidavit meets the bare minimum if it evidences a reasonable link between (1) the relevant criminal

---

[2] It is curious that Plaintiffs, despite rightly setting forth the legal standard, rely entirely on corporate deposition testimony that is wholly irrelevant to that legal standard and the Court's determination of the issues, namely whether the subject Affidavits, viewed objectively, state sufficient probable cause.

activity, (2) the things to be seized, and (3) the place to be searched. 2 WAYNE R.
LAFAVE, SEARCH & SEIZURE § 3.7(d) (5th ed. 2012-2015). With no more
required than a reasonable connection between the evidence sought and the crime
investigated, *see Doe*, 225 F.3d at 451, a court must apply the Fourth Amendment's
requirement of probable cause "**not according to a fixed and rigid formula, but
rather in the light of the totality of the circumstances made known to the
magistrate,**" *Massachusetts v. Upton*, 466 U.S. 727, 728, 104 S. Ct. 2085, 2085,
80 L. Ed. 2d 721 (1984)(emphasis added). "It is well established that the
magistrate **may draw reasonable inferences from the information in the
affidavit and the 'magistrate's determination of probable cause should be paid
great deference by reviewing courts**.'" *Watts v. Kroczynski*, 636 F.Supp. 792,
797 (W.D. La. 1986)(emphasis added); citing *Gates*, 103 S.Ct. At 2331; *Spinelli v.
United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637 (1969). "In
doubtful or marginal cases, resolution of the question whether probable cause
exists 'should be largely determined by the preference to be accorded to
warrants.'" *Id*.; citing *Gates*, 103 S.Ct. at 2331 n. 10.

Here, Plaintiff's sole "argument" is that because Warrant 4 was (1) an
"investigatory warrant" for his medical records, and (2) did not specifically
identify a crime for which the evidence was being sought, Warrant 4 violated

Plaintiff's Constitutional rights. Plaintiff is wrong.

First, the Louisiana Supreme Court expressly acknowledged and ratified the existence of investigatory warrants and prescribed that "a warrant is required to conduct an investigatory search of medical and/or prescription records." *State v. Skinner*, No. 2008-KK-2522 (La. 2009), 10 So.3d 1212, 1218.

Second, while the Affidavit in support of Warrant 4 did not specifically identity a crime, it indicated that Deputies were investigating the death of a minor child during an interaction with law enforcement. The manner and cause of the death was not obvious to investigators.  In determining whether a use of force by law enforcement is lawful, it must be determined whether the officers used reasonable force under the circumstances. *Graham v. Connor,* 490 U.S. 386, 396–97 (1989).

The Affidavit "supports a reasonable probability that the... items "constitute fruits, instrumentalities, or evidence of a crime." *Kohler*, 470 F.3d at 1109. Specifically, a magistrate judge could infer that the medical records of Mr. Parsa's injuries, which were sustained on the scene and were caused by the person who the responding Deputies were tasked with bringing under control, would be relevant to the responding Deputies' assessment of the scene and their response to same, including the amount of force that was warranted under the circumstances with

21

which they were faced. *See, e.g., Nevarez v. Coleman*, No. 21-1855 (E.D. L. July 7, 2022)(Vance, S.).

Plaintiffs' suggestion that the Affidavit objectively lacks probable cause under the totality of the circumstances in a case involving the undetermined cause of death of a minor during an interaction with law enforcement is beyond the pale of absurd. On the contrary, given the **totality of the circumstances**, the Affidavit stated probable cause that the records sought had a sufficient nexus to the potential criminal activity that was being investigated, the use of force by law enforcement officials.

Therefore, Plaintiffs' Motion regarding Warrant 4 should be DENIED.

In closing, Plaintiffs' Motion for Partial Summary Judgment should be denied as pertains each and every warrant.

## V.   CONCLUSION

First, Plaintiffs lack standing to sue for any alleged unlawful search of E.P.'s records. Second, Plaintiffs did not plead a cause of action and otherwise have no actionable privacy right with regard to the records sought from WWLTV. Third, Plaintiffs did not plead a cause of action for any alleged unlawful search of Mr. Parsa's medical records. Fourth, Plaintiffs have failed to demonstrate that Sheriff Lopinto had an unconstitutional policy or practice that was the moving force

behind any alleged Constitutional violation because there was no underlying Constitutional violation.

Therefore, Plaintiffs' Motion for Partial Summary Judgment, R. Doc. 93, should be DENIED.

Respectfully submitted,

**/s/ Daniel R. Martiny**

_____

**DANIEL R. MARTINY, LSB#9012**
**FRANZ L. ZIBILICH, LSB#14914**
MARTINY & ASSOCIATES, LLC
131 Airline Drive
Suite 201
Metairie, Louisiana 70001
Telephone: (504) 834-7676
Facsimile: (504) 834-5409
Email: danny@martinylaw.com


**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of August 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all participating counsel of record herein.

**/s/ Daniel R. Martiny**

_____

**DANIEL MARTINY**