UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CASE NO.   2:21-cv-00080

DONNA LOU and DAREN PARSA, on their own behalf and
on behalf of their deceased minor child, E.P.

Plaintiffs,


VERSUS


SHERIFF JOSEPH P. LOPINTO, III, CHAD PITFIELD, RYAN
VAUGHT, STEVEN MEHRTENS, SHANNON GUIDRY, NICK VEGA,
MANUEL ESTRADA, MYRON GAUDET, JOHN DOES 1-3,
VICTORY REAL ESTATE INVESTMENTS LA, LLC D/B/A
WESTGATE SHOPPING CENTER, ABC INSURANCE COMPANY,
and XYZ INSURANCE COMPANY,


Defendants.



    VIDEOTAPED DEPOSITION OF SERGEANT KEITH DOWLING,

given in the above-entitled cause, pursuant to the

following stipulation, before Sandra P. DiFebbo,

Certified Shorthand Reporter, in and for the State

of Louisiana, at JPSO, 1233 Westbank Expressway,

Fifth Floor, Harvey, Louisiana, on the 13th day of

September, 2022, commencing at 9:33 AM.

2

```
 1   APPEARANCES:
 2              THE COCHRAN FIRM MID-SOUTH
               BY:  ANDREW CLARKE,
 3             ATTORNEY AT LAW
               One Commerce Square
 4             40 South Main, Suite 1700
               Memphis, Tennessee  38103
 5
               -and-
 6
               LAW OFFICE OF WILLIAM MOST, L.L.C.
 7             BY:  WILLIAM MOST,
               ATTORNEY AT LAW
 8             201 St. Charles Avenue
               Suite 114
 9             New Orleans, Louisiana  70170
               Representing the Plaintiffs
10
11             MARTINY & ASSOCIATES
               BY:  FRANZ ZIBILICH,
12             ATTORNEY AT LAW -and-
               JEFFREY D. MARTINY,
13             ATTORNEY AT LAW
               131 Airline Drive
14             Suite 201
               Metairie, Louisiana  70001
15             -and-
               LINDSEY M. VALENTI, ATTORNEY AT LAW
16             LEGAL ADVISOR
               1233 Westbank Expressway
17             Building B, Fifth Floor
               Harvey, Louisiana  70058
18             Representing JPSO Defendants
19
               THOMPSON, COE, COUSINS & IRONS, LLP
20             BY:  CHRISTOPHER W. KAUL,
               ATTORNEY AT LAW
21             601 Poydras Street
               Suite 1850
22             New Orleans, Louisiana  70130
               Representing Victory Real Estate
23             Investments LA, LLC, and Westgate
               Shopping Center
24
25
```

```
 1   APPEARANCES CONTINUED:

 2

 3   Also Present:  Tim Anclade, Nicholas Vega,
                    Steven Mehrtens

 4

 5   Videographer:  Jeffrey Horner, CLVS, VRS Media
                    Group

 6

 7   Reported By:

 8

             Sandra P. DiFebbo
 9           Certified Shorthand Reporter
             State of Louisiana

10

11      E X A M I N A T I O N          I N D E X

12                                     Page

13   BY MR. CLARKE:                       5, 128

14   BY MR. ZIBILICH:                     126

15

16      E X H I B I T                 I N D E X

17                     Page

18

19   Exhibit 72                           14

20   Exhibit 73                           20

21   Exhibit 74                           47

22   Exhibit 75                           53

23   Exhibit 76                           57

24   Exhibit 77                           69

25   Exhibit 78                           98
```

```
 1   shootings.
 2        Q.   Were you called for the recent shooting
 3   where the cops were indicted or charged?
 4        A.   No, sir.
 5        Q.   Any other -- any investigation, any --
 6   what is the purpose of your investigation as a
 7   homicide?  Are you looking into whether the cops
 8   committed a crime?
 9        A.   Yes, sir.
10        Q.   So for the purpose of your investigation,
11   the suspects were the cops?
12             MR. ZIBILICH:
13                  We call them deputies here.
14             THE WITNESS:
15                  I was looking to see if their use of
16               force was reasonable and necessary,
17               yes.
18   BY MR. CLARKE:
19        Q.   If you look at Exhibit 30, you list -- I
20   just need to go through some of these numbers and
21   things on the reports.  What is a Signal 29 at the
22   top?
23        A.   That's a death.
24        Q.   And the Rep Area? That's just the
25   geographic?
```

73

1      A.   Yes.

2      Q.   Let's go to Exhibit 31, which is your --

3  this will be your supplemental report, correct?

4      A.   Yes, sir.

5      Q.   This is not an Internal Affairs report,

6  correct?

7      A.   No, sir.

8      Q.   This is not a determination as to whether

9  or not somebody violated policy, correct?

10     A.   No, sir.

11     Q.   This is a determination as to whether or

12 not there was probable cause to determine whether

13 or not the officers had committed a crime, correct?

14     A.   Criminal investigation, yes, sir.

15     Q.   And you sought out warrants attempting to

16 get information about this, correct?

17     A.   Yes, sir.

18     Q.   And the probable cause that you were

19 seeking was that you said in those warrants was

20 probable cause that the officers had committed a

21 crime?

22     A.   It was relative to a death investigation,

23 yes, sir.

24     Q.   Do you know the requirements of what you

25 have to have to actually get a warrant?

74

```
 1          A.    Yes, sir.
 2          Q.    You have to have evidence of a crime,
 3    correct?  Probable cause.
 4          A.    Not evidence of a crime.  You have to
 5    have probable cause.
 6          Q.    Probable cause of a what?
 7          A.    It's an investigative tool that we use to
 8    get information for our investigation.
 9          Q.    You know what the Fourth Amendment is?
10          A.    Yes, sir.
11          Q.    It requires you to have probable cause of
12    a crime to get an actual warrant and to get the
13    documentation, correct?
14          A.    There was a potential crime, yes.
15          Q.    What was the potential crime?
16          A.    If I deemed that these officers used
17    unnecessary force.
18          Q.    Did you tell that to the judge?
19          A.    Sir?
20          Q.    Did you tell the judge that your probable
21    cause was that the officers might have committed a
22    crime?
23          A.    It's in the warrants.  There is a death
24    investigation at the hands of possibly these
25    officers, yes.
```

```
 1        Q.    That's not -- let's pull up the warrants.
 2   We'll start at Exhibit 52.
 3              MR. ZIBILICH:
 4                   Which warrant is that?
 5              THE WITNESS:
 6                   It's from Louisiana --
 7              MR. CLARKE:
 8                   This is a Louisiana -- I'm trying to
 9              figure out how I can pull something up
10              without that being on there.  Can we
11              turn the TV off for now?  I have to use
12              my computer.
13   BY MR. CLARKE:
14        Q.    Look at Exhibit 52.  Are you aware of the
15   Louisiana statute on search warrants?
16        A.    Yes.
17        Q.    In order to issue a warrant, it has to be
18   the subject of a theft, intended to use or has been
19   used as a means of committing an offense, or may
20   constitute evidence tending to prove the commission
21   of the offense.  What were you using a warrant for?
22        A.    To obtain information for my
23   investigation.
24        Q.    Is it one of those three things?
25              MR. ZIBILICH:
```

76

```
 1                      Wait.  That calls for him to make a
 2                 legal interpretation.  He is not
 3                 answering that.  He gave you the answer
 4                 as to why he was doing it.  That's
 5                 enough.
 6    BY MR. CLARKE:
 7         Q.    Which one of these three is it?
 8              MR. ZIBILICH:
 9                   I told you he is not answering that.
10              Don't answer it, sir.
11              MR. CLARKE:
12                   He is not your lawyer.
13              MR. ZIBILICH:
14                   I told him not to answer it.
15              MR. CLARKE:
16                   You're not his lawyer.
17              MR. ZIBILICH:
18                   I don't care.
19    BY MR. CLARKE:
20         Q.    Well, you can listen to him, if you want,
21    or you can see what happens if you don't. At that
22    time, the time that you sought the warrant, did you
23    have any conclusion of any officer that may have
24    committed a crime?
25         A.    No.
```

77

```
 1         Q.    Did you conclude that there was probable

 2    cause that any officer of the Jefferson Parish

 3    Sheriff's Office committed a crime?

 4         A.    No.

 5         Q.    When you sought the warrants?

 6         A.    No.

 7         Q.    So, for example, if we go to Exhibit --

 8    we will get off warrants.  Move that book away.  Do

 9    you have your supplemental report?

10         A.    Yes.

11         Q.    And when there is an in-custody death, is

12    there a different protocol or report that's done?

13         A.    No, sir.

14         Q.    For an officer-involved death?

15         A.    No, sir.

16         Q.    There is no -- Do you have any training

17    on investigating -- you completed your report on

18    September 9th, 2020 after the autopsy came in,

19    correct?

20         A.    Yes, sir.

21         Q.    You note up at the top it is an

22    in-custody death, right?

23         A.    Yes.

24         Q.    You put in the death classification that

25    you got from the autopsy, correct?
```

```
1          Q.    If you are investigating an officer,

2    aren't there requirements that you have to provide

3    them under the law, such as allow them to get

4    notification of a representative or to have a

5    lawyer there?

6          A.    We didn't advise them of their rights,

7    no.

8          Q.    I understand.  The issue is you're saying

9    -- were you looking at any potential crimes on

10   Daren Parsa?

11         A.    Not on Daren Parsa.

12         Q.    How about E███ P████?

13         A.    No.

14         Q.    Donna Lou?

15         A.    No.

16         Q.    The only people that it could possibly be

17   are the officers, correct?

18         A.    We did not advise them of their rights or

19   anything like that.  We took statements from them.

20         Q.    Well, if you are doing an investigation

21   that could implicate an officer, officers have

22   rights, don't they?

23         A.    Yes.

24         Q.    They have a right to be notified that

25   there are possible charges or an investigation of
```