UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONNA LOU, ET AL. | * | CIVIL ACTION NO. 21-80 |
| VERSUS | * | SECTION "D" (2) |
| SHERIFF JOSEPH P, LOPINTO, III, ET AL. | * | Judge Wendy B. Vitter<br>Magistrate Judge Donna P. Currault |

**Plaintiffs' Memorandum in Support of Motion for Spoliation Sanctions**

## I.      Introduction

The Jefferson Parish Sheriff's Office has a policy of destroying "all disciplinary records" after three years.[1] The law requires that parties cease such destruction of records once they reasonably anticipate litigation.

In this case, JPSO did not stop destroying disciplinary records for almost a year, even though (1) JPSO received an anti-spoliation letter, (2) JPSO told a judge that the "obligation of preservation is already in place"; and (3) JPSO received a court order requiring the preservation of records. In this motion, Plaintiff ask this Court for a spoliation remedy due to JPSO's choice to continue destroying disciplinary records despite the multiple, overlapping legal prohibitions against that continued destruction.

Brief background: on January 19, 2020, a group of JPSO deputies restrained E.P., a severely autistic child, face-down on the asphalt of a parking lot. The child died.

On January 25, 2020, counsel for E.P.'s parents sent an anti-spoliation letter to JPSO. The letter warned JPSO that it could "reasonably foresee litigation" regarding the death of E.P.[2]

In addition to the letter, E.P.'s parents also filed motions in the 24th and 29th Judicial District Courts asking that evidence relating to E.P.'s death be preserved. The motion in the 24th JDC particularly requested preservation of officer disciplinary records.[3] On January 27, 2020, a

---

[1] Ex. A (JPSO SOP 22) at 9.
[2] Ex. A (Anti-Spoliation Letter).
[3] Ex. L at 3.

judge of the 29th JDC ordered that "all documents relevant or related to the death of the minor E.P. shall be preserved and not destroyed or otherwise altered . . . "[4] On March 17, 2020, JPSO represented to the 24th JDC that a further preservation order was unnecessary because the "obligation of preservation is already in place."[5]

But despite all this, JPSO did <u>not</u> stop the destruction of officer disciplinary records. It was not until nearly a year later – after the January 2021 filing of this lawsuit – that JPSO began preserving disciplinary records.

As a result, an unknown number of disciplinary records were destroyed in the year between January 2020 and January 2021. The number is unknown because JPSO keeps no records of document destruction, even though such records of document destruction is explicitly required by state law.[6] And Plaintiffs have not been able to seek information about disciplinary history via other means, as JPSO's counsel instructed witnesses not to answer questions about their disciplinary history.

Because JPSO has violated (1) an explicit court order, (2) state law regarding document preservation, and (3) federal law regarding a party's obligation to preserve evidence when litigation is reasonably anticipated, Plaintiffs' spoliation motion should be granted.

## II.     Factual Background

On January 19, 2020, E.P. died in the custody of JPSO deputies.[7]

On January 25, 2020, counsel for E.P.'s parents sent an anti-spoliation Letter to JPSO. The letter warned JPSO that it could "reasonably foresee litigation" regarding the death of E.P.[8]

---

[4] Ex. H (Feb. 6, 2020 Order).
[5] Ex. M (Opposition to Motion for Protection and Preservation) at 3.
[6] La. Admin. Code tit. 4, § XVII-913 ("Agencies shall document the destruction of their records by maintaining a certificate of destruction . . .").
[7] R. Doc. 9 at pg. 3, admitting ¶ 1 of the complaint that E.P. died "while in the custody and care of deputies with the Jefferson Parish Sheriff's Office (JPSO)."
[8] Ex. A (Anti-Spoliation Letter).

The letter specifically advised that "[a]ny normal process of document destruction or overwriting must cease."[9] The letter addressed "[a]ll paper records" and "other evidence."[10]

On January 27, 2020, E.P.'s parents filed a Motion for Protection and Preservation in the 29th Judicial District Court (St. Charles Parish), asking that a search warrant for E.P.'s school records be quashed and all evidence be preserved. The matter was captioned *In Re JPSO Item No. A-15489-20*[11], and JPSO appeared in the matter.[12]

Later that day, a judge of the 29th Judicial District ordered that "all documents relevant or related to the death of the minor E.P. shall be preserved and not destroyed or otherwise altered . . . "[13] JPSO's counsel – both in-house and litigation counsel - were provided copies of that order the same day.[14] The 29th JDC later denied E.P.'s parents' motion. At no point did the 29th JDC order that document destruction could resume.

On January 29, 2020, JPSO's counsel confirmed that they had received E.P.'s parents' anti-spoliation letter.[15]

On March 5, 2020, E.P.'s parents filed a Motion for Protection and Preservation in the 24th Judicial District Court (Jefferson Parish).[16] That motion specifically requested preservation of all "disciplinary, complaint, investigative and personnel files of all officers and supervisors of Jefferson Parish Sheriff's Office involved in this incident."[17] The motion was served on JPSO on March 10, 2020.[18]

On March 17, 2020, JPSO filed an opposition to that motion. JPSO argued that an order of preservation was unnecessary because JPSO had "acknowledged its receipt of the anti-

---

[9] *Id.*
[10] *Id.*
[11] *Id*.
[12] Ex. O (Transcript of Proceedings) at 2 ("Lindsey Valenti on behalf of Joseph P. Lopinto, III, in his capacity as sheriff of Jefferson Parish.")
[13] Ex. H (Feb. 6, 2020 Order).
[14] Ex. I (Corr. of Counsel).
[1515] Ex. K (Corr. of Counsel).
[16] Ex. L (Motion); Ex. N (Docket Sheet).
[17] Ex. L at 3.
[18] Ex. N (Docket Sheet, reflecting service dates).

spoliation letter. As such, <u>the preservation order should be denied as such obligation of preservation is already in place</u>."[19]

On January 14, 2021, Plaintiffs filed this lawsuit.[20]

At a September 20, 2022 deposition, Defendant Vega testified that he had been subject to disciplinary proceedings that were not reflected in documents produced in discovery. Plaintiff's counsel asked how this could be so. The witness explained that the discipline was "expunged" and the records "are no longer."[21] Defendants' counsel explained that "expunged is as if it never happened."[22] Plaintiffs' counsel inquired as to why these records were "expunged." JPSO Defendants' counsel explained that JPSO has a practice of deleting disciplinary records after three years.[23] And Defendant's counsel indicated that the deletion had not stopped even <u>after the filing of this lawsuit</u>:

> MR. MOST:      So JPSO has not paused its document destruction practices because of this lawsuit?
>
> MR. ZIBILICH:  Oh, God, no.
>
> MS. VALENTI:   For every person? What do you mean?
>
> MR. MOST:      Even for these officers who are sued in this lawsuit?
>
> MR. ZIBILICH:  No. There is nothing special, with all due respect to these officers and this lawsuit. This policy has been in place for a long time.[24]

Defendant's counsel then confirmed, explicitly, that no litigation hold was put into place to his knowledge:

> MR. MOST:      One final question before we move on. So, currently, has JPSO implemented a litigation hold of document destruction for this lawsuit?
>
> MR. ZIBILICH: Not that I know of.[25]

---

[19] Ex. M (Opposition) at 3. Emphasis added.
[20] R. Doc. 1.
[21] Ex. F (Vega Dep.) at 62:5-6.
[22] *Id*. at 62:9.
[23] *Id*. at 68:6-9 ("[T]here are no documents beyond the three years. So the documents have not been produced because they don't exist.")
[24] *Id*. at 69:14-70:3.
[25] *Id*. at 72:17-22.

The Sheriff's in-house counsel, however, asserted that a litigation hold *had* been put into place – but only <u>after</u> the lawsuit was filed.[26]

On September 28, 2022, the parties held a recorded meet and confer regarding the document destruction. At that meeting, JPSO Defendants' counsel reported information including the following:

- Upon receipt of Plaintiff's January 25, 2020 anti-spoliation letter, JPSO took steps to preserve the items listed in the letter. But JPSO did not implement a full litigation hold until it received notice that the lawsuit had been filed.

- JPSO does not have a written litigation hold policy. When it implements a litigation hold, however, that hold stops the destruction of disciplinary records of involved officers.

- JPSO's practice is to destroy officer disciplinary records after three years, absent something requiring preservation like a litigation hold.

- JPSO's only document retention schedule submitted to the state archives is the one for body-worn camera footage.

- JPSO does not keep any records of document destruction, such as records destruction certificates.

- JPSO does not seek or receive permission from the state archives to destroy records (except for the BWC document retention schedule).[27]

JPSO's counsel indicated that there is no way to determine if disciplinary records for the individual defendants in this case were destroyed, because JPSO does not keep records of document destruction.

### III.    Legal Standard

**A.    Louisiana's Law of Public Record Preservation**

Louisiana law, in R.S. 44:36, places an obligation on "persons and public bodies having custody or control of any public record" to "exercise diligence and care in preserving the public

---

[26] *Id.* at 73:6-20.
[27] Ex. C.

record for the period or periods of time specified by law for public records." The statute applies to

local agencies like sheriffs' offices.[28] The statute sets a default minimum of three years retention:

> In all instances where the law does not specify a particular period, public records shall be preserved and maintained for a period of at least three years from the date on which the public record was made, except when an agency, as defined in R.S. 44:402, has an approved retention schedule pursuant to Subsection B of this Section.[29]

Although there is a three-year minimum, all agencies must keep "all records for the time

specified in records retention schedules developed and approved by the state archivist."[30]

To this end, R.S. 44:411(A)(1) requires that the head of every state and local agency "shall

submit to the state archivist" records retention schedules for all types of records. R.S. 44:422

requires the head of every agency to implement safeguards against the loss of public records. One

mandatory safeguard is that the head of the agency must make "it known to all officials and

employees of the agency that no records are to be alienated or destroyed except in accordance with

law and the policies, rules, and regulations developed therefrom by the state archivist and the

division, and calling their attention to the penalties provided by law for the unlawful removal or

destruction of records."[31]

Thus, it is (1) agencies like sheriffs' offices must have records retention schedules

approved by the state archivist; and (2) records cannot be destroyed in the absence of an approved

retention schedule. This is made explicit in the regulations promulgated by the Office of the

Secretary of State, Division of Archives, which require that an "agency shall secure written

---

[28] "Agency," as defined in R.S. 44:402, includes "any state, parish and municipal office, department, division, board, bureau, commission, authority, or other separate unit of state, parish, or municipal government created or established by the constitution, law, resolution, proclamation, or ordinance." *See Ctr. for Constitutional Rights v. St. Charles Parish Sheriff's Office,* 263 So.3d 980 (La. App. 2018) ("Pursuant to La. R.S. 44:36(C), the electronic files on those [sheriff's office] cameras should have been preserved for, at least, three years from the date on which the pictures were taken.")
[29] R.S. 44:36 (A).
[30] R.S. 44:36 (A), (B).
[31] La. R.S. 44:422(A).

approval from the state archivist (or his designee) prior to the disposing of any records of the agency."[32]

The Louisiana Legislative Auditor explains this further:

Two levels of authorization are required for the destruction of records: (1) an internal authorization through the agency's internal approval process and (2) a formal destruction authorization from the State Archivist, pursuant to an approved records retention schedule, together with completion of a records destruction certificate. . . . Public records may not be destroyed without approval from the State Archivist. [33]

This was also confirmed by counsel for the Secretary of State, who explained that a sheriff's office is "not supposed to delete any records without the permission of the Archives."[34]

The regulations specify how agencies are to obtain destruction permission. They specify a particular form – the SS ARC 93 – that agencies must file[35] and have approved[36] before destroying any records. The regulations also require agencies to develop written litigation hold policies and submit them to the state archives.[37] And crucially, agencies "shall document the destruction of their records by maintaining a certificate of destruction for all records requiring destruction approval from the state archives."[38]

In short, agencies like sheriffs' offices are required to seek permission before destroying documents, and must keep records of any such destruction. This obligation is extremely serious: the improper destruction of public records is a felony offense, punishable by up to "five years with or without hard labor."[39] That statute specifically criminalizes the destruction of any record

---

[32] La. Admin. Code tit. 4, § XVII-901 (emphasis added). R.S. 44:405(A)(2) and 44:410 authorize the Secretary of State, through the state archivist, to issue regulations specifically governing procedures "for the disposal of records authorized for disposal," and to "prescribe policies and principles to be followed by state and local governmental agencies in the conduct of their records management programs."
[33] Ex. E (Louisiana Legislative Auditor, "Records Retention," Sept. 8, 2022) at 7. Emphasis added. Available online at https://app.lla.state.la.us/llala.nsf/7D23410AB0C0773C86258114004AE9C9/$FILE/Records%20Retention.pdf
[34] Ex. D (Dec. of William Most).
[35] La. Admin. Code tit. 4, § XVII-903
[36] La. Admin. Code tit. 4, § XVII-907
[37] La. Admin. Code tit. 4, § XVII-909
[38] La. Admin. Code tit. 4, § XVII-913
[39] La. R.S. 14:132 ("Injuring public records").

"required to be preserved in any public office or by any person or public officer pursuant to R.S. 44:36."[40]

## B.      Standard for Spoliation Sanctions

Allegations of spoliation, including the destruction of evidence in pending or reasonably foreseeable litigation, are addressed by federal courts through the court's inherent power to regulate the litigation process if (1) the conduct occurs before a case is filed; or (2) for another reason, there is no statute or rule that adequately addresses the conduct.[41] In the words of the Fifth Circuit, "[s]poliation of evidence is among the offenses for which a court may assess sanctions using its inherent powers."[42] Spoliation is "the 'destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'"[43] To order sanctions for spoliation, the trial court must find: (1) the existence of a duty to preserve; (2) a culpable breach of that duty; and (3) resulting prejudice to the innocent party.[44]

The subjective intent of a party regarding <u>why</u> they destroyed records is of lesser importance. As explained by the Second Circuit:

> It makes little difference to the party victimized by the destruction of evidence whether that act was done willfully or negligently. The adverse inference provides the necessary mechanism for restoring the evidentiary balance. The inference is adverse to the destroyer not because of any finding of moral culpability, but because the risk that the evidence would have detrimental rather than favorable should fall on the party responsible for its loss.[45]

Thus, spoliation sanctions are appropriate where there is (1) a duty to preserve; (2) a breach of that duty; and (3) resulting prejudice to the innocent party.

---

[40] *Id.*

[41] *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-46 (1991).

[42] *Union Pump Co. v. Centrifugal Tech., Inc.*, 404 Fed. App'x 899, 905 (5th Cir. 2010) (per curiam) (*citing Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 449 (4th Cir. 2004)) (emphasis added).

[43] *Ashton v. Knight Transportation, Inc.*, 772 F.Supp.2d 772, 779 (N.D. Tex. 2011), (*quoting Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)).

[44] *Id.* at 800 (collecting cases).

[45] *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (*quoting Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y. 1991)). *See also Menges v. Cliffs Drilling Co.*, No. 99-2159, 2000 U.S. Dist. LEXIS 8478, at *5-6 (E.D. La. June 12, 2000) (*quoting Nation-Wide Check Corp. v. Forest Hills Distribs.*, 692 F.2d 214, 217-18 (1st Cir. 1982)) ("[T]o restore the prejudiced party, an adverse inference 'places the risk of an erroneous judgment on the party that wrongfully created the risk.'").

## IV.    Analysis

A.    **Defendants had a duty to preserve disciplinary records under both federal and state law – and an explicit, judge-signed preservation order.**

Under federal law, a party's duty to preserve evidence "arises when the party has notice that the evidence is relevant to litigation."[46] "Once a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents."[47]

In this case, Defendants received a letter dated January 25, 2020, that said "you can reasonably foresee litigation regarding the death of [E.P.] on January 19, 2020, and law enforcement's involvement therein."[48] Defendants concede they received it.[49] Thus, Defendants had a federal-law obligation to preserve records that was triggered shortly after January 25, 2020.

Defendants also had a duty to preserve that was triggered by an explicit court order of January 27, 2020. That order directed that "all documents relevant or related to the death of the minor E.P. shall be preserved and not destroyed . . . "[50] JPSO's counsel was provided a copy of that order the same day.[51]

Defendants also had a duty to preserve because on March 10, 2020, they received a motion specifically requesting preservation of all "disciplinary, complaint, investigative and personnel files of all officers and supervisors of Jefferson Parish Sheriff's Office involved in this incident."[52] In opposing that motion, JPSO acknowledged that an "<u>obligation of preservation is already in place</u>."[53]

---

[46] *Connelly v. Veteran's Adminsiration Hospital*, 12-cv-02660-NJB-KWR, Rec. Doc. 48 at *8 (E.D. La., May 15, 2014); *see also Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 339 (M.D. La. 2006) (A party's duty to preserve "arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.")

[47] *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y.2003); *Toth v. Calcasieu Parish*, 2009 U.S. Dist. LEXIS 16116, at *1 (W.D. La. Mar. 6, 2009) (*citing Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)).

[48] Ex. B.

[49] Ex. M at 3 (acknowledging "receipt of the anti-spoliation letter").

[50] Ex. H (Feb. 6, 2020 Order).

[51] Ex. I (Corr. of Counsel).

[52] Ex. L at 3.

[53] Ex. M at 3.

And finally, Defendants also had a background state-law obligation to preserve disciplinary records. Per R.S. 44:36 and its implementing regulations, a sheriff's office "shall secure written approval from the state archivist (or his designee) prior to the disposing of any records of the agency."[54] Counsel for the Louisiana Secretary of State confirmed this, explaining that agencies are "not supposed to delete any records without the permission of the Archives."[55]

Here, JPSO has no records retention schedule for disciplinary records, and has never sought the state archivist's permission to destroy records. Accordingly, it should not be destroying <u>any</u> disciplinary records at <u>any</u> time – and especially not when it has also received an anti-spoliation letter, received an explicit court order, received multiple motions to preserve records, and represented to a judge that the "obligation of preservation is already in place."

## C.     Defendants breached their duty to preserve by continuing to destroy disciplinary records.

Defendants breached their duty to preserve records. They did not follow state law in seeking state archives permission before destroying records.[56] They did not implement a litigation hold to preserve disciplinary records upon receiving Plaintiff's anti-spoliation letter.[57] They did not implement a litigation hold to preserve disciplinary records after receiving the judge-signed preservation order.[58] They did not implement a litigation hold after receiving a motion specifically requesting preservation of disciplinary records.[59] They did not even implement a litigation hold when they argued to a court that "the preservation order should be denied as such obligation of preservation is already in place."[60]

---

[54] La. Admin. Code tit. 4, § XVII-901 (emphasis added). R.S. 44:405(A)(2) and 44:410 authorize the Secretary of State, through the state archivist, to issue regulations specifically governing procedures "for the disposal of records authorized for disposal," and to "prescribe policies and principles to be followed by state and local governmental agencies in the conduct of their records management programs."
[55] Ex. D (Dec. of William Most.)
[56] Ex. C.
[57] *Id*.
[58] *Id*.
[59] Ex. L
[60] Ex. M (Opposition) at 3. Emphasis added.

Thus, despite receiving a 29th JDC court order to preserve records, JPSO continued to destroy them. And although JPSO represented to a judge that the "obligation of preservation is already in place," JPSO continued to destroy disciplinary records of its officers.

It is unknown how many such documents were destroyed, because JPSO does not keep records of document destruction – in violation of state regulations.[61] But it is known that *some* Defendants' disciplinary records have been destroyed. Defendant Vega, for example, testified that he had "courtesy complaints that [JPSO's] Internal Affairs handles" but that they were "expunged" and "are no longer."[62]

**D.      Defendants' breach has prejudiced Plaintiffs because JPSO destroyed evidence relevant to Plaintiffs' claims – and then instructed witnesses not to answer questions about the destroyed evidence.**

The rule on spoliation sanctions "does not place a burden of proving or disproving prejudice on one party or the other . . . and placing the burden of proving prejudice on the party that did not lose the information may be unfair."[63] Instead, the Court retains "discretion to determine how best to assess prejudice in particular cases."[64] Ultimately, because the essence of spoliation is the loss of evidence which cannot be later reviewed, a party moving for relief under Rule 37(e)(1) "need not establish that a smoking gun email . . . was irretrievably destroyed. It is sufficient if the existing evidence plausibly 'suggests' that the spoliated [information] could support the moving party's case."[65]

In this case, Plaintiffs sought discovery of Defendants' disciplinary history for several reasons. First, because they have a claim against Sheriff Lopinto for the failure "to properly supervise, discipline or otherwise hold accountable deputies who failed to comply with the law."[66]

---

[61] La. Admin. Code tit. 4, § XVII-913 (agencies "shall document the destruction of their records by maintaining a certificate of destruction for all records requiring destruction approval from the state archives.").
[62] Ex. F at 13:20-14:2; 62:5-6.
[63] Fed. R. Civ. P. 37(e)(1), advisory committee's note to 2015 amendment.
[64] *Id.*
[65] *Karsch v. Blink Heallth Ltd.*, 17-CV3880, 2019 WL 2708125 at *21 (S.D.N.Y. June 20, 2019) (internal citations omitted).
[66] R. Doc. 1 at ¶ 305.

And second, because Defendants' disciplinary history may show individual officers' history of excessive restraint or force, or episodes casting doubt on credibility. That disciplinary history, however, is unavailable to Plaintiffs because JPSO has destroyed it.

During the parties' meet and confer, Defendants' counsel argued that any destruction of disciplinary documents is without prejudice because Plaintiffs have had the opportunity to ask the individual officers about their disciplinary histories at deposition. That is false, because Defendants' counsel *instructed a witness not to answer such questions:*

```
BY MR. CLARKE:
     Q.   Interrogatory Number 11 says state
whether you have ever been investigated by Internal
Affairs.  That's the first line.  Okay.  The answer
you put was, "Defendant Vega has not had any
Internal Affairs complaints."  That's false, right?
     A.   He just told me not to answer it.
     Q.   It's a different question.
          MR. ZIBILICH:
               We're getting into legal
          technicalities here.  I've said what I
          had to say.  You're not going to get
          him to say it's false.  He is a liar,
          he is this.  Don't answer that one.
          Y'all go take it up.
BY MR. CLARKE:
     Q.   You are going to answer it.  Have you had
Internal Affairs complaints?
     A.   I'm not answering it.                    67
```

Plaintiffs have thus been prejudiced because JPSO's counsel has destroyed Defendants' disciplinary records and <u>then instructed witnesses not to answer questions about the destroyed records</u>.

---

67 Ex. F at 64:1-19.

Furthermore, JPSO only has a policy of destroying <u>negative</u> information in its officers' personnel files. It preserves positive information like commendations for at least a decade or more. See Ex. G (2009 commendation letter for Defendant Chad Pitfield). As a result, Plaintiffs are prejudiced because the evidence available to them is completely slanted – there are decades of positive records about the individual Defendants, but only limited negative information.

**E.     Because Defendants destroyed evidence despite state law, federal law, and a court order, and because that destruction prejudiced Plaintiffs, this Court should order appropriate remedies.**

This Court has held that when evidence is "intentionally destroyed," an adverse inference is the "preferred sanction."[68] This adverse inference rule "derives from the common sense notion that a party's destruction of evidence which it has reason to believe may be used against it in litigation suggests that the evidence was harmful to the party responsible for its destruction."[69] Accordingly, to restore the prejudiced party, an adverse inference "plac[es] the risk of an erroneous judgment on the party that wrongfully created the risk."[70]

Here, Plaintiffs ask this Court to apply the sanctions it deems appropriate given Defendants' conduct. Plaintiffs suggest the following:

1. That Defendants be prohibited from putting on any positive evidence at trial from their personnel file;

2. That the jury be instructed that Defendant Joseph Lopinto, in his official capacity, destroyed evidence despite having a legal obligation to preserve it, and despite being ordered by a court to preserve it.

3. That the jury be instructed that Defendant Joseph Lopinto, in his official capacity, has a practice of preserving positive information about officers but illegally destroying negative information about officers.

4. That the jury be instructed that they can draw an adverse inference against Defendant Joseph Lopinto, in his official capacity, due to the destruction of evidence.

---

[68] *Connelly v. Veteran's Adminsitration Hospital*, 12-cv-02660-NJB-KWR, Rec. Doc. 48 at *8 (E.D. La., May 15, 2014), *citing Vodusek v. Bayline Marine Corp*., 71 F.3d 148, 155–56 (4th Cir. 1995); *Schmid v. Milwaukee Elec. Tool Corp*., 13 F.3d 76, 78 (3rd Cir. 1994) (reviewing the historical development of the spoilation of evidence doctrine).
[69] *Connelly, supra, citing Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998), *cert. denied*, 531 U.S. 1078 (2001).
[70] *Id.*

5.  Reasonable attorneys fees for this motion.

## V.      Conclusion

Because Defendants destroyed disciplinary records in the face of an anti-spoliation letter, an explicit court order, an acknowledged duty to preserve, and the background duty of preservation under state law, Defendants committed spoliation. Plaintiff's motion should be granted.

RESPECTFULLY SUBMITTED,

Andrew C. Clarke (TN BPR # 15409)
The Cochran Firm Midsouth
One Commerce Square, Suite 1700
(901) 523-1222 (Telephone)
aclarke@cochranfirmmidsouth.com

*/s/ William Most*
WILLIAM MOST (La. Bar No. 36914)
Most & Associates
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (504) 509-5023; williammost@gmail.com