```
 1              TWENTY-NINTH JUDICIAL DISTRICT COURT
 2                     PARISH OF ST. CHARLES
 3                       STATE OF LOUISIANA
 4
 5             IN RE JPSO ITEM NO. A-15489-20
 6
 7   CASE NO.:  20-0042                          DIVISION "E"
 8
 9           THE HONORABLE TIMOTHY S. MARCEL
10                            JUDGE
11
12      Transcript of the proceedings taken in Open Court at
13         Hahnville, Louisiana, on February 6, 2020.
14
15                        MOTION TO QUASH
16
17
18
19
20   APPEARANCES:
21           REPRESENTING DAREN AND DONNA PARSA:
22           WILLIAM B. MOST, ESQ.
             AMANDA L. HASS, ESQ.
23
24           REPRESENTING ST. CHARLES PARISH SHERIFF'S
             OFFICE:
25
             STEVEN M. MAUTERER, ESQ.
26
27           REPRESENTING JEFFERSON PARISH SHERIFF'S OFFICE:
28           LINDSEY M. VALENTI, ESQ.
29
30   REPORTED BY:  WANDA VICE-LOUPE, CCR
                   Official Court Reporter
31                 29th Judicial District Court
32
```

1

```
 1                    P R O C E E D I N G S
 2       THE COURT:
 3              Good afternoon.  This matter has been
 4       assigned the number A-15489, In Re JPSO.
 5              Set today is a hearing on a motion to
 6       quash filed by -- help me out, counsel.
 7       MR. MOST:
 8              Daren and Donna Parsa, the parents of
 9       the deceased.
10       THE COURT:
11              All right.  There we go.
12              Please make appearances.
13       MR. MOST:
14              William Most on behalf of Daren and
15       Donna Parsa.
16       MR. MAUTERER:
17              Good afternoon, Your Honor.  Steve
18       Mauterer on behalf of Greg Champagne, sheriff of
19       St. Charles Parish.
20       MS. VALENTI:
21              Good afternoon, Your Honor.  Lindsey
22       Valenti on behalf of Joseph P. Lopinto, III, in
23       his capacity as sheriff of Jefferson Parish.
24       THE COURT:
25              All right.
26       MS. HASS:
27              Your Honor, Amanda Hass also here on
28       behalf of the Parsas.
29       THE COURT:
30              Okay.  Very good.
31              All right.  I have read the memoranda
32       filed in support of and against the motion to
```

2

```
1        quash.  Would you like to make argument?
2     MR. MOST:
3            Yes, Your Honor.
4     THE COURT:
5            Okay.  Proceed.
6     MR. MOST:
7            In brief, Your Honor, on January 19th,
8     Mr. P████ died in the custody of Jefferson
9     Parish Sheriff's Office in Metairie, on a
10    Sunday, at a laser tag parking lot.  On the
11    21st, the Jefferson Parish Sheriff's Office and
12    the St. Charles Parish Sheriff's Office together
13    obtained a warrant, and the reasons given in the
14    warrant are for pending death investigation and,
15    quote, a generalized law enforcement inspection.
16    And, Your Honor, it is perfectly appropriate,
17    and the parents of Mr. P████ have no objection
18    to an investigation into the death of their son.
19            An investigation without probable cause
20    can take many number of forms, including talking
21    to witnesses, obtaining video of the incident,
22    which we understand they have obtained.
23    However, once there is compulsory process in the
24    form of a search warrant or an arrest warrant,
25    both the U.S. Constitution and the Louisiana
26    Constitution and the Code of Criminal Procedure
27    require that there be identified probable cause
28    of a specific crime before a search warrant is
29    proper, and here none was identified.  And
30    through all our communications, they have never
31    suggested that there is a criminal investigation
32    pending, only a death investigation.
```

3

```
 1              A death is not a crime.  Louisiana law
 2       sets out a process for investigation of deaths
 3       that are not crimes, and that's assigned to the
 4       coroner.  In Revised Statute 13:5713, there's a
 5       whole process by which the coroner may subpoena
 6       documents to obtain information for an
 7       investigation into a death that is not a crime.
 8       However, without probable cause of a specified
 9       crime, it is not proper for a sheriff's office
10       to use a search warrant or an arrest warrant or
11       any other compulsory criminal process as
12       outlined in the Constitution.
13              Beyond that, I'll take any questions
14       Your Honor has.
15  THE COURT:
16              Not yet.
17  MR. MOST:
18              Thank you.
19  THE COURT:
20              Let me hear from either --
21  MR. MAUTERER:
22              Good afternoon, Your Honor.  I do have
23       the original memorandum.  The clerk's office
24       told me downstairs I could file it in open
25       court, but I know the Court has it.
26  THE COURT:
27              Faxed copy is in the record.
28  MR. MAUTERER:
29              Because there's two sheriffs' offices
30       involved, Your Honor, and mainly this is
31       Jefferson Parish's investigation, I'm going to
32       let Ms. Valenti argue about the investigation
```

4

```
 1          and the search warrant.  But since we were the
 2          ones that were ordered to show cause today --
 3          you know, this is a bizarre circumstances.
 4     THE COURT:
 5               That's why we're here.
 6     MR. MAUTERER:
 7               We could not find any section of the
 8          Code of Criminal Procedure that allows for such
 9          a process for private attorneys and litigants to
10          come into a criminal proceeding that hasn't even
11          been started yet and in somewhat slow down or
12          impede a criminal investigation, you know.
13          Without grounds for it, I don't know how the
14          Court could grant the relief that they're asking
15          this Court to grant.
16     THE COURT:
17               Okay.
18     MR. MAUTERER:
19               Besides there being an absence in the
20          law, in the Code, you know, Judge, as we pointed
21          out in our memorandum, we don't think the
22          parents have standing.  And while it's -- it
23          seems silly in some ways to say the parents of
24          the deceased child doesn't have standing, but
25          the law says once someone has passed away, you
26          have to have a succession representative
27          appointed to file any litigation.
28               I don't know if this is litigation or
29          not, quite honestly, because it's not a civil
30          context and it's unprecedented for the motion
31          that we have.  But if we have to look at it, we
32          have no succession representative appointed by
```

                                5

```
 1         any court.  We have a motion filed that has no
 2         support in the law that we could find to allow
 3         for it to be.  And when the Court looks at
 4         whether or not the parents have standing, the
 5         jurisprudence that we cited says that the actual
 6         persons have to have some substantial interest
 7         in litigation.  We don't have litigation.  So
 8         for those reasons, you know, the parents don't
 9         have standing.
10                 They also argue in their motion to
11         quash, but not in their arguments today, that
12         for some way or shape or form that the Family
13         Education Relief Act prohibits law enforcement
14         agencies from getting the records from the
15         school.  Well, as we pointed out, the federal
16         statute has a counterpart in the state law.
17         We've cited that.  Both federal law and state
18         law seem to protect personally identifiable
19         information, which is, as pointed out in the
20         statutes, the name, address, Social Security
21         numbers, things that both law enforcement
22         agencies already possess.  It doesn't seem
23         applicable.  And even if it was, there's
24         exceptions for law enforcement investigation
25         subpoenas, i.e., a search warrant.
26                 So for those reasons, we don't think
27         this is procedurally proper.  We don't think
28         there's standing.  We don't think there's any
29         protection under the federal statute or the
30         state equivalent to shield our criminal
31         investigative search warrant.  But for those
32         reasons, I'm going to turn it over to
```

```
 1          Ms. Valenti to argue about the merits of the
 2          search warrant.
 3          THE COURT:
 4                  Thank you.
 5          MS. VALENTI:
 6                  Good afternoon again, Judge.  Just
 7          picking up where Mr. Mauterer had left off,
 8          opposing counsel in their motion consistently
 9          argues that there is an invasion of privacy and
10          that the parents have the standing to defend
11          that privacy.  However, as Your Honor is aware,
12          that right to privacy does not survive the death
13          of an individual, and those rights are not
14          assignable.
15                  Additionally, in their motion they cite
16          that any person adversely affected has standing
17          to challenge the illegality of the search
18          warrant.  However, they don't articulate any
19          reasons or identify any ways they've been
20          adversely affected for a sheriff's office to
21          investigate the circumstances that led to their
22          son's death.
23                  Specifically addressing the argument
24          that there's no probable cause or that the
25          substance of the affidavit and application and
26          the search warrant itself was not sufficient, as
27          you're aware, the documents submitted set forth
28          the place to be searched, which was Destrehan
29          High School.  It listed the documents and the
30          evidence to be seized, and the lawful reason for
31          the search was to obtain evidence to aid in the
32          determination of the circumstances that led to
```

7

```
 1        the death.
 2              We -- when the sheriff's office jointly
 3        applied for this search warrant, which was
 4        subsequently granted, the Jefferson Parish
 5        Sheriff's Office is and has been conducting a
 6        police investigation.  This death so far, since
 7        the coroner has not identified the cause and
 8        manner of death, is considered unclassified.
 9              The Jefferson Parish Sheriff's Office
10        routinely investigates unclassified death until
11        such time that the coroner determines whether or
12        not it's obviously a homicide, a suicide, or a
13        natural cause death.  And just by virtue of
14        there not being a determination doesn't prohibit
15        the sheriff from collecting any evidence.
16        Obviously, time is of the essence in collecting
17        that evidence:  speaking to witnesses,
18        collecting readily available evidence, and any
19        information regarding factors that may have
20        contributed to his death.
21              As mentioned in our memorandum in
22        opposition to the motion to quash, it's the
23        practice of the Jefferson Parish Sheriff's
24        Office to refer any and all in-custody deaths to
25        the District Attorney for review.
26              Counsel has identified that it was, in
27        fact, an in-custody death.  By virtue of that
28        alone would be sufficient reason for us to be
29        able to continue with our investigation.  And
30        asking us to wait days, weeks, or months to
31        start collecting this information that
32        ultimately had to be turned over to the office
```

8

```
 1          of the District Attorney is unreasonable.
 2                  The coroner, like I mentioned, did not
 3          make a determination, and additional tests are
 4          being performed with no expectation of a time
 5          frame for when that might be completed and
 6          results provided.
 7                  Again, as it relates to this case, the
 8          review of the school records is important to
 9          establish behavioral patterns and school
10          protocols as it relates to the deceased minor.
11          You know, again, as I mentioned, the Court
12          should be aware that while on scene and again in
13          a subsequent interview, his mother has sought to
14          downplay the extent of her son's condition, and,
15          as a result, the Jefferson Parish Sheriff's
16          Office believes that there's material evidence
17          in these records sought from the high school
18          that are directly relative to this
19          investigation.
20                  And lastly, I just want to mention, I
21          know that counsel has pointed to Revised Statute
22          13:5713 and suggesting that that places the sole
23          responsibility of an investigation into a death
24          into the hands of the coroner.  I don't believe
25          that that's what the statute is suggesting.  I
26          think it outlines the duties of the coroner and
27          suggests or requires the coroner in certain
28          circumstances to perform those duties.  It
29          doesn't give him the sole responsibility, and it
30          certainly doesn't prohibit the sheriff from
31          conducting a contemporaneous law enforcement
32          investigation.
```

9

```
 1              So for all of the reasons stated in our
 2       motion and today in court jointly with the
 3       St. Charles Parish Sheriff's Office, we ask this
 4       Honorable Court to lift the stay and deny the
 5       motion to quash the search warrant.
 6       THE COURT:
 7              All right.
 8       MS. VALENTI:
 9              Thank you.
10       MR. MOST:
11              Your Honor, could I briefly respond?
12       THE COURT:
13              Yes, absolutely.
14       MR. MOST:
15              I'll take the issues one by one, just
16       briefly:  procedure, the privacy issue and
17       standing issue, and then the investigation
18       issue.
19              Regarding procedure, there is a
20       procedure.  So Code of Criminal Procedure
21       Section 531 allows for motions to quash, in
22       broad language, for any defense prior to trial
23       aside from a guilty plea or not guilty plea.
24       And so courts have allowed for a motion to
25       quash, to quash a search warrant, prior or even
26       in the absence of a criminal proceeding.  One
27       such case is *In Re Matter Under Investigation*,
28       which is 178 So.3d 317.  And that was a case in
29       which the Court of Appeal, the Third Circuit,
30       upheld a trial court quashing of the search
31       warrant and returning of seized items even in
32       the absence of a criminal proceeding.  So there
```

```
 1            is precedent for this.  This is a procedure.
 2                    Second, with regard to standing,
 3            Article 1, Section 5 of the Louisiana
 4            Constitution says that any party adversely
 5            affected has standing to challenge process.  And
 6            the U.S. Supreme Court in National Archives v.
 7            Favish, which is 541 U.S. 157, articulated that
 8            family members themselves have a privacy
 9            interest in information about their deceased
10            relatives.  I think this is something we can all
11            understand.  If your child dies, it's not just
12            the child's privacy that is invaded by
13            publication of information about that child, but
14            it's your own privacy as well, and the U.S.
15            Supreme Court identified that.  And so under
16            Louisiana Constitution, the parents do have
17            standing, even in the absence of a succession
18            representative, because it is their own privacy
19            that's being invaded.
20                    And, finally, with regard to
21            investigation, we are absolutely not asking this
22            Court to stop any investigation.  We are not
23            saying the sheriff's office can't investigate
24            this death.  We're just saying they cannot use
25            the compulsory process of a search warrant to do
26            so.  So they are 100 percent welcome, and the
27            family encourages them, wants them, to
28            investigate the death of their son, but they
29            don't think that the -- their son's grades or
30            his school records should be compelled in the
31            absence of probable cause that a crime was
32            committed, and nothing here we've heard today
```

```
1        suggests that a crime was committed or
2        alleged.
3                Thank you.
4   THE COURT:
5                Okay.  What has been presented to the
6        Court over the last couple of weeks was not the
7        run-of-the-mill request for a search warrant or
8        arrest warrant.  However, on close examination
9        of the affidavit of probable cause, the Court
10       found that the death of a human being under
11       circumstances where someone else could be
12       culpable -- or someone could be culpable for
13       that death rises to the level of criminal
14       acts.  And given what was described in the
15       affidavit of probable cause, the Court found a
16       connexity between that statement and the
17       information sought in the warrant.
18               I granted this -- I set this for
19       hearing because of the unusual presentation of
20       this case.  I wanted to make sure that I hadn't
21       overlooked something in granting the warrant,
22       and the Court is satisfied that the warrant was
23       properly issued.
24               The motion to quash is denied.  The
25       stay is lifted.
26  MR. MOST:
27               Thank you, Your Honor.
28  MR. MAUTERER:
29               Thank you, Your Honor.
30  THE COURT:
31               Thank you.  Prepare an order to that
32       effect, counsel, for --
```

12

```
 1      MR. MAUTERER:
 2              Yes, Your Honor.
 3      THE COURT:
 4              Thank you.
 5      MR. MAUTERER:
 6              Just for clarity, Judge, the original
 7      doesn't need to be filed?  The one that's in the
 8      record is sufficient for the Court or --
 9      THE COURT:
10              The memo?
11      MR. MAUTERER:
12              Memo.
13      THE COURT:
14              File the original.
15      MR. MAUTERER:
16              I don't want to walk off with it and
17      then --
18      THE COURT:
19              No, you don't want to do that, because
20      the record needs to be complete.
21              Thank you, counsel.  Y'all have a good
22      day.
23       (Whereupon, the matter was concluded.)
24                      * * * * *
```

13

**REPORTER'S CERTIFICATE**

PARISH OF ST. CHARLES

STATE OF LOUISIANA

    This certificate is valid only for a transcript accompanied by my original signature and original required seal on this page.

    I, Wanda Vice-Loupe, CCR, Official Court Reporter, in and for the State of Louisiana, employed as an official court reporter by the Twenty-Ninth Judicial District Court for the State of Louisiana, as the officer before whom this proceeding and/or testimony was taken, do hereby certify that this proceeding and/or testimony was reported by me in steno-type shorthand reporting, was prepared and transcribed by me or under my personal direction and supervision, on the 6th day of February 2020, and is a true and accurate transcript to the best of my ability and understanding; that the transcript has been prepared in compliance with transcript format guidelines required by statute or by rules of the board or by the Supreme Court of Louisiana; and that I am not of counsel nor related to counsel or the parties herein, nor am I in any way interested in the outcome of this matter.

                                _____
                                WANDA VICE-LOUPE, CCR
                                OFFICIAL COURT REPORTER, #88010
                                29TH JUDICIAL DISTRICT COURT