## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DONNA LOU, ET AL**                     *               **CIVIL ACTION**

**VERSUS**                                         *               **NO. 21-80**

**SHERIFF JOSEPH P. LOPINTO, III, ET AL**   *   **SECTION "D-2"**

\*       \*       \*       \*       \*       \*       \*       \*       \*

## MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS, R. DOC.  105

**MAY IT PLEASE THE COURT:**

Defendant, Sheriff Joseph P. Lopinto, III, in his official capacity as the Sheriff of Jefferson Parish ("the Sheriff"), opposes Plaintiffs' Motion for Spoliation Sanctions (R. Doc. 105).

Plaintiffs misstate the law and relevant legal standard. They seek to have this Court believe that the Sheriff was obligated to preserve records and destroyed them. Plaintiffs' averments are demonstrably false and warrant sanctions.

First, the Sheriff had no duty to preserve any Internal Affairs records beyond the period prescribed by state law.  Second, there is no evidence that any Internal Affairs records were actually destroyed and the evidence is to the contrary. Third, there is no evidence that the Sheriff acted in bad faith or with a culpable mind. Fourth, there is no evidence that any as yet unidentified Internal Affairs record was

1

relevant to the case and the inference sought and that its alleged destruction prejudiced the Plaintiffs.

## BRIEF STATEMENT OF THE BACKGROUND

### I.   THE INCIDENT SUED UPON

This case involves the death of a minor (E.P.) who violently attacked his father and the responding Deputy that was called to the scene in the parking lot of the Westgate Shopping Center in Metairie, La. on January 19, 2020.

The call for service was made by a horrified onlooker. R. Doc. 1.

The Defendant J.P.S.O. Deputies were called to the scene based upon a report from a business manager that E.P. was violently out of control and severely beating his own father, Plaintiff, in the parking lot.

Plaintiff, Mr. Darren Parsa, E.P.'s father and victim, sustained severe injuries.

The Defendant J.P.S.O. Deputies arrived to find a horrifying scene.

E.P. had severely injured his father. E.P. had bitten his fathers face, leaving an open wound and other obvious injuries and trauma.

The Defendant J.P.S.O. Deputies did as best they could to manage E.P..

E.P. never stopped resisting the Deputies' efforts.

## II.    THE PRESENT MOTION

Plaintiffs have moved for sanctions upon submitting that the Sheriff failed to preserve unidentified Internal Affairs ("IA") records of the Defendants. R. Doc. 105.

Plaintiffs' pray for the following relief:

1. That Defendants be prohibited from putting on any positive evidence at trial from their personnel file;

2. That the jury be instructed that Defendant Joseph Lopinto, in his official capacity, destroyed evidence despite having a legal obligation to preserve it, and despite being ordered by a court to preserve it;

3. That the jury be instructed that Defendant Joseph Lopinto, in his official capacity, has a practice of preserving positive information about officers but illegally destroying negative information about officers;

**4. That the jury be instructed that they can draw an adverse inference against Defendant Joseph Lopinto, in his official capacity, due to the destruction of evidence;**

5. Reasonable attorneys fees for this motion.

R. Doc. 105-1, p. 12-13 (emphasis added).

It would be a profound understatement to say that Plaintiffs misrepresent the facts in support of their Motion. It is also appropriate at this time to bring to the Court's attention that this is by no means the first time in this case that the

Plaintiffs have advanced a frivolous Motion for the purposes of harassing the Sheriff gratuitously.

## III.   FACTUAL BACKGROUND

Plaintiffs' statement of the factual background is spurious.

First, Plaintiffs' January 25, 2020, "Anti-Spoliation Letter" (attached as Exhibit A to Plaintiffs' Motion, R. Doc. 105-5) does not even remotely mention IA files, or for that matter any Personnel, Payroll, or any other file similar in kind to IA files. *See* January 25, 2020 letter, attached as Exhibit 1. On the contrary, any fair reading would lead one to the conclusion that Plaintiffs were seeking to preserve the evidence collected on scene of and during the investigation into E.P.'s death. *Id*.  Specifically, the "Anti-Spoliation Letter" requested that the following evidence be "retained:" "All security footage; All footage obtained from in-car cameras ("dash cams"), body-worn cameras, or any other recording device; Text messages, emails, and voicemails; Witness accounts, whether documented on paper, electronically, or otherwise; All records related to the investigation into Mr. s death; 911 records; Statements to the public or press; All paper records; All other evidence." Exhibit 1. Nothing in the foregoing would put any rational person on notice that Plaintiffs were seeking to preserve wholly disconnected, irrelevant IA records.

Second, and more egregious, Plaintiffs attempt to have this Court believe that they were under Court Order to preserve IA files. This is demonstrably false.

Again, on the contrary, the Motion filed in the 29ᵗʰ J.D.C. was DENIED. *See* Final Judgment, attached as Exhibit 2. Plaintiffs' reference to that Court's interlocutory Order staying the matter until it could be heard, R. Doc. 105-11, is misleading at best and an attempted fraud upon the Court at worst.

With regard to Plaintiffs' motion filed in the 24ᵗʰ J.D.C., same was OPPOSED by the JPSO, *see* Memorandum in Opposition attached as Exhibit 3, and the matter was never heard due to the COVID pandemic. Plaintiffs, obviously realizing their folly, never moved to have the matter reset and it died on the vine.

There was never any Order from any Court regarding the preservation of ANY evidence, let alone IA files. Period.

Plaintiffs knew this because on **July 12, 2020**, Plaintiffs sent a public record request to the JPSO asking for "[a] copy of the personnel file, training records, and any disciplinary, complaint, or internal affairs records for any officer who made physical contact with [E.P.] prior to or during his death." *See* July 12. 2020 PRA Request, attached as Exhibit 4.

The Sheriff responded by letter dated **August 12, 2020**. In pertinent part, the Sheriff responded that "Pursuant to Louisiana Revised Statute 44:11 and *East*

*Bank Consolidated Special Service Fire Protection Dist. v. Crossen,* 04-838 (La.App 5 Cir. 12/28/04), 892 So.2d 666, certain information has been redacted from the personnel files. In addition to information being redacted, this office has removed certain documents including fingerprints, law enforcement credentials, and field training evaluations and confidential promotional testing. Please be advised that **there are no sustained complaints in the internal affairs files of the officers whose personnel file has been provided by way of this response**." *See* August 12, 2020 PRA Response Letter, attached as Exhibit 5 (emphasis added).

By confirmation emails on **August 13 and 14, 2020** between counsel for Plaintiffs and representatives of the Sheriff, it was confirmed that "there were no excessive force complaints - sustained or unsustained - against the officers involved." *See* Email Chain, attached as Exhibit 6.

Plaintiffs must have been satisfied with the responses, as no further action was taken by Plaintiffs on their request under the Public Records Act. This Court can no doubt feel assured that had Plaintiffs felt slighted in any way vis-a-vis their request, they would have taken further action.

Plaintiffs filed suit on **January 14, 2021**. R. Doc. 1.

The deposition of Deputy Nicholas Vega, which, for reasons not known or comprehensible, prompted Plaintiffs' Motion, was held on **September 20, 2022**.

Plaintiffs, again, take Deputy Vega's testimony entirely out of context and wholly misrepresent same. Plaintiffs refer to a snippet of a 179 page deposition, distort its meaning and context, and argue that "Plaintiffs have thus been prejudiced because JPSO's counsel has destroyed Defendants' disciplinary records and then instructed witnesses not to answer questions about the destroyed records." *See* Plaintiffs' Memorandum, R. Doc. 105-1, p. 12.

There is no testimony in Deputy Vega's entire 179 page deposition transcript, R. Doc. 105-9, to suggest that any of his IA records **from the JPSO** were destroyed. The **relevant** colloquy was thus:

> Q. If you go to Interrogatory Number 11, it says please state if you've ever been investigated by Internal Affairs, GIB, Administration, or any other division of any law enforcement agency, including the JPSO, which is empowered to investigate misconduct, complaints, or compliance with policy. You see that?
>
> A. **Correct**.
>
> Q. And your answer under oath was that you never had an Internal Affairs complaint, correct?
> A. **Correct**.
>
> Q. **And you understand this is not just asking about JPSO, this question**?
>
> A. **No. I assumed that it was at the time**.

R. Doc. 105-9, at 11:16-12:4.

It is clear to any honest person from the foregoing colloquy, taken in the context of the other record evidence including the public records response (*supra*), that Deputy Vega answered both the Interrogatory and the question at deposition truthfully. Deputy Vega is unaware of any IA complaints **with the JPSO**, and there is no evidence that any such records were destroyed **by the JPSO**.

Plaintiffs take out of context Deputy Vega's testimony that there may have been records from Deputy Vega's **prior employment** of which he is unaware but that may have been expunged under the existing law (*infra*).

Nonetheless, on **October 14, 2022**, in-house counsel for the Sheriff Lindsey Valenti tasked Deputy Stacey Champagne with conducting an audit of the payroll records as it relates to the Defendants Shannon Guidry, Ryan Vaught, Manuel Estrada, Nick Vega, Steven Mehrtens, Chad Pitfield, Myron Gaudet and Keith Dowling. *See* Affidavit of Stacey Champagne, attached as Exhibit 7. Deputy Champagne was specifically asked to audit the records to determine if any of the employees were absent from work due to serving suspension days. *Id*. As a result of her search, she was able to determine and provide documentation that none of the listed employees served suspension days between the dates of **April 1, 2013** and **October 14, 2022**. *Id*. This establishes that no Defendant faced any significant disciplinary action anywhere near or after the incident sued upon.

## LAW AND ARGUMENT

First, the Sheriff had no duty to preserve any IA records.  Second, there is no evidence that any IA records were actually destroyed and the evidence is to the contrary. Third, there is no evidence that the Sheriff acted in bad faith or with a culpable mind. Fourth, there is no evidence that any as yet unidentified IA record was relevant to the case and the inference sought and that its alleged destruction prejudiced the Plaintiffs.

## IV.   LEGAL STANDARD

As with the facts, Plaintiffs misrepresent the applicable legal standard. Plaintiffs would have the Court believe that it is a simple tort analysis whereby the Court determines duty, breach, harm. Once again, the opposite is true. Plaintiffs have moved for this Court to exercise its inherent powers. When a Court "is proceeding pursuant to its inherent authority, [it] is necessarily confined to instances of bad faith or willful abuse of the judicial process." *Ashton v. Knight Tramp., Inc.*, 772 F.Supp.2d 772, 800-801 (N.D. Tex. 2011) (J. Boyle). The spoliation of evidence doctrine governs the **intentional** destruction of evidence. *Menges v. Cliffs Drilling Co.*, No. CIV. A. 99-2159, 2000 WL 765082, at *1 (E.D. La. June 12, 2000).

The Fifth Circuit recently succinctly summarized the law applicable to

spoliation of evidence as follows:

> Allegations of spoliation, including the destruction of evidence in pending or reasonably foreseeable litigation, are addressed in federal courts through the inherent power to regulate the litigation process, if the conduct occurs before a case is filed or if, for another reason, there is no statute or rule that adequately addresses the conduct… A plaintiff alleging spoliation must establish that the defendant intentionally destroyed the evidence for the purpose of depriving opposing parties of its use. It is insufficient to show that a party acted negligently, rather than intentionally, in spoliating the evidence.
>
> A spoliation claim has three elements: (1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith.
>
> A party seeking the sanction of an adverse-inference instruction based on spoliation of evidence must establish that: (1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 573-74 (5th Cir. 2020)(cleaned up).

A finding of spoliation does not end the inquiry; rather, if a party intentionally destroys evidence, the trial court **may** exercise its discretion to impose sanctions on the responsible party. *Id.* (emphasis added). The seriousness of the sanctions that a court may impose depends on the consideration of:

(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*Menges,* 2000 WL 765082, at *1. (quoting *Schmid,* 13 F.3d 76, 78 (3d Cir. 1994)).

## V.   ANALYSIS

### A.   PLAINTIFFS FAILED TO SHOW THAT THE SHERIFF HAD A DUTY TO PRESERVE THE RECORDS AT ISSUE

Indeed, nothing in the record demonstrates that the Sheriff was obligated to preserve any IA files in contravention of JPSO Policy and State law.

First, Plaintiffs' January 25, 2020, "Anti-Spoliation Letter" (attached as Exhibit A to Plaintiffs' Motion, R. Doc. 105-5) does not even remotely mention IA files, or for that matter any Personnel, Payroll, or any other file similar in kind to IA files. *See* January 25, 2020 letter, attached as Exhibit 1.

On the contrary, any fair reading would lead one to the conclusion that Plaintiffs were seeking to preserve the evidence collected on scene and during the investigation into E.P.'s death. *Id.*   Specifically, the "Anti-Spoliation Letter" requested that the following evidence be "retained:" "All security footage; All footage obtained from in-car cameras ("dash cams"), body-worn cameras, or any other recording device; Text messages, emails, and voicemails; Witness accounts,

whether documented on paper, electronically, or otherwise; All records related to the investigation into Mr. s death; 911 records; Statements to the public or press; All paper records; All other evidence." Exhibit 1.

Second, Plaintiffs egregious attempt to have this Court believe that the Sheriff was under Court Order to preserve IA files is in bad faith. This suggestion is demonstrably false. Again, the Motion filed in the 29th J.D.C. was DENIED. *See* Judgment, attached as Exhibit 2.

With regard to Plaintiffs' motion filed in the 24th J.D.C., same was OPPOSED by the JPSO, *see* Memorandum in Opposition attached as Exhibit 3, and the matter was never heard due to the COVID pandemic. Plaintiffs, no doubt knowing that it was without merit, never moved to have the matter heard.

There was never any Order from any Court ordering the Sheriff to preserve IA files.

Further, and notwithstanding the foregoing, no such records existed at the time.

On **July 12, 2020**, Plaintiffs sent a public record request to the JPSO asking for certain records, which included "[a] copy of the personnel file, training records, and any disciplinary, complaint, or internal affairs records for any officer who

made physical contact with [E.P.] prior to or during his death." *See* July 12. 2020 PRA Request, attached as Exhibit 4.

The Sheriff responded by letter dated **August 12, 2020**. In pertinent part, the Sheriff responded that "Pursuant to Louisiana Revised Statute 44:11 and *East Bank Consolidated Special Service Fire Protection Dist. v. Crossen,* 04-838 (La.App 5 Cir. 12/28/04), 892 So.2d 666, certain information has been redacted from the personnel files. In addition to information being redacted, this office has removed certain documents including fingerprints, law enforcement credentials, and field training evaluations and confidential promotional testing. Please be advised that **there are no sustained complaints in the internal affairs files of the officers whose personnel file has been provided by way of this response**." *See* August 12, 2020 PRA Response Letter, attached as Exhibit 5 (emphasis added).

By confirmation emails on **August 13 and 14, 2020** between counsel for Plaintiffs and representatives of the Sheriff, it was confirmed that "there were no excessive force complaints - sustained or unsustained - against the officers involved." *See* Email Chain, attached as Exhibit 6.

The inescapable fact is that there was no duty to preserve any IA files.

The Court can end its inquiry here.

Plaintiffs' Motion should be DENIED.

**B.     THERE IS NO EVIDENCE THAT ANY IA FILES WERE DESTROYED**

This is what is most peculiar about Plaintiffs' Motion. There is absolutely no evidence that the Sheriff destroyed any IA files related to **this case**.

Further, the record suggests otherwise.

As of **August 12, 2020**, the Defendants had no sustained IA files on record. Exhibits 5, 6.

The law, and JPSO Policy require that IA files be preserved for three years (see *infra*).

The deposition of Deputy Nicholas Vega, which prompted Plaintiffs' ill-conceived Motion, was held on **September 20, 2022**.

No IA files that would have been made between **August 12, 2020** and the present would be subject to destruction.

Moreover, Plaintiffs do not point to the testimony of a single Defendant in their depositions that suggest that they were disciplined, but that no record of the discipline exists.

Plaintiffs, again, take Deputy Vega's testimony entirely out of context and wholly misrepresent same. Plaintiffs refer to a snippet of a 179 page deposition, distort its meaning and context, and argue that "Plaintiffs have thus been prejudiced because JPSO's counsel has destroyed Defendants' disciplinary records

and then instructed witnesses not to answer questions about the destroyed records."
*See* Plaintiffs' Memorandum, R. Doc. 105-1, p. 12.

There is no testimony in Deputy Vega's entire 179 page deposition transcript, R. Doc. 105-9, to suggest that any of his IA records **from the JPSO** were destroyed. The **relevant** colloquy was thus:

> Q. If you go to Interrogatory Number 11, it says please state if you've ever been investigated by Internal Affairs, GIB, Administration, or any other division of any law enforcement agency, including the JPSO, which is empowered to investigate misconduct, complaints, or compliance with policy. You see that?
>
> A. **Correct**.
>
> Q. And your answer under oath was that you never had an Internal Affairs complaint, correct?
> A. **Correct**.
>
> Q. **And you understand this is not just asking about JPSO, this question**?
>
> A. **No. I assumed that it was at the time**.

R. Doc. 105-9, at 11:16-12:4.

It is clear to any honest person from the foregoing colloquy, taken in the context of the other record evidence including the public records response and affidavit of Deputy Champagne (*supra*), that Deputy Vega answered both the Interrogatory and the question at deposition truthfully. Deputy Vega is unaware of

any IA complaints **with the JPSO**, and there is no evidence that any such records were destroyed **by the JPSO**.

Plaintiffs take out of context Deputy varga's testimony that there may have been records from Deputy Varga's **prior employment** of which he is unaware but that may have been expunged under the existing law (*infra*).

**Plaintiffs cannot do indirectly what they failed to do directly through their own due diligence. If Plaintiffs want records from Deputy Vega's prior employment, they can avail themselves of numerous options to obtain them. They cannot, however, ask this Court to sanction the Sheriff for not producing the records of another agency.**

In summation, there is simply no evidence to suggest that any records were destroyed **in this case.**

If Plaintiffs have a broader issue with the state law on records retention, this is not the venue to address it.

The Court can end its inquiry here.

Plaintiffs' Motion should be DENIED.

### C.   PLAINTIFFS FAILED TO SHOW THAT THE SHERIFF ACTED IN BAD FAITH

Plaintiffs have sought multiple sanctions in addition to the adverse inference sanction (addressed in the following section). R. Doc. 105-1, p. 13-14.

For the other sanctions sought, not the adverse inference, Plaintiffs must still prove that the Sheriff acted in bad faith. Because the Court "is proceeding pursuant to its inherent authority, [it] is necessarily confined to instances of bad faith or willful abuse of the judicial process." *Ashton*, 772 F.Supp.2d 772, 800-801.

"Bad faith requires destruction for the purpose of depriving the adversary of the evidence." *Coastal Bridge Co.*,  833 F. App'x 565, 582; citing *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005).

In Consolidated *Aluminum Corp. v. Alcoa, Inc.*, the court explained, "[f]or the spoliator to have a 'culpable state of mind,' it must act with fraudulent intent and a desire to suppress the truth." 244 F.R.D. 335, 344 (M.D. La. 2006). Moreover, in *Thomas v. Tangipahoa Parish School Board*, the court explained:

> The Fifth Circuit has not further defined "bad faith" in the spoliation context, but has defined it under Louisiana law as
>
> [t]he opposite of "good faith," generally implying or involving actual or constructive fraud, or a design to mislead and deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive. The term bad faith means more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives.

No. 14-2814, 2016 WL 3542286, at *2 (E.D. La. June 29, 2016)(quoting *Industrias Magromer Cuerosy Pieles S.A. v. Louisian*a, 293 F.3d 912, 922 (5th Cir. 2002)).

17

Importantly for this case, a defendant's adherence to a standard operating procedure may counter a contention of bad faith conduct. *See Vick v. Tex. Emp't Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975).

Indeed, it is uncontested that the Sheriff only destroys IA files after three years across the board pursuant to JPSO Policy and Louisiana state law.

Plaintiffs attach to their Motion SOP 22 of the JPSO Standard Operating Procedures, which, at Section IV provides: "The Internal Affairs Division will maintain all disciplinary records for a period of three (3) years. These records will be automatically expunged on a monthly basis from the date of complaint for IAD cases and citizen complaints and the date of occurrence for Disciplinary Action Reports. **NOTE**: Records will not be expunged in the following incidents until these matters are concluded: 1. Litigation has been instituted against the employee or the department arising from the incident." R. Doc. 105-4, at p. 8-9.

This Policy tracks the Louisiana Public Records law which, again, Plaintiffs misstate.

La. R.S. 44:36(A) provides: "All persons and public bodies having custody or control of any public record, other than conveyance, probate, mortgage, or other permanent records required by existing law to be kept for all time, shall exercise diligence and care in preserving the public record for the period or periods of time

18

specified by law for public records. **In all instances where the law does not specify a particular period, public records shall be preserved and maintained for a period of at least three years from the date on which the public record was made**, except when an agency, as defined in R.S. 44:402, has an approved retention schedule pursuant to Subsection B of this Section. (Emphasis added).

Here, the JPSO does not have "an approved retention schedule pursuant to Subsection B of this Section." *Id*. Therefore, it is only required to preserve public records "**for a period of at least three years from the date on which the public record was made**." *Id*. (emphasis added).

The undisputed evidence in this case, even as argued by Plaintiffs, is that IA files are destroyed as a matter of law and Policy. It has nothing to do with **any** case, let alone **this case.**

Therefore, Plaintiffs are unable to establish that any IA record was destroyed in bad faith.

Plaintiffs' Motion should be DENIED.

### D.    PLAINTIFFS FAILED TO SHOW THAT THE SHERIFF HAD A CULPABLE STATE OF MIND

Plaintiffs have also prayed for an adverse inference against the Sheriff. R. Doc. 105-1, p. 13.

Thus, the Court must determine whether the Sheriff acted with a culpable

state of mind. The Fifth Circuit provided the following guidance for the court's determination of culpability:

> The potential levels of culpability range from no culpability to bad faith, with intervening levels including negligence, gross negligence, and willfulness. Negligence is not enough to support the imposition of sanctions for spoliation, "for it does not sustain an inference of consciousness of a weak case." ... Accordingly, a party seeking sanctions is not entitled to an adverse inference instruction unless that party can show that its adversary intentionally and in bad faith disposed of the evidence...Bad faith requires destruction for the purpose of depriving the adversary of the evidence.

*Coastal Bridge*, 833 Fed.Appx. at 574. (cleaned up); see also *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015)("Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence."); *King v. Illinois Cent. R. R.*, 3F.3d 550, 556 (5 Cir. 2003)("An adverse inference based on the destruction of potential evidence is predicated on the "bad conduct" of the defendant."); *Ford v. Potter*, 354 Fed. Appx. 28, 33 (5th Cir. 2009) (unpublished)("...an [adverse] inference is predicated on the "bad conduct" of the defendant."); *United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000) ("An adverse inference drawn from the destruction of records is predicated on bad conduct"); *Vicky. Texas Employment Com'n*, 514 F.2d 734 (5th Cir. 1975) ("The adverse inference to be drawn from destruction of records is predicated on bad conduct of the defendant. Moreover, the circumstances of the act must manifest

bad faith. Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case.").

Courts have declined to find the defendant acted with a culpable state of mind when the destruction of evidence could be explained by negligence, incompetence, or reasons other than to deprive the plaintiff of its use. *See e.g. Consol. Aluminum Corp. v. Alcoa, Inc.,* 244 F.R.D. 335, 346 (M.D. La. 2006) (failure to timely inform employees of a duty to preserve emails did not constitute bad faith); *Thomas v. Tangipahoa Par. Sch. Bd.*, No. CV 14-2814, 2016 WL 3542286, at *3 (E.D. La. June 29, 2016) (no spoliation where employees negligently or incompetently lost a file); *Rogers v. Averitt Express, Inc.*, 215 F. Supp. 3d 510, 520 (M.D. La. 2017)(no spoliation where the plaintiff had back surgery without giving the defendant the opportunity to conduct an independent medical exam, despite the defendant's specific letter to the plaintiff requesting an exam before undergoing surgery).

Conversely, "the giving of an adverse inference instruction has been upheld where the facts of the case are extreme, such as where the destroyed evidence was the very automobile that was the subject of the products liability action." *Consol. Aluminum Corp., citing Concord Boat Corp. v. Brunswick Corp.*, 1997 WL 33352759 (E.D.Ark.1997), citing *Dillon v. Nissan Motor Co.*, 986 F.2d 263 (8th

21

Cir.1993), and further noting other cases "where the destroying party has selectively retained relevant evidence and has used retained evidence in prior disputes to its advantage." See also *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 795 (N.D. Tex. 2011)(Significant circumstantial evidence supported that evidence of truck and tires involved in an accident was intentionally destroyed). *Knott v. Lowe's Home Ctrs*. LLC (W.D. La. 2021).

In this case, again, the Sheriff had no duty to preserve any IA records and there is no evidence in the record that any IA records were destroyed.

Notwithstanding the foregoing, it is undisputed that if any IA records were destroyed, they would have been destroyed in the ordinary course of business and pursuant to official policy in accordance with state law.

Plaintiffs therefore cannot show that the Sheriff acted with a culpable mind and intentionally destroyed any record, let alone an IA record.

Plaintiffs' Motion should be DENIED.

### E.    THERE IS NO EVIDENCE THAT ANY RECORDS WERE RELEVANT OR THAT THE PLAINTIFFS HAVE BEEN PREJUDICED

The third factor is relevance. This factor is generally considered pursuant to the following subparts:

(1) whether the evidence is relevant to the lawsuit; (2) whether the evidence would have supported the inference sought; and (3) whether the non-destroying party has suffered prejudice from the destruction

of the evidence. The party seeking the sanction of an adverse inference "must adduce sufficient evidence from which a reasonable trier of fact could infer that the 'destroyed or [unavailable] evidence would have been of the nature alleged by the party affected by its destruction.'" *Residential Funding Corp. v. Degeorge Financial Corp.*, 306 F.3d 99 (2nd Cir.2002).

*Consol. Aluminum Corp.*, 244 F.R.D. at 346.

Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

Evidence is relevant for the purposes of adverse inference enforcement when (1) it is relevant to the lawsuit, (2) would have supported the inference sought, and (3) the non-spoliating party suffers prejudice from the destroyed evidence. *See Tango Transp., LLC v. Transp. Int'l Pool, Inc.*, 2009 U.S. Dist. LEXIS 93930, *13 (W.D. La. October 7, 2009). "A party seeking an adverse inference must demonstrate… that the destroyed evidence would have supported the proposed inference." *Id*. at *1, *8.

Here, again, Plaintiffs have not identified any records that were allegedly destroyed, nor is there any evidence that any records were destroyed.

Furthermore, Plaintiffs do not even state the proposed inference, let alone articulate how any supposedly destroyed evidence would have supported it. Plaintiffs ask "[t]hat the jury be instructed that they can draw an adverse inference

against Defendant Joseph Lopinto, in his official capacity, due to the destruction of evidence." R. Doc. 105-1, p. 13. This is incoherent. What inference is the jury to draw? Plaintiffs have simply failed to properly state or support the relief requested.

Moreover, the fact is it is uncontested that there are no IA records relative to **the subject incident**. Any IA records not related to the subject incident and not resulting in a conviction are not relevant. Fed. R. Evid. 404, 608; *Cloud v. Thomas*, 627 F.2d 742 (5th Cir. 1980); *Segura v. City of Reno*, 116 F.R.D. 42, 44 (U.S.D.C. 1987).

Plaintiffs' Motion should be DENIED.

## VI.   CONCLUSION

First, the Sheriff had no duty to preserve any IA records.  Second, there is no evidence that any IA records were actually destroyed and the evidence is to the contrary. Third, there is no evidence that the Sheriff acted in bad faith or with a culpable mind. Fourth, there is no evidence that any as yet unidentified IA record was relevant to the case and the inference sought and that its alleged destruction prejudiced the Plaintiffs.

Plaintiffs misstated the law and relevant legal standard. They seek to have this Court believe that the Sheriff was obligated to preserve records and destroyed them under false pretenses. Plaintiffs' averments are demonstrably false and

warrant sanctions.

Plaintiffs' Motion for Spoliation Sanctions, R. Doc. 105, should be DENIED

and Plaintiffs' counsel sanctioned.

Respectfully submitted,

**/s/ James B. Mullaly**

**_____**
**FRANZ L. ZIBILICH, LSB#14914**
**JAMES B. MULLALY, LSB#28296**
MARTINY & ASSOCIATES, LLC
131 Airline Drive, Suite 201
Metairie, Louisiana 70001
Telephone: (504) 834-7676
Facsimile: (504) 834-5409
Email: fzibilich@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of October 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all participating counsel of record herein.

**/s/ James B. Mullaly**

**_____**
**JAMES B. MULLALY**