UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONNA LOU, ET AL. | * | CIVIL ACTION NO. 21-80 |
| VERSUS | * | SECTION "D" (2) |
| SHERIFF JOSEPH P, LOPINTO, III, ET AL. | * | Judge Wendy B. Vitter<br>Magistrate Judge Donna P. Currault |

**Plaintiffs' Reply in Support of Motion for Spoliation Sanctions**

Once their son died in JPSO custody, his parents took precautions to ensure that no evidence regarding his death was destroyed. They sent JPSO a preservation letter. They filed an action in the 24th JDC asking for the preservation of evidence. They filed a similar action in the 29th JDC asking specifically for the preservation of "disciplinary, complaint, investigative and personnel files."

JPSO responded to the second action by telling the judge of the 29th JDC that the "obligation of preservation is already in place."[1] But JPSO did not actually stop destroying documents. It did not implement a full litigation hold for another nine months, until after this lawsuit was filed. Plaintiffs have therefore moved for spoliation sanctions.

JPSO makes several arguments in its opposition. It argues that (1) it did not have an obligation of preservation; (2) that there is not sufficient evidence that documents were destroyed; and (3) and that the requisite intent threshold for sanctions has not been met.[2] As described below, each point is wrong. Plaintiffs' motion should be granted.

---

[1] R. Doc. 105-16 (Opposition to Motion for Protection and Preservation) at 3.
[2] Defendant also contends that "this is by no means the first time in this case that the Plaintiffs have advanced a frivolous Motion for the purposes of harassing the Sheriff gratuitously." R. Doc. 107 at 3-4. But Plaintiffs have obtained partial or complete relief in every motion they filed in this case to date. *See* R. Doc. 47 (granting in part Plaintiffs' motion to compel); R. Doc. 50 (granting Plaintiffs' motion to amend scheduling order); R. Doc. 57 (granting Plaintiffs' motion to submit supplemental authority); R. Doc. 58 (ordering Defendants to file affidavits regarding conflict of interest and confirming indemnification); R. Doc. 62 (ordering Defendants to produce document and privilege log); R. Doc. 79 (granting in part Plaintiffs' motion to compel); R. Doc. 84 (granting Plaintiffs' motion for leave to file protective order).

1

## I. Timeline

Given the nature of this motion, a timeline may aid the Court in digesting the relevant facts:

| Date | Event |
|---|---|
| Jan. 19, 2020 | E.P. dies in JPSO custody.[3] |
| Jan. 25, 2020 | Plaintiffs send Anti-Spoliation Letter.[4] |
| Jan. 27, 2020 | Plaintiff files 29th JDC Motion for Protection and Preservation. Judge orders that "all documents . . . be preserved and not destroyed."[5] |
| Jan 29, 2020 | JPSO confirms receipt of Anti-Spoliation Letter.[6] |
| Mar. 5, 2020 | Plaintiffs file 24th JDC Motion for Protection and Preservation.[7] |
| Mar. 17, 2020 | JPSO tells 24th JDC judge that a further preservation order was unnecessary because the "obligation of preservation is already in place."[8] |
| May 20, 2020 | 29th JDC Motion for Protection and Preservation denied.[9] |
| July 12, 2020 | Plaintiffs send Public Records request for disciplinary records.[10] |
| Aug. 12, 2020 | JPSO says "no sustained complaints in the internal affairs files."[11] |
| Jan. 14, 2021 | *Lou v. Lopinto* (E.D. La.) filed.[12] |
| Sep. 20, 2022 | JPSO counsel says "Oh, God, no" when asked whether JPSO paused its document destruction practices.[13] |

---

[3] R. Doc. 9 at pg. 3, admitting ¶ 1.
[4] R. Doc. 105-4 (Anti-Spoliation Letter).
[5] R. Doc. 105-11 (Order).
[6] R. Doc. 105-14 (Corr. of Counsel).
[7] R. Doc. 105-15 (Motion); R. Doc. 105-17 (Docket Sheet).
[8] R. Doc. 105-16 (Opposition to Motion for Protection and Preservation) at 3.
[9] R. Doc. 109-4 (Order)
[10] R. Doc. 109-6.
[11] R. Doc. 109-7.
[12] R. Doc. 1.
[13] R. Doc. 105-9 at 69:14-70:3.

## II.     Analysis

**A.     The motion should be granted because JPSO had an obligation of preservation, as indicated by JPSO's representation that the "obligation of preservation is already in place."**

Sheriff Lopinto makes a few arguments for why he did not have an obligation of preservation until after this lawsuit was filed.

First, he argues that Plaintiffs' January 25, 2020 Anti-Spoliation letter was not sufficient to put JPSO on notice to preserve internal affairs records.[14] Even if that were true, by March 10, 2020, JPSO was certainly on notice. On that date JPSO received a motion specifically requesting preservation of all "disciplinary, complaint, investigative and personnel files of all officers and supervisors of Jefferson Parish Sheriff's Office involved in this incident."[15]

JPSO responded with a filing representing that the "obligation of preservation is already in place."[16] JPSO argued to the 29th JDC that the "obligation of preservation" was in place, but is arguing to this Court that there never was an obligation of preservation. Both cannot be correct.

Second, Defendants make the argument that there "was never any Order from any Court regarding the preservation of ANY evidence, let alone IA files. Period."[17] But there was such an order:

---

[14] R. Doc. 109-2 at 4.
[15] R. Doc. 105-15 at 3.
[16] R. Doc. 105-16 at 3. The Sheriff contends that Plaintiffs' decision not to set this motion for hearing indicates that "Plaintiffs, obviously realizing their folly, never moved to have the matter reset and it died on the vine." R. Doc. 109-2. Not so. Plaintiffs did not reset the matter because (1) JPSO had represented that the "obligation of preservation is already in place," and so the goal of the motion had been accomplished; and (2) there was a pandemic underway that ultimately killed a million Americans.
[17] R. Doc. 109-2 at 5.

> IT IS FURTHER ORDERED that all documents responsive to any warrant issued under Item No. A-15489-20 and all documents relevant or related to the death of the minor E.P. shall be preserved and not destroyed or otherwise altered, including those in the custody of the St. Charles Parish School Board.
>
> IT IS FURTHER ORDERED that ST. CHARLES PARISH SHERIFF'S OFFICE to show cause on the 6 day of FEBRUARY, 2020 at 2:00 o'clock a.m/p.m. why the search warrant issued under Item No. A-15489-20 should not be quashed.
>
> Signed this 27 day of JANUARY, 2020, Hahnville, Louisiana.
>
> _____
> JUDGE
> 29TH JUDICIAL DISTRICT COURT
> STATE OF LOUISIANA

[18]

JPSO is correct that Plaintiffs' Motion for Protection and Preservation was later denied, on May 20, 2020. But for almost four months – from January 27 to May 20, 2020 – there was an explicit court order directing JPSO not to destroy "documents relevant or related to the death of the minor E.P." JPSO seems to argue that this order does not count because it was "interlocutory," but provides no authority for that proposition.[19]

Additionally, per Louisiana regulations, JPSO is not permitted to destroy any records without approval of the state archivist.[20] JPSO does not seek or receive that approval. But although JPSO's opposition talks briefly about the statute, it does not address Louisiana's regulations at all.

Thus, JPSO had overlapping obligations of preservation created by state regulation, court order, and Plaintiffs' preservation letter. JPSO admitted as much when it conceded in court that the "obligation of preservation" was in place. Plaintiffs' motion should be granted.

---

[18] R. Doc. 105-11.
[19] R. Doc. 109-2 at 5. Defendants also argue that it was "misleading at best and an attempted fraud on the Court at worst" for Plaintiffs to "reference" the January 27, 2020 order. But Plaintiffs were clear about the context of that order: they noted in their brief that the 29th JDC Motion for Preservation and Protection was later denied. R. Doc. 105-1 ("The 29th JDC later denied E.P.'s parents' motion.") Defendants do not provide further specificity as to how Plaintiffs committed an "attempted fraud on the court."
[20] La. Admin. Code tit. 4, § XVII-901 ("agency shall secure written approval from the state archivist (or his designee) prior to the disposing of any records of the agency.")

**B.     The motion should be granted because there is evidence of document destruction: Vega testified that he has "been to Internal Affairs for courtesy complaints" but those complaints have been destroyed.**

JPSO makes two arguments why there is not sufficient evidence that they destroyed any internal affairs records of Defendants.

First, JPSO argues that in August 2020, it looked and found no "sustained complaints" or "sustained or unsustained" excessive force complaints.[21] Second, JPSO represents that it looked and has not found any timekeeping records that would suggest suspensions.[22]

But that framing has several gaps. For example, there could have been records destroyed prior to August 2020 that would not have been captured by the August 2020 search. And the August 2020 representation did not provide any information about unsustained complaints other than excessive force. And the search for timekeeping suspensions would not reflect unsustained complaints at all, as an unsustained complaint would not generate a suspension.[23] Defendants argue that these records are not relevant to Plaintiffs' case, but even unsustained complaints may be relevant, as an agency's pattern of repeated rejection of complaints can <u>itself</u> be evidence supporting a *Monell* claim.[24]

---

[21] R. Doc. 109-2 at 6.
[22] R. Doc. 109-2 at 8.
[23] R. Doc. 109-2 at 8
[24] As one court explained:

> A reasonable jury could find that a monitoring and disciplinary system that disregards any complaint or series of similar complaints because they are unsubstantiated does not demonstrate a "meaningful attempt on the part of [the City] to . . .forestall further incidents," and it may be reasonably inferred that such a system encourages similar excesses.

*Jenkins v. City of New York*, 388 F. Supp. 3d 179, 192 (E.D.N.Y., June 5, 2019), *citing Vann v. City of New York*, 72 F.3d 1040, 1050 (2d Cir. 1995) *and Coggins v. County of Nassau*, 254 F. Supp. 3d 500, 521 (E.D.N.Y. 2017) (finding that evidence about "the lack of repercussions from the complaints that commanding officers deemed 'undetermined'" showed the police department does not adequately discipline its officers for the conduct at issue in the case"). For this reason, courts order production of unsustained complaints. *See Brown v. City of Alexandria*, 20-cv-541 (W.D. La., March 29, 2022) ("the City is further ordered to produce complaints of excessive force - sustained or unsustained - made against any APD police officer in the five-year period preceding the incident") (emphasis added); *Kelvin L. v. Superior Court*, 62 Cal. App. 3d 823, 829–31, 133 Cal. Rptr. 325, 329–30 (Ct. App. 1976) ("Nor does the fact that the previous charges against the officers were not substantiated render them irrelevant for purposes of discovery.")

The Sheriff also argues that Vega's interrogatory response suggests that he never had any complaints at JPSO.[25] Vega testified that "I've been to Internal Affairs for courtesy complaints."[26] He confirmed that these were "at JPSO."[27] And Vega explicitly testified that these records were not in his file <u>because they were destroyed</u>:

> A. I've been to Internal Affairs for courtesy complaints.
> Q. I've got a document that says there are no Internal Affairs complaints.
> A. Because they are expunged after three years.[28]

Vega confirmed that because these complaints were "expunged" and therefore the "[c]ourtesy complaints, they are no longer."[29]

To be fair, Plaintiffs do not have voluminous evidence of the specific documents JPSO that destroyed. But the reason they do not is that JPSO failed to keep the legally-mandated certificates of document destruction.[30] JPSO should not reap the benefit of its double law-breaking.[31] Plaintiffs' motion should be granted.

**C.     The intent threshold has been met because JPSO continued to destroy documents after receiving a preservation letter, a court order of preservation, and falsely representing to a court that the "obligation of preservation is already in place."**

As JPSO notes, the Fifth Circuit has established three factors which must be met for a spoliation claim: "(1) the spoliating party must have controlled the evidence and been under an

---

[25] R. Doc. 109-2 at 7-8.
[26] R. Doc. 105-9 at 60:16-17.
[27] *Id*. at 14:1-2 ("Q. And were those at JPSO? Where were they? A. Yes.")
[28] *Id*. at 60:6-21.
[29] *Id*. at 62:5-6.
[30] La. Admin. Code tit. 4, § XVII-913 (agencies "shall document the destruction of their records by maintaining a certificate of destruction for all records requiring destruction approval from the state archives.").
[31] *See Swofford v. Eslinger*, 671 F.Supp.2d 1274, 1282 (M.D. Fla. 2009), *citing Telectron, Inc. v. Overhead Door Corp*., 116 F.R.D. 107, 133 (S.D.Fla.1987) ("[W]hile it is now impossible to determine precisely what or how many documents were destroyed, the bad faith destruction of a relevant document, by itself, `gives rise to a strong inference that production of the document would have been unfavorable to the party responsible for its destruction.'")

obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith."[32]

JPSO's obligation to preserve is discussed above. The intentionality of the destruction is proven by JPSO's explicit, written policy requiring destruction.[33] The final element is bad faith. This showing "is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors."[34]

JPSO argues that "a standard operating procedure may counter a contention of bad faith conduct."[35] However, a standard operating procedure does not end the inquiry and does not act as a shield to all liability or a finding of bad faith. Rather, even when evidence is destroyed pursuant to a policy, "bad faith may be inferred by evidence that a party has misrepresented the existence of documents or allowed the destruction of documents, and had explanations of spoliation that were not credible."[36]

An instructional case with similar facts is *Swofford v. Eslinger*, 671 F.Supp.2d 1274 (M.D. Fla. 2009). In *Swofford*, sheriff's deputies used force on a person. The person's counsel then sent two preservation letters and a notice of claim, but the sheriff's office still did not implement a litigation hold.[37] The court explained that the fact that "we are here on this issue is inexplicable and inexcusable,"[38] and concluded that "[n]othing other than bad faith can be inferred from the facts of this case".[39] The court explained that:

---

[32] *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 573-74 (5th Cir. 2020).
[33] R. Doc. 105-4 (JPSO SOP 22) at 9.
[34] *Rogers v. Averitt Express, Inc.*, 215 F.Supp.3d 510, 517 (M.D. La. 2017), *quoting Morris v. Union Pac. R.R.*, 373 F.3d 896, 902 (8th Cir. 2004).
[35] R. Doc. 107 9-2 at 18 (*citing Vick v. Tex. Emp't Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975).
[36] *Dixon v. Greyhound Lines, Inc.*, No. 13-179, 2014 WL 6087226, at *4 (M.D. La. Nov. 13, 2014), *citing Tantivity Communications, Inc. v. Lucent Technologies*, 2005 WL 2860976 (E.D. Tex. Nov. 1, 2005).
[37] *Id*. at 1278.
[38] *Id*.
[39] *Id*. at 1280.

> Thus, this is not a circumstance of inadvertent destruction of evidence or negligence in the loss of material data from which the Court is being asked to infer bad faith. Rather, it is a case of knowing and willful disregard for the clear obligation to preserve evidence that was solely within the possession and control of the Defendants and whose contents have no other source than that which has now been spoliated. Thus, the bad faith is clear, and the prejudice to the Plaintiffs is substantial.

*Id.* at 1282.

Here, the facts are substantially worse than *Swofford*. JPSO did not simply receive preservation letters or a notice of intent to sue from counsel. For four months there was an <u>explicit court order</u> in place prohibiting the destruction of evidence. And on March 17, 2020, JPSO explicitly represented to a judge that the "obligation of preservation is already in place."[40] But despite that representation, JPSO did not cease its internal affairs document destruction for another nine months, until after the federal lawsuit was filed. If the facts in *Swofford* were sufficient to infer bad faith, then *a fortiori* the facts here should be sufficient.

The cases cited by JPSO in its opposition support Plaintiffs' argument. JPSO notes that courts have found spoliation sanctions appropriate where "the destroying party has selectively retained relevant evidence and has used retained evidence in prior disputes to its advantage."[41] That is exactly the situation here. JPSO has set up a system by which it selectively destroys negative information about its officers, but retains positive information.[42] The logical inference is an intent to withhold negative information about deputies from interested parties.

---

[40] Ex. M at 3. The Sheriff contends that Plaintiffs' decision not to set this motion for hearing indicates that "Plaintiffs, obviously realizing their folly, never moved to have the matter reset and it died on the vine." R. Doc. 109-2. Not so. Plaintiffs did not have the matter reset because (1) JPSO had represented that the "obligation of preservation is already in place," and so the goal of the motion had been accomplished; and (2) there was a pandemic underway that killed a million Americans.

[41] R. Doc. 109-2 at 22, *citing Consol. Aluminum Corp., citing Concord Boat Corp. v. Brunswick Corp.*, 1997 WL 33352759 (E.D.Ark.1997).

[42] Compare Ex. A (JPSO SOP 22) at 9 (requiring destruction of disciplinary records within three years), with Ex. G (2009 commendation letter for Defendant Chad Pitfield).

Because JPSO continued to destroy records despite representing to a court that the preservation obligation was in place, bad faith can be inferred. Plaintiffs' motion should be granted.

### III. Conclusion

Plaintiffs' motion for spoliation sanctions should be granted.

RESPECTFULLY SUBMITTED,

Andrew C. Clarke (TN BPR # 15409)
The Cochran Firm Midsouth
One Commerce Square, Suite 1700
(901) 523-1222 (Telephone)
aclarke@cochranfirmmidsouth.com

*/s/ William Most*
WILLIAM MOST (BPR # 36914)
Most & Associates
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (504) 509-5023
williammost@gmail.com