UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONNA LOU, ET AL. | * | CIVIL ACTION |
| VERSUS | * | NO. 21-80 |
| SHERIFF JOSEPH P, LOPINTO, III, ET AL. | * | SECTION "D" (2) |

**ORDER AND REASONS**

Before this Court is Plaintiffs' Motion for Spoliation Sanctions. ECF No. 105. Defendant Sheriff Lopinto timely filed an Opposition Memorandum. ECF No. 107. Plaintiffs sought leave and filed a Reply Memorandum. ECF Nos. 113, 115. At Plaintiffs' request, the Court held oral argument on Tuesday, November 1, 2022, after which it took the matter under advisement. ECF Nos. 108, 117.

Having considered the record, the oral and written arguments of counsel, and the applicable law, Plaintiff's motion is DENIED for the reasons stated herein.

**I.    BACKGROUND**

Donna Lou and Daren Parsa are the parents of E.P., an autistic 16-year old, who sued Jefferson Parish Sheriff Joseph Lopinto III, several JPSO officers (Deputies Pitfield, Vaught, Mehrtens, Guidry, Vega, Estrada, and Gaudet), their insurer, Victory Real Estate Investments LA, LLC and Westgate Investors NO, LLC and their insurers after their son died while being subdued by police officers during a severe, acute sensory episode on January 19, 2020. ECF No. 1, ¶¶ 2, 17–28. After playing a game of laser tag at Westgate shopping center, Plaintiffs and their son went to the parking lot where their son experienced a melt-down caused by, and related to, his autism during which he slapped, grabbed and bit his father. *Id.* at ¶¶ 29–40. When the manager observed

1

the interaction, he asked if Plaintiffs wanted him to call the police, and they responded affirmatively. *Id.* at ¶ 41.

Plaintiffs contend that, despite knowledge that the call was to assist with a severely autistic child, after being slapped, Officer Pitfield improperly took the child to the ground and applied physical force and restraint, which resulted in the child's death. *Id.* ¶¶ 3–9, 48, 68–69. After taking E.P. down, E.P. bit Officer Pitfield, who realized he needed another pair of handcuffs. *Id.* ¶ 72. Officer Pitfield retrieved them while E.P.'s father held E.P. down, after which Officer Pitfield sat on E.P. for approximately 7 minutes. *Id.* ¶¶ 70–76. Plaintiffs contend that, once E.P. had de-escalated, Defendants should have placed him in a recovery position by turning him on his side or sitting him up rather than continuing to maintain force on him, and they should have ensured that he could breathe. *Id.* ¶¶ 103–104, 117–18, 151–56, 164–181. They also contend that Officer Vega, who relieved Officer Pitfield, improperly used a pain compliance technique, neck hold, and choke hold, all of which were unnecessary. *Id.* ¶¶ 192–214. When another officer relieved Officer Vega, the child was found to have gone limp, urinated on himself, and was dying. *Id.* ¶¶ 217–20.

Plaintiffs premise their claims on 42 U.S.C. § 1983; Title II of the Americans With Disabilities Act, 42 U.S.C. §§ 12131, 12132; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the First, Fourth, Ninth and Fourteenth Amendments. ECF No. 1, at ¶ 12. Plaintiffs contend that the JPSO officers used excessive and unreasonable force, failed to intervene, and unlawfully seized Plaintiffs by preventing them from going to the hospital to be with their son, in violation of the Constitution and § 1983 (*id.* ¶¶ 386, 390), Sheriff Lopinto failed to (a) determine whether his deputies were qualified, (b) provide proper policies or guidance for dealing with persons with disabilities, (c) provide proper training on dealing with persons with disabilities, (d) properly monitor and supervise his deputies, (e) to investigate and discipline deputies for

violations of JPSO policies, practices and customs (*id.* ¶ 409), and they violated the ADA and Rehabilitation Act by failing to provide reasonable accommodation and failing to adopt appropriate policies (*id.* ¶¶ 452–53). Plaintiffs also contend that Defendants are liable under Louisiana tort law. *Id.* ¶¶ 458–59.

## II. THE MOTION FOR SPOLIATION SANCTIONS

The spoliation at issue involves alleged destruction of IA records pursuant to JPSO's 3-year document retention policy. Plaintiffs allege that, between the January 19, 2020 incident date and the August 12, 2020 public record response, JPSO continued to apply its 3-year IA record retention policy which could have resulted in the destruction of complaints in the officers' IA files. Citing Officer Vega's deposition testimony, Plaintiffs argue that Officer Vega had IA complaints that are no longer in his file due to expungement.

Given the 3-year policy, any destruction would have occurred between January 19 - August 12, **2020**, and involved complaints dated between January 19 - August 12, **2017**.

### A. Plaintiff's Position

Plaintiffs contend that the JPSO destroyed disciplinary records pursuant to its 3-year document retention policy after receipt of a January 25, 2020, anti-spoliation letter, a 29th Judicial District Court ("JDC") order dated February 6, 2020 ordering "all documents relevant or related to the death of the minor E.P. shall be preserved and not destroyed or otherwise altered," and a March 17, 2020 application for a preservation order to the 24th JDC. ECF No. 105-1 at 1-2. Plaintiffs also contend that the JPSO is bound by Louisiana law on preservation of public records (La. Rev. Stat. § 44:36), has failed to submit a retention schedule to the state's archivist as required by La. Rev. Stat. § 44:411(A)(1), has failed to undertake mandatory safeguards to protect against the loss of public records under La. Rev. Stat. § 44:422, and has failed to follow appropriate

procedures before destroying negative records while preserving positive records for ten years. *Id.* at 6-8, 12-13.

Despite these obligations, Plaintiffs state that the JPSO did not stop destroying documents until January 21, 2021, after Plaintiffs filed this case. *Id*. at 2. Plaintiffs argue that "an unknown number of disciplinary records" were destroyed between January 2020 and January 2021, and the JPSO does not keep records of document destruction. *Id*. During a September 20, 2022 deposition, Plaintiffs allege that Defendant Vega admitted that he had been subject to disciplinary proceedings. *Id.* at 4. When Plaintiffs' counsel asked why the records were not in the produced documents, defense counsel advised that the discipline had been expunged pursuant to the JPSO's 3-year document retention policy. *Id.* Although counsel was not aware of any litigation hold, JPSO's in-house counsel advised that a litigation hold was placed in January 2021. *Id.* at 4-5. In a follow-up meet and confer, defense counsel advised that JPSO took steps to preserve the items identified in the January 25, 2020 letter but did not implement a full litigation hold until it received notice that suit had been filed. *Id.* at 5.

Plaintiffs argue that JPSO had a duty to preserve evidence under state and federal law and breached that duty by continuing to destroy IA disciplinary records. *Id.* at 8-11. Plaintiffs argue they have been prejudiced by the loss of documents and counsel's instruction to Defendant Vega not to answer questions regarding whether he had any internal affairs complaints. *Id.* at 11-12. Plaintiffs thus seek an order (1) prohibiting Defendants from putting on any positive evidence at trial from their personnel files; (2) instructing the jury that (a) Sheriff Lopinto destroyed evidence despite having a legal obligation and being ordered by a court to preserve it, (b) Sheriff Lopinto has a practice of preserving positive information about officers but illegally destroying negative information, and (c) they may draw an adverse inference against Sheriff Lopinto due to the

destruction of evidence; and (3) awarding attorneys' fees incurred in filing the motion for sanctions. ECF No. 105; *see also* 105-1 at 13-14.

### B. Defendants' Opposition

In Opposition, Sheriff Lopinto argues that Plaintiffs misrepresent the underlying facts and have filed this motion for harassment purposes. ECF No. 112 at 1, 3-4. He also argues that there is no duty to preserve internal affairs documents beyond the state law preservation period, there is no evidence that any document was actually destroyed and, if so, that same was relevant to this case, there is no evidence that Sheriff Lopinto acted in bad faith or with a culpable state of mind, and thus Plaintiffs cannot establish prejudice. ECF No. 112, 1-2. At oral argument, Sheriff Lopinto argued that state law requires IA files be retained for 3 years and personnel files be retained for 99 years, and that JPSO complies with those provisions.

Sheriff Lopinto argues that the January 25, 2022 anti-spoliation letter does not mention internal affairs or personnel documents, but rather, focuses on preservation of on-scene and investigatory evidence. *Id.* at 4. He argues nothing in this letter suggested Plaintiffs sought preservation of "wholly disconnected, irrelevant" internal affairs records. *Id.* He further argues that there was no court order, and Plaintiffs' suggestion otherwise is patently false as the 29th JDC matter involved a temporary order with respect to St. Charles Parish school records, not JPSO records, and the 29th JDC later denied that motion. *Id.* at 5; *see also* ECF No. 112-2. Conceding that the Motion for Preservation filed in the 24th JDC specifically included a request for retention of "disciplinary, complaint, investigative and personnel files of all officers . . . involved in the incident," Sheriff Lopinto argues that the 24th JDC did not ever rule on that motion. *Id.* at 5.

The Sheriff also argues that, in response to Plaintiffs' July 12, 2020 public records request, on August 12, 2020, Plaintiffs were advised that there were no sustained complaints in the

5

personnel or internal affairs files of the relevant officers, and a later email confirmed there were no excessive force complaints, sustained *or unsustained*, against the relevant officers. ECF No. 112 at 5-6; *see also* ECF Nos. 112-4, -5, -6. Thus, any destruction of documents under the 3-year policy after August 12, 2020, and before the hold on January 21, 2021, could not have included any relevant information as the files had already been reviewed pursuant to the public records request, and no responsive information was located as of August 12, 2020. Finally, he argues that Plaintiffs' selected deposition excerpt is distorted and taken out of context, and nothing in Officer Vega's deposition suggests that any **JPSO** IA records (rather than IA records of prior employers) were destroyed. ECF No. 112, at 7-8. Finally, to ensure that any relevant deputy was not subject to IA complaints, the Sheriff had an officer review attendance records to confirm that none was absent due to suspension, which he argues proves no significant disciplinary action near or after the subject incident. *Id.* at 8.

### C. **Plaintiffs' Reply**

In response to Sheriff Lopinto's Opposition, Plaintiffs reiterate their arguments regarding the existence of a duty to preserve based on the January 25, 2020 anti-spoliation letter, the 29th JDC Order, the 24th JDC filing, and Louisiana law. ECF No. 115 at 3-4. Next Plaintiffs argue that JPSO's August 2020 confirmation that there were no sustained complaints or any sustained or unsustained excessive force complaints is insufficient because there "could have been" records destroyed before August 2020, and its timekeeping records do not establish the absence of any unsustained complaints because those would not have resulted in suspension. *Id.* at 5.

Plaintiffs cite Officer Vega's deposition to argue that Officer Vega admitted that he had been subject to "courtesy complaints" at JPSO on some unspecified date, which were expunged on unspecified dates. *Id.* at 6. Plaintiffs argue that the intent threshold is met based on the

destruction of documents after the preservation letter, state court order, and counsel's false representation to the 24th JDC that the preservation obligation was in place.  ECF No. 115 at 6-8.

## III. APPLICABLE LAW AND ANALYSIS

Initially, the court's decision on a motion for spoliation sanctions is reviewed for abuse of discretion.[1]  When evaluating allegations regarding spoliation of evidence, federal courts sitting in diversity are to apply federal evidentiary rules rather than state spoliation laws.[2]

Allegations of spoliation are addressed in federal courts through either Federal Rule of Civil Procedure 37 or the court's inherent powers.  Rule 37 provides a basis for spoliation sanctions when the alleged destruction of evidence arises during the discovery period of active litigation and there is a failure to comply with a court order or to preserve electronically stored information.[3]  When conduct occurs before a case is filed, or if, for another reason, there is no statute or rule that adequately addresses the conduct, it may be addressed through the court's inherent power to regulate the litigation process.[4]  To support imposition of sanctions based on the court's inherent power, there must be bad faith or a willful abuse of the judicial process,[5] which in the spoliation context generally means destruction of evidence for the purpose of hiding adverse evidence.[6]

---

[1] *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (citing *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 569 (5th Cir. 1996)).
[2] *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005) (citing *King v. Ill. Cent. R.R.*, 337 F.3d 550, 556 (5th Cir. 2003)).
[3] FED. R. CIV. P. 37(b), (e); *see also Settles v. United States*, No. 17-1272, 2018 WL 5733167, at *3 (W.D. Tex. Aug. 29, 2018).
[4] *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 573 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991)); *see also Union Pump Co. v. Centrifugal Tech. Inc.*, 404 F. App'x 899, 905 (5th Cir. 2010) (citing *Hodge v. Wal–Mart Stores, Inc.*, 360 F.3d 446, 449 (4th Cir. 2004) ("The imposition of a sanction ... for spoliation of evidence is an inherent power of federal courts.")).
[5] *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990) (noting that sanctions under the court's inherent powers are limited to situations involving bad faith or willful abuse of the judicial process) (citation omitted); *see also In re ProEducation Int'l, Inc.*, 587 F.3d 296, 304 (5th Cir. 2009) (quoting *Matta v. May*, 118 F.3d 410, 416 (5th Cir. 1997) (internal citation omitted)).
[6] *Settles*, 2018 WL 5733167, at *3 (citing *Guzman*, 804 F.3d at 713).

The relevant alleged spoliation at issue occurred before the public records response on August 12, 2020, which was before Plaintiffs filed this case on January 14, 2021.[7] Thus, this sanctions request falls outside of Rule 37 and must be addressed under the court's inherent power.

## A. Spoliation Standard

The spoliation of evidence doctrine governs the intentional destruction of evidence[8] for the purpose of depriving the opposing party of its use.[9] A spoliation claim has three elements:

(1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction;

(2) the evidence must have been intentionally destroyed; and

(3) the moving party must show that the spoliating party acted in bad faith.[10]

When a party seeks the sanction of an adverse-inference instruction based on spoliation of evidence, that party must establish:

(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed;

(2) the evidence was destroyed with a culpable state of mind; and

(3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.[11]

If the court finds that a party intentionally destroys evidence, the trial court may exercise its

---

[7] *See* ECF No. 1.

[8] *Coastal*, 833 F. App'x at 573 (citing *Menges v. Cliffs Drilling Co.*, No. 99-2159, 2000 WL 765082, at *1 (E.D. La. June 12, 2000) (citing *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995); *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 78 (3d Cir. 1994))).

[9] *Id.* (citing *Catoire v. Caprock Telecomm. Corp.*, No. 01-3577, 2002 WL 31729484, at *1 (E.D. La. Dec. 2, 2002)); *see also St. Tammany Par. Hosp. Serv. Dist. No. 1 v. Travelers Prop. Cas. Co. of Am.*, 250 F.R.D. 275, 277 (E.D. La. 2008) (citation omitted).

[10] *Coastal*, 833 F. App'x at 574 (citing *Port of S. La. v. Tri-Parish Indus.*, 927 F. Supp. 2d 332, 346 (E.D. La. 2013); *Herster v. Bd. of Supervisors of Louisiana State Univ.*, 887 F.3d 177, 190 (5th Cir. 2018) (citations omitted)); *see also Eagan v. Walgreen Co.*, No. 21-20352, 2022 WL 683636, at *3 (5th Cir. Mar. 8, 2022).

[11] *Coastal*, 833 F. App'x at 574 (citing *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598 (S.D. Tex. 2010)).

discretion to impose sanctions on the responsible party.[12]

B. <u>Analysis</u>

1. **Duty to Preserve**

The first issue is whether the JPSO had a duty to preserve internal affairs documentation of complaints against any of the relevant officers.

The duty to preserve material evidence arises not only during litigation, but also during the period before litigation when a party knew or should have known that litigation was imminent. It does not depend on a court order.[13] A party to litigation has a duty to preserve evidence once "the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant."[14] Identifying the trigger for when a party should have reasonably anticipated litigation is challenging, as it varies based on the facts and circumstances.[15] When a party should reasonably anticipate litigation, it must preserve what it knows, or reasonably should know, is relevant in the action or reasonably likely to be requested during discovery and/or is the subject of a pending discovery request.[16]

The threat of litigation does not, however, obligate an organization to "preserve every shred of paper, every e-mail or electronic document, and every backup tape."[17] While identifying the appropriate scope of litigation hold and its impact on normal document retention policies will vary,

---

[12] *Id.* at 573 (citations omitted). The seriousness of the sanctions that a court may impose depends on the consideration of: (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future. *Id.* (quoting *Schmid*, 13 F.3d at 78).
[13] *See Condrey,* 431 F.3d at 203; *see also Consol. Alum. Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 339 (M.D. La. 2006) (noting that a party must preserve materials that it reasonably knows or can foresee would be material to a legal or potential legal action) (citing *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).
[14] *Guzman,* 804 F.3d at 713 (citing *Rimkus*, 688 F. Supp. 2d at 612).
[15] *Coastal*, 833 F. App'x at 574 (citing *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942 (S.D. Tex. 2010)).
[16] *See Mixon v. Pohlman*, No. 20-1216, 2022 WL 2867091, at *5 (E.D. La. July 21, 2022) (citations omitted).
[17] *Zubulake*, 220 F.R.D. at 217 (citation omitted).

a party should identify "key players" and information relevant to the claims and defenses of any party and preserve same.[18]

In this case, JPSO knew, or should have known, that evidence regarding the disciplinary and training histories of the officers involved in the incident leading to the death of their son, including IA records, would be relevant to potential future litigation sufficient to put it on notice of a duty to preserve that evidence. While Plaintiff's January 25, 2020, anti-spoliation letter may not have triggered the duty, that duty arose, at the latest, upon receipt of Plaintiffs' March 2020 Motion for Protection and Preservation filed in the 24th JDC. Although that Motion addressed other documents and materials obtained via execution of warrants, it also specifically asks that JPSO preserve "disciplinary, complaint, investigative and personnel files of all officers . . . involved in this incident." ECF No. 105-15 ¶ 8(g). Having received Plaintiffs' earlier anti-spoliation letter, coupled with the 24th JDC motion, JPSO should have instituted preservation measures by March 2020 at the latest.

### 2. Intentional Destruction with Culpable State of Mind

The second prong of the analysis is whether the JPSO intentionally destroyed evidence with culpable state of mind. The "state of mind" spectrum ranges from no culpability through negligence, gross negligence and willfulness to bad faith.[19] While perfection in evidence preservation is no doubt the goal, mere errors or mistakes will not support spoliation sanctions. Indeed, while courts in other circuits may permit the imposition of spoliation sanctions based upon gross negligence of the spoliating party, the Fifth Circuit has held that such a sanction may only be imposed upon a showing of "bad faith" or intentional conduct by the spoliating party.[20] Thus,

---

[18] *See Consol. Alum. Corp.*, 244 F.R.D. at 339 (citations omitted).
[19] *Coastal*, 833 F. App'x at 574 (citations omitted).
[20] *Condrey*, F.3d at 203; *King*, 337 F.3d at 556; *United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000) (citations omitted); *Lafayette Ins.. Co. v. CMA Dishmachines*, No. 03-1098, 2005 WL 1038495, at *3 (E.D. La. Apr. 25, 2005)

it is insufficient to show that a party acted negligently, rather than intentionally, in spoliating the evidence.[21] Stated otherwise, to establish bad faith or culpable state of mind, the spoliator must act with fraudulent intent and a desire to suppress the truth.[22] Bad faith means more than mere bad judgment or negligence; it implies the conscious doing of a wrong for dishonest and morally questionable motives.[23]

A court does have substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors given that direct evidence of intent rarely exists.[24] Thus, bad faith may be inferred by evidence that a party has misrepresented the existence of documents or allowed the destruction of documents, and had explanations of spoliation that were not credible."[25]

Routine destruction of information, however, is generally not considered spoliation "unless there is a duty to preserve the information," and even then, only when there is also "a culpable breach of that duty, and resulting prejudice."[26] For instance, in *Ralser v. Winn Dixie Stores, Inc.*,

---

(A party is not entitled to an adverse inference unless the party can show that its adversary "intentionally and in bad faith disposed of the evidence").

[21] *Id.* at 573-74 (citations omitted); *see also In the Matter of Lasala*, 542 F. Supp. 3d 439, 444-45 (E.D. La. 2021) (Vitter, J.) (finding no spoliation where movant failed to establish intent to destroy evidence to deprive other party of its use as evidence in litigation).

[22] *Consol. Alum. Corp.,* 244 F.R.D. at 343–44.

[23] *Mixon*, 2022 WL 2867091, at *5 (citations omitted).

[24] *SCF Waxler Marine LLC v. M/V ARIS T*, 427 F. Supp. 3d 728, 768 n. 181 (E.D. La. 2020) (citing *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (discussing intentional destruction in addressing motion for spoliation-of-evidence sanctions) (quoting *Morris v. Union Pac. R.R.*, 373 F.3d 896, 902 (8th Cir. 2004)), *aff'd*, 24 F.4th 458 (5th Cir. 2022).

[25] *Mixon*, 2022 WL 2867091, at *5 (citing *Dixon v. Greyhound Lines, Inc.*, No. 13-179, 2014 WL 6087226, at *2 (M.D. La. Nov. 13, 2014); *Ashton v. Knight Transp., Inc.,* 772 F. Supp. 2d 772, 802-03 (N.D. Tex. 2011) (recounting purposeful, extensive post-accident misconduct over a sustained period of time by defendant to support inference of bad faith)).

[26] *CAE Integrated, LLC v. Novak*, No. 21-348, 2021 WL 3008296, at *3 (W.D. Tex. June 7, 2021) (citing *Quantlab Techs. Ltd. (BGI) v. Godlevsky*, No. 09-4039, 2014 WL 651944, at *8 (S.D. Tex. Feb. 19, 2014)); *Kostic v. Texas A & M Univ. at Commerce*, No. 10-2265-M, 2013 WL 3356263, at *2 (N.D. Tex. July 3, 2013) (quoting *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007) (citing *Vick v. Tex. Emp. Comm'n*, 514 F.2d 734, 737 (5th Cir. 1975); *Coates v. Johnson & Johnson*, 756 F.2d 524, 551 (7th Cir. 1985)); *accord United States v. Ochoa*, 88 F. App'x 40, 42 (5th Cir. 2004) ("Finally, Ochoa has not shown that the district court erred in denying her request that the jury be instructed on spoliation of evidence. The record reflects that the Government did not act in bad faith when it disposed of the crankshaft. Rather, this disposal was done pursuant to a routine policy." (citation omitted)); *King*,

309 F.R.D. 391, 397 (E.D. La. 2015), Judge Fallon denied a motion for spoliation sanctions when, despite the destruction of documents during a litigation hold, the documents were destroyed pursuant to a routine document retention policy. Judge Fallon reasoned that the defendant's failure to retain the document was not the result of a directed action to delete it but rather a failure to turn off the automatic deletion mechanism which at best constituted negligence and not bad faith.

Citing a district court decision from Florida,[27] Plaintiff argues that bad faith should be inferred from the *potential* destruction of relevant, negative internal affairs documents based on JPSO's failure to cease application of its 3-year document retention policy in the face of a litigation hold while it retained even older, positive commendation documents. ECF No. 115, at 7-8. The *Swofford* case is inapposite. *Swofford* involved two officers who, after receipt of a litigation hold specifically directed to "all evidence related to the shooting be preserved and listing specific types of evidence, including firearms, clips and ammunition, training records, and electronic evidence," were personally involved in the destruction of weapons, computers and other evidence.[28] After an evidentiary hearing, the court found that the defendants lacked credibility and knowingly and willfully spoliated evidence, justifying sanctions. The evidence identified by Plaintiffs does not come close to the egregious conduct present in *Swofford*.

Moreover, the mere *potential* loss of evidence as a result of failure to properly institute and effectuate a litigation hold does not rise to the level of bad faith and willful misconduct necessary to support spoliation sanctions under the court's inherent power.[29] Thus, even if Plaintiffs had

---

337 F.3d at 556 (explaining that disposing of documents for innocuous reasons, such as destruction "as a part of routine file maintenance" demonstrates that the accused party "lacked a 'bad faith' motive for their destruction")).
[27] *Swofford v. Eslinger*, 671 F. Supp. 2d 1274 (M.D. Fla. 2009).
[28] *Id*. at 1278.
[29] *See, e.g.*, *Martinez on behalf of Est. of Martinez v. Salazar*, No. 14-534, 2017 WL 4271246, at *5 (D.N.M. Jan. 26, 2017) (denying spoliation sanctions for failure to forward litigation hold letter and properly institute preservation instruction) (citing *Browder v. City of Albuquerque*, No. 13-0599, 2016 WL 3397659, at *4 (D.N.M. May 9, 2016) (declining to find bad faith where defendants made no effort to preserve evidence, but did not intentionally destroy relevant evidence)).

established the loss of relevant evidence, they have not established that the destruction of such evidence was done intentionally to deprive them of the use of such evidence.[30]

### 3. The Destruction Involved Relevant Evidence Supporting Plaintiffs' Claim

The third factor to consider on a spoliation adverse inference instruction request is the relevance of the evidence.

In this case, Plaintiffs have not established that *any* evidence has been lost, much less that relevant evidence has been lost. At most, Plaintiffs posit the *potential* that some relevant evidence *may have been* lost as a result of the JPSO's failure to properly implement a litigation hold to preclude destruction of IA records beyond the 3-year record retention period. Specifically, Plaintiff argues that, as a result of JPSO's 3-year document retention policy, it may have destroyed IA documents dated between March 2017 (or January 2017 depending on when the duty to preserve arose) and August 2017, and these documents *could have* involved IA complaints against relevant officers like Officer Vega.

Citing Officer Vega's testimony, Plaintiffs contend that he admitted to having been the subject of IA complaints. At best, however, Officer Vega's deposition testimony indicates that he had some "courtesy complaints" over the course of his history with JPSO and other agencies, but nothing was produced from his file because these courtesy complaints had been expunged at some point in time. Plaintiffs have no evidence as to (a) the date of the courtesy complaint, (b) the destruction date, (c) the subject matter of the courtesy complaint, or (d) that the courtesy complaint involved an excessive force situation such as that asserted here. And while Plaintiffs argue that it is JPSO's failure to keep records of its document destruction that preclude them from establishing

---

[30] *Coastal*, 833 F. App'x at 573 (citing *Catoire,* 2002 WL 31729484, at *1; *Condrey*, 431 F.3d at 203); *see also Consol. Alum. Corp.,* 244 F.R.D. at 347 (The moving party must provide "some evidence that the documents would have aided it in the manner alleged in their inferences in order" for the court to find relevance and impose sanctions.").

these facts, Plaintiffs concede that JPSO fails to keep records for *any* of their IA document retention destructions, not that JPSO failed to keep records in *only* this case. While JPSO's consistent failure to maintain records of destruction may constitute negligence, it does not establish the intentional destruction of relevant evidence for purposes of depriving Plaintiffs of its use.

IV. **CONCLUSION**

Although the JPSO should have known to preserve the disciplinary and training records of the officers involved in the interaction that resulted in the death of Plaintiffs' son, its failure to properly implement a litigation hold to cease its routine 3-year document retention policy for IA files does not justify spoliation sanctions. Plaintiffs' contention that evidence "may have been lost," without any evidence to establish the existence of any relevant evidence, much less the destruction of same, is insufficient to satisfy the burden. Further, because any "potential evidence" would have been lost as a result of the document retention policy rather than any person's intentional misconduct to deprive Plaintiffs of the use of such evidence, Plaintiffs have not established the requisite bad faith necessary to justify imposition of spoliation sanctions under the court's inherent power, including an adverse inference instruction.

Accordingly, for the foregoing reasons,

IT IS ORDERED that Plaintiffs' Motion for Spoliation Sanctions (ECF No. 105) is DENIED as stated herein.

New Orleans, Louisiana, this __2nd__ day of November, 2022.

*[signature]*
DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE