UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JULIE NEVAREZ, ET AL.                                    CIVIL ACTION

VERSUS                                                              NO. 21-1855

DANA COLEMAN, ET AL.                              SECTION "R" (5)


## ORDER AND REASONS

Before the Court is defendants Anthony Dorris and Justin Leonard's motion to dismiss Count II of plaintiffs' second amended complaint.[1] Plaintiff Julie Nevarez opposes defendants' motion.[2]  For the following reasons, the Court denies defendants' motion.


## I.     BACKGROUND

This case arises out of the fatal shooting of Miguel Nevarez by officers from the Houma Police Department ("HPD") and the Terrebonne Parish Sheriff's Office ("TPSO").  On October 13, 2020, at 9:00 p.m., defendant Walter Tenney, an HPD officer, was investigating reports of gunshots in Mr. Nevarez's neighborhood.[3]  Tenney allegedly approached Mr. Nevarez, who

---

[1]     R. Doc. 49.
[2]     R. Doc. 50.
[3]     R. Doc. 26 ¶¶ 29-30.

was sitting on the driver's side of his vehicle, parked in his driveway.[4] Tenney reportedly asked Mr. Nevarez to speak with him, and when he refused, Tenney "drew his service weapon and called for backup."[5] Plaintiffs allege that Tenney, "without any basis in fact," reported that Mr. Nevarez possibly had a gun in his car.[6] Tenney and other officers further reported that Mr. Nevarez had "barricaded" himself in his vehicle.[7] Plaintiffs represent that, at this point, the officers "continued to escalate the situation" by blocking off the surrounding streets, and calling for additional backup, which resulted in nearly fifty officers from HPD and TPSO arriving at the scene.[8]

Plaintiffs allege that when Julie Nevarez, Mr. Nevarez's wife, tried to access her and Mr. Nevarez's home, she was denied access to her street.[9] Ms. Nevarez alleges that she was approached by Lt. Travis Theriot, a "purported negotiator," and that she identified herself as Mr. Nevarez's wife.[10] She contends that during her conversation with Theriot, Mr. Nevarez called her

---

[4]   *Id.* ¶ 30.
[5]   *Id.*
[6]   *Id.* ¶¶ 31-32.
[7]   *Id.* ¶ 34.
[8]   *Id.* ¶¶ 35-36.
[9]   *Id.* ¶ 37.
[10]   *Id.*

2

cell phone, and that Theriot seized her phone, refusing to let her talk to Mr. Nevarez.[11]

At 10:26 p.m. that night, Mr. Nevarez allegedly left his vehicle and ran toward the back of his house, and toward, unbeknownst to him, HPD officers Sidney Theriot and Tenney.[12]   In an effort to stop Mr. Nevarez, Officer Theriot allegedly shot at Mr. Nevarez with his 40 mm "impact munition," and Officer Tenney attempted to tase him.[13]  Mr. Nevarez allegedly stumbled but regained his footing and began to run toward the front corner of his house, at which point, according to defendants, Mr. Nevarez "raised a gun towards [HPD Officer] Bolgiano."[14]   Plaintiffs dispute that Mr. Nevarez raised a gun towards Bolgiano.[15]  Allegedly in response, Bolgiano fired at Mr. Nevarez as he emerged from the west side of the yard.[16]   Several other defendants also reported firing on Mr. Nevarez,[17] and plaintiffs assert that Mr. Nevarez was ultimately shot at approximately 20 times.[18]

---

[11]     *Id.*

[12]     *Id.* ¶ 42.

[13]     *Id.* ¶¶ 43-46.

[14]     *Id.* ¶ 49.

[15]     *See id.* ("Upon information and belief, discovery will contradict Bolgiano's allegation.").

[16]     *Id.* ¶ 50.

[17]     *Id.* ¶¶ 50-51, 53-54.

[18]     *Id.* ¶ 52.

The Houma Police Administration allegedly asked the Louisiana State Police ("LSP") to investigate the circumstances surrounding Mr. Nevarez's death.[19]  As part of this investigation, on October 14, 2020, hours after Mr. Nevarez's death, LSP State Trooper Justin Leonard secured a search warrant for the Nevarezes' home and the vehicle Mr. Nevarez was seated in the night before.[20]  The warrant was obtained based on Leonard's affidavit in which he certified, under oath, that probable cause existed for the search, on the grounds that the car and house contained evidence of "aggravated assault upon a peace officer," in violation of Louisiana Revised Statute § 14:37.2.[21] Also as part of the investigation, on October 19, 2020, five days after Mr. Nevarez's death, LSP State Trooper Anthony Dorris secured a search warrant for Ms. Nevarez's cell phone that was seized the night of her husband's death.[22]  Like Leonard, Dorris submitted an affidavit in which he attested, under oath, that the warrant was needed "to locate any and all evidence that may aid the Louisiana State Police in their active investigation of the crime of LRS 14:37.2 Aggravated Assault Upon a Peace Officer."[23]

---

[19]    *Id.* ¶ 62.

[20]    *Id.* ¶ 63.

[21]    *Id.* ¶¶ 64-65.

[22]    *Id.* ¶ 67.

[23]    *Id.* ¶ 69.

On October 12, 2021, Ms. Nevarez and Mr. Nevarez's children filed a complaint in this Court that included claims for, among other things, unreasonable seizure in violation of the Fourth Amendment, unreasonable searches in violation of the Fourth Amendment, excessive force, wrongful death, battery, assault, and violations of Louisiana Public Records Law. At issue here is plaintiffs' claim for unreasonable searches in violation of the Fourth Amendment. In support of this claim, plaintiffs aver that defendants Leonard and Dorris conducted illegal searches of Ms. Nevarez's home, car, and cell phone. Specifically, plaintiffs contend that Leonard and Dorris "knowingly and intentionally submitted affidavits containing false or insufficient factual statements and material omissions to procure the search warrants, building up the narrative of an active criminal investigation where there was none."[24] Both Leonard and Dorris are sued in their individual capacities.[25]

Dorris and Leonard moved to dismiss plaintiffs' complaint, arguing that: (1) plaintiffs could not assert a section 1983 claim on behalf of a decedent, and (2) plaintiffs could not overcome qualified immunity because plaintiffs did not have the affidavits allegedly containing false statements and

---

[24]     R. Doc. 47 at 23 ¶ 76.
[25]     *Id.* at 7 ¶¶ 25-26.

5

material omissions.[26]  In plaintiffs' opposition, they contended that after LSP turned over the warrant affidavits, plaintiffs filed an amended complaint that specifically cited the affidavits.  Plaintiffs also clarified that their section 1983 claim was brought on behalf of Ms. Nevarez, not her husband.[27]  After plaintiffs filed their amended complaint, Dorris and Leonard filed a second motion to dismiss, arguing that plaintiffs failed to plausibly allege constitutional violations.  They also reasserted their argument that they are entitled to qualified immunity.[28]

The Court issued an Order and Reasons on July 7, 2022, that resolved both of the motions to dismiss.  The Court granted defendants' first motion to dismiss as to the claims asserted by Mr. Nevarez's children on the grounds that they had no standing to challenge defendants' search of the car, house, and cell phone.[29]  Because Ms. Nevarez asserted a privacy interest in the areas searched, however, the Court denied defendants' first motion to dismiss as to the claims premised on the violation of Ms. Nevarez's Fourth Amendment rights.[30]  The Court then granted defendants' second motion to dismiss in its entirety on the grounds that the warrants were facially valid

---

[26]     R. Doc. 12-1 at 6-11.

[27]     *Id.* at 5-6.

[28]     R. Doc. 35-1 at 5-12.

[29]     R. Doc. 46 at 12.

[30]     *Id.* at 11.

and that plaintiffs failed to establish that the alleged misrepresentations and omissions contained in defendants' search warrant affidavits were material to the magistrate judge's finding of probable cause.[31]  The Court granted leave to amend.

Plaintiffs then filed a second amended complaint.  In the latest iteration of their complaint, plaintiffs provide more detailed allegations regarding the deficiencies of the warrant affidavits.[32]  In particular, plaintiffs emphasize that no one "still living—let alone residing in the home—had anything to do with" the alleged crime underlying the warrants, and that law enforcement could not "charge [Mr. Naverez] with a crime posthumously, obviating the need for such evidence."[33]  Plaintiffs also reiterate their allegations from the last version of their complaint about the affirmative misrepresentations contained in defendants' affidavits.[34]  The thrust of plaintiffs' claims is that defendants obtained warrants to search for information "supporting a defensive narrative to retroactively justify the excessive use of force" that resulted in Mr. Nevarez's death and to intimidate his family rather than to seek evidence of Mr. Nevarez's alleged crime.[35]

---

[31]    *Id.* at 33-34, 37-38.
[32]    R. Doc. 47 at 15-18 ¶ 65, 21-22 ¶ 72.
[33]    *Id.* ¶¶ 65(s), 67.
[34]    *Id.* at 15-18 ¶ 65.
[35]    *Id.* at 3 ¶ 5.

Leonard and Dorris filed a third motion to dismiss in which they argue that plaintiffs' second amended complaint contains no new allegations that warrant revisiting the Court's conclusion in its July 7, 2022 Order and Reasons.[36]  Plaintiffs oppose defendants' motion, again arguing that if defendants had disclosed to the magistrate judge "the material facts surrounding Mr. Nevarez's death and the true nature of [defendants'] investigation," the challenged warrants would not have been issued.[37]

After the motion was fully briefed, this Court asked the parties to submit supplemental briefing on the question of "whether the Fourth Amendment permits law enforcement officers to seek a warrant to investigate a crime for which the alleged perpetrator cannot be convicted because the alleged perpetrator whose conduct was the focus of the warrant was dead at the time the warrant was sought."[38]  Both parties submitted supplemental briefing pursuant to the Court's order.[39]

The Court considers the parties' arguments below.

---

[36]    R. Doc. 49-1 at 7.
[37]    R. Doc. 50 at 4.
[38]    R. Doc. 57.
[39]    R. Docs. 58 & 59.

8

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'" *Hall v. Hodgkins*, 305 F.

App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

While conducting this analysis, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). "It is well-established that '[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.'" *Carter v. Target Corp.*, 541 F. App'x 413, 416-17 (5th Cir. 2013) (per curiam) (quoting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)).

Defendants attached the following materials to their second motion to dismiss: (1) Leonard's affidavit for a search warrant of the Nevarezes' car and house, and the accompanying search warrant; (2) Dorris's affidavit for a search warrant of Ms. Nevarez's phone, and the accompanying search warrant; and 3) Dorris's affidavit for a search warrant of the Nevarezes' DVR Security System, and the accompanying search warrant.[40]  Because these documents are referred to and quoted extensively in plaintiffs' complaint, the Court may consider them in ruling on defendants' motions to dismiss. *Id.*; *Guillot v. Lopinto*, No. 20-1604, 2021 WL 779180, at *7 (E.D. La. Mar. 1,

---

[40]     R. Doc. 35-3.

2021) (considering medical records attached to defendants' motion to dismiss because the records "are referenced in detail throughout the Complaint" and "are central to Plaintiffs' claims").

## III.  DISCUSSION

Section 1983 of Title 42 of the United States Code provides a cause of action for plaintiffs whose federal rights are violated under the color of state law.  42 U.S.C. § 1983; *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).  To state a claim under section 1983, a plaintiff must first show a violation of the Constitution or of federal law, and then show that the violation was committed by someone acting "under color of state law."  *Id.* The qualified-immunity defense to such claims shields government officials who perform discretionary functions from suit and liability under section 1983, "unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (internal quotation marks omitted).  At the motion-to-dismiss stage, the Court looks to "defendant's conduct *as alleged in the complaint*" to determine whether a defendant is entitled to qualified immunity.  *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

"Once a defendant invokes the qualified immunity defense, the plaintiff carries the burden of demonstrating its inapplicability." *Floyd v. City of Kenner*, 351 F. App'x 890, 893 (5th Cir. 2009) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)). To satisfy that burden at the motion-to-dismiss stage, the plaintiff must allege facts sufficient to demonstrate (1) that the defendant violated a constitutional right, and (2) that the violated right was "clearly established" at the time of defendants' alleged actions. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Thus, an "officer will be entitled to qualified immunity if no constitutional violation occurred or if the conduct 'did not violate law clearly established at the time.'" *Davis v. Hodgkiss*, 11 F.4th 329, 333 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 1127 (2022). It is within the Court's discretion to decide which prong to address first. *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

## A. Fourth Amendment Claim

In plaintiffs' second amended complaint, they allege that defendants Leonard and Dorris are liable under section 1983 because they "knowingly and intentionally submitted affidavits containing false or insufficient factual statements and material omissions to procure the search warrants" of Ms.

Nevarez's cell phone, house, and car.[41] Because defendants contend that plaintiffs have failed to state a claim for a Fourth Amendment violation, the Court begins with the threshold question of whether plaintiffs have plausibly alleged that defendants violated a constitutional right. *See Lytle v. Bexar Cnty.*, 560 F.3d 404, 410 (5th Cir. 2009) ("If we determine that the alleged conduct did not violate a constitutional right, our inquiry ceases because there is no constitutional violation for which the government official would need qualified immunity.").

As discussed in this Court's July 7, 2022 Order and Reasons, the Fifth Circuit "has recognized two different kinds of claims against government agents for alleged Fourth Amendment violations in connection with a search or arrest warrant: (1) claims under *Franks v. Delaware*, 438 U.S. 154 (1978)," and "(2) claims under *Malley v. Briggs*, 475 U.S. 335 (1986)." *Melton v. Phillips*, 875 F.3d 256, 270 (5th Cir. 2017) (en banc) (J. Dennis dissenting); *see also Wilson v. Stroman*, 33 F.4th 202, 206 (5th Cir. 2022) (analyzing plaintiffs' "two alternative" Fourth Amendment claims, "one premised on *Malley* . . . and the other premised on *Franks*").

Under the first type of claim, known as *Franks* liability, "a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the

---

[41]     R. Doc. 47 at 23 ¶ 76.

warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (quoting *Franks*, 438 U.S. at 155-56). The Fifth Circuit has likewise held that "the intentional or reckless omission of material facts from a warrant application [or affidavit] may amount to a Fourth Amendment violation." *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006). To determine whether the false statements or omissions are necessary to the probable-cause finding, courts look to whether "'there remains sufficient content in the warrant affidavit to support a finding of probable cause' *after* the 'material that is the subject of the alleged falsity or reckless disregard is set to one side.'" *Terwilliger v. Reyna*, 4 F.4th 270, 281-82 (5th Cir. 2021) (quoting *Franks*, 438 U.S. at 171-72).

Under the second type of claim, premised on the Supreme Court's holding in *Malley v. Briggs*, "an officer can be held liable for a search authorized by a warrant when the affidavit presented to the magistrate was 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" *Mayfield v. Currie*, 976 F.3d 482, 487 (5th Cir. 2020) (quoting *Malley*, 475 U.S. at 344-45). "The *Malley* wrong is not the presentment of false evidence, but the obvious failure of accurately presented

14

evidence to support the probable cause required for the issuance of a warrant. *Blake v. Lambert*, 921 F.3d 215, 220 (5th Cir. 2019) (citation omitted). If a "reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant," the officer's "shield of immunity [will] be lost." *Malley*, 475 U.S. at 344-45.

Because "the principles of *Franks* have never been applied to facially invalid warrants," the Court begins its analysis by considering whether the warrant affidavits at issue support a finding of probable cause on their faces. *Kohler*, 470 F.3d at 1114 (explaining that the *Franks* materiality analysis presumes that the warrant affidavit, on its face, supports a finding of probable cause, because a plaintiff "cannot hold an officer liable under *Franks* for intentionally omitting important exculpatory information from a warrant affidavit when the officer has also committed a *Malley* violation").

Both warrant affidavits at issue include the same description of the facts: They explain that on October 13, 2020, police officers approached Mr. Nevarez when responding to a complaint of a person illegally discharging a weapon. At the time, Mr. Nevarez was in a car parked in a driveway. The police unsuccessfully attempted to negotiate with Mr. Nevarez, who eventually fled the vehicle. The officers attempted to subdue Mr. Nevarez

with "less lethal attempts" before they ultimately "responded to the threat" of Mr. Nevarez raising a firearm toward the police officers by "discharg[ing] their weapons," after which Mr. Nevarez, who "was struck," "succumbed to his injuries."[42]  Both affidavits indicate that the police were investigating the felony of aggravated assault upon a peace officer.[43]

Plaintiffs contend that the affidavits, which refer to Mr. Nevarez as "succumb[ing]" to his injuries after he was "struck," do not effectively convey that Mr. Nevarez was killed in his altercation with the police.[44]  Plaintiffs argue that if the affidavits clearly stated that Mr. Nevarez had died, they would fail to support a finding of probable cause.  They argue that because "a dead suspect cannot be charged with or prosecuted for a crime," any probable cause "would be for naught."[45]

The Court finds that the warrant affidavits make clear that Mr. Nevarez died.  Both affidavits state that the police made unsuccessful "less lethal attempts" to stop Mr. Nevarez before ultimately "discharg[ing] their weapons," at which point Mr. Nevarez was "struck and succumbed to his injuries."[46]  In light of the fact that the affidavits make clear that Mr. Nevarez

---

[42]    R. Doc. 35-3 at 1, 6.

[43]    *Id.*

[44]    *Id.*

[45]    *Id.*

[46]    *Id.*

16

died during the altercation with the police, and the affidavits do not include any information that suggests that others may have been involved with the alleged assault on a peace officer, the Court finds that the warrants do not support a finding of probable cause.

The parties have identified no binding cases, nor is this Court aware of any, that squarely addresses the question of whether probable cause can support a warrant to search for evidence of a crime that cannot be prosecuted because the suspect has died. A factually similar case from the Eastern District of Michigan, however, is instructive here. In *Coopshaw v. Figurski*, police officers unsuccessfully attempted to stop a woman for a traffic violation, which resulted in a car chase. 2008 WL 324103, at *1 (E.D. Mich. Feb. 6, 2008). During the pursuit, a police officer shot the woman through her car window. *Id.* She died from the gunshot wound the next morning. *Id.* Thereafter, a police officer was assigned to investigate the circumstances of the woman's death. *Id.* The officer obtained a search warrant to search the decedent's home with the help of a local prosecutor, who advised the officer on how to craft the warrant affidavit. *Id.* The officer conceded that the decedent could not be charged with a crime, but testified that the warrant was relevant to investigating the "totality of the incident," including a determination of whether the decedent was suicidal. *Id.* at *2. The

prosecutor who assisted the officer conceded that there was no suggestion of criminal activity on the part of anyone else. *Id.* The plaintiffs dismissed their claims against the police officer involved in the incident, but maintained that the prosecutor who helped prepare the warrant affidavit violated the Fourth Amendment. They argued that the true motive for obtaining the search warrant was to intimidate and harass the plaintiffs, to improve the public image of law enforcement, and to search for potentially exculpatory evidence in anticipation of litigation. *Id.* at *5. The prosecutor moved for summary judgment on the issue of immunity to suit. *Id.* at *6.

The court held that there was a genuine issue of material fact as to whether the search warrant was supported by probable cause. *Id.* at *13. In so doing, the court emphasized that "[t]he search warrant application itself does not provide information indicating suspicion of any chargeable criminal activity on the part of [decedent]," because she had already died when the warrant application was prepared, and that "there was no probable cause to suspect that any other past or ongoing criminal activity was connected to" decedent's home. *Id.* The purpose of seeking the warrant was "essentially to find out what happened, not for the purpose of charging [decedent] posthumously with a crime." *Id.* Accordingly, the court concluded that the circumstances of the search warrant "support[ed] the plaintiffs' theory that

18

the defendants used the warrant to further a 'fishing expedition' in order to discover information about [decedent's] mental state, and not to pursue any criminal investigation." *Id.*

The same is true here. Nothing in the warrant affidavits indicates that others were involved in Mr. Nevarez's alleged crime, nor do the affidavits give any indication that the crime could be ongoing. Much like the officer in *Coopshaw* who applied for a warrant "essentially to find out what happened," 2008 WL 324103, at *2, defendants concede in their motion to dismiss that they applied for the warrants to "investigat[e] the events which unfolded on the night of the incident which necessitated the use of force."[47] They do not dispute that Mr. Nevarez could not be posthumously charged of a crime, nor do they contend they were actively investigating anyone else in connection with the alleged assault on a peace officer. Plaintiffs have plausibly alleged that here, as in *Coopshaw*, law enforcement secured the warrants to uncover exculpatory evidence they could use to defend their own use of force.

Probable cause exists "when there are reasonably trustworthy facts which, given the totality of the circumstances, are sufficient to lead a prudent person to believe that the items sought constitute fruits, instrumentalities,

---

[47] R. Doc. 49-1 at 13.

or evidence of a crime." *Kohler*, 470 F.3d at 1109 (citing *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). "There must, of course, be a nexus . . . between the item to be seized and criminal behavior." *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967). Such a nexus is "automatically provided in the case of fruits [of a crime], instrumentalities, or contraband." *Id.* But it is well-settled law that "in the case of 'mere evidence' [of a crime], probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." *Id.*; *see also United States v. Pena*, 418 F. App'x 335, 346 (5th Cir. 2011) (same). In this case, the evidence defendants purportedly sought to uncover could not possibly "aid in a particular apprehension or conviction." *Hayden*, 387 U.S. at 30. Although the Court accords "great deference" to a magistrate judge's finding of probable cause, the Court will not "defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Id.*

In their supplemental brief, defendants rely on *Blanchard-Daigle v. Geers*, 802 F. App'x 113 (5th Cir. 2020). In that case, the police pulled over a man they suspected of driving while intoxicated. *Id.* at 114. When the man reached for something in his car, the police fatally shot him. *Id.* Eight hours after the man was killed, the police obtained a warrant to search the

20

decedent's home "to investigate an aggravated assault." *Id.* at 115. Much like plaintiffs here, the plaintiff in *Blanchard-Daigle* argued that the police purported to investigate a crime as a pretext. The Fifth Circuit declined to address the plaintiff's claim based on the "well-settled precedent . . . that the deceased have no rights to be protected or invalidated under the Constitution." *Id.* at 121. This case thus does not help defendants.[48]

Because the Court finds that plaintiffs have plausibly alleged that the warrant affidavits, on their face, do not support a finding of probable cause, the Court does not address the question of *Franks* liability. *Mayfield v. Currie*, 976 F.3d 482, 488 (5th Cir. 2020) ("[A] plaintiff cannot hold an officer liable under *Franks* for intentionally omitting important exculpatory information from a warrant affidavit when the officer has also committed a *Malley* violation by presenting a facially deficient warrant affidavit to the issuing judge." (internal quotation marks omitted)).

## B.    Qualified Immunity

---

[48]    As discussed in this Court's July 7, 2022 Order and Reasons, plaintiffs' claim for an unreasonable search under the Fourth Amendment is premised on the violation of Ms. Nevarez's constitutional rights, not Mr. Nevarez's. R. Doc. 46 at 11.

Defendants contend that even if the Court finds that they violated Ms. Nevarez's constitutional rights, they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Id.* (quoting *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). "Evaluating qualified immunity is a two-step process." *Michalik v. Hermann*, 422 F.3d 252, 258-59 (5th Cir. 2005). First, a court must determine "whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right." *Id.* "If the plaintiff has alleged a violation of a clearly established right, the next step . . . is to determine whether the official's conduct was objectively reasonable under the law at the time of the incident." *Id.* Qualified immunity does not attach if "a reasonably well-trained officer in [the officer's] position would have known that his affidavit failed to establish probable cause." *Malley*, 45 U.S. at 345.

The Court finds that defendants are not entitled to dismissal on the basis of qualified immunity. The Fourth Amendment right that plaintiffs contend defendants violated—to be free from a search pursuant to a warrant that, on its face, was "so lacking in indicia of probable cause as to render official belief in its existence unreasonable," *Malley*, 475 U.S. at 344-45—was clearly established at the time defendants submitted their warrant affidavits.

22

*See Blake*, 921 F.3d at 220-21 (defendant's warrant affidavit that "does not provide any supporting facts from which a magistrate could independently determine probable cause" violated a right that was "clearly established when [defendant] swore his affidavit," as "[t]he general *Malley* rule dates from the 1980s"). A reasonable officer would understand that there is no probable cause to support a search warrant where, as here, the police were investigating their own use of force rather than pursuing an active criminal investigation. *See Wooley v. City of Baton Rouge*, 211 F.3d 913, 919 (5th Cir. 2000) (a right is clearly established if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right" (internal citations omitted)); *see also Mayfield*, 976 F.3d at 487 ("The question to be asked, under *Malley*, is whether a reasonably well-trained officer in [defendants'] position would have known that his affidavit failed to establish probable cause and that he should not have applied for a warrant.").

Plaintiffs have also plausibly alleged that defendants acted in an objectively unreasonable manner in applying for the affidavit. Like the plaintiffs in *Coopshaw*, plaintiffs here contend that defendants obtained their search warrants "not for the purpose of seeking evidence related to any alleged crimes, but rather to search for information supporting a defensive narrative to retroactively justify the excessive use of force that caused [Mr.

23

Nevarez's] death."[49]   2008 WL 324103, at *5; *see also Floyd v. City of Kenner, La.*, 351 F. App'x 890, 895 (reversing district court's dismissal of plaintiff's Fourth Amendment claim on the basis of qualified immunity because "at the pleading stage, [plaintiff's] allegation that the [police's] actions were spurred by . . . ill will suffices").

The Court recognizes that this decision is a departure from its conclusion in its July 7, 2022 Order and Reasons.  The dispositive issue—whether probable cause exists to support a warrant to search for evidence of a crime that cannot lead to the prosecution of a criminal—is more thoroughly briefed in plaintiffs' opposition to the instant motion than it was in plaintiffs' oppositions to defendants' first and second motions to dismiss.  The Court has reconsidered the issue of the constitutional sufficiency of defendants' warrant affidavits in light of plaintiffs' additional allegations and argument and concludes that plaintiffs have plausibly alleged a Fourth Amendment violation, and that defendants are not entitled to dismissal on their qualified immunity defense.

---

[49]    R. Doc. 47 ¶ 5.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is DENIED.

New Orleans, Louisiana, this  24th  day of January, 2023.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE