UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DONNA LOU and DAREN PARSA, on their own behalf and on behalf of their deceased minor child, E.P.**<br><br>versus<br><br>**SHERIFF JOSEPH P. LOPINTO, III, et al.** | **CIVIL ACTION NO. 2:21-cv-00080**<br><br>**SECTION "D"**<br><br>**DIVISION  (2)**<br><br>**JUDGE WENDY B. VITTER**<br><br>**MAGISTRATE DONNA P. CURRAULT** |

**STATEMENT OF UNCONTESTED MATERIAL FACTS**

Defendants Victory Real Estate Investments LA, LLC and Westgate Investors NO, LLC d/b/a Westgate Shopping Center ("Moving Defendants") respectfully submit the following Statement of Uncontested Material Facts in Support of their Motion for Summary Judgment.

1. Plaintiffs Donna Lou and Daren Parsa filed their *Complaint* on January 14, 2021, in which they allege that their 16-year-old child, E.P., who was severely autistic, died while in the custody and care of Jefferson Parish Sheriff's Office (JPSO) deputies while in the parking lot of the Westgate Shopping Center.[1]

2. According to Plaintiffs, Moving Defendants "hired, authorized and/or provided security officers for its tenants, customers and visitors," and that DPSO Deputy Chad Pitfield ("Defendant Pitfield") was a member of the security team.[2]

---

[1] *Complaint*, Doc. 1.
[2] Doc. 1, ¶¶ 43, 44.

3. Plaintiffs allege that Defendant Pitfield was a JPSO Reserve Deputy who was assigned to the crime scene for JPSO and who was working "off-duty" / "public assignment" on Moving Defendants' property at the time of the incident.[3]

4. In the "Causes of Action" section of their *Complaint*, Plaintiffs bring one count against Moving Defendants: "Violation of Louisiana Constitution and State Law," under which the only allegation involving Moving Defendants is that Moving Defendants "[are] liable for the actions and omissions of Defendant Pitfield, as stated herein, in his capacity as working a 'special detail' on 'public assignment' on the premises of the Westgate Shopping Center, and acting in the course and scope of his employment or agency, at all relevant times herein."[4]

5. The *Complaint* contains no factual allegation that Moving Defendants were directly negligent in any way.[5]

6. Moving Defendants had no regular meetings with the private security detail and had never had a discussion with Defendant Pitfield.[6]

7. Moving Defendants did not require security to write any type of reports.[7]

8. The only instruction Moving Defendants gave to the private security detail was that they were to "have an officer present on the parking lot for specified periods of time to where they were protecting the patrons and the tenants of the Westgate Shopping Center."[8]

---

[3] Doc. 1, ¶ 46
[4] Doc. 1, ¶ 477.
[5] Doc. 1, *in globo*; Doc. 1, ¶ 27.
[6] *Exhibit 1*, Deposition of Gina Christopher, p. 26, lines 20-24, p. 45, lines 16-18.
[7] *Ex. 1*, p. 26, lines 7-10.
[8] *Ex. 1*, p. 36, lines 18-25, p. 37, lines 1-6.

9. Moving Defendants never received a security plan or proposal from JPSO and Moving Defendants never developed a security plan themselves.[9]

10. Apart from a cell phone, Moving Defendants' private security detail used its own uniform, weapon, vehicle, and tools.[10]

11. The policies and procedures which Defendant Pitfield was supposed to follow in his role doing private detail work for customers were the policies and procedures he was trained on by JPSO.[11]

12. Moving Defendants had no policies, rules, or regulations of any type with which the security detail was required to comply.[12]

13. As for location, Moving Defendants only instructed its private security detail to patrol the property.[13]

14. When called to the incident at issue, Defendant Pitfield was not "under any general directive or protocol provided by Westgate," was "at [his] discretion as a reserve deputy officer to respond to that incident," and in that moment would follow his JPSO training.[14]

15. Moving Defendants provided no training to its security officers and Defendant Pitfield had no conversations with Moving Defendants following the incident at issue.[15]

---

[9] *Ex. 1*, p. 30, lines 1-5.
[10] *Ex. 1*, p. 43, lines 16-25, p. 44, lines 1-22; *Exhibit 2*, Deposition of Chad Michael Pitfield, p. 61, lines 13-19, p. 62, lines 1-25, p. 63, lines 1-23, p. 95, lines 15-18, p. 97, 22-25.
[11] *Ex. 2*, p. 36, lines 23-25, p. 37, lines 1-15.
[12] *Ex. 1*, p. 25, lines 11-15.
[13] *Ex. 2*, p. 98, lines 1-7.
[14] *Ex. 2*, p. 231, lines 7-22.
[15] *Ex. 2*, p. 233, lines 7-10.

16. The methods used by the security officers were to be the same methods they used as on-duty police officers.[16]

17. Moving Defendants' private security guards were expected to use their professional judgment gathered from their experience as police officers.[17]

18. E.P had been calm during the time that Defendant Pitfield was involved with his restraint.[18]

19. At the time Defendant Pitfield was replaced in the restraint of E.P., there was nothing about E.P's situation that caused Donna Lou concern for things like need for CPR, and Defendant Pitfield did not have E.P. in a chokehold.[19]

20. When Defendant Pitfield was replaced in the restraint of E.P., Plaintiff Donna Lou was still holding his hand and she wouldn't be able to hold his hand unless E.P. was calm at that point.[20]

21. There was no indication that E.P. was having respiratory issues before Defendant Pitfield was replaced.[21]

---

[16] *Ex. 1*, p. 44, lines 2-25.
[17] *Ex. 1*, p. 25, lines 11-15, p 44, lines 2-25; *Ex. 2*, p. 36, lines 23-25, p. 37, lines 1-15.
[18] *Exhibit 3*, Deposition of Donna Lou, p. 176, lines 15-19.
[19] *Ex. 3*, p. 206, lines 3-11.
[20] *Exhibit 4*, Deposition of Daren Parsa, p. 278, lines 5-13.
[21] *Ex. 2*, p. 125, lines 17-25, p. 126, lines 1-4.

Respectfully submitted,

**THOMPSON, COE, COUSINS & IRONS, LLP**

*/s/ Christopher W. Kaul*

**CHRISTOPHER W. KAUL (33213), T.A.**
**MARK A. HILL (33891)**
601 Poydras Street, Suite 1850
New Orleans, Louisiana  70130
Telephone:	(504) 526-4350
Facsimile:	(504) 526-4310
E-mail:	ckaul@thompsoncoe.com
	mhill@thompsoncoe.com

**COUNSEL FOR VICTORY REAL ESTATE INVESTMENTS LA, LLC and WESTGATE INVESTORS NO, LLC D/B/A WESTGATE SHOPPING CENTER**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that to the best of my knowledge all counsel of record consent to and participate in receiving electronic notification from the CM/ECF system, and that the Clerk of the Court for the Eastern District of Louisiana, using the CM/ECF system, will electronically send notification of the filing of this pleading to all counsel of record.

By:  */s/ Christopher W. Kaul*
Christopher W.  Kaul