UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DONNA LOU and DAREN PARSA, on their own behalf and on behalf of their deceased minor child, E.P.**<br><br>**versus**<br><br>**SHERIFF JOSEPH P. LOPINTO, III, et al.** | **CIVIL ACTION NO. 2:21-cv-00080**<br><br>**SECTION "D"**<br><br>**DIVISION (2)**<br><br>**JUDGE WENDY B. VITTER**<br><br>**MAGISTRATE DONNA P. CURRAULT** |

**MEMORANDUM IN SUPPORT OF DEFENDANTS VICTORY REAL ESTATE INVESTMENTS LA, LLC'S AND WESTGATE INVESTORS NO, LLC'S d/b/a WESTGATE SHOPPING CENTER MOTION FOR SUMMARY JUDGMENT**

**MAY IT PLEASE THE COURT:**

This is a tragic case involving a boy who lost his life. However, fault cannot lie with Defendants Victory Real Estate Investments LA, LLC and Westgate Investors NO, LLC d/b/a Westgate Shopping Center ("Moving Defendants"), the owners of the property on which the incident occurred. Plaintiffs Donna Lou and Daren Parsa's theory of liability on the part of Moving Defendants is that they are responsible for the actions of their private security guard on grounds of *respondeat superior*, or vicarious liability. Summary judgment in favor of Moving Defendants is proper because the private security guard was not a "servant," or employee, of Moving Defendants; he was an independent contractor deployed to the shopping center to provide security and protection. Alternatively, even if the security guard were an employee of Moving Defendants, it is undisputed that his conduct did not cause injury.

## FACTS AND BACKGROUND

On January 14, 2021, Plaintiffs Donna Lou and Daren Parsa ("Plaintiffs") filed the *Complaint* on their behalf and on behalf of their minor son, E.P.[22] Plaintiffs allege that their 16-year-old child, E.P., who was severely autistic, died while in the custody and care of Jefferson Parish Sheriff's Office (JPSO) deputies while in the parking lot of the Westgate Shopping Center.[23] E.P. was allegedly "held down in a prone position, on his stomach, handcuffed, shackled, arms and legs held down, head, shoulder and neck encircled by the arm of a deputy, with JPSO deputies applying their own body weight as a restraint, while he was suffering from an acute sensory episode…".[24] Plaintiffs allege that JPSO deputies "persisted in dangerously and forcefully restraining E.P. without appropriately monitoring his condition, until they killed him."[25]

According to Plaintiffs, Moving Defendants "hired, authorized and/or provided security officers for its tenants, customers and visitors."[26] JPSO Deputy Chad Pitfield ("Defendant Pitfield") was a member of the security team.[27] Defendant Pitfield was allegedly a JPSO Reserve Deputy who was assigned to Moving Defendants' property for JPSO and who was working "off-duty"/ "public assignment" on Moving Defendants' property at the time of the incident.[28] When Defendant Pitfield arrived on the scene of the conflict between E.P and his father, Plaintiff Daren Parsa, Defendant Pitfield was "acting as an agent, servant, and borrowed employee of [Moving Defendant], in the course and scope of his employment," according to Plaintiffs.[29]

---

[22] Statement of Material Facts (SMF), ¶ 1; *Complaint*, Doc. 1.
[23] Doc. 1, ¶¶ 1-2.
[24] Doc. 1, ¶ 2.
[25] Doc. 1, ¶ 3.
[26] SMF, ¶ 2; Doc. 1, ¶ 43.
[27] SMF, ¶ 2; Doc. 1, ¶ 44.
[28] SMF, ¶ 3; Doc. 1, ¶ 46.
[29] Doc. 1, ¶¶ 48-63.

The record establishes, however, that Moving Defendants had never even had a discussion with Defendant Pitfield and required no type of reporting from him.[30] Furthermore, Moving Defendants issued no policies or procedures to Defendant Pitfield.[31] Most importantly, Moving Defendants provided no instruction as to how Defendant Pitfield should perform his work, did not train Defendant Pitfield in any way, and did not provide the methods used by Defendant Pitfield during the incident at issue.[32] Louisiana jurisprudence dictates that Moving Defendants did not employ levels of control sufficient to deem Defendant Pitfield their servant.

Plaintiffs allege that Moving Defendants are directly liable for their own negligence, and are liable on grounds of apparent and implied agency and vicarious liability for the actions of their "special detail" security guard.[33] In the "Causes of Action" section of their *Complaint*, Plaintiffs bring one count against Moving Defendants: "Violation of Louisiana Constitution and State Law."[34] The only allegation involving Moving Defendants contained in this count is that Moving Defendants "[are] liable for the actions and omissions of Defendant Pitfield, as stated herein, in his capacity as working a 'special detail' on 'public assignment' on the premises of the Westgate Shopping Center, and acting in the course and scope of his employment or agency, at all relevant times herein."[35] There is no factual allegation giving rise to Plaintiffs' conclusory allegation of direct negligence.[36]

---

[30] SMF, ¶¶ 6; *Exhibit 1*, Deposition of Gina Christopher, p. 26, lines 7-10, 20-24, p. 45, lines 16-18.
[31] SMF, ¶¶ 11-12; *Ex. 1*, p. 25, lines 11-15; *Ex. 2*, p. 36, lines 23-25, p. 37, lines 1-15.
[32] SMF, ¶¶ 13-16; *Ex. 1*, p. 44, lines 2-25; *Ex. 2*, p. 98, lines 1-7, p. 231, lines 7-22, p. 233, lines 7-10.
[33] Doc. 1, ¶ 27.
[34] SMF, ¶ 4; Doc. 1, ¶ 477.
[35] SMF, ¶ 4; Doc. 1, ¶ 477.
[36] SMF, ¶ 5; Doc. 1, *in globo*; Doc. 1, ¶ 27.

## **LAW AND ARGUMENT**

### A.  **Summary Judgment Standard**

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Supreme Home Health Services, Inc. v. Azar*, 380 F. Supp. 3d 533, 552 (W.D. La. 2019), *aff'd* 812 F. App'x. 229 (5th Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under the applicable law in the case. *Id.* A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

In evaluating the parties' evidence, a court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Id.* at 553. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Id.* (quoting *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). The non-moving party may not rely merely on the allegations and conclusions contained within the pleadings; rather, the non-movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Id.* (quoting *Wallace v. Texas Tech Univ.*, 80 F.3d 104, 1047 (5th Cir. 1996)).

When a movant bears the burden of proof on an issue, it must establish "beyond [doubt] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Id.* (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1996)). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Id.*

### B.  **It is undisputed that Defendant Pitfield was not acting in the course and scope of employment for Moving Defendants.**

In their sole charge against Moving Defendants, Plaintiffs assert that Moving Defendants "[are] liable for the actions and omissions of Defendant Pitfield, as stated herein, in his capacity

as working a 'special detail' on 'public assignment' on the premises of the Westgate Shopping Center, and acting in the course and scope of his employment or agency, at all relevant times herein."[37] Louisiana jurisprudence establishes that a private security detail whose work is of an independent nature qualifies as an independent contractor, rendering a principal not liable for its actions.[38] *Duronslet v. Wal-Mart Stores, Inc.*, 2022-0019 (La. App. 4 Cir. 7/27/22), 345 So.3d 1136, 1150-54; *Trichell v. McClure*, 2021-1240 (La. App. 1 Cir. 4/8/22), 341 So.3d 856, 860-63.

Employers are liable for the damage caused by their servants and overseers in the exercise of the functions in which they are employed. La. C.C. art. 2320. Conversely, a principal is not liable for the actions of an independent contractor unless the work is ultra hazardous or the principal reserves the right to supervise or control the independent contractor's work. *Hickman v. Southern Pacific Transport Co.*, 262 So.2d 385 (La. 1972); *Villaronga v. Gelpi Partnership No. 3*, 536 So.2d 1307, 1310 (La. App. 5th Cir. 1988), *writ denied,* 540 So.2d 327 (La. 1989). "The issue of independent contractor status is a proper subject to be resolved on summary judgment." *Irwin v. Rubens*, 2011-0405 (La. App. 4 Cir. 9/7/11), 75 So.3d 952, 956. The party seeking to establish an employer-employee relationship bears the burden of proof of establishing such relationship. *Hillman v. Comm-Care, Inc.*, 2001-1140 (La. 1/15/02), 805 So.2d 1157, 1163.

"The label 'independent contractor' indicates 'a freedom of action and choice with respect to the undertaking in question and a legal responsibility on the part of the contractor in case the agreement is not fulfilled in accordance with its covenants.'" *Duronslet*, 345 So.3d at 1150-51 (quoting *Hickman v. So. Pac. Transp. Co.*, 262 La. 102, 262 So.2d 385, 390 (1972)). The Louisiana

---

[37] SMF, ¶ 4; Doc. 1, ¶ 477.
[38] Since Plaintiffs' only cause of action against Moving Defendant arises under "Violation of Louisiana Constitution and State Law," Louisiana state law governs all claims against Moving Defendant. Doc. 1, ¶ 477; *see Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 353 (5th Cir. 1989) ("A federal court exercising pendent jurisdiction over state law claims, must apply the substantive law of the state in which it sits.").

Supreme Court has developed the following factors to determine whether an individual is an employee or an independent contractor:

> (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach.

*Id.* (citing *Hickman v. So. Pac. Transp. Co.*, 262 So.2d 385, 390-91 (La. 1972)).

"The single most important factor to consider in deciding whether the employer-employee relationship exists, for purposes of La. C.C. art. 2320, is the right of the employer to control the work of the employee." *Bolden v. Tisdale,* 2021-00224 (La. 1/28/22), 347 So.3d 697, 708. In *Bolden*, the Supreme Court of Louisiana explained that "'it is the right of control of the time and physical activities in the other party and the existence of a close relationship between the parties which determine that one is a servant.'" *Id.* (quoting *Blanchard v. Ogima*, 215 So.2d 902, 905 (La. 1968)). Furthermore, "'Servant' must be interpreted as that particular kind of agent who has a very close economic relation to, and is subject to very close control by, the principal. A servant is one who offers his personal services for a price. He is an integral part of his employer's business and must submit to the control of his physical conduct as well as of his time." *Id.* (quoting *Blanchard v. Ogima*, 215 So.2d 902, 906 (La. 1968)).

*Duronslet* and *Trichell* involve circumstances nearly identical to this matter. In *Duronslet*, the plaintiff allegedly went to a Walmart store in New Orleans to pick up a prescription, but was ignored by pharmacy employees. *Duronslet*, 345 So.3d at 1140. After the plaintiff loudly called to speak to a manager, an Orleans Parish Sheriff's deputy who was working security detail at the store arrived, grabbed him, took him to the floor, pushed his knee into his back, and handcuffed him. *Id.* The plaintiff alleged injuries to his back and shoulder, as well as embarrassment,

humiliation, and mental anguish, and asserted that the deputy "was at all times subject to the direction and control of [Walmart], and his actions were therefore performed in the course and scope of his employment with [Walmart.]" *Id.*

Walmart filed a motion for summary judgment, contending that it was not an employer of the deputy at the time of the incident, rather that the deputy was an independent contractor. *Id.* at 1144. In determining whether Walmart was correct, the court proceeded through the five factors outlined by the Louisiana Supreme Court in *Hickman*. The court summarily disposed of Factors (1), (4), and (5), stating that a Security Agreement constituted a valid contract between the parties, the security guards were provided an hourly rate for their work so there was a specific price for the overall undertaking, and the duration of the work was for a specific time because the work was to continue for one year and thereafter on a month-to-month basis until terminated by either party with thirty days' notice or in event of a material breach by U.S. Security. *Id.* at 1151.

The court deliberated Factors (2) and (3) together, stating that "'[f]actors two and three are generally discussed together and refer to the methods used to complete the project, the non-exclusiveness of those methods, and the degree of control exercised by the principal.'" *Id.* at 1152 (quoting *Simon v. Farm Bureau Ins. Co.*, 2019-0278 (La. App. 3 Cir. 3/4/20), 297 So.3d 147, 151). The security detail and Walmart had agreed that security services would be supplied via a "permanent law enforcement officer" with "duties…to staff a post at the front entrance or periodically walk around the sales floor as directed by the store management team, providing a visible deterrent to criminal activity." *Id.* at 1153. Walmart did not provide security guards with operating supplies and equipment. *Id.* Furthermore, though Walmart retained the right of inspection and supervision, the security detail had sole control of day-to-day and operational management services. *Id.* The court noted that "[t]he Security Agreement further connoted a degree of autonomy for the guards because it stated that the security guards 'may take any

precaution the security guard(s), *in their professional judgment*, determine is necessary to protect themselves, customers, and [Walmart] associates.'" *Id.* (emphasis added by the court). The court concluded that it was undisputed that the security detail was not an employee of Walmart. *Id.* at 1154.

Similarly, *Trichell v. McClure*, 2021-1240 (La. App. 1 Cir. 4/8/22), 341 So.3d 856, involved a private security detail accused of misconduct. The security detail in *Trichell* had more specific duties and was subject to far greater levels of control than Defendant Pitfield, yet the court in *Trichell* still granted summary judgment in favor of the property owner.  In *Trichell*, the plaintiff took a golf cart for a joyride around his apartment complex in the early-morning hours. *Trichell*, 341 So.3d at 858. A "courtesy officer" who was a city police officer living at the complex got into an altercation with the plaintiff in which he "used a takedown maneuver to subdue and handcuff the apparently intoxicated Trichell. As a result, Trichell claims he suffered serious injuries, including a fractured jaw that required extensive medical treatment." *Id.* at 859. The plaintiff named the company that owned the apartment complex, GAA, as a defendant, alleging it was vicariously liable for the acts of the courtesy officer. *Id*. GAA responded that it could not be held vicariously liable because the officer was acting as an independent contractor at the time of the incident, so was not a GAA employee. *Id.*

The record contained evidence that the officer was responsible for providing a courteous presence among residents, assisting in enforcement of rules and regulations, and generally assisting property management. *Id.* at 861. Specific duties included being on call for disturbances or safety-related calls, walking and patrolling the property, checking lights and gates, locking designated areas nightly, attending social functions, assisting management with residential problems when requested, attending instruction on crime prevention from management, meeting with management three times weekly, and notifying management of planned absences. *Id.* The

officer was to complete a daily activity report noting the areas of the property that were checked and whether criminal activity was observed. *Id.* As discussed *infra*, specific duties such as these were not instituted by Moving Defendants.

The property-owner defendants oversaw neither Defendant Pitfield nor the security detail in *Trichell* in the methods and operations of their work. A GAA executive attested that the methods and timing of completing the duties were within the control of the officers, that the officers had the discretion to perform services based on their training and experience as law enforcement officers, and that the security officers were not provided with tools or training to perform the security-related duties and inspections. *Id.* The officer testified at deposition that his actions were in accordance with his police training. *Id.* at 862. This evidence, according to the court, "established that [the officer] handled the incident at his own discretion, according to his police training." *Id.* There was an "absence of factual support for [plaintiff's] claim that [the officer] was [GAA's] employee," thus GAA was entitled to summary judgment. *Id.*

As in *Trichell* and *Duronslet*, Plaintiffs allege that Moving Defendants are vicariously liable for the actions of a private security guard who was patrolling their property.[39] Yet, the guards in *Trichell* and *Duronslet* were subject to greater levels of control than the guard in this matter and the property owners were granted summary judgment in those cases. In *Trichell*, the security guard was tasked with attending instruction on crime prevention from property management, meeting with management three times weekly, attending social functions, and notifying management of planned absences. *Trichell*, 341 So.3d at 861. Here, Moving Defendants had no regular meetings with Defendant Pitfield, gave him no social obligations, and had never even had a discussion with him.[40] The guard in *Trichell* was responsible for completing a daily activity report. *Trichell*, 341

---

[39] SMF, ¶ 4; Doc. 1, ¶ 477; *see Duronslet*, 345 So.3d at 1140; *Trichell*, 341 So.3d at 859.
[40] SMF, ¶ 6; *Exhibit 1*, Deposition of Gina Christopher, p. 26, lines 20-24, p. 45, lines 16-18.

So.3d at 861. Moving Defendants did not require security to write any type of reports.[41] In *Duronslet*, the officer was instructed to "periodically walk around the sales floor as directed by the store management team, providing a visible deterrent to criminal activity." *Duronslet*, 345 So.3d at 1153. Here, the only instruction Moving Defendants gave to the private security detail was that they were to "have an officer present on the parking lot for specified periods of time to where they were protecting the patrons and the tenants of the Westgate Shopping Center."[42] There was no direction of movement. Moving Defendants never received a security plan or proposal from JPSO and Moving Defendants never developed a security plan themselves.[43]

Furthermore, and most importantly, Moving Defendants did not utilize any control over the security guards' methods of performance. *See Bolden* 347 So.3d at 708 ("The single most important factor to consider in deciding whether the employer-employee relationship exists, for purposes of La. C.C. art. 2320, is the right of the employer to control the work of the employee.") In *Trichell*, the court highlighted that the methods and timing of completing the duties were within the control of the officers, the officers had the discretion to perform services based on their training and experience as law enforcement officers, and the security officers were not provided with tools or training to perform the security-related duties and inspections. *Trichell*, 341 So.3d at 861. Similarly, in *Duronslet*, the court noted that Walmart did not provide security guards with operating supplies and equipment, and highlighted the fact that security guards were to use their professional judgment in determining what was necessary to protect those on site. *Duronslet*, 297 So.3d at 1153. Here, Defendant Pitfield testified that "the policies and procedures that [he was] supposed to follow in [his] role doing private detail work for customers were the policies and procedures [he was] trained on by JPSO[.]"[44] Moving Defendants corroborated this statement,

---

[41] SMF, ¶ 7; *Ex. 1*, p. 26, lines 7-10.
[42] SMF, ¶ 8; *Ex. 1*, p. 36, lines 18-25, p. 37, lines 1-6.
[43] SMF, ¶ 9; *Ex. 1*, p. 30, lines 1-5.
[44] SMF, ¶ 11; *Ex. 2*, p. 36, lines 23-25, p. 37, lines 1-15.

testifying that they had no policies, rules, or regulations of any type with which the security detail was required to comply.[45] Security was instructed only to patrol the property.[46] When called to the incident at issue, Defendant Pitfield was not "under any general directive or protocol provided by Westgate," was "at [his] discretion as a reserve deputy officer to respond to that incident," and in that moment would follow his JPSO training.[47] Moving Defendants provided no training to their security officers and Defendant Pitfield had no conversations with Moving Defendants following the incident at issue.[48] The methods used by the security officers were to be the same methods they used as on-duty police officers.[49] Just as in *Trichell* and *Duronslet*, Moving Defendants did not provide tools or equipment for officers to perform security-related duties; apart from a cell phone, the security guards used their own uniform, weapon, vehicle, and tools.[50] *See Duronslet*, 345 So.3d at 1153; *Trichell*, 341 So.3d at 861.

The courts in *Trichell* and *Duronslet* granted summary judgment in favor of the property owners. *Duronslet*, 345 So.3d at 1154; *Trichell*, 341 So.3d at 862. The same should be done here.[51]

    **C.**    **Alternatively, it is undisputed that the private security detail's actions were not a cause-in-fact of E.P.'s injuries.**

It is undisputed that when Defendant Pitfield's involvement in the incident at issue ceased, E.P was calm and his condition raised no cause for concern. Therefore, there can be no finding

---

[45] SMF, ¶ 12; *Ex. 1*, p. 25, lines 11-15.
[46] SMF, ¶ 13; *Ex. 2*, p. 98, lines 1-7.
[47] SMF, ¶ 14; *Ex. 2*, p. 231, lines 7-22.
[48] SMF, ¶ 15; *Ex. 2*, p. 233.
[49] SMF, ¶ 16; *Ex. 1*, p. 44, lines 2-25.
[50] SMF, ¶ 10; *Ex. 1*, p. 43, lines 16-25, p. 44, lines 1-22; *Exhibit 2*, Deposition of Chad Michael Pitfield, p. 61, lines 13-19, p. 62, lines 1-25, p. 63, lines 1-23, p. 95, lines 15-18, p. 97, 22-25.
[51] Looking beyond the independence/control factors, it is undisputed that there was an agreement between Moving Defendant and JPSO about the services to be performed and that the security guards were provided a specific hourly rate for their work. *Ex. 1*, p. 36, lines 7-25, p. 37, lines 1-6; *Ex. 2*, p. 36, lines 18-22. In *Duronslet*, the court held that a specified hourly rate for the officer's work indicates an independent contractor relationship. *Duronslet*, 345 So.3d at 1151 ("The Addendum satisfies the fourth factor (i.e., a specific price for the overall undertaking) because it lists the hourly rate for the security guards."). Furthermore, Louisiana courts have found independent contractor relationships on motions for summary judgment when the relationships are predicated on oral agreements. *See, e.g., Buckley v. Vess Beverage, Inc.*, 99-1073 (La. App. 5 Cir. 3/22/00), 759 So.2d 133, 135-36 (citing *Cooley v. Benson Motor Co.,* 97–27 (La. App. 5 Cir. 5/28/97), 695 So.2d 1049). The duration of work was non-specific, however this should be considered in the context of the nature of the work being on-going security services.

that his actions caused damage to Plaintiffs. In any negligence claim, the plaintiff must prove every element of a duty-risk analysis. *Pinsonneault v. Merchants & Farmers Bank & Trust Co.*, 2001-2217 (La. 4/3/02), 816 So.2d 270, 275. The elements a plaintiff must prove are: (1) the defendant had a duty to conform its conduct to a specific standard of care (a duty), (2) the defendant failed to conform its conduct to that standard of care (a breach of duty), (3) the defendant's failure to conform its conduct was a cause-in-fact of the plaintiff's injuries (a cause-in-fact), (4) the defendant's failure to conform its conduct was a legal cause of the plaintiff's injuries (within legal scope of protection), and (5) actual damages (damage). *Id.* at 276.

Louisiana courts have held that summary judgment is warranted in favor of the defendant when a potentially negligent act is a harmless step on the stairway to ensuing harm. In *Desselle v. State Farm Mut. Ins. Co.*, 21-553 (La. App. 5 Cir. 6/8/22), 343 So.3d 895, the court addressed a situation in which the defendant was alleged to have parked his vehicle in a fire lane, causing the plaintiff to take an alternate route over an uneven grassy area. *Desselle*, 343 So.3d at 896-97. The plaintiff lost her footing and was injured. *Id.* The court concluded, "[Plaintiff] asserts that, 'but for' an obstruction to the school entrance created by Mr. Siles' parked and unattended vehicle, she would not have ultimately sustained her injuries. Even if we were to assume that Mr. Siles' act of parking the car was negligent, there appears to be no issue of material fact that the physical cause of [Plaintiff's] fall was directly attributable to a specific area of uneven ground…" *Id.* at 900-01. The court determined that Mr. Siles was not liable for injury. *Id.*

In coming to this conclusion, the court in *Desselle*, looked to *LaCas v. Hartford Acc. & Indem. Co.*, 152 So.2d (La. Ct. App. 1963), in which

> the plaintiff sued the owner of a vehicle who had parked near the base of her apartment's stairway, after she slipped and fell and her child struck the vehicle. Specifically, the plaintiff in that case argued that the act of the defendant, in parking his car so near the base of the stairway, fell below the standard of care required of an average reasonable man, and consisted of actionable negligence when shown to be the proximate cause of the injury to plaintiff's child.

      *Desselle*, 343 So.3d at 900 (citing *LaCas*, 152 So.2d 644).

In affirming summary judgment, the court explained that even if the defendant was negligent in parking his vehicle where he did, "we cannot say it was the procuring, efficient and predominant cause of the injuries suffered by plaintiff's child. Nor do we think that the act of Atkins in parking his car where he did was the necessary antecedent of those injuries." *Id.* at 900 (quoting *LaCas*, 152 So.2d at 645).

      The undisputed evidence in the matter at bar establishes that the private security detail at the time of the incident at issue, Defendant Pitfield, did not cause any injury; rather, any alleged injury occurred only after Defendant Pitfield was no longer involved with E.P's restraint. When asked whether there was anything about E.P.'s situation that caused her concern for things like need for CPR, or whether E.P. was in a chokehold of any kind, at the time Defendant Pitfield left E.P, Plaintiff Donna Lou testified, "No, not with – with Mr. Pitfield, he was not in a chokehold at that time. That was, from the videotape, was Mr. Vega was on top of [E.P.] at that point."[52] She testified that E.P had been calm during the time that Defendant Pitfield was involved with his restraint.[53] Plaintiff Daren Parsa, too, acknowledged that "when Chad Pitfield was replaced by whichever officer came next to restrain [E.P.]," he "remember[s] Donna still holding his hand and Donna wouldn't be able to hold his hand unless [E.P.] was calm at that point."[54] Finally, Defendant Pitfield corroborated Plaintiffs' account, stating that there was no indication that E.P. was having respiratory issues before he was replaced.[55]

      This testimony establishes that Defendant Pitfield did not have E.P. in a chokehold, and that E.P. was calm – thus unharmed – at the time that Defendant Pitfield ceased to be involved.

---

[52] SMF, ¶ 19; *Ex. 3*, p. 206, lines 3-11.
[53] SMF, ¶ 18; *Exhibit 3*, Deposition of Donna Lou, p. 176, lines 15-19.
[54] SMF, ¶ 20; *Exhibit 4*, Deposition of Daren Parsa, p. 278, lines 5-13.
[55] SMF, ¶ 21; *Ex. 2*, p. 125, lines 17-25, p. 126, lines 1-4.

Like the vehicles in *Dessele* and *LaCas*, Defendant Pitfield's conduct was a harmless step on the path to tragic injury. *See Dessele*, 343 So.3d at 896-97, 900-01; *LaCas*, 152 So.2d at 644-45. As such, it is undisputed that Defendant Pitfield's conduct was not a cause-in-fact of the injury at issue. *See Dessele*, 343 So.3d at 896-97, 900-01; *LaCas*, 152 So.2d at 644-45. If Defendant Pitfield is deemed an employee of Moving Defendants, summary judgment is warranted in favor of Moving Defendants on grounds that Defendant Pitfield's conduct was not a cause-in-fact of any injury.

## **CONCLUSION**

Moving Defendants cannot be held liable in this matter because it is undisputed that they did not enjoy a right of control sufficient to make them vicariously liable for the private security detail's actions. *Trichell* and *Duronslet* establish that when a property owner does not train the security detail, establish policy and/or protocol for the security detail, and does not provide equipment for the security detail, then it cannot be liable as the employer of the security detail. Defendant Pitfield used law enforcement methods he learned from JPSO during the incident at issue, and all of his training, policy expectations, and equipment came from JPSO. Moving Defendant had never even had a conversation with Defendant Pitfield. As in *Trichell* and *Duronslet*, Moving Defendants did not control the work of their private security detail, thus Moving Defendants should not be held liable for the security detail's conduct. Summary judgment should be granted in favor of Moving Defendants.

Alternatively, if this Court were to conclude that summary judgment is not warranted on grounds of no employer-employee relationship, then Moving Defendants request that summary judgment be granted in their favor on grounds that Moving Defendants' private security detail did not cause injury. Plaintiffs' testimony establishes that when the private security detail was replaced by another officer, E.P. was calm and uninjured. It is undisputed that Moving Defendants' private

security detail was not a cause-in-fact of the ultimate injury, thus Moving Defendants cannot be held liable for injury.

For the foregoing reasons, Defendants Victory Real Estate Investments LA, LLC and Westgate Investors NO, LLC d/b/a Westgate Shopping Center respectfully request that summary judgment be granted in their favor and that all claims against them be dismissed with prejudice.

Respectfully submitted,

**THOMPSON, COE, COUSINS & IRONS, LLP**

*/s/ Christopher W. Kaul*

**CHRISTOPHER W. KAUL (33213), T.A.**
**MARK A. HILL (33891)**
601 Poydras Street, Suite 1850
New Orleans, Louisiana  70130
Telephone:     (504) 526-4350
Facsimile:       (504) 526-4310
E-mail:             ckaul@thompsoncoe.com
                        mhill@thompsoncoe.com

**COUNSEL FOR VICTORY REAL ESTATE INVESTMENTS LA, LLC and WESTGATE INVESTORS NO, LLC D/B/A WESTGATE SHOPPING CENTER**

### CERTIFICATE OF SERVICE

I hereby certify that to the best of my knowledge all counsel of record consent to and participate in receiving electronic notification from the CM/ECF system, and that the Clerk of the Court for the Eastern District of Louisiana, using the CM/ECF system, will electronically send notification of the filing of this pleading to all counsel of record.

By:   */s/ Christopher W. Kaul*
        Christopher W.  Kaul