UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONNA LOU, ET AL | * | CIVIL ACTION NO: 21-CV-80 |
|       Plaintiffs | * | |
| | * | SECTION: D-2 |
|   VERSUS | * | |
| | * | JUDGE: VITTER |
| | * | |
| JOSEPH P. LOPINTO, III, ET AL. | * | MAGISTRATE: CURRAULT |
|       Defendants | * | |

* * * * * * * * * * * * * * * * * * * *

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

**MAY IT PLEASE THE COURT:**

Defendant, Sheriff JOSEPH LOPINTO III, in his official capacity as the Sheriff of Jefferson Parish ("the Sheriff"), has moved this Honorable Court for summary judgment. This case arises out of the death of E.P. after E.P. violently attacked his father and responding Jefferson Parish Sheriff's Office Deputies. Under federal law, Plaintiffs have the burden of proving that the Sheriff instituted an official policy or practice that was the proximate cause of E.P.'s death. Plaintiffs have failed to meet their burden.

**I.     STATEMENT OF THE CASE**

    **A.     PLAINTIFFS' ALLEGATIONS**

Plaintiffs Complaint is 80 pages long and contains nearly 500 individually enumerated Paragraphs. R. Doc. 1.

Regarding the *Monell* (municipal liability) claim against the Sheriff at issue in this Motion, Plaintiffs' Complaint is the consummate formulaic (cut-and-paste) recitation of the elements of a cause of action.[1]

In an attempt to clarify and distill Plaintiffs' purported claims, the Sheriff sent Plaintiffs Interrogatories specifically asking Plaintiffs to delineate (1) what written policies of the Sheriff's Officer were deficient and (2) what training was deficient. *See* Plaintiffs' Answers to Defendants' Second Set of Interrogatories, attached as Exhibit 1.

As the Court can readily see, the Plaintiffs' responses are altogether improper, entirely non-responsive, and otherwise nonsensical. *Id*.

With regard to written policies, Plaintiffs do not identify a written policy that is allegedly violative of the Constitution. *Id*.

With regard to any alleged training deficiencies, Plaintiffs simply refer to their answers relative to the questions regarding written policies and their answers are otherwise wholly improper, unresponsive, and unavailing. *Id*.

Thus, for purposes of this Motion, the Court is left only with Plaintiffs' naked assertions in their Complaint.

In this regard, and again because the Complaint is so lacking in any factual

---

1 *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'")

support and the Plaintiffs have not identified any actual policy of the Sheriff that is of Constitutional import, the Sheriff is left guessing.

In an attempt, then, to do for Plaintiffs what they should have done for themselves, the Sheriff submits that the arguably best statement of Plaintiffs' cause of action is that the Sheriff (1) failed "to train and educate [his] officers with respect to use of force applications which he knew, must have known or should have known, that deputies were utilizing in the field and which posed a serious risk of injury or death including the excessive use of body weight during restraint and using Head-Holds or Locks, in deliberate indifference to and reckless disregard of the welfare of the public at large, including E.P. and the Plaintiffs," R. Doc. 1, at ¶ 417(d), and (2) failed "to adequately supervise, monitor and evaluate the performance of his deputies, including the Defendant Deputies, regarding their compliance with the laws and policies, practices and customs with respect to: 1) stops; 2) searches; 3) seizures; 4) dealing with persons with mental illness and/or intellectual/developmental disabilities, including autism; 5) dealing with persons of diminished capacity; 6) apprehension of suspects; 7) use of force, including deadly force; 8) use of restraints; 9) protection of citizen's civil rights; and 10) among other things, illustrating deliberate indifference and reckless disregard for the rights of the public, including E.P. and the Plaintiffs." *Id*. at ¶ 417(f).

**B.  BRIEF STATEMENT OF THE FACTS OF THE UNDERLYING INCIDENT**

This case involves the death of E.P.

On January 19, 2020, E.P. violently attacked his father in the parking lot of the Westgate Shopping Center in Metairie, La.

A call for service was made by a horrified onlooker. R. Doc. 1.

JPSO Deputies responded.

The Defendant J.P.S.O. Deputies arrived to find a horrifying scene. E.P. had severely injured his father. E.P. had bitten his fathers face, leaving open and obvious trauma.

The Defendant J.P.S.O. Deputies did as best they could to manage E.P., who never stopped resisting their efforts with extreme violence.

Regrettably, E.P. expired on the scene.

**C.  STATEMENT OF THE UNCONTESTED MATERIAL FACTS**

The JPSO provided extensive training in all the areas identified in Plaintiffs' Complaint and throughout the entirety of this litigation.

The JPSO trains its Deputies in the laws and policies governing the seizure of a person, including the use of force. *See* Corporate Deposition of JPSO Sergeant Pizzalota, attached as Exhibit 2, at 100-101, 103-109, 117-119, 161-163, 174-175.

The JPSO trains its Deputies in the use of choke holds, which are strictly prohibited unless absolutely necessary to preserve life.  *See* Corporate Deposition

of JPSO Sergeant Pizzalota, attached as Exhibit 1, at 55-58, 97, 129.

The JPSO trains its Deputies in the use of defensive tactics and martial arts holds, which again exclude the use of choke holds. *Id*. at 128-129.

The JPSO trains its Deputies in passive and active resistance and in confronting. *Id*. at 79-82.

The JPSO trains its Deputies in deescalation techniques when dealing with the public. *Id*. at 83-84, 110-112.

The JPSO trains its Deputies in dealing with emotionally disturbed persons. *Id*., at 114-115.

The JPSO trains its Deputies in confronting people exhibiting signs of what is often referred to as Excited Delerium, which was a contributing cause of death in this case. *Id*., at 40-46, 48-53, 130-131.

The JPSO trains its Deputies in providing medical attention to those in need. *Id*., at 129, 131-133.

The JPSO trains its Deputies that the hogtying technique is strictly prohibited. *Id*., at 74, 89.

The JPSO trains its Deputies in restraining persons in the prone position. *Id*., at 53-55, 64-66, 68, 70, 76, 91, 135, 172.

The JPSO trains its Deputies when and how to place persons in a recovery position. *See* Exhibit 1, at 62-66, 69-73, 77, 91, 94.

The JPSO trains its Deputies in the use of the T.A.R.P. (Total Appendage Restrain Procedure) technique. *Id.*, at 73, 85, 87-95.

The JPSO trains its Deputies in the use of the RIPP hobble (restraining device for dealing with combative persons). *Id.*, at 35-39, 52-53, 87-95, 135.

The JPSO trains its Deputies in dealing with persons with emotional and intellectual challenges, including autistic persons. *See* Corporate Deposition of JPSO Sergeant Voltolina, attached as Exhibit 3.

## II.     STANDARD OF REVIEW ON SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Disraeli v. Rotunda*, 489 F.3d 628, 631 (5th Cir. 2007)(*quoting* Fed. R. Civ. P. 56(c)).

Once the moving party shows that no genuine issue of material fact exists, the non-movant must respond by "*set[ting] forth specific facts showing that there is a genuine issue for trial.*" *Beard v. Banks*, 548 U.S. 521, 529 (2006) (*quoting Celotex Corp. v. Catrett*, 447 U.S. 317, 323 (1986)) (*quoting* Fed. R. Civ. P. 56(e)) (emphasis added by *Beard* Court). All reasonable inferences are drawn in favor of the nonmoving party. However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a

scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (*citing Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir.2007) (additional citation omitted).

### III. PLAINTIFFS' *MONELL* CLAIMS AGAINST THE SHERIFF IN HIS OFFICIAL CAPACITY FAIL AS A MATTER OF LAW

"Well settled Section 1983 jurisprudence establishes that supervisory officials cannot be held vicariously liable for their subordinates' actions. Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injury."[2]

The Sheriff has already moved to dismiss the claims against him in his individual capacity. R. Doc. 49. The motion was filed on March 29, 2022 and remains pending. *Id*.

This Motion, therefore, addresses only the claims against him in his official capacity.

#### A. STANDARD FOR LIABILITY

A suit against a government official in his official capacity is treated as a suit against the entity.[3] Furthermore, no liability exists for governmental entities based

---

[2] *Mouille v. City of Live Oak, Texas*, 977 F.3d 924, 929 (La. App. 5 Cir. 11/20/92) (citations omitted).
[3] *See Lee v. Morial*, 2000 WL 726882 at *2 (E.D.La. June 2, 2000).

on a vicarious liability or a *respondeat superior* theory.[4]  Instead the municipality will be liable only when an official policy or custom inflicts the injury of which the plaintiff complains.[5]  The plaintiff has the burden of proving that there was a constitutional deprivation and that a municipal policy was the driving force behind the constitutional deprivation.[6]

"Official policy is ordinarily contained in duly promulgated policy statements, ordinances or regulations. But a policy may also be evidenced by custom, that is: (2)… a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy… Actions of officers or employees of a municipality do not render the municipality liable under section 1983 unless they execute official policy as above defined." *Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001)(internal citations omitted).

The "official policy" requirement can be met in three different ways.[7]  First, when the municipality promulgates a generally applicable statement of policy and

---

4 *Price v. Housing Authority of New Orleans,* 2002 WL 179193 (E.D.La. Oct. 11, 2002)
5 *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
6 *Id.*
7 *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001) *citing Bennett v. City of Slidell,* 728 F.2d 762, 768 n. 3 (5th Cir.1984).

the injury resulted from that policy.[8]  Second, when no "official policy" exists, but the action of the policy maker violated a constitutional right and third, when the policymaker fails to act to control its agents when it was "so obvious, and the inadequacy [of existing practice] so likely to result in the violation of constitutional rights, that the policymake[r] ... can reasonably be said to have been deliberately indifferent to the need."[9]  Deliberate indifference of this sort is a stringent test, and "a showing of simple or even heightened negligence will not suffice" to prove municipal culpability.[10]  The single incident exception is a very narrow one that courts have been reluctant to expand.[11]

There are two fundamental requirements for holding a municipality liable: culpability and causation.  *Snyder v. Trapagnier*, 142 F. 3d 791 (5th Cir. 1998) (*citing Monell*, 436 U.S. 658, 98 S.Ct. 2018, L.Ed. 2d 611 (1978)).  A Plaintiff must establish both the causal link ("moving force") and the municipality's degree of culpability ("deliberate indifference" to federally protected rights), declaring "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability." *Board*

---

8 *Id*.
9 *Id. at 471.*
10 *Id.; citing Bryan County*, 520 U.S. at 407, 117 S.Ct. at 1389, 1390.
11  *See Pineda v. City of Houston*, 291 F.3d 325, 334- 35 (5th Cir.2002) ("Charged to administer a regime without *respondeat superior*, we necessarily have been wary of finding municipal liability on the basis of [the single-incident] exception for a failure to train claim.").

*of County Commissioners of Bryan County, Okl. v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed. 2d 626 (1997).

Thus, a plaintiff seeking to prevail must first prove a direct causal link between the municipal policy and the constitutional deprivation; she then must establish that the city consciously enacted a policy reflecting "deliberate indifference" to the constitutional rights of its citizens *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S.Ct. at 1205 (1989); *See also Watson v. City of New Orleans*, 2000 WL 126921 (E.D.La. 2/3/2000).

> In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident." Permitting a lesser standard than deliberate indifference would "engage the federal courts in an endless exercise of second-guessing municipal employee training programs. This is an exercise we believe the federal courts are ill suited to undertake as well as one that would implicate serious questions of federalism."

*City of Canton,* 489 U.S. at 392, 109 S.Ct. 1197.

### B. PLAINTIFFS HAVE FAILED TO ALLEGE OR ESTABLISH A *MONELL* CLAIM

The relevant burden of proof and standard of liability was succinctly summarized by the U.S. Fifth Circuit in *James v. Harris County*, 577 F.3d 612 (5th Cir. 2009):

> To hold a municipality liable under § 1983 for the misconduct of an employee, a plaintiff must show, in addition to a constitutional violation, that an official policy promulgated by the muncipality's

policymaker was the moving force behind, or actual cause of, the constitutional injury. The official policy itself must be unconstitutional or, if not, must have been adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result.

Official policy can arise… in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy. A policy is official only when it results from the decision or acquiescence of the municipal officer or body with final policymaking authority over the subject matter of the offending policy…

Although an official policy can render a municipality culpable, there can be no municipal liability unless it is the moving force behind the constitutional violation. In other words, a plaintiff must show direct causation, i.e., that there was a direct causal link between the policy and the violation.

A plaintiff must also show that, where the official policy itself is not facially unconstitutional, it was adopted with deliberate indifference' as to its known or obvious consequences. Deliberate indifference is a degree of culpability beyond mere negligence or even gross negligence; it must amount to an intentional choice, not merely an unintentionally negligent oversight.[12]

In this case, Plaintiffs assert a "failure-to-train' theory of liability against the Sheriff. R. Doc. 1, at ¶ 417.

In *City of Canton v. Harris*, 489 U.S. 378,388 (1989), the Supreme Court expanded *Monell* to include claims for inadequate police training. To recover under a failure to train theory, the plaintiff must demonstrate that (1) the failure to train amounted to deliberate indifference to the right of persons with whom the policy came in contact and (2) the municipality's policy actually caused a constitutional

---

12  *James*, 577 F.3d at 615-616.

injury. *Id*. at 389-90. "All failure to act claims, such as... failure to train [or] supervise... involve the same basic elements: inadequacy, deliberate indifference, and causation." *Skinner v. Ard*, 519 F.Supp.3d 301, 314 (M.D. La. 2021) (deGravelles, J.) (citation omitted).

Here, none of the foregoing elements are met.

First, the JPSO provided extensive training in all the areas identified in Plaintiffs' Complaint and throughout the entirety of this litigation.

The JPSO trains its Deputies in the laws and policies governing the seizure of a person, including the use of force. *See* Corporate Deposition of JPSO Sergeant Pizzalota, attached as Exhibit 1, at 100-101, 103-109, 117-119, 161-163, 174-175.

The JPSO trains its Deputies in the use of choke holds, which are strictly prohibited unless absolutely necessary to preserve life. *See* Exhibit 1, at 55-58, 97, 129.

The JPSO trains its Deputies in the use of defensive tactics and martial arts holds, which again exclude the use of choke holds. *Id*. at 128-129.

The JPSO trains its Deputies in passive and active resistance and in confronting. *Id*. at 79-82.

The JPSO trains its Deputies in deescalation techniques when dealing with the public. *Id*. at 83-84, 110-112.

The JPSO trains its Deputies in dealing with emotionally disturbed persons.

*Id.*, at 114-115.

The JPSO trains its Deputies in confronting people exhibiting signs of what is often referred to as Excited Delerium, which was a contributing cause of death in this case. *Id.*, at 40-46, 48-53, 130-131.

The JPSO trains its Deputies in providing medical attention to those in need. *Id.*, at 129, 131-133.

The JPSO trains its Deputies in the use of the hogtying technique, which is strictly prohibited. *Id.*, at 74, 89.

The JPSO trains its Deputies in restraining persons in the prone position. *Id.*, at 53-55, 64-66, 68, 70, 76, 91, 135, 172.

The JPSO trains its Deputies when and how to place persons in a recovery position. *See* Exhibit 1, at 62-66, 69-73, 77, 91, 94.

The JPSO trains its Deputies in the use of the hogtying technique, which is strictly prohibited. *Id.*, at 74, 89.

The JPSO trains its Deputies in the use of the T.A.R.P. (Total Appendage Restrain Procedure) technique. *Id.*, at 73, 85, 87-95.

The JPSO trains its Deputies in the use of the RIPP hobble (restraining device for dealing with combative persons). *Id.*, at 35-39, 52-53, 87-95, 135.

The JOPSO trains its Deputies in dealing with persons with emotional and intellectual challenges, including autistic persons. *See* Corporate Deposition of

JPSO Sergeant Voltolino, attached as Exhibit 2.

Second, Plaintiffs cannot show that the Sheriff was deliberately indifferent to a known and obvious need to train.

"Deliberate indifference," defined by the Supreme Court as a "conscious disregard for the consequences of their action," can be demonstrated by showing a supervisor's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees." *Rivera v. Bonner*, 952 F.3d 560, 567 (5th Cir. 2017) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997)). To constitute deliberate indifference, the failure to train must reflect a deliberate or conscious choice made by municipal policymakers. *Id*.

As a rule, "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson v. Upshur Cnty, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001) (internal quotations and citations omitted). The plaintiff must ordinarily show at least a pattern of similar violations. *Id*. Moreover, the inadequacy of training must be obvious and obviously likely to result in a constitutional violation. *Id*.

To succeed on this third and most difficult prong, "a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training" or supervision is "obvious and obviously likely to result in a constitutional violation."

*Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003)).

Here, again, the JPSO provided extensive training to its Deputies in each and every area of concern identified by Plaintiffs in this litigation. Plaintiffs fail to meet the third element of their *Monell* claim.

Third, Plaintiffs fail to plead or to make any showing, even in the most cursory fashion, that any promulgated policy, pattern of misconduct, or alleged negligent training, supervision, etc. was the **moving force** behind the death of E.P.. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir.2003) (explaining that "to establish a genuine question of fact as to whether [the defendant was] deliberately indifferent to [the plaintiff's] safety," the plaintiff must show that the defendant has "a custom or policy that contributed to the infliction of the assault and his resulting injury"). There is simply no evidence adduced to support culpability or causation whatsoever.

Thus, even assuming Plaintiffs have made a showing of unconstitutionality, Plaintiffs' claims would still fail. *See James*, 577 F.3d at 617 (Plaintiff is unable to "offer any empirical evidence relating to [Defendants] that could connect [Plaintiffs'] general theory to the facts of this case.")

Accordingly, Plaintiffs' claims against the Sheriff in his official capacity should be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, the Sheriff, in his official capacity, is entitled to summary judgment in his favor and dismissal of Plaintiffs' claims against him in his official capacity with prejudice and at Plaintiffs' cost.

Respectfully submitted,

/s/ James B. Mullaly

_____
**FRANZ L. ZIBILICH, LSB#14914**
JAMES B. MULLALY, LSB#28296
MARTINY & ASSOCIATES, LLC
131 Airline Drive
Suite 201
Metairie, Louisiana 70001
Telephone: (504) 834-7676
Facsimile: (504) 834-5409
Email: mulljtc@gmail.com

## CERTIFICATE OF SERVICE

I do hereby certify that on this 27th day of March 2023, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system. I also certify that a copy of the foregoing will be sent to all non-CM/ECF participants by United States Mail, properly addressed and postage prepaid.

*s/ James B. Mullaly*