UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DONNA LOU and DAREN PARSA, on their own behalf and on behalf of their deceased minor child, E.P.** | * * * * | **CIVIL ACTION NO.: 2:21-cv-00080** <br> **SECTION "D"** |
| **versus** | * * | **DIVISION (2)** |
| **SHERIFF JOSEPH P. LOPINTO, III, et al.** | * | **JUDGE WENDY B. VITTER** |
| | | **MAGISTRATE JUDGE DONNA P. CURRAULT** |

**DEFENDANTS VICTORY REAL ESTATE INVESTMENTS LA, LLC AND WESTGATE INVESTORS NO, LLC d/b/a WESTGATE SHOPPING CENTER'S REPLY TO PLAINTIFFS' OPPOSITION**

**MAY IT PLEASE THE COURT:**

In their opposition to Victory Real Estate Investments LA, LLC and Westgate Investors NO, LLC d/b/a Westgate Shopping Center's ("Moving Defendants") *Motion for Summary Judgment*, Plaintiffs assert that their theory of liability is based on the "borrowed employee" doctrine. Plaintiffs also contend that the evidence showing that prone positioning was a contributing cause of E.P.'s death is evidence that Pitfield's actions were a cause-in-fact of E.P.'s injuries. As discussed below, Plaintiffs' "borrowed employee" argument is a red herring, as there are no substantial differences between that analysis and the independent contractor analysis vis-à-vis an employer's vicarious liability. Regarding the evidence of prone positioning being a contributing cause of E.P.'s death, Plaintiffs' argument glosses over the fact that JPSO deputies held E.P. in a prone position after Defendant Pitfield was no longer involved, and that at the time Defendant Pitfield was no longer involved, Plaintiffs themselves stated that E.P. was not in distress. The evidence cited by Plaintiffs does not isolate the effects of Defendant Pitfield's actions from those of the other JPSO deputies, thus that evidence cannot serve to dispute Plaintiffs' testimony.

The "Borrowed Employee" Doctrine

In their *Opposition*, Plaintiffs assert that the "borrowed employee" doctrine holds that even if Defendant Pitfield were an employee of JPSO, his service to Moving Defendants render them vicariously liable for his actions.[1] According to Plaintiffs, "[t]he borrowed employee analysis is distinct and separate from the employee/independent contractor analysis. For example, in *McLeod v. Moore,* 7 So.3d 190, 192-194 (La. App. 2009) the state Second Circuit analyzed the borrowed

---
[1] R. Doc. 142.

1

employee question and the employee/independent contractor question in separate sections of an opinion, applying separate factors."[2] They go on to contend that Louisiana courts apply a nine-factor test to determine whether a worker is a borrowed employee, and assert that "[o]ver the last four decades, Louisiana courts have repeatedly applied the borrowed employee doctrine to hold businesses liable for the security they hire – even when those security officers are independent contractors."[3]

However, of the Louisiana cases Plaintiffs cite, none performed a "borrowed servant" analysis that is significantly different from the independent contractor analysis. Interestingly, Plaintiffs cite four cases, *Bolden v. Tisdale*, 2021-00224 (La. 1/28/22), 347 So.3d 697, *Benelli v. City of New Orleans*, 478 So.2d 1370 (La. App. 4th Cir. 1985), *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364 (La. 1984), and *Cappo v. Vinson Guard Service, Inc.*, 400 So.2d 1148 (La. App. 2nd Cir. 1981), in which the term "borrowed" is found nowhere in the opinion. Rather, where the employment status of a worker is in question, the courts in these cases performed the independent contractor analysis presented by Moving Defendants in their *Motion for Summary Judgment.* This is to illustrate that, initially, the difference between these two analyses may not be (and is not) as different as Plaintiffs make it out to be.

The party alleging that an employee has become a borrowed servant bears the burden of proving such, by a preponderance of the evidence. *Brumbaugh v. Marathon Oil Co.*, 507 So.2d 872, 876 (La. Ct. App.), *writ denied,* 508 So.2d 824 (La. 1987). The determinative questions on the issue of whether an employer has "borrowed" a particular employee are: (1) the business in which the employee was engaged, and (2) the person or persons exercising control over the employee. 13 La. Civ. L. Treatise, Workers' Compensation Law and Practice § 58 (5th ed.) (citing *Griffin v. Wickes Lumber Co.*, 2002-0294 (La. App. 1 Cir. 12/20/02), 840 So. 2d 591, *writ denied*, 853 So. 2d 640 (La. 2003)). "It is sometimes said that these tests are in fact the same, and that a finding that Employer A has control over the employee at the time of injury necessitates a finding that the employee was engaged in the business of Employer A." *Id.* (citing *Odom v. Dixie Tie and Timber Co.*, 458 So. 2d 561 (La. Ct. App. 3rd Cir. 1984)). "[M]ere 'cooperation' between employees of different employers, *absent the right to control their work*, does not result in borrowing employer status." La. Prac. Employment Law, § 14:3 (emphasis added) (citing *Bertrand*

---

[2] R. Doc. 142, p. 3.
[3] R. Doc. 142*,* pp. 3-4.

*v. Howard Trucking Co., Inc.*, 427 So.2d 40 (La. Ct. App. 3d Cir. 1983)). "If the employee is engaged in the work of only one employer when he commits the tort, only that employer is vicariously liable." *Id.* (citing *Tillman v. Johnson*, 1998 WL 779843, *4-5 (E.D. La. 1998)). One can see that, as with the independent contractor analysis, the right to control is paramount. Thus, the analysis in Moving Defendants' *Motion for Summary Judgment* is still very much applicable.

In *Morgan v. ABC Manufacturer*, 97-0956 (La. 5/1/98), 710 So.2d 1077, the seminal Louisiana case on borrowed servant liability, the Supreme Court of Louisiana clarified that such liability arises from La. Civ. Code art. 2320. *Morgan*, 710 So.2d at 1079-80. This statute includes the clause, "responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it." La. Civ. Code art. 2320. Thus, the Code attaches an employer's vicarious liability directly to its control over the employee's actions. In *Morgan*, the Court explained that "[i]n the past, the courts of this state recognized that under certain circumstances, an employer, called the 'general employer,' *who has relinquished control of his employee to another employer*, known as the 'special employer,' may be legally absolved of liability for that employee's torts." *Morgan*, 710 So.2d at 1080 (emphasis added). (The Court subsequently illustrated the "legal fiction" that the lending employer is absolved of all liability, an issue not relevant to our analysis of Moving Defendants' – the purported borrowing employer – liability. *Id.* at 1080-81) Again, in a typical *respondeat superior* situation, "the special employer has control over the details of the work," according to the Court in *Morgan. Id.* at 1081. And if still not clear enough, the Court later explained that to be assessed vicarious liability, the borrowing employer must exercise supervisory control over the borrowed employee. *Id.* at 1082 ("As we see it, the issue before this Court is not whether the scope of the borrowed employee defense should be restricted only to *employers who exercise supervisory control over the borrowed employee*. Rather, this Court must determine whether the borrowed employee defense extends to the circumstances of the instant case, namely whether temporary agencies who are in the business of lending their employees under the supervision of others should receive the benefit of tort immunity.") (emphasis added).[4] The *Motion for Summary Judgment's*

---

[4] The Court proceeded to discuss the concept of "enterprise liability," which, unlike the matter at bar, is applicable to circumstances in which the employer does not control or supervise the employee's work, but the "essence of [the employer's] business is to profit from its employee's labors," meaning the "loaned employees are [the employer's] stock in trade." *Id.* at 1083. In *Morgan*, this concept was applied to a temporary services provider that supplied workers to its customers. *Id.* The Court explained that "the labor provided by Worktec is its product, and Worktec should bear the expenses and risks associated with its product…" *Id.* at 1084. This situation clearly does not apply to Moving Defendants, who are in the business of owning and leasing property. Defendant Pitfield was not Moving Defendants' product, or "stock in trade."

illustration of Moving Defendants' liability applies equally to the borrowed employer doctrine: vicarious liability still would attach only if Moving Defendants assumed control and supervision over Defendant Pitfield. *See Morgan*, 710 So.2d at 1079-82; La. Civ. Code art. 2320.

**I.     The *Ruiz* Test**

Plaintiffs' *Opposition* highlights the nine-factor *Ruiz* test, originating under federal maritime law, that some Louisiana courts have adopted to determine whether the borrowed servant doctrine applies. Before proceeding through the test, it is worth noting that Louisiana courts rarely use it in situations like the case at bar. Rather, it is most often used in Workers' Compensation cases where courts are tasked with determining whether the injured employee should be barred from bringing a suit in tort against his or her own employer. *Morgan*, which dealt with circumstances more akin to the case at bar, illustrates that the focus is more appropriately placed on whether the borrowing employer exercised control over the worker. Still, even under the *Ruiz* test, the totality of the circumstances prescribes a finding that Moving Defendants did not borrow Defendant Pitfield to the extent that they should be held vicariously liable for his actions.

Tellingly, Plaintiffs leave out an essential sentence from the Louisiana case which they cite in support of the *Ruiz* test: "Control, the first *Ruiz* factor, is perhaps the most universally accepted standard for establishing an employer-employee relationship." *See Musa v. Litton-Avondale Industries, Inc.*, 10-627 (La. App. 5 Cir. 3/29/11), 63 So.3d 243, 246 (citing *Ruiz v. Shell Oil Co.*, 413 F.2d 310, 312 (5th Cir. 1969)); *see also Morgan*, 710 So.2d at 1079 n.5 (restating the first *Ruiz* factor as, "First and *foremost*, who has the right of control over the employee beyond mere suggestion of details of cooperation;") (emphasis added). As illustrated in the *Motion for Summary Judgment*, Moving Defendants exercised no right of control over Defendant Pitfield; indeed, they never even communicated with him.[5] Defendant Pitfield used training and methods, was subject to policies, and was given direction, entirely from Jefferson Parish Sheriff's Office (JPSO).[6] Thus, this "foremost" factor weighs heavily in favor of Moving Defendants not assuming vicarious liability for Defendant Pitfield's actions.

Looking to the second *Ruiz* factor, asking whose work was being performed by the employee, Moving Defendants agree with Plaintiffs that Defendant Pitfield was working for the

---

[5] R. Doc. 138-2.
[6] Interestingly, in their *Opposition*, Plaintiffs cite to testimony from Defendant Pitfield's supervisor at JPSO that Westgate would communicate to JPSO the hours they wanted, indicating that JPSO would then communicate those hours to Defendant Pitfield. R. Doc. 142, p. 8. This weighs in favor of JPSO controlling Defendant Pitfield's actions rather than Moving Defendants.

benefit of Moving Defendants at the time of the subject incident. However, this factor "has, in other cases, been found to warrant minimal consideration." *See McGlothurn v. Wade*, 13-759 (La. App. 5 Cir. 5/21/14), 142 So.3d 217, 224-25 (citing *Musa*, 63 So.3d at 247). Rarely would the question of vicarious liability arise without the employee performing work for the alleged borrowing employer.

The third factor, whether there was an agreement between JPSO and Moving Defendants, does not weigh in favor of Defendant Pitfield being a borrowed employee. The mere presence of an agreement between Moving Defendants and JPSO to provide security speaks nothing to this factor, as Plaintiffs would have the Court believe. With regard to this factor, the court in *Musa* examined whether the agreement between the parties included the words "borrowed" or "loaned," signifying an agreement to adopt liability for the employee. In *Musa,* despite the absence of the words "borrow" or "loan" in the companies' agreement, the court determined that the borrowed employee was treated no differently from any other employee at the company, modifying the terms of the agreement and signifying a borrowed-employee relationship. Of course, this is not the situation with Defendant Pitfield and Moving Defendants. Thus, with the absence of language in the agreement to "borrow" or "loan" Defendant Pitfield, this factor weighs against a borrowed employee relationship. *See Musa*, 63 So.3d at 248.

The fourth factor, whether the employee acquiesced to the new work situation, is relevant more to Workers' Compensation cases – which, again, more commonly utilize this test. The court in *Musa* explained that "[t]he focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them[,]" thus imparting awareness to the employee "of the precise danger that caused his injury." *Id.* If the employee was aware of the danger causing his injury, it is more fair that he is barred from bringing a tort action against his immune employer under Workers' Compensation law. This factor is irrelevant when considering whether Moving Defendants should be held vicariously liable for Defendant Pitfield's actions.

The fifth factor is whether the original employer terminated his contract with the employee. In *Musa,* the court explained that "the focus is on the lending employer's relationship with the employee while the borrowing occurs." *Id.* at 249. Plaintiffs' conclusion as to this factor makes little sense: if Defendant Pitfield remained a reserve deputy for JPSO rather than terminating that relationship, it is *less* likely that Moving Defendants should assume vicarious liability for his actions. As illustrated in the *Motion for Summary Judgment*, Moving Defendants had no

relationship with Defendant Pitfield; they did not even communicate with him.[7] All direction and communication came from JPSO, and that contract was of course not terminated. Thus, this factor should weigh against vicarious liability on the part of Moving Defendants.

Plaintiffs would like the court to believe that the sixth factor, asking who furnished tools, is mixed.[8] However, as illustrated in the *Motion for Summary Judgment*, courts have granted summary judgment in favor of the defendant property owners in cases like this, when private security details have used their own vehicles, weapons, restraints, and uniforms.[9] The fact that Moving Defendants provided this JPSO deputy only a cell phone does not make this a "mixed" factor. Factor six weighs clearly against vicarious liability on the part of Moving Defendants.

The seventh factor asks whether the employment was over a considerable length of time. *Musa*, 63 So.3d at 249. The purpose of this factor is to ask "was the employment with the new employer of such duration that the employee could be reasonably presumed to have evaluated the risks of the work situation and acquiesced thereto?" *Gaudet v. Exxon Corp.*, 562 F.2d 351, 357 (5th Cir. 1977). As with the fourth factor, this is irrelevant when Workers' Compensation is not at issue because the right of the employee to sue the employer is not an interest under consideration. Indeed, this factor is described by the court in *Gaudet* as being one of "certain factors [that] are most pertinent when the borrowed employee doctrine is used as a defense to common law liability in the [Longshoremen's and Harbor Workers' Compensation Act] context." *Id.* Therefore, this factor is irrelevant to the issue of whether Moving Defendants should be held liable for the actions of Defendant Pitfield.

Moving Defendants acknowledge that the eighth *Ruiz* factor, asking who had the right to discharge the employee, does weigh in Plaintiffs' favor. When pressed, Moving Defendants agreed that they had the power to ask for someone other than Defendant Pitfield – though they never thought about or considered using this power.[10] This factor is not determinative. *Ruiz*, 413 F.2d at 313 n.7.

The ninth factor asks who had the obligation to pay the employee. *Musa*, 63 So3d at 249. "[T]his factor is not to be considered in isolation of the other *Ruiz* factors, and thus is not alone dispositive of the ultimate issue of plaintiff's borrowed servant status." *McGlothurn*, 142 So.3d at 227; *Ruiz*, 413 F.2d at 313 n.7. In *Linstead v. Chesapeake & O. Ry. Co.*, 276 U.S. 28 (1928), the

---

[7] *See* R. Doc. 138-2.
[8] R. Doc. 142, p. 9.
[9] *See* 138-2.
[10] R. Doc. 142-2, p. 30, lines 15-25, p. 31, lines 1-6.

United States Supreme Court found that the worker was the servant of the company that did not pay his wages or have the power to discharge him. *Linstead*, 276 U.S. at 34. Here, Moving Defendants paid Defendant Pitfield's wages, though, again, "this fact alone is not sufficient to establish the one paying as the employer where there is sufficient evidence to the contrary." *Menard v. Brown & Cassidy Warehouse, Inc.*, 72 So.2d 891, 893 (La. App. 1st Cir. 1954).

In *Morgan*, the Supreme Court of Louisiana included a tenth factor to consider: who selected the employee. *Morgan*, 710 So.2d at 1079 n.5. This factor weighs against Moving Defendants assuming vicarious liability, as JPSO selected the officers to perform the Westgate shifts.[11]

Though the *Ruiz* factors are most commonly utilized through the Longshoremen's and Harbor Workers' Compensation Act, as well as under Louisiana Workers' Compensation Act, Moving Defendants undertook this analysis to show that the totality of the circumstances under these factors still point to Moving Defendants not assuming vicarious liability under the borrowed servant doctrine. *See Bourque v. Tony Chachere's Creole Foods of Opelousas, Inc.*, 2020-371 (La. App. 3 Cir. 10/28/20), 305 So.3d 949, 953 ("In resolving this issue, the totality of the circumstances must be considered.") (on motion for summary judgment). Nevertheless, Moving Defendants urge that a control inquiry is more suitable for a non-Workers' Compensation case such as this; it would be a suitable analysis considering Plaintiffs allege that Moving Defendants are responsible under practically all theories of liability, including "employer/employee relations," "master-servant relations," "*respondeat superior*," and "vicarious liability."[12]

### II. Plaintiffs' Cases

When analyzing an employer's level of control over an employee, courts perform fact-specific inquiries. Thus, it is imprudent to follow a blanket "rule" – as Plaintiffs suggest – such as that an officer committing a tort while working a paid detail necessarily renders the paid detail employer liable.[13] The court in *Benelli* cited *Cappo v. Vinson Guard Service, Inc.*, 400 So.2d 1148 (La. App. 1st Cir. 1981) for this "rule," however the court in *Cappo* actually undertook a control analysis, finding that the manager of the paid detail's employer "periodically checked on the parking lot as a part of his duties," "could tell [the officer] who to admit and who to exclude from

---

[11] R. Doc. 142-2, p. 22, lines 5-8.
[12] R. Doc. 1, ¶ 27.
[13] *See* R. Doc. 142, p. 5 (citing *Benelli v. City of New Orleans*, 478 So.2d 1370 (La. App. 4th Cir. 1985)).

the lot [he patrolled]," and exercised his authority to send the officer home. *Cappo*, 400 So.2d at 1150. Such control and supervision are not present in the case at bar.

Plaintiffs also use *Harris v. Pizza Hut of Louisiana, Inc.*, 455 So.2d 1364 (La. 1984) for the premise that a business which hires a security guard is always liable for the negligence of that security guard.[14] However, *Harris* does not grapple with the issue of vicarious liability. *Harris*, 455 So.2d at 1371-72. Though the opinion is fairly ambiguous, the Supreme Court of Louisiana later clarified that liability in *Harris* was based on the business's *direct* negligence for violating a voluntarily-assumed duty to protect third parties. *Bujol v. Entergy Services, Inc.*, 2003-0492 (La. 5/25/04), 922 So.2d 1113, 1129. Thus, *Harris* is not instructive to the case at bar.

Finally, Plaintiffs cite *Bolden v. Tisdale*, 2021-00224 (La. 1/28/22), 347 So.3d 697, for upholding "[t]his line of cases," (despite there actually being no 'line').[15] First, the Court in *Bolden* does not perform an analysis of, or even use, the borrowed servant doctrine. *Bolden*, 347 So.3d at 706-712. Second, the Court in *Bolden* performed a fact-specific analysis of the control exercised by the employer akin to the analysis submitted in the *Motion for Summary Judgment*. *See id.* at 708-10. Third, the cases cited by the Court in *Bolden*, and re-cited in Plaintiffs' *Opposition*, are all distinguishable – whether because the issues under consideration were different, *see Wright v. Skate Country, Inc.*, 980217 (La. App. 4 Cir. 5/12/99), 734 So.2d 874, 882 (addressing whether off-duty police officers remained employees of the city while on private detail), whether the court misapplied a "course and scope of employment" test when determining *who* the employer was, *see Duryea v. Handy*, 96-1018 (La. App. 4 Cir.10/3/97), 700 So.2d 1123, 1127-28 (citing *LeBrane v. Lewis*, 292 So.2d 216 (La. 1974), or whether the court undertook a fact-specific control test to find that the worker was an employee rather than an independent contractor, *see Kramer v. Continental Casualty Company*, 92-1131 (La. App. 3 Cir. 6/22/94), 641 So.2d 557, 562 (holding that the security guard was an employee of the motel because the motel determined when its services were needed, instructed the security guard as to when to take care of problems, and would fire the security guard if it failed to follow the motel management's instructions) (citing *Blair v. Tynes*, 621 So.2d 591, 599 (La. 1993) ("A determination as to whether a borrowed employee becomes the special employee of the borrower requires an assessment of *inter alia*, the level of supervision exercised by the borrower over the borrowed employees…")). Lastly, the cases cited in the *Motion*

---

[14] R. Doc. 142, pp. 4-5.
[15] R. Doc. 142, p. 5.

*for Summary Judgment* are directly on point and are much more recent than these mid-90's cases. Notwithstanding the aforementioned distinguishing factors, Moving Defendants' cases should be more persuasive.

Briefly, Plaintiffs attempt to distinguish the cases utilized by Moving Defendants in their *Motion for Summary Judgment*.[16] An examination of those cases shows that the "distinguishing" facts submitted by Plaintiffs were in fact negligible in the courts' considerations of those cases, and in the case of *Duronslet v. Wal-Mart Stored, Inc.*, 2022-0019 (La. App. 4 Cir. 7/27/22), 345 So.3d 1136, was not considered in the analysis portion of the case at all. *See Duronslet*, 345 So.3d at 1150-54; *Trichell v. McClure*, 2021-1240 (La. App. 1 Cir. 4/8/22), 341 So.3d 856, 861-62.

### Defendant Pitfield's Role in E.P.'s Injuries

In their *Opposition*, Plaintiffs fail to submit evidence to dispute Moving Defendants' evidence that E.P. was unharmed at the time that Defendant Pitfield ceased to be involved with his restraint. First, Moving Defendants are not merely asserting that E.P. was unharmed because he was calm. The *Motion for Summary Judgment* cites to Plaintiff Donna Lou's testimony that there was nothing Defendant Pitfield was doing that was causing her concern for E.P.'s health; that her concern came later.[17] Second, the testimony of Dr. Dana Troxclair does not dispute the evidence that Defendant Pitfield harmed E.P., rather it only addresses the actions of the JPSO officers as a group without isolating the result of Defendant Pitfield's conduct.[18] Moving Defendants' evidence isolates Defendant Pitfield's conduct, thus any countering evidence must do the same. Third, Dr. Sperry's expert report details actions that Pitfield took,[19] but the only evidence of harm it describes is "evidence of oxygen deficiency" that could just as likely have been behavioral manifestations of his autism.[20] Finally, Jeff Noble's evidence, like Dr. Troxclair's, does not isolate the result of Defendant Pitfield's actions from the rest of the JPSO officers'.[21] Thus, Moving Defendants' evidence – which does isolate the result of Defendant Pitfield's actions – is undisputed.

---

[16] R. Doc. 142, p. 7.
[17] Doc. 138-2, p. 13 (citing Deposition of Donna Lou, p. 176, lines 15-19).
[18] Doc. 142, p. 12.
[19] Plaintiffs purport to cite p. 11 of Exhibit F, however this page is not included in the exhibit and so is not part of the record.
[20] Doc. 142-7.
[21] Doc. 142-8, at ¶ 61(d).

Conclusion

The basis of any master-servant relationship, whether through the borrowed servant doctrine or through another employer-employee association, is the right to control. Lousiana's Civil Code demands this. La. Civ. Code art. 2320 ("Responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it."). Moving Defendants' *Motion for Summary Judgment* effectively illustrates that they had no control over Defendant Pitfield's actions, thus vicarious liability should not attach. Furthermore, a procession through the *Ruiz* factors put forth by Plaintiffs reveals that Moving Defendants lack of supervision and control renders them undeserving of liability for their security guard's actions. Plaintiffs' efforts to muddy the waters, even citing to cases that perform an independent contractor analysis while arguing that the independent contractor analysis does not apply, should not prove effective.

Alternatively, Plaintiffs continue to lack evidence disputing Moving Defendants' evidence that Defendant Pitfield did not cause E.P. any harm. The only evidence put forth by Plaintiffs considers the results of the JPSO officers as a group. Moving Defendants have submitted testimony from Plaintiffs, themselves, that E.P. was unharmed when Defendant Pitfield relinquished control over him, and Plaintiffs have not submitted evidence that isolates the results of Defendant Pitfield's actions from the rest of the JPSO officers'. Therefore, it is undisputed that Plaintiffs fail to establish that Defendant Pitfield caused them harm.

Respectfully submitted,

**THOMPSON COE COUSINS & IRONS, LLP**

By: __/s/ *Christopher W. Kaul*__
**CHRISTOPHER W. KAUL (33213), T.A.**
**MARK A. HILL (33891)**
601 Poydras Street, Suite 1850
New Orleans, Louisiana 70130
Telephone: (504) 526-4350
Facsimile: (504) 526-4310
Email: ckaul@thompsoncoe.com
mhill@thompsoncoe.com
**ATTORNEYS FOR VICTORY REAL ESTATE INVESTMENTS LA, LLC and WESTGATE INVESTORS NO, LLC D/B/A WESTGATE SHOPPING CENTER**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been served on all counsel of record by facsimile, electronic mail and/or by United States mail, properly addressed, postage prepaid on this the 29th day of March, 2023.

____/s/___*Christopher W. Kaul*_____