UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONNA LOU, ET AL. | * | CIVIL ACTION NO. 21-80 |
| VERSUS | * | SECTION "D" (2) |
| SHERIFF JOSEPH P, LOPINTO, III, ET AL. | * | Judge Wendy B. Vitter<br>Magistrate Judge Donna P. Currault |

**Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment Regarding *Monell*-by-Ratification**

This case is about the death of a severely autistic, non-verbal child in the custody of the Jefferson Parish Sheriff's Office. JPSO deputies held the child, E.P., face down in a parking lot, in a prone position, cuffed and shackled. Two deputies took turns sitting on top of E.P for over nine minutes, and three deputies applied pressure to his arms and legs. Two deputies stood by and watched. None of the deputies made any effort to place E.P. in a recovery position to allow him to breathe. E.P. died.

After E.P.'s death, a JPSO detective executed search warrants on E.P.'s doctors and teachers. There was no internal affairs investigation into any of the deputies.

Plaintiffs sued the individual deputies and Sheriff Joseph Lopinto III. This motion addresses the Sheriff's official-capacity liability for plaintiffs' constitutional claims.[1] A Sheriff cannot be vicariously liable for his deputies' constitutional violations, as *respondeat superior* does not apply to Section 1983 claims. A Sheriff can be liable under the *Monell* doctrine, however, when deputies' actions flowed from official policy. One way of showing that is by a Sheriff's ratification of the deputies' conduct: "if the policymaker approves a subordinate's decision and the basis for it, as this 'ratification' renders the subordinate's decision a final decision by the policymaker."[2]

---

[1] In Louisiana, a sheriff's office is not a juridical entity capable of being sued. But a "claim against the Sheriff in his official capacity amounts to a claim against the municipality itself." *Rogers v. Smith*, 20-cv-517-JTM-DMD, Doc. 195 (E.D. La., May 13, 2022). This memorandum uses "JPSO" as shorthand for "Sheriff Lopinto in his official capacity."

[2] *Allen v. Hays*, 21-20337 (5th Cir., March 21, 2023) at *15.

Here, Sheriff Lopinto, the final policymaker for JPSO, has ratified the actions that lead to the death of E.P. in three ways. First, Lopinto watched the video of the incident and testified that he did not see "anything problematic" in the deputies' actions, and that they acted "reasonably." Second, provided a sworn statement that the deputies' actions did not violate any JPSO "policy, procedure, custom, practice, [or] rule." And third, Lopinto has represented to this Court that he is "fully unified" with the individual deputies "that the actions of all Defendants were reasonable and justified." Lopinto has been direct, consistent, and unambiguous in his support for and ratification of the deputies' actions. He has even taken the unusual position of agreeing, in advance of trial, to indemnify the deputies for punitive damages.

There is no factual dispute that Sheriff Lopinto has ratified the conduct of the deputies in this case. This Court should grant this motion for partial summary judgment on the specific issue of *Monell*-by-ratification. It will still be up to the jury to determine whether there was a constitutional violation; this motion seeks only to define Sheriff Lopinto's official-capacity liability in the event that the jury finds a constitutional violation.

## I.   LEGAL STANDARD

"[S]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[3] Summary judgment is only appropriate when the moving party identifies material facts not in dispute, "and the nonmoving party fails to produce or identify in the record summary judgment evidence sufficient to sustain a finding in its favor respecting such of those facts as to which it bears the trial burden of proof."[4] This Court will view "the evidence and all justifiable inferences in the light most favorable to the non-moving party."[5]

---

[3] *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).
[4] *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 521 (5th Cir. 1999).
[5] *Vercher v. Alexander & Alexander Inc.,* 379 F.3d 222, 225 (5th Cir. 2004).

## II.    ANALYSIS

**A.    Background of *Monell* liability.**

Section 1983 offers no *respondeat superior* liability.[6] Local government entities "face §
1983 liability 'when execution of a government's policy or custom, whether made by its lawmakers
or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. .
. .'"[7] That is, "[a] municipality is liable only for acts directly attributable to it 'through some official
action or imprimatur.'"[8] This kind of liability is called *Monell* liability. A plaintiff can establish
*Monell* liability for constitutional violations by showing any of five different things:

1.  An express policy;[9]

2.  The decision or action of a person with final policymaking authority;[10]

3.  The government entity's deliberately indifferent failure to screen, train, or supervise its
    employees when the failure to act and the "inadequacy [of the existing practice is] so likely
    to result in the violation of constitutional rights, that the policymaker ... can reasonably be
    said to have been deliberately indifferent to the [plaintiff's rights]";[11]

4.  Deliberate indifference to a clear and persistent pattern of illegal activity or "widespread
    practice that, although not authorized by written law or express municipal policy, is 'so
    permanent and well settled as to constitute a custom or usage' with the force of law";[12] or

5.  Ratification by a final policymaker of its employee's acts; *i.e.*, when the "policymaker
    approves a subordinate's decision and the basis for it."[13]

This motion asks the Court to find that the *Monell* requirement of an official policy, custom
or practice is satisfied in this case as a matter of law pursuant to the fifth basis for imposing *Monell*
liability, *i.e.*, ratification.

---

[6] *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002).
[7] *Id.* (*quoting Monell*, 436 U.S. at 694, 98 S. Ct. 2018).
[8] *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010) (*quoting Piotrowski v. City of Hous.*, 237 F.3d 567, 578
(5th Cir. 2001))
[9] *Monell*, 436 U.S. at 660–61.
[10] *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986).
[11] *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)); *Gomez v. Galman*, 18 F. 4th 769, 778 (5th Cir. 2021).
[12] *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).
[13] *Allen v. Hays*, 21-20337 (5th Cir., March 21, 2023) at *15.

B.     **Plaintiffs' motion should be granted because Sheriff Lopinto repeatedly ratified the officers' actions, thus satisfying *Monell*.**

In this case, Plaintiffs' complaint alleges that Sheriff Lopinto in his official capacity is liable under *Monell* because Sheriff Lopinto ratified the officers' actions.[14] Ratification is one "way of holding a city liable under § 1983."[15] Under that theory, a government entity may "be held liable if the policymaker approves a subordinate's decision and the basis for it, as this 'ratification' renders the subordinate's decision a final decision by the policymaker."[16] *Monell* by ratification is generally limited to extreme factual scenarios,[17] but if the policymaker is "aware of the factors that potentially made [the] use of force unreasonably excessive" and ratified it anyway, the government entity can be liable.[18]

Here, Sheriff Lopinto is the final policymaker for the Jefferson Parish Sheriff's Office and oversees the training, supervision, discipline and accountability of the deputies under his command.[19] He has explicitly ratified the actions of the deputies that led to E.P.'s death in several ways.

First, he admitted in written discovery that the deputies' actions were consistent with JPSO policies, practices and customs. Such an admission can form the basis for *Monell*-by-ratification.[20] Specifically, Lopinto was asked whether "any law enforcement officer of your agency violate[d]

---

[14] R. Doc. 1 at ¶ 319 ("Sheriff Lopinto ratified the JPSO Deputy Defendants' actions which led to E.P.'s death."); see also ¶¶ 416, 424, 475.

[15] *Allen v. Hays*, 21-20337 (5th Cir., March 21, 2023) at *15.

[16] *Id.* at 15-16, *citing City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality op.).

[17] *See Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009)

[18] *See* Allen, supra, at *16.

[19] *See Rogers v. Smith*, 20-cv-517-JTM-DMD, Doc. 195 (E.D. La., May 13, 2022) ("A claim against the Sheriff in his official capacity amounts to a claim against the municipality itself.") *See also Thomas v. Pohlmann*, No. 16-30798, 2017 WL 1031282, at *5 (5th Cir. March 15, 2017).

[20] *See Russo v. Bridgeport*, 479 F.3d 196, 212-213 (2nd Cir. 2007) ("Nevertheless, the City has admitted, in its supplemental responses to Russo's requests for admissions, that 'all individual defendants ... acted toward the Plaintiff in accordance with custom, policy and practice.' We understand this to constitute an admission that, if officers DePietro and Borona are ultimately held to have violated Russo's constitutional rights, then municipal liability against the City will be appropriate as well."); *City of Federal Height, Colorado*, 837 F.Supp 1086, 1092 (D. Colo. 1993) ("it is possible that the shooting did violate Mr. Strachan's constitutional rights. As a result, it would be anomalous to hold Officer Vallero responsible for violating Mr. Strachan's rights, but to release the city after it has admitted that the shooting conformed to its policy. The court has no choice but to deny the city's motion for summary judgment.")

any written or unwritten policy, procedure, custom, practice, rule, statute, ordinance, regulation, order, canon, edict, dictate, etc. of your department in the incident." His answer was "**No**."[21]

This interrogatory response is nearly identical to the stipulation in *Kersh v. Derozier*, 851 F.2d 1509 (5th Cir. 1998). In that case, the defendant stipulated that:

> The acts and omissions of Defendants Chief Linebaugh and Officer Derozier, if any, at all times relevant hereto were in compliance with the actual customs, policies, practices and procedures of Defendant City of Troup.[22]

The Fifth Circuit held that the *Kersh* stipulation meant that if Linebaugh and Derozier's conduct violated the constitution, then "the customs and policies of the city necessarily operated to deprive Kersh of his constitutional rights."[23]  And so the Fifth Circuit concluded that the "district court committed no error in ruling that the stipulation would automatically trigger the city's liability if the jury ruled against Linebaugh and/or Derozier."[24] So too here; Lopinto's sworn interrogatory response that the officers' actions were consistent with JPSO policy response leads to *Monell* liability against Sheriff Lopinto in his official capacity if the deputies' actions violated the constitution and were the cause of the death of E.P. and plaintiffs' injuries.

Lopinto has also couched his ratification in stronger language. Early in this case, Plaintiffs raised the possibility that there might be a conflict between Lopinto and the individual officers, all of whom were represented by the same legal counsel.[25] In response, Lopinto represented to this Court that "there can be no doubt that <u>all Defendants have vehemently denied any wrongdoing and are fully unified in their belief that the actions of all Defendants were reasonable and justified</u>."[26] This is a full-throated ratification of the deputies' conduct by the Sheriff as final policymaker.

---

[21] R. Doc. 21-4 (Lopinto Discovery Responses) at 11-12.
[22] *Kersh* at 1512.
[23] Id at 1513.
[24] Id.
[25] R. Doc. 18 (Plaintiffs' Motion to Disqualify).
[26] R. Doc. 23 at 8-9 (emphasis added).

In some cases, courts have denied *Monell*-by-ratification because a policymaker did not see the events and therefore was "accepting [his officers'] version of what happened."[27] In those contexts, the policymaker cannot be said to have accepted and ratified the problematic version of what happened, because he was relying on a version presented by his officers that was non-problematic. But here, Lopinto did not just accept the version of events presented to him by his deputies. He watched the video of the killing <u>himself</u>.[28] He was then asked: "from what you reviewed on the video . . .do you believe that everybody on the scene acted in compliance with the policies of Jefferson Parish Sheriff's Office?"[29] Lopinto answered, concluding that "although the outcome is certainly horrible, I don't see anything that they did that was unreasonable."[30] The question of ratification was specifically put to him:

> Q.   What I'm trying to get at, and you know the question I'm getting at is, is you ratified what their conduct is as being according to the policies, practices, customs of JPSO, correct?
> . . .
> A.   You know, again, everything is situational. I'll say it a million times and a million times over. I want them to act reasonable under the circumstances, and <u>I think they were reasonable under the circumstances</u>.[31]

Lopinto confirmed that he did not even see anything even "problematic" on the video:

> Q.   Prior to us reviewing this tape here, did you find anything that you observed on the tape that was problematic to you?
> . . .
> A.   No.[32]

Lopinto further testified that even with hindsight, he did not think it would be "important to reevaluate [JPSO's] restraint procedure."[33] Nor does the "training need updating on the TARP policy or the RIPP Hobble or asphyxia."[34] He was, by his own admission, completely satisfied that

---

[27] *Coon v. Ledbetter*, 780 F.2d 1158, 1161–62 (5th Cir. 1986)
[28] Ex. A (Lopinto Dep.) at 5:16-17 ("I met with counsel last week, reviewed the video."); 172:25-173:2 ("A. Yes. I've seen certainly [the video] from the beginning to, you know, until at least CPR, maybe transportation.")
[29] *Id*. at 173:6-10
[30] *Id*. at 174:4-6.
[31] *Id*. at 174:8-20 (emphasis added).
[32] *Id*. at 176:4-7
[33] *Id*. at 178:8-21.
[34] *Id*. at 169:15-18

6

there was no need to make any changes to any of the training or procedures of his deputies, based upon what occurred here, even though what he had witnessed was extreme: JPSO deputies sitting on and holding down an obese, severely autistic child who was shackled by his hands and feet, to the point that the child died.

Lopinto closed his deposition with one final ratification, agreeing to indemnify his officers even for punitive damages, even if that would suggest that the deputies committed a crime:

Q.   And in this case, even after we've had this discussion, and we may have our disagreements about certain things, you stand by what your officers did, and that they acted appropriately?

A.   I do.

Q.   And you even agreed to indemnify the deputies for both compensatory and punitive damages, correct?

A.   Well, I think we did in this case, didn't we? Normally, in a punitive damage type case, you know, you are basically saying they committed a crime, but I think we ended up doing that in this case, didn't we?

Q.   Yep.

A.   That answer is yes.[35]

Thus, there is no dispute of fact that Lopinto reviewed the deputies' actions. There is no dispute of fact that he repeatedly supported the appropriateness of the deputies' actions, and swore that the deputies had not violated any JPSO policy. This is a pure issue of law: whether Lopinto's statements constitute *Monell*-by-ratification. The case law is clear that they do.

Furthermore, Lopinto should not be able to have his cake and eat it too. He "vehemently" supported the deputies' actions in representations to this Court, and declared himself "fully unified" with the deputies, so as to avoid a conflict between himself as a defendant and the deputies so that they could all be represented by the same attorneys and have a "unified" defense. Having embarked upon this "unified defense" to avoid a finding of conflict, the Sheriff has exposed himself in his

---

[35] Ex. A (Lopinto Dep.) at 260:7-21.

official capacity to liability for the actions and inactions of the defendant deputies by ratifying and approving their conduct. It would be contradictory to allow him to make such "unified" representations to avoid a finding of conflict, and then permit him to turn around and claim he does not ratify the officers' conduct which he steadfastly insists is consistent with JPSO policies, practices and customs. As a matter of law, should the jury find the individual deputies liable for violating the constitutional rights of the plaintiffs, the Sheriff, in his official capacity, is liable under *Monell* by virtue of his ratification of the deputies' actions.

Plaintiffs' motion should be granted.

### III.    CONCLUSION

This Court should find that Plaintiffs have satisfied the requirement of *Monell*-by-ratification, and grant Plaintiffs' motion.

RESPECTFULLY SUBMITTED,

Andrew C. Clarke (TN BPR # 15409)
The Cochran Firm Midsouth
One Commerce Square, Suite 1700
(901) 523-1222 (Telephone)
aclarke@cochranfirmmidsouth.com

*/s/ William Most*
WILLIAM MOST (BPR # 36914)
Most & Associates
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (504) 509-5023
williammost@gmail.com