UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONNA LOU, ET AL. | * | CIVIL ACTION NO. 21-80 |
| VERSUS | * | SECTION "D" (2) |
| SHERIFF JOSEPH P, LOPINTO, III, ET AL. | * | Judge Wendy B. Vitter<br>Magistrate Judge Donna P. Currault |

**Memorandum in Support of Plaintiffs' Motions *in Limine***

This case is about the death of a severely autistic, non-verbal child in the custody of the Jefferson Parish Sheriff's Office. JPSO deputies held the child, E.P., face down in a parking lot, in a prone position. Despite cuffing and shackling E.P., the deputies did not roll E.P. into a recovery position so that he could breathe. E.P. died.

At the trial of this matter, this Court should exclude the following by Defendants:

1. Evidence of E.P.'s behaviorial and medical history that Defendants were unaware of at the time, because it could not have influenced Defendants' decision-making.

2. Irrelevant JPSO training documents about serial killers, gossip, tactical driving, etc.

3. Defendants' 30+ witnesses not listed on Defendants' initial disclosures.

4. Any testimony that JPSO provided accommodations for E.P.'s disability, as JPSO has conceded no accommodations were provided.

5. Any testimony about a "Deescalation with Autism" training module, as there is no indication that such a module exists.

6. Any statement to the effect that Plaintiffs are "seeking to profit" from the death of their child.

7. Any argument that Plaintiffs or their lawyers are "outsiders" or "out-of-town" people.

8. Any evidence contrary to 30(b)(6) testimony without prior court permission.

9. Any lay opinion testimony without prior notice to the Court.

10. Any argument of a qualified immunity or "good faith" defense on behalf of JPSO.

11. Any evidence of Defendants' commendations or awards.

12. Any demonstrative exhibits that have not been provided in advance.

For the reasons herein, Plaintiffs' motion should be granted.

1

### A.     Meet-and-Confer Compliance.

Plaintiffs met with JPSO Defendants' counsel by telephone on April 11, 2023. JPSO Defendants agreed to exclude witness Davor Franicevich and any argument appealing to jurors' pecuniary interests as taxpayers, but did not agree to any of Plaintiffs other proposed motions *in limine*.

Plaintiffs met and conferred with Westgate counsel by correspondence. Westgate agreed to exclude any argument appealing to jurors' pecuniary interests as taxpayers, but did not agree to any of Plaintiffs other proposed motions *in limine*.

### B.     Motions *in Limine* Generally.

In general, the term "*in limine*" "refer[s] to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered."[1] A ruling on evidence *in limine* "aid[s] the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial."[2] "[It] also may save the parties time, effort and cost in preparing and presenting their cases."[3] "Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the District Court's inherent authority to manage the course of trials."[4]

---

[1] *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984).
[2] *Bowden v. Wal-Mart Stores, Inc.*, No. CIV. A. 99-D-880-E, 2001 WL 617521 at *1 (M.D. Ala. February 20, 2001) (citations omitted).
[3] *Id*.
[4] *Luce*, 469 U.S. at 41 n. 4.

## C. Plaintiffs' Requested *In Limine* Topics.

**1. This Court should exclude evidence of E.P.'s past behavioral and medical history that Defendants were unaware of at the time, because that history could not have influenced Defendants' decision-making.**

The Fourth Amendment guarantees the rights of individuals "against unreasonable searches and seizures."[5] In *Graham v. Connor,* the Supreme Court warned that the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[6] In *Graham,* the Supreme Court explained that the analysis is limited to "the facts and circumstances confronting" the officers, rather than other factors.[7] For that reason, in an excessive force case, the finder of fact is to consider the "information available to the officer[s] at the time."[8] And so courts in excessive force cases will often exclude evidence of information that was not available to officers at the time of the use of force.[9]

Here, Defendants have signaled their intent to put on evidence regarding a great deal of information that was not available to the deputies at the time of their use of force. For example, JPSO Exhibits 5 and 8 are E.P.'s medical records from prior to the date of his death. Exhibit 9 is a set of photographs of a "physical incident with E.P. on September of 2017," three years before E.P.'s death. Exhibits 10, 11, 12, 13 are school records and emails reflecting past outbursts by E.P.[10] And

---

[5] U.S. Const. amend. IV.
[6] *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989).
[7] *Id*. at 397.
[8] *Carroll v. Ellington*, 800 F.3d 154, 171 (5th Cir. 2015), citing United States v. Silva, 957 F.2d 157, 160 (5th Cir. 1992). *See also Wash. ex rel. J.W. v. Katy Indep. Sch. Dist*., 390 F. Supp. 3d 822, 839 (S.D. Tex. 2019) (noting that in use of force context, a "court must consider only the information available to the officer at the time"); *Estate of Wise v. City of Gladewater*, 2019 U.S. Dist. LEXIS 90413, 2019 WL 2302719, at *5 (E.D. Tex. May 30, 2019) ("The Court's inquiry is to be conducted from the viewpoint of a reasonable officer with the information available to the [officer] at the time force was applied").
[9] *E.g.*, *Ikhinmwin v. Rendon*, No. 5:16-CV-184-OLG, 2018 U.S. Dist. LEXIS 227885, at *5 (W.D. Tex. Apr. 13, 2018) (quashing subpoena because it sought information that would not have been "available to [the officer] at the time of the use of force."); *Behl v. Vill. of Riverton*, No. 20-CV-3097, 2022 U.S. Dist. LEXIS 238728, at *8 (C.D. Ill. May 19, 2022)(excluding evidence that was not "facts and circumstances available at the time of arrest"). *See also Ochana v. Flores*, 347 F.3d 266, 272 (7th Cir. 2003)("It was not an abuse of discretion for the court to grant the officers' motion in limine to bar ... the disposition of the underlying criminal charges, because these were not facts within the officers' knowledge at the time of the arrest ....").
[10] R. Doc. 133 (JPSO Witness and Exhibit List).

Defendants have listed witnesses Marty Luquet and Jan Quatroy[11] who observed outbursts by E.P. at a Supercuts and at E.P.'s school in the years before E.P.'s death.

All of these should be excluded under Fed. R. Evid 402, because they do not reflect information available to the officers at the time, and so are irrelevant to the legal analysis.[12] The deputies who arrived at the scene were responding to E.P.'s behavior on that day – behavior that is captured on videotape – not a set of past outbursts that were unknown to the deputies.

Even if E.P.'s behavioral or medical history were relevant for another purpose, it should be excluded under Fed. R. Evid. 403, because the probative value is substantially outweighed by unfair prejudice, confusing the issues, and the risk of misleading the jury. It is undisputed that E.P. was a non-verbal youth with severe autism disorder, and that disorder sometimes resulted in violent outbursts. But allowing Defendants to put on evidence of past outbursts from throughout E.P.'s life would risk the jury concluding that E.P. was a "bad kid" or a general "danger to society" – neither of which are legally relevant.

Furthermore, to the extent that Defendants intend to put on evidence of E.P.'s behavioral or medical history to suggest how E.P. did act or would have acted on the day of his death, that evidence should be barred under Rule 404(a)(1). That rule states that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." No exception to that rule applies here.

There is no problem with Defendants offering evidence about what the deputies saw or knew at the time of the incident, such as video of the event, their testimony, 911-dispatch information, etc. But a parade of evidence about *past* outbursts by E.P. – which the deputies had no knowledge of – would be irrelevant, prejudicial, and improper character evidence. Such evidence should be excluded.

---

[11] R. Doc. 133 at 4.
[12] Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

4

**2.      This Court should exclude irrelevant JPSO training documents about serial killers, tactical driving, "gossip and complaining," etc.**

Defendants' witness lists contain a large number of training documents that have nothing to do with the issues of this case. For example, Defendants list the "Serial Killers" and "Tactical Police Driving" and "Suicidal Patients" trainings as exhibits (R. Doc. 133 at Ex. 52 and 55), although there are no serial killers, tactical driving, or suicidal patients at issue in this case. Defendants list a range of X26 TASER training documents (*id*. at Ex. 76-86), even though no TASER was used. And Defendants list their "Ten Commandments" training which consists of generalized advice to police, such as "marry the last person you will have sex with" and "watch the gossip and complaining" (*id*. at Ex. 48). None of these are relevant to this case.

The trainings that Plaintiffs contend are irrelevant are as follows:

35) A copy of the De-Escalation with Suicidal Patients PowerPoint used by JPSO in training."
38) A copy of the Substance Abuse with Mental Illness PowerPoint used by JPSO in training."
43) A copy of the Certification Agent Course used by JPSO in training.
44) A copy of the O.C. Pepper Spray Student Program used by JPSO in training
46) A copy of the PR-24 Control Device Course Program used by JPSO in training.
48) A copy of the Ten Commandments PowerPoint used by JPSO in training.
50) A copy of the PTSD Awareness PowerPoint used by JPSO in training.
52) A copy of the Serial Killers PowerPoint used by JPSO in training
53) A copy of the "Watch your 12" slides used by JPSO in training.
54) A copy of the NAPD Professional Driving PowerPoint used by JPSO in training.
55) A copy of the NAPD Tactical Police Driving PowerPoint used by JPSO in training.
56) A copy of the MDTS basic Course Proficiency Test Check Sheet used by JPSO in training.
57) A copy of the MEB Basic Course Proficiency Test Check Sheet used by JPSO in training.
58) A copy of the Monadnock PR-24 Instructor PowerPoint used by JPSO in training.
59) A copy of the MDTS PowerPoint used by JPSO in training
63) A copy of the Basic Room Entry Course used by JPSO in training
64) A copy of the FATS Outline used by JPSO in training.
65) A copy of the Blocks 3 2018 PowerPoint used by JPSO in training.
69) A copy of the Bias Recognition PowerPoint used by JPSO in training.
70) A copy of the De-Escalation with a Primitive Brain PowerPoint used by JPSO in training.
72) A copy of the Active Listening PowerPoint used by JPSO in training.
74) A copy of the SPEAR Outline PowerPoint used by JPSO in training.
75) A copy of the SPEAR System Introduction PowerPoint used by JPSO in training.
76) A copy of the TASER CEW User Update PowerPoint used by JPSO in training.
77) A copy of the M26 and X26 Instructor PowerPoint used by JPSO in training.
78) A copy of the M26 and X26 User Course V-14 PowerPoint used by JPSO in training.
79) A copy of the TASER Re-Certification 2013 V-13 PowerPoint used by JPSO in training.
80) A copy of the TASER CEW User Update 2017 V-20 PowerPoint used by JPSO in training
81) A copy of the X26 User Course V-15 PowerPoint used by JPSO in training.
82) A copy of the X26 User Course V-16 PowerPoint used by JPSO in training.
83) A copy of the X26 User Course V-18 PowerPoint used by JPSO in training.
84) A copy of the X26 P PowerPoint used by JPSO in training.

    85) A copy of the X26 P Transition Course PowerPoint used by JPSO in training.
    86) A copy of the X26 P User Course PowerPoint used by JPSO in training.
    87) A copy of the "Brady" Issues and Responsibilities PowerPoint used by JPSO in training.
    88) A copy of the 2021 Block 2 PowerPoint used by JPSO in training.
    89) A copy of the Civil Disturbance PowerPoint used by JPSO in training.
    89) A copy of the Civil Disturbance PowerPoint used by JPSO in training.
    90) A copy of the Diversity Awareness and Cultural Sensitivity Training PowerPoint used by JPSO in training.

Because these trainings are irrelevant, they should be excluded under Fed. R. Evid 402 ("Irrelevant evidence is not admissible.").

### 3.    This Court should exclude Defendants' 30+ witnesses not listed on Defendants' initial disclosures.

JPSO Defendants listed thirty-three witnesses in their initial disclosures.[13] JPSO Defendants never updated those disclosures. JPSO's trial witness list, however, contains <u>seventy</u> witnesses.[14]

Similarly, Westgate defendants listed thirty-one witnesses in initial disclosures.[15] Westgate never updated those initial disclosures. Westgate's trial witness list contains <u>fifty-five</u> witnesses.[16]

These 30+ extra witnesses include a dozen-and-a-half educators and administrators from the St. Charles Parish Public Schools (R Doc. 133 at 5-6), JPSO officers who were not present at the scene, and a range of medical personnel who did not treat E.P. at or after the incident.

They should be barred. The disclosure of all witnesses and the subject matter of their testimony is required under Rule 26(a). The purpose of such disclosures early in the course of litigation is to "allow the parties to develop fully and crystalize concise factual issues for trial" and when "[p]roperly used, they prevent prejudicial surprises and conserve precious judicial energies."[17] The failure to make such Rule 26 disclosures results in Defendants being unable "to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."[18]

---

[13] Ex. A (JPSO Initial Disclosures).
[14] R. Doc. 133.
[15] Ex. B (Westgate Initial Disclosures).
[16] R. Doc. 132.
[17] *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973).
[18] Fed. R. Civ. Pro. 37(c).

Defendants' inclusion of undisclosed witnesses is neither substantially justified nor harmless. In performing a Rule 37(c)(1) exclusion analysis, courts in this circuit looks to four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose.[19]

Here, Defendants' 30+ extra witnesses fail all four factors of the Rule 37 test. First, they are not important: the JPSO officers who interacted with E.P. had no knowledge about his school or medical history (other than being informed he was autistic), and so witnesses on those topics do not inform the key issues at trial. Second, Plaintiffs are prejudiced, as discovery is closed.[20] Third, a continuance would prejudice Plaintiffs as "delaying plaintiff's day in court constitutes substantial injury."[21] And fourth, Defendants did not provide any good explanation for their failure to disclose. Thus, these witnesses should be excluded.

**4.  Any testimony that JPSO provided accommodations for E.P.'s disability, as JPSO has conceded no accommodations were provided.**

It has been established in litigation that JPSO did not provide any accommodations to E.P. for his disability. Early in the case, Sheriff Lopinto provided an ambiguous answer about whether he contended that JPSO provided any accommodations. Plaintiffs moved to compel a clearer answer. This Court granted the motion and orderedLopinto to "supplement this response to make clear that he does not contend that he provided any accommodation in this matter."[22] Sheriff Lopinto provided a supplemented, sworn-under-oath response that no accommodations were provided:

> The factual backdrop of the incident sued upon did not implicate a need for an accommodation. Therefore, <u>an accommodation was not provided</u>.[23]

---

[19] *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563-64 (5th Cir. 2004).
[20] *See CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 280 (5th Cir. 2009), *citing Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179-80 (9th Cir. 2008) (finding harm based on the possible need to "create a new briefing schedule and perhaps re-open discovery, rather than simply set a trial date.").
[21] 37 & L Ltd. Investments, Inc., 2010 WL 3789401, at *2 (collecting cases).
[22] R. Doc. 79 (Order on Motion to Compel) at 19.
[23] Ex. C at 4.

At deposition, JPSO's 30(b)(6) witness regarding Americans With Disabilities Act compliance confirmed JPSO's position that no accommodations were provided. The witness was the sheriff himself, and he was asked:

> Q. Okay. So this statement that we're looking at here, "The factual backdrop for the incident sued upon did not implicate a need for an accommodation," that's an accurate reflection of the entity's position; agreed?
>
> A. You know, of the entity, I would say yes. Now, whether or not that's an individual statement, that -- that could differ.[24]

(Only the JPSO entity is sued for ADA violations, so only the entity's answer is relevant.)

Despite Defendants' clear admission that JPSO did not provide any accommodations, Defendants hired an expert, George Armbruster, who opined that JPSO did provide accommodations to E.P.[25] But Armbruster's opinion directly contradicts what JPSO has already admitted in written discovery and through its 30(b)(6) witness, which is binding on the entity. Allowing JPSO to offer expert testimony contradicting what it has already admitted would risk confusing the jury.

Excluding such testimony would not leave JPSO without a defense to Plaintiffs' ADA claim: as JPSO noted, there is still the question of whether the situation implicated a need for an accommodation. Plaintiffs have no objection to JPSO arguing that at trial.

Accordingly, this Court should exclude any testimony or evidence suggesting that JPSO provided E.P. accommodations for his disability.

5. **This Court should exclude any testimony about a "Deescalation with Autism" training module, as there is no indication that that module exists.**

At deposition, JPSO's 30(b)(6) witness testified about a training module used by JPSO in association with the Jefferson Parish Coroner's Office to train deputies. The witness was asked about

---

[24] Ex. D (30b6 Dep. of Lopinto) at 23:5-13.
[25] Ex. E (Armbruster Report) at 10 ("Due to Deputy Pitfield being informed and recognizing the uniqueness of this situation, it is my opinion that Deputy Pitfield did in fact provide accommodations that he would normally not have allowed.")

the title of the training, and he testified: "I think it's Deescalation with Autism."[26] He testified that JPSO does not possess a copy of the training: it is a document that the coroner brings.[27] So Plaintiffs sent a subpoena to the coroner's office for their training materials. There was no training entitled "Deescalation with Autism" or anything similar in the coroner's subpoena return. Because there is no documentary evidence that the training exists, Defendants should be prohibited from putting on any testimony about the training that they cannot produce.

6. **Any statement to the effect that Plaintiffs' are "seeking to profit" from the death of their child.**

After this case was filed, a JPSO spokesperson released a statement that JPSO "does not intend to allow Jefferson Parish Sheriff's deputies to be maligned and slandered by those seeking to profit from this unfortunate situation."[28]

In meeting-and-conferring, JPSO's counsel declined to disavow making similar statements at trial. But accusing grieving parents of "seeking to profit" from the death of their child is needlessly inflammatory. For example, one court reviewed an argument that a party was "killing babies for profit" and concluded that the argument "had little value and was quite inflammatory."[29] Characterizing plaintiffs as "seeking to profit" from the death of their child has no probative value, and represents an attack on the very idea of a civil suit for damages.

Defendants should be prohibited from making any such statements at trial.

---

[26] Ex. F at 48:11.

[27] *Id.* at 55:5-10 ("Q. So the Deescalation with Autism PowerPoint presentation is something the coroner brings to JPSO, does the training and leaves with them, and JPSO never gets a copy of it? Is that correct? A. Correct.")

[28] Michelle Hunter, *Autistic teen died after JPSO deputies sat on him for more than 9 minutes, parents' lawsuit says,* The Advocate (Jan. 14, 2021).

[29] *Hunte v. Abbott Labs., Inc.*, 556 F. Supp. 3d 70, 98 (D. Conn. 2021). *See also People v. Superior Court (Baez)*, 94 Cal. Rptr. 2d 706, 716 (Cal. App. 6th 2000) (describing "inflammatory evidence of a profit motive").

7.  **This Court should bar any argument that Plaintiffs or their lawyers are "outsiders" or "out-of-town" people.**

Plaintiffs' trial team is made up of a Tennessee lawyer and two Louisiana lawyers who grew up outside of Louisiana. Plaintiffs therefore ask that this Court bar any reference to the idea that Plaintiffs or their lawyers are "outsiders" or "out-of-town" people. For example, in *Echavarria v. Roach*, 16-cv-11118, Doc. 421 at *6 (D. Ma. March 1, 2022), the court ordered that:

> During voir dire, all attorneys will be required to introduce themselves and identify where they work. Beyond that, the Court sees no reason why there should be any need to reference where Plaintiff's attorneys practice and, in any event, there is to be no suggestion that lawyers that practice outside of Massachusetts are outsiders.

In another case, a court found that references to the fact "that Plaintiffs' attorneys are from out of town" would "be improper."[30]

Indeed, the Fifth Circuit has specifically warned about the risk of painting certain persons as outsiders. With respect to "conscience of the community" arguments, the Fifth Circuit Court of Appeals has stated that such appeals "serve no proper purpose and carry the potential of substantial injustice when invoked against outsiders."[31]

8.  **This Court should require Defendants to provide prior notice before introducing any evidence contrary to their 30(b)(6) testimony.**

Plaintiffs ask this Court to exclude any testimony or evidence contrary to Defendants' 30(b)(6) testimony without prior notification and argument. That is because "statements made by Defendants' corporate representatives during a 30(b)(6) deposition . . . are binding on the party."[32] But such statements are not "judicial admissions that decide an issue with finality or estops the party from, in the discretion of the Court, offering contradictory testimony if there is a reasonable

---

[30] *Williams v. Hargrove*, 16-CV-266-KS-MTP, Doc. 307 at *9 (S.D. Miss., March 13, 2018).
[31] *Westbrook v. Gen. Tire & Rubber Co.*, 754 F.2d 1233, 1239 (5th Cir. 1985); *see also State v. Reed*, 102 Wn.2d 140, 147-48, 684 P.2d 699 (1984) (argument that appealed to the hometown instincts of the jury by emphasizing that defendant's counsel and expert witnesses were outsiders and that they drove expensive cars resulted in prejudice to the defendant and denied him a fair trial).
[32] *Hacker v. Cain*, 14-cv-00063-JWD-EWD, Doc. 235 (M.D. La., Jan. 17, 2017) (order on motions in limine), *citing Johnson v. Big Lots Stores, Inc.*, 2008 WL 6928161 at * 3 (E.D. La. May 2, 2008).

explanation given."[33] Allowing Defendants to change their testimony or the evidence they intend to proffer shortly before trial would constitute trial by surprise, disfavored in the federal courts. As a result, courts strike a balance by declining to flatly bar any change to 30(b)(6) testimony, but requiring prior notification and argument before any changed argument is put into evidence. For example, in *Imani v. Baton Rouge,* a Middle District of Louisiana judge recently ordered that:

> Defendants will provide to the Court and counsel on or before January 13, 2023 a list of testimony or other evidence it intends to introduce that conflicts with BRPD's 30(b)(6) witness and, briefly, reasons why they believe they have a good explanation for allowing this testimony or evidence to be introduced, consistent with the Court's ruling in *Hacker v Cain*. A status conference is set for January 18, 2023, at 2 p.m. for the purpose of discussing this issue.[34]

Plaintiffs suggest that this Court follow the same procedure – require the corporate entities to notify the Court in advance of trial any evidence they intend to introduce that would conflict with their 30(b)(6) testimony, and hold a hearing to resolve the issue.

### 9. This Court should require Defendants to provide prior notice before offering any lay opinion testimony.

The parties have designated expert witnesses in this matter under Fed. R. Evidence 702. There also is the possibility that they may seek to elicit lay opinion testimony under Fed. R. Evidence 701. Lay opinion testimony, however, requires specific foundational bases before it can be admitted.[35] For that reason, courts can require that before parties "proceed with any lay opinion testimony, they notify the Court and counsel out of the presence of the jury so that the Court can

---

[33] *Id.*
[34] *Imani v. Baton Rouge,* 17-cv-00439-JWD-EWD, R. Doc. 376 at *3 (M.D. La. Dec. 20, 2022).
[35] *See Francois v. General Health System*, 459 F. Supp. 3d 710, 725 (M.D. La. 2020), *citing United States v. Garcia,* 291 F.3d 127, 140 (2d Cir. 2003) ("[A] witness offering a lay opinion must base his opinion on his own personal knowledge, which must be established to the court and jury. `When a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701... because there is no way for the court to assess whether it is rationally based on the witness's perception." (quoting *United States v. Rea,* 958 F.2d 1206, 1212 (2d Cir. 1992)); *and citing* "Rationally Based on the Witness's Perception", 29 Victor J. Gold, Federal Practice & Procedure § 6254 (2020 ed.) ("While Rule 701 requires that lay opinion must be rationally based on perception, the provision is silent as to whether the proponent of the opinion must elicit the details concerning the witness' perceptions before the opinion is given. However, the courts have held that such a foundation must be established before the opinion is admissible. The foundation must refer to the specific matters perceived; vague, general statements about the basis for lay opinion are insufficient.").

hear argument and possibly foundational testimony to assure that the testimony comports with Rule 701."[36] Plaintiffs suggest that this Court follow the same procedure for this trial.

**10.    Any argument of a qualified immunity or "good faith" defense on behalf of JPSO as an entity.**

Pursuant to 42 U.S.C. Section 1983, individual officers sued in their individual capacity are entitled to "qualified immunity" for actions taken by the officers in "good faith." However, "qualified immunity" does not apply to civil rights claims against a government entity. As noted by the U.S. Supreme Court in *Owen v. City of Independence*, 445 U.S. 622, 650, 651 (1980):

> [W]e can discern no 'tradition so well grounded in history in history and reason' that would warrant the conclusion that in enacting § 1983, the 42nd Congress *sub silento* extended to municipalities a qualified immunity based upon the good faith of their officers.

The Court explained further that

> [M]any victims of municipal malfeasance would be left remediless if the city were also allowed to assert a good-faith defense. Unless countervailing consideration counsel otherwise, the injustice of such a result should not be tolerated.

Thus, the Fifth Circuit has held that "governmental entities are not entitled to qualified immunity."[37]

Accordingly, Defendants should be precluded from arguing any "good faith" or qualified immunity defense on behalf of any defendant in their official capacity, or JPSO as an entity. Further, if "good faith" or qualified immunity is raised, this Court should issue a limiting instruction that the defense does not apply to the government entity. JPSO Defendants' counsel has agreed not to raise qualified immunity as a defense for the government entity, but did not respond regarding good faith.

**11.    This Court should exclude any evidence of Defendants' commendations as irrelevant and as hearsay.**

In excessive force cases, the question is whether officers violated the law on a specific date. The question is not whether they are generally good or generally bad officers. For that reason, courts

---

[36] *Imani v. Baton Rouge*, 17-cv-00439-JWD-EWD, R. Doc. 376 at *2 (M.D. La. Dec. 20, 2022).
[37] *Gates v. Texas Dept. of Protective & Reg. Services*, 537 F. 3d 404, 436 (5th Cir. 2008) ("governmental entities are not entitled to qualified immunity"), *citing Owen v. City of Independence*, 445 U.S. 622, 657 (1980).

frequently exclude evidence of commendations or awards the officers may have received.[38] For example, in *United States v Nazzaro*, 889 F.2d 1158 (1st Cir. 1989) the defendant, a police officer, attempted to "offer into evidence his resume and other anecdotal proof of commendations received by him in military service and as a police officer. He also sought to show that a medal was bestowed upon him for special valor."[39] This attempt was properly rejected because the evidence did not fall within the scope of F.R.E. 404(a)(1). Moreover, the proffered evidence was "classic hearsay,"[40] and therefore inadmissible on those grounds as well.

This court has followed the general approach. For example, in *United States v. Warren*, a section of this court excluded a NOPD officer's evidence of commendations because it was improper character evidence.[41] The court concluded that even if the commendations were relevant, "the probative value of such evidence would be substantially outweighed by the danger of confusion of the issues, misleading the jury, considerations of undue delay, and a waste of time."[42] Similarly, in *Arcement v. Geovera Specialty Ins. Co.,* a section of this court excluded commendation evidence, because such "evidence may speak to heroism and bravery, but it does not speak to a truthful character."[43] The court noted that "even if the testimony did concern truthfulness, it constitutes evidence of specific instances of conduct and thus could be inquired into only on cross

---

[38] *E.g.,* in *United States v Barry*, 814 F.2d 1400 (9th Cir. 1987), the defendant, a lieutenant in a Navy security unit, was not permitted to admit as evidence two letters of commendations he had received. The evidence was offered in support of an entrapment defense as evidence of lack of predisposition. The evidence was properly excluded because this evidence was not opinion or reputation. *See also United States v Washington*, 106 F.3d 983 (D.C. Cir. 1997), (commendations not admissible under F.R.E. 404(a)(1), 405(a) or 405(b)); *United States v Brown*, 503 F. Supp. 2d 239 (DDC 2007).
[39] *Id*. at 1168.
[40] *Id*. at 1168.
[41] *United States v. Warren*, 2010 U.S. Dist. LEXIS 124063, at *14 (E.D. La. Nov. 4, 2010)
[42] *Id*. at *15.
[43] *Arcement v. Geovera Specialty Ins. Co*., No. 13-5436, 2014 U.S. Dist. LEXIS 203178, at *11 (E.D. La. July 10, 2014)

examination."[44]

Accordingly, this Court should exclude any evidence of Defendants' awards or commendations as irrelevant under Rule 402, more prejudicial than probative under Rule 403, and also as improper hearsay and character evidence.

**12. This Court should set a time for the exchange of demonstrative exhibits, and exclude any exhibits not exchanged in advance.**

To allow time for parties to review demonstrative exhibits and make and argue any objections, courts frequently set a time in the days before trial for the parties to exchange demonstrative exhibits. Plaintiffs ask that this Court set such a time, and exclude any demonstrative exhibits not exchanged by that time.

### D. Conclusion

For the reasons described above, this Court should grant Plaintiffs' motions *in limine*.

RESPECTFULLY SUBMITTED,

Andrew C. Clarke (TN BPR # 15409)
The Cochran Firm Midsouth
One Commerce Square, Suite 1700
(901) 523-1222 (Telephone)
aclarke@cochranfirmmidsouth.com

*/s/ William Most*
WILLIAM MOST (BPR # 36914)
Most & Associates
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (504) 509-5023
williammost@gmail.com

---

[44] *Id*.