UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONNA LOU, ET AL. | * | CIVIL ACTION |
|     Plaintiffs | * | |
| | * | NO: 21-80 |
| VERSUS | * | |
| | * | SECTION: D-2 |
| | * | |
| SHERIFF JOSEPH LOPINTO, III ET AL. | * | |
|     Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*\*\*

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

**MAY IT PLEASE THE COURT:**

All JPSO Defendants have moved for partial judgment as a matter of law. They submit that Plaintiffs have failed to demonstrate that there remain any genuine issues of material fact to be tried with regard to their claims under the ADA and RA.

First, Plaintiffs' claims under the ADA and RA fail because Plaintiffs have failed to make any showing that E.P. was discriminated against on the basis of any alleged disability.

Second, and alternatively, the ADA "does not apply to an officer's on-the-street responses to... incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life." (*See Allen, Hainze, infra*).

1

Third, and in the further alternative, the Defendants are entitled to qualified immunity as a matter of law.

## I. LEGAL STANDARD

### A. SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Disraeli v. Rotunda*, 489 F.3d 628, 631 (5th Cir. 2007)(*quoting* Fed. R. Civ. P. 56(c)).

Once the moving party shows that no genuine issue of material fact exists, the non-movant must respond by "set[ting] forth specific facts showing that there is a genuine issue for trial." *Beard v. Banks*, 548 U.S. 521, 529 (2006) (*quoting Celotex Corp. v. Catrett*, 447 U.S. 317, 323 (1986)) (*quoting* Fed. R. Civ. P. 56(e)) (emphasis added by *Beard* Court). All reasonable inferences are drawn in favor of the nonmoving party. Yet a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)). Further, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of

evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (*citing Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir.2007) (additional citation omitted).

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.,* 140 F.3d 622, 625 (5th Cir. 1998); Fed.R.Civ.P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*,

477 U.S. at 322-25; Fed.R.Civ.P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

> At the summary judgment stage of a Section 1983 action,
>
> a defendant asserting immunity is not required to establish the defense beyond peradventure, as he would have to do for other affirmative defenses. "The moving party is not required to put forth evidence to meet its summary judgment burden for a claim of immunity. It is sufficient that the movant in good faith pleads that it is entitled to absolute or qualified immunity." "Once the [movant] asserts this affirmative defense, the burden shifts to the plaintiff to rebut it."

*Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003) (footnote omitted) (quoting *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633-34 (5th Cir. 2000)); accord *Clayton v. Columbia Cas. Co.*, 547 F. App'x 645, 649 (5th Cir. 2013) (citing *Crostley v. Lamar Cnty.*, 717 F.3d 410, 422 (5th Cir. 2013); *Tolan v. Cotton*, 713 F.3d 299, 304 (5th Cir. 2013, rev'd on other grounds, No. 13-551, 2014 WL 1757856, at *4 (U.S. May 5, 2014)); *Morgan v. Tex. Dep't of Crim. Justice*, 537 F. App'x 502, 508 (5th Cir. 2013) (*citing Rockwell v. Brown*, 664 F.3d 985, 990-91 (5th Cir. 2011)).

Indeed, although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised. *Collier v. Montgomery*, 569 F.3d 214, 217-18 (5th Cir. 2009). As a matter of law, qualified immunity is a defense from suit, not just liability, and once invoked the burden shifts to Plaintiff

to overcome the defense. *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727 2731, 73 L.Ed.2d 396 (1982); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir.1994) ("The burden of negating the [qualified immunity] defense lies with the plaintiffs.").

### B.   SECTION 1983 AND QUALIFIED IMMUNITY

Federal law provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983.  This statute is considered the primary vehicle for bringing constitutional claims against local governments and officials.

There are two essential elements to a § 1983 claim: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor,* 451 U.S. 527, 535, 1010 S.Ct. 1908 (1981).  There must be a "direct causal link between the alleged constitutional deprivations and the official conduct by defendants causing the deprivations." *Bieros v. Nicola,* 839 F.Supp. 332 (E.D. Pa. 1993).

If plaintiff cannot show with specificity that the officer's actions were objectively unreasonable, the officer is entitled to qualified immunity. Public officials, whose positions entail the exercise of discretion, enjoy the special protections of qualified immunity from personal liability in Section 1983 damage actions. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 (1982). In *Saucier v. Katz*, 553 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court prescribed as follows:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. (citations omitted).

*Saucier*, 553 U.S. 194, 121 S.Ct. 2151.

For several years, the Supreme Court required that the first of these criteria- whether plaintiffs' facts allege a constitutional violation-must be decided at the outset as set forth in *Saucier,* 533 U.S. 194, 201. However, the Court has reversed course and now permits lower courts to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed

first in light of the circumstances in the particular case at hand. *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).[1]

## II. STATEMENT OF THE CASE

### A. PLAINTIFFS' CLAIMS

Plaintiffs bring this action under 42 U.S.C. §1983. R. Doc. 22. Plaintiffs allege that E.P. was discriminated against based upon his alleged disability in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131, 12132 and Section 504 of the Rehabilitation Act (29 U.S.C. § 794) (RA). R. Doc. 1, ¶¶ 12, 430-456.

Plaintiffs allege that "E.P. was entitled to reasonable accommodation in the provision of law enforcement services and safe and secure access to appropriate care, all of which were denied to him by the defendants." *Id.* at ¶ 451.

Plaintiffs allege that "[b]ecause Defendants failed to reasonably accommodate E.P.'s disability, he suffered greater injury, suffering, indignity and death, than individuals without an intellectual/ developmental disability who are handcuffed, secured and then placed in recovery position while in custody of the JPSO." *Id.* at ¶ 454.

---

[1] S*ee also Lytle v. Bexar County, Tex.*, 560 F.3d 404 (5th Cir. 2009)(although *Saucier*'s rigid "order of battle" - requiring courts to always address the constitutional issue of whether alleged conduct violated the constitution - is now advisory under *Pearson*, courts still have discretion to conduct a full *Saucier* inquiry).

### B. STATEMENT OF THE UNCONTESTED MATERIAL FACTS

This case involves the death of an individual (E.P.) who violently attacked his father and the responding Deputy that was called to the scene in the parking lot of the Westgate Shopping Center in Metairie, La. on January 19, 2020. The call for service was made by a horrified onlooker. R. Doc. 1.

The Defendant J.P.S.O. Deputies were called to the scene based upon a report from a business manager that E.P. was violently out of control and severely beating his own father, Plaintiff, in the parking lot. *Id*.

The Defendant J.P.S.O. Deputies arrived to find a horrifying scene. E.P. had severely injured his father. E.P. had bitten a piece of his fathers face off, leaving open and obvious trauma.

The Defendant J.P.S.O. Deputies did as best they could to manage E.P. While trying to gain control over E.P., E.P. bit Deputy Pitfield, causing injury.

Regrettably, E.P. expired on the scene.

The entire incident was caught on surveillance cameras, the video of which is attached as Exhibit 1.

The video speaks for itself and clearly shows that the scene was never secure prior to E.P.'s demise. *Id*.

## III. PLAINTIFFS' CLAIMS UNDER THE RA AND ADA SHOULD BE DISMISSED AS A MATTER OFF LAW.

Plaintiffs sued under the ADA and Rehabilitation Act claims. Section 504 of the Rehabilitation Act of 1973 provides, in relevant part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705 of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C. § 794(a).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

The Fifth Circuit has said that the evaluation of a claim for disability discrimination under the ADA and the Rehabilitation Act are substantially the same and "[t]he only material difference between the two provisions lies in their respective causation requirements." *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). Under the RA, the plaintiff must establish that disability discrimination was the sole reason for the exclusion or denial of benefits. *Id*. While under Title II of the ADA, "discrimination need not be the sole reason." *Id*. The Fifth Circuit has also said:

> To establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate: (1) that he is a qualified individual within the meaning of the ADA; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.

*Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 672-73 (5th Cir.2004); *see also Hainze v. Richards*, 207 F.3d 795 (5th Cir.2000); and 42 U.S.C. § 12132.

In this case, there is simply no evidence that the Deputies responding to the scene discriminated against E.P. based upon his disability. There is no evidence that the JPSO Deputies took the actions they did (securing E.P., who had attacked his father and Deputy Pitfield and continued to resist all efforts to calm him), to deliberately discriminate against E.P. based upon any alleged disability.

Moreover, and critically, because there is no question that E.P. posed a substantial risk to himself and others, exigent circumstances existed and the ADA and RA are not applicable. *Hainze*, 207 F.3d at 801.

*Hainze* set the standard relevant to this case. It involved a 911 call requesting the transport of a suicidal man to a hospital for mental health treatment. *Hainze*, 207 F.3d at 797. Kim Michael Hainze, who had a history of depression, was under the influence of alcohol and anti-depressants, carrying a knife, and threatening to commit suicide or suicide by cop. *Id*. When officers arrived at the convenience store, Hainze was standing by the passenger door and holding the

1

door handle of a pickup truck occupied by two individuals. Hainze had a knife in one hand and was not wearing shoes in cold weather. When one of the officers exited his vehicle with his weapon drawn and ordered Hainze away from the truck, Hainze responded with profanities and began walking toward the officer with the knife in his hand. The officer twice ordered Hainze to stop, but Hainze refused. Once Hainze was approximately 4-6 feet away, the officer fired two shots into Hainze's chest and called EMS. *Id*. Hainze, who survived, was convicted of aggravated assault with a deadly weapon as a result.

Hainze filed a civil suit alleging various constitutional claims, but also seeking declaratory, injunctive and compensatory relief under Title II of the ADA and Section 504 of the Rehabilitation Act. *Id.* at 797-98. Hainze asserted that he was discriminated against on the basis of disability and that the defendants had failed to establish a policy or train deputies to protect the well-being of mentally ill individuals. "Specifically, Hainze alleges that Allison never engaged him in conversation to calm him, never tried to give him space by backing away, never attempted to defuse the situation, never tried to use less than deadly force, and never attempted to create any opportunities for the foregoing to occur." *Hainze*, 207 F.3d at 800-01.

On d*e novo* review, the Fifth Circuit concluded that Hainze was not denied the benefits and protections of a service or program because "Hainze's assault of

[the officer] with a deadly weapon denied him the benefits of that program." *Id.* at 801. The Court further recognized an **"exigent circumstances" exception** to the application of Title II **"to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life**." *Hainze*, 207 F.3d at 801 (emphasis added). In other words, **officers do not first have to consider whether their actions will comply with the ADA "in the presence of exigent circumstances and prior to securing the safety of themselves" and others or when they are reacting "to potentially life-threatening situations**." *Id.* (emphasis added).

The foregoing precedent was just reaffirmed by the 5th Circuit in *Allen v. Hays*, --- F.3d --- (5th Cir. March 21, 2023).

In this case, there is no question that E.P. posed a risk to the officers, himself and others. Therefore, *Hainze* applies and the Defendants are entitled to summary judgment in his favor as a matter of law.

Indeed, and to their credit, the Plaintiffs acknowledge in their Complaint that *Hainze* applies, barring their claims. They ask that this Court change the law, which of course this Court is not able to do. "Plaintiffs allege that the Fifth Circuit's decision in *Hainze* should be revisited and reconsidered as in error, in

light of years of differing and critical opinions from other U.S. Circuit Courts of Appeal as well as scholarly critiques which have identified Hainze as having been incorrectly decided and plaintiffs' herein assert violations of the ADA and Rehabilitation Act in the events leading up to the initial restraint of E.P." R. Doc. 1, at ¶ 439.

*Hainze* governs, having just been reaffirmed by the 5th Circuit in *Allen v. Hays*, and renders the RA and ADA inapplicable to this case.

The Defendants are entitled to summary judgment as a matter of law.

### B.     ALTERNATIVELY, ALL JPSO DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS A MATTER OF LAW UNDER THE ADA AND RA.

Qualified immunity applies to Plaintiffs' claims against the Defendants in their individual capacities under the RA. *McGregor v. Louisiana State Univ. Bd. of Supervisors*, 3 F.3d 850, 862-63 (5th Cir. 1993). Likewise, qualified immunity applies to Plaintiffs' claims under the ADA. *Hall v. Thomas*, 190 F.3d 693, 696-697 (5th Circuit 1999).

The Fifth Circuit has set out the test for establishing a defense based on qualified immunity:

> Evaluating qualified immunity is a two-step process. First, we determine whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right. A right is clearly established if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right. If

> the plaintiff has alleged a violation of a clearly established right, the next step for us is to determine whether the official's conduct was objectively reasonable under the law at the time of the incident. The plaintiff bears the burden of proving that a government official is not entitled to qualified immunity.

*Michalik v. Hermann*, 422 F.3d 252, 257-258 (5th Cir. 2005)(quotation marks and citations omitted).

It is established (above) that E.P.'s rights under the ADA and RA were not violated. Nonetheless, and alternatively, all JPSO Defendants are entitled to summary judgment because their conduct was reasonable in light of clearly established law. The second prong of the qualified immunity inquiry is whether the Defendants' conduct was objectively reasonable in light of clearly established law.

In order to overcome qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Sorenson v. Ferrie*, 134 F.3d 325, 330 (*citing Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997)). The analysis does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *Malley v. Briggs*, 475 U. S. 335, 341 (1986). When properly applied, qualified immunity protects

1

"all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U. S., at 341.

Here, no law enforcement officer in the Defendants' position would have been on notice that their actions violated clearly established law. On the contrary, the law is clear that "[t]he ADA 'does not apply to an officer's on-the-street responses to . . . incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life.'" *Allen*, at p. 20-21; citing *Hainze*, 207 F.3d at 801.

Therefore, the Defendants are entitled to qualified immunity and judgment in their favor as a matter of law.

## CONCLUSION

First, Plaintiffs' claims under the ADA and RA fail because Plaintiffs have failed to make any showing that E.P. was discriminated against on the basis of any alleged disability.

Second, and alternatively, the ADA "does not apply to an officer's on-the-street responses to... incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life." (*See Allen, Hainze, infra*).

Third, and in the further alternative, the Defendants are entitled to qualified immunity as a matter of law.

Respectfully submitted,

**/s/ James B. Mullaly**

_____
**FRANZ L. ZIBILICH, LSB# 14912**
**JAMES B. MULLALY, LSB#28296**
**MARTINY & ASSOCIATES, LLC**
131 Airline Highway
Suite 201
Metairie, Louisiana 70001
(504) 834-7676
(504) 834-5409 (fax)
e-mail: danny@martinylaw.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing motion has been served upon all parties via CM/ECF (PACER), and or U.S. Mail, properly addressed and postage prepaid, this 19th day of April 2023.

/s/ James B. Mullaly
_____
**JAMES B. MULLALY**

1