POLICY (SOP-8)   Page 1 of 6



# JPSO STANDARD OPERATING PROCEDURES

## SOP-8

### Restraining Devices & Defensive Devices Policy for the Jefferson Parish Sheriff's Office

**EFFECTIVE DATE:** October 26, 1994     **REVISED DATE:** July 7, 2014
**ISSUING BUREAU/DIVISION:** Legal Department

---

I. The following is a list of acceptable devices, authorized for use by officers who have completed the JPSO training program for the particular device:

   A. DEPARTMENT ISSUED BATONS

   B. DEPARTMENT ISSUED OC SPRAY

      1. <u>Use of OC Pepper Spray:</u>

         Only deputies who may have completed this agency's prescribed course of instruction on the use of OC pepper spray will be authorized to carry OC spray devices.

         a. A deputy may employ OC pepper spray in any situation where the use of that degree of force is justified.

         b. OC spray is to be employed to control a non-compliant subject.

         c. After the subject has been satisfactorily restrained, the deputy must take immediate steps to care for the sprayed subject.

         d. The deputy who employed the spray is responsible for properly caring for and monitoring a sprayed individual, unless and until the officer is properly relieved of that responsibility. When custody is transferred, the receiving authority should be advised that the subject has been sprayed.

**NOTE:**   *THIS IS A CONFIDENTIAL DOCUMENT AND ITS CONTENTS ARE NOT TO BE DISSEMINATED OUTSIDE THIS DEPARTMENT WITHOUT THE CONSENT AND APPROVAL OF THE SHERIFF.*

JPSO 008256

    e. OC spray should not be used when working a parade assignment or any other situation where crowds of spectators are closely gathered, unless it is reasonable under the totality of circumstances.

2. <u>Reporting Requirements:</u>

    a. Unless otherwise provided by departmental polices and procedures, any use of OC spray will be reported to the deputy's immediate supervisor as soon as possible. This includes:

        1. Intentional use of OC spray against a human or animal.

        2. Unintentional or incidental spraying of a fellow deputy, bystander, or other person or animal during intentional use of OC spray against a subject.

    b. Intentional employment of OC spray is a use of force. Therefore, unless otherwise provided by departmental policy, documentation will be made in the deputy's report following an OC spray discharge unless that discharge occurred during testing or training.

    c. A Departmental Chemical Agent/Electronic Control Device Usage Report will also be filled out by the user and forwarded to his/her immediate supervisor.

3. <u>Replacement:</u>

    OC canister should be replaced upon expiration date.

## C. DEPARTMENT ISSUED ELECTRONIC CONTROL DEVICES

1. <u>Use of an Electronic Control Device</u>

    Only deputies who may have completed this agency's prescribed course of instruction on the use of Electronic Control Devices will be authorized to carry Electronic Control Devices.

    a. A deputy may employ Electronic Control Devices in any situation where the use of that degree of force is justified.

    b. After the subject has been satisfactorily restrained, the deputy must take immediate steps to care for the electronically controlled subject.

**NOTE:** *THIS IS A CONFIDENTIAL DOCUMENT AND ITS CONTENTS ARE NOT TO BE DISSEMINATED OUTSIDE THIS DEPARTMENT WITHOUT THE CONSENT AND APPROVAL OF THE SHERIFF.*

   c. The deputy who employed the Electronic Control Device is responsible for properly caring for and monitoring an electronically controlled individual, unless and until the officer is properly relieved of that responsibility. When custody is transferred, the receiving authority should be advised that the subject has been electronically controlled.

   d. The Electronic Control Device should not be used when working a parade assignment or any other situation where crowds of spectators are closely gathered, unless it is reasonable under the totality of the circumstances.

   e. The Electronic Control Device is generally analogous to oleoresin capsicum (OC) spray on the agency use-of-force continuum and justification to use an Electronic Control Device generally involves the same type of situations. The primary goal of the Electronic Control Device is to overcome resistance and gain control of the subject.

   f. Weapon Readiness

      1. The device should be carried in an approved holster on the side of the body opposite the service handgun. Officers not assigned to uniformed patrol may utilize other department-approved holsters and carry the weapon consistent with department training.

      2. The device shall be carried fully armed with the safety on in preparation for immediate use.

      3. Officers shall be issued a minimum of one spare cartridge as a backup in case of cartridge failure or the need for redeployment. The spare cartridge shall be stored and carried in a manner consistent with training, and the cartridges will be replaced consistent with the manufacturer's expiration requirements.

      4. Only manufacturer-approved battery power sources shall be used in the Electronic Control Device.

      5. The Electronic Control Device should be subjected to a pre-shift "spark test" as defined in training to ensure that the device is functioning properly.

      6. No modifications or repairs shall be performed on the device unless authorized by the department in writing.

**NOTE:** *THIS IS A CONFIDENTIAL DOCUMENT AND ITS CONTENTS ARE NOT TO BE DISSEMINATED OUTSIDE THIS DEPARTMENT WITHOUT THE CONSENT AND APPROVAL OF THE SHERIFF.*

JPSO 008258

POLICY (SOP-8)                                                                      Page 4 of 6

    2. <u>Reporting Requirements</u>:

        a. Unless otherwise provided by departmental polices and procedures, any use of Electronic Control Devices will be reported to the deputy's immediate supervisor as soon as possible. This includes:

            1. Intentional use of Electronic Control Devices against a human or animal.

            2. Any unintentional use of an Electronic Controlled Device on a fellow deputy, bystander, or other person or animal.

            3. Any accidental discharge.

        b. Intentional employment of Electronic Control Devices is a use of force. Therefore, unless otherwise provided by departmental policy, documentation will be made in the deputy's report following an Electronic Control Device discharge unless that discharge occurred during testing or training.

        c. A Departmental Chemical Agent/Electronic Control Device Usage Report will also be filled out by the user and forwarded to his/her immediate supervisor.

    4. <u>Replacement</u>

        The Electronic Controlled Device cartridge shall be replaced after any deployment or if inspection reveals damage.

II. The following is a list of acceptable restraining devices authorized for use by officers to restrain suspects.

    A. DEPARTMENT AUTHORIZED HANDCUFFS

    B. DEPARTMENT AUTHORIZED CHAINS, LEG IRONS/ STRAPS (SHACKLES)

    C. DEPARTMENT AUTHORIZED BODY RESTRAINT DEVICES

    D. DEPARTMENT APPROVED FLEX CUFFS

III. Restraining Policy

    A. It shall be the policy of the Sheriff's Office to take the necessary precautions to protect the lives and safety of our officers, the public, and persons in our care and custody, during any situation.

**NOTE:**   *THIS IS A CONFIDENTIAL DOCUMENT AND ITS CONTENTS ARE NOT TO BE DISSEMINATED OUTSIDE THIS DEPARTMENT WITHOUT THE CONSENT AND APPROVAL OF THE SHERIFF.*

JPSO 008259

POLICY (SOP-8) <span style="float:right">Page 5 of 6</span>

   B. All officers are reminded that the handling of an arrestee and or the transporting of persons in the Department's care and custody can be dangerous. Only reasonable force should be used to accomplish this lawful objective.

      1. Officers should handcuff *(double lock)* all prisoners' hands behind their back.

      2. The officer may handcuff *(double lock)* the prisoner with his hands in front, or utilize other appropriate restraining devices where the prisoner:

         a. Is in an obvious state of pregnancy;

         b. Has a physical handicap; or

         c. Has injuries that could be aggravated by standard handcuffing procedures.

         d. Is being arrested for an authorized traffic attachment arrest.

         e. Is being seized (or taken into custody) as a result of an OPC, PEC, during crisis interventions such as emergency committals dealing with emotional disturbed persons or other exigent events.

      3. Prisoners shall not be handcuffed to any part of the vehicle during transport.

      4. Prisoners should be seat belted in all vehicles so equipped.

      5. Approved restraint devices may be used to secure a prisoner who violently resists arrest or who manifests mental disorders such that he poses a threat to himself, the officer or the public.

   C. A deputy may, in extreme situations, be forced to employ methods or weapons not commonly accepted for law enforcement. The guiding factor should be whether the weapon or technique was reasonable under the circumstances.

   D. Extremely violent prisoners may have to be additionally restrained. If necessary to restrain the movements of both the hands and legs, it may be done by the "Total Appendage Restraining Procedure."

   E. If prisoner is extremely violent, the officer should notify his supervisor and notify and/or request medical services before beginning transport, unless immediate removal from the scene is necessary.

   F. Regarding the handcuffing of Juveniles, as always, department procedures, officer discretion, common sense and officer safety, play important roles in making a determination when handling a juvenile. The above provisions are to

**NOTE:** *THIS IS A CONFIDENTIAL DOCUMENT AND ITS CONTENTS ARE NOT TO BE DISSEMINATED OUTSIDE THIS DEPARTMENT WITHOUT THE CONSENT AND APPROVAL OF THE SHERIFF.*

POLICY (SOP-8)                                                                                                           Page 6 of 6

be followed for a juvenile, also. *(\*NOTE: LA R.S.13 (Infancy) provides that those who have not reached the age of ten (10) are excluded from criminal responsibility, but are still subject to the jurisdiction of Juvenile Courts. A juvenile under the age of ten (10) years old may be taken into custody for an offense as a "Child in need of Supervision." If warranted by the type of incident or "Special Circumstances" a juvenile under ten (10) years of age, <u>may be</u> handcuffed consistent with this policy and Academy training.)*

**NOTE:**   *THIS IS A CONFIDENTIAL DOCUMENT AND ITS CONTENTS ARE NOT TO BE DISSEMINATED OUTSIDE THIS DEPARTMENT WITHOUT THE CONSENT AND APPROVAL OF THE SHERIFF.*

JPSO 008261