**APA Official Actions**

# Position Statement on Concerns About Use of the Term "Excited Delirium" and Appropriate Medical Management in Out-of-Hospital Contexts

Approved by the Board of Trustees, December 2020
Approved by the Assembly, November 2020

"Policy documents are approved by the APA Assembly and Board of Trustees... These are... position statements that define APA official policy on specific subjects..." – *APA Operations Manual*

**Issue:**

As noted in the APA's *Position Statement on Police Interactions with Persons with Mental Illness* (2017), in a range of crisis situations, law enforcement officers are called as first responders and may find individuals who are agitated, disorganized and/or behaving erratically. Such behaviors may be due to mental illness, intellectual or developmental disabilities, neurocognitive disorders, substance use, or extreme emotional states. Police responses to calls for behavioral health crises have been known to result in tragic outcomes, including injury or death. The concept of "excited delirium" (also referred to as "excited delirium syndrome (ExDs)") has been invoked in a number of cases to explain or justify injury or death to individuals in police custody, and the term excited delirium is disproportionately applied to Black men in police custody. Although the American College of Emergency Physicians has explicitly recognized excited delirium as a medical condition, the criteria are unclear and to date there have been no rigorous studies validating excited delirium as a medical diagnosis. APA has not recognized excited delirium as a mental disorder, and it is not included in the *Diagnostic and Statistical Manual of Mental Disorders (DSM-5)*. The DSM-5 recognizes Delirium, hyperactive type, but the symptoms of this condition differ in many ways from the symptoms typically attributed to excited delirium (e.g., superhuman strength, impervious to pain, etc.). Recent data suggest that persons being detained by the police and described as having "excited delirium" have frequently received medication from emergency medical technicians (EMTs) intended to rapidly sedate them. Ketamine, an FDA-approved medication for anesthesia is often used for this purpose. In some reported cases, it is questionable whether the person identified as having an "excited delirium" actually had any medical condition warranting its use. Many sedating medications, used in outside of hospital contexts, including ketamine, have significant risks, including respiratory suppression. Supporting respiration may be challenging outside of a hospital setting, where it may require intensive medical oversight or involvement.

**APA Position:**

It is the position of the American Psychiatric Association that acute medical conditions, including Delirium, always require an appropriate medical response. Therefore, it is the position of the APA that:

1. The term "excited delirium" (ExDs) is too non-specific to meaningfully describe and convey information about a person. "Excited delirium" should not be used until a clear set of diagnostic criteria are validated.

© Copyright, American Psychiatric Association

EXHIBIT 23   PENGAD 800-631-6989

2. An investigation should be undertaken of cases labelled with "excited delirium" to identify how the term is being used, whether consistent criteria are being applied, and whether it has any validity as a medical syndrome. The U.S. Department of Health and Human Services should conduct a comprehensive, nationwide investigation of instances in which individuals have been identified as being in a state of excited delirium, including in interactions with law enforcement personnel and other out-of-hospital contexts. The study should include examination of all relevant data, including the precipitating events, health outcomes for the individuals and law enforcement personnel, and whether there is a disproportionate application of the term "excited delirium" to persons with mental illness, Black people, or other racial and ethnic groups.

3. All jurisdictions should develop, implement, and routinely update evidence-based protocols for the administration of ketamine and other sedating medications in emergency medical contexts outside the hospital. These protocols should allow use of these medications only for treatment purposes in medically appropriate situations and should explicitly bar their use to achieve incapacitation solely for law enforcement purposes.

**Author:** Council on Psychiatry and Law

© Copyright, American Psychiatric Association, all rights reserved.