


## Need to Know...

Updated: April 2019

# Investigation of Officer-Involved Shootings and Other Serious Incidents

*Officer-involved shootings often result in intense media coverage and public scrutiny. As a result, it is imperative that law enforcement agencies conduct a thorough and impartial investigation into these incidents.*

- The purpose of investigating officer-involved shootings is to determine whether the **actions of involved officers** conform to applicable law and agency rules, policies, procedures, and training.
- The procedures used in an officer-involved shooting investigation can also be applied to other **serious incidents**, such as vehicular pursuits and use of force that results in serious injury.
- Standard **incident response** protocols should be implemented in response to an officer-involved shooting, to include identification of an incident commander (IC) and establishment of a command post and inner and outer perimeters.
- A brief **public safety statement** should be taken from all officers involved in the shooting. The purpose of this statement is to obtain the information necessary to focus initial law enforcement response and direct the preliminary investigation.
- Systematic **documentation** of the scene and **evidence collection** conducted by trained personnel are crucial in officer-involved shooting investigations, which should include, but not be limited to, collecting any clothing or other items that may have been discarded or removed from subjects or officers and locating and securing any firearms and expended cartridges.
- Officers involved in a shooting may experience a variety of **traumatic reactions** that may interfere with their ability to react effectively and appropriately. All officers should receive training about potential negative psychological, emotional, and physical reactions to these traumatic situations, and investigators should be aware of the impact these reactions may have on the officers' ability to recall the incident.
- Prior to an officer-involved shooting occurring, law enforcement agencies should **consider and develop policies and procedures** related to timing of officer interviews; whether involved officers will be provided with an opportunity to watch videos of the incident prior to being interviewed; when and how the involved officers' names will be released to the public; and if and when any videos of the incident will be released to the public.
- Law enforcement agencies should strive to be **transparent** with the public regarding the procedures used to investigate officer-involved shootings. Each agency must balance the need to release timely information regarding the status of the investigation with the obligation to protect the integrity of the investigation.

© Copyright 2019. Departments are encouraged to use this document to establish policies customized to their agency and jurisdiction. However, copyright is held by the International Association of Chiefs of Police, Alexandria, Virginia U.S.A. All rights reserved under both international and Pan-American copyright conventions. Further dissemination of this material is prohibited without prior written consent of the copyright holder.



**IACP**
Law Enforcement Policy Center

Concepts & Issues Paper

Updated: April 2019

# Investigation of Officer-Involved Shootings and Other Serious Incidents

## I. INTRODUCTION

### A. PURPOSE OF DOCUMENT

This paper was designed to accompany the Model Policy on Investigation of Officer-Involved Shootings and Other Serious Incidents established by the IACP Law Enforcement Policy Center. This paper provides essential background material and supporting documentation to provide greater understanding of the developmental philosophy and implementation requirements for the model policy. This material will be of value to law enforcement executives in their efforts to tailor the model policy to the requirements and circumstances of their communities and their law enforcement agencies.

This document focuses on officer-involved shootings. However, many of the guidelines discussed are also applicable to the investigation of other serious incidents, defined herein as any use of deadly force, regardless of whether the employee's actions resulted in injury or death; any death or serious injury resulting from, or that occurs during the course of an agency operation; pursuits resulting in serious injury or death; employee-involved collisions resulting in death or serious injury; and matters of an unusually serious nature involving agency employees, to include large-scale event response.

### B. BACKGROUND

All officers—not just those responsible for investigation—should have an understanding of the steps that must be taken in response to an officer-involved shooting. The initial response of the involved officer(s) at the scene and the steps taken thereafter by first responders and supervisory and investigative personnel often determine whether an accurate and complete investigation is conducted.[1] The accuracy and professionalism of officer-involved shooting investigations can have a significant impact on involved officers, their respective agencies, community-law enforcement relations, and public perceptions of law enforcement.

Investigations of officer-involved shootings should be designed to accomplish several important goals. First, it must be determined whether involved officers, in the course of their duties, took measures that were objectively reasonable under the circumstances of the incident. Second, the investigation must be capable of determining whether involved officers acted in accordance with agency policy, procedures, rules, and training. Results of the foregoing investigations have a direct bearing on possible criminal charges or administrative discipline and liability that may attach to the involved officers, the agency, or both. Third, the agency should take timely measures to ensure that factual information about the officer-involved shooting is readily available for public dissemination. Agencies are advised to incorporate both traditional and social media options for ensuring that community members and the public at-large are properly and promptly informed about the accurate facts regarding officer-involved shootings.

EXHIBIT 119

---

[1] Involved officers are those sworn officers in on-duty or off-duty status who are involved in an officer-involved shooting or are otherwise directly related to such an event.

From a broader standpoint, findings from these investigations have a direct bearing on risk management within agencies and on public perceptions of law enforcement performance. Information gathered on the circumstances surrounding officer-involved shootings is essential in identifying patterns, trends, and contributing causes that can lead to changes in agency practices, procedures, tactics, training, and equipment. In addition, organizational transparency should be developed as an agency priority in order to ensure that the public remains effectively informed of the results, findings, and recommendations of these sensitive investigations.

Accurate, complete investigation of officer-involved shootings requires agency planning and the establishment of guidelines and protocols that must be followed. It also depends largely upon the prudence of decisions made and steps taken immediately following the incident by the involved officer(s), supervisory personnel, criminal investigators, professional standards personnel, and other concerned investigative bodies.[2] Many agencies, because of their limited resources and expertise in these types of investigations, rely all or in part on another law enforcement authority with appropriate jurisdiction for assistance. Some agencies also run investigations in cooperation with the local prosecutor's office. However, most of the burden for evidence preservation and protection of the incident scene is the responsibility of involved officers and first responders, as well as the incident commander (IC) and lead investigator. Therefore, it is essential that all officers have an understanding of the significance and importance of taking appropriate initial actions and measures that will prove essential as the investigation unfolds.[3]

### C. PHYSICAL AND EMOTIONAL REACTIONS

Involved officers may experience some form of emotional and physical disorientation following an officer-involved shooting. These reactions may vary according to many factors including the officer's perceived vulnerability during the incident, the amount of control they had over the situation, and their ability to react effectively.

A complete discussion of the symptoms and effects of post-traumatic stress or operational stress injuries is beyond the scope and purpose of this paper.[4] However, for the purpose of the present discussion, it may be sufficient to recognize that such emotional and psychological phenomena are relatively common. As such, officers should be aware of these possibilities and recognize that they are natural responses to traumatic and unusual events.

A variety of traumatic reactions caused by an officer-involved shooting may interfere with an involved officer's ability to react effectively and appropriately. For example, an officer involved in an officer-involved shooting may experience perceptual distortions of various types. Some may experience time distortion in which events appear to occur in slow motion. For others, time may seem to accelerate. Auditory distortions are also possible. For most, sound diminishes and gunshots, shouts, or other sounds may be muffled or unheard. An officer involved in a shooting might not hear all the shots being fired and would not be able to relate this type of information accurately if questioned at a later date. Involved officers should be aware of the possibility that their recall is impaired in one or more of these ways and investigative officers should keep these and related factors in mind when conducting interviews. Involved officers may simply be unable to provide accurate information concerning the officer-involved shooting.

## II. PROCEDURES

### A. INITIAL RESPONSE

***Safety and Welfare.*** The safety and well-being of the involved officer(s) and any bystanders are the first priority. Where applicable, involved officers should ensure that any threat from the subject has been eliminated.[5] This includes, but is not limited to, disarming, handcuffing, or otherwise securing the subject. An involved officer should never assume that because a subject has been shot or appears to be otherwise incapacitated the subject is unable to take aggressive action.

---

[2] Note that the term "office of professional standards" is used in this document to indicate the designated employee(s) or unit, which may be external to the agency, with primary responsibility for monitoring adherence of employees to agency policy, procedures, and rules and for conducting investigations of employee misconduct allegations. This may also be known as internal affairs or professional responsibility.

[3] For an in-depth review and comprehensive summary of several officer-involved shooting deaths, please see *Deaths of Anthony William Young; Shaun Basil Kumeroa; Edward Wayne Logan; Laval Donovan Zimmer; and Troy Martin Foster*, inquest (Brisbane) COR 2013/2988; 2014/3598; 2014/4321; 2014/4239; 2014/4357 (20 October 2017).

[4] See the IACP Policy Center documents on Critical Incident Stress Management available at https://www.theiacp.org/resources/policy-center-resource/critical-incident-stress-management.

[5] For the purposes of this document, the term subject is used to describe any individual who has contact with law enforcement officers and may include criminal suspects.

All subjects should be handcuffed according to agency policy unless emergency life-saving activities being employed at the time would be hindered by these actions or if the individual is obviously deceased. If not secured during the application of emergency first aid, an armed officer not directly involved in the initial incident should be present at all times to oversee security of the subject and the safety of emergency service providers. All firearms or other weapons in the vicinity of the subject should be properly secured, particularly if part of the incident scene, or confiscated, if possible.[6] Dropped or discarded firearms should be left in place only when they cannot be accessed by subjects or any third parties who may be in the immediate area.

Once the scene is made safe, involved officers and other first responders should render first aid where necessary, as consistent with their training. If not already summoned, emergency medical personnel should be requested as a matter of routine even when there are no immediate indications that injuries have been sustained. The adrenaline rush of officer-involved shootings often masks injuries. It can also create a severe elevation in blood pressure, pulse rate, respiration, and body temperature, which individually or collectively can prove dangerous to even healthy and physically fit individuals. All of these factors should be monitored as a matter of routine following any officer-involved shooting.

If an involved officer has been injured, a companion officer or peer support personnel should accompany them to the hospital and remain until relieved.[7] Agencies may wish to transport involved officers to an emergency care facility where they can be checked for injuries and monitored for any delayed physical or emotional reactions to the incident that demands medical attention. The involved officer's family should be notified as soon as possible and provided with basic information on the officer's status and when and where they will be able to see them. If the involved officer is unable to make this notification himself or herself, another agency member should follow agency policy regarding notification of the officer's designated emergency contacts or next of kin as soon as possible and in person, when reasonably possible.

*Apprehension of Subjects.* Where applicable, the agency's communication personnel should be provided with information on any subjects or suspicious persons who may have left the area, to include their physical description, mode and direction of travel, and whether they are armed. If appropriate, the description should be provided to other local or regional law enforcement agencies.

*Protection of the Incident Scene.* Following the incident, involved officers should focus their attention on their surroundings and take note of important facts such as lighting conditions, persons present, those who may have departed the scene, witnesses or potential witnesses, possible subjects or accomplices, and suspicious vehicles. As time and physical and psychological conditions may permit, the involved officer(s) should protect the immediate scene from incursion by bystanders and others, note and secure anything of evidentiary value, and request any eyewitnesses to remain present for a brief statement.

In some cases, emergency medical personnel and/or firefighters may be on hand prior to the arrival of backup law enforcement personnel. Officers at the scene should make note of this with the understanding that these personnel could unknowingly move, misplace, or even inadvertently destroy evidence in the course of performing their duties, or may note important information relevant to the incident.

*Identification of Witnesses.* Once witnesses have been identified, they should be separated so that their statements can be obtained without the potential influence of opinions and observations gleaned from others. The names, addresses, and phone numbers of witnesses and other persons in the general vicinity of the shooting should be recorded. Any witnesses or potential witnesses who have been identified should be asked to remain on hand until a statement has been taken. However, if witnesses wish to leave, they should be allowed to, unless a legal obligation to detain them exists.

*Officer Interviews.* If involved officers are physically capable, they should provide a brief public safety statement at the scene as soon as reasonably possible. The purpose of this statement is to establish the level and type of threat that may still exist, aid the initial operational response to locate subjects, and focus the investigation. This statement may be supplemented by information from other first responders who may be able to provide additional critical information.

Questions composing the brief public safety statement should be limited to the following, where appropriate:
- Type of force and weapons used
- Direction and approximate number of shots fired by involved officer(s) and subjects

---

[6] See the IACP Policy Center documents on Firearm Recovery available at https://www.theiacp.org/resources/policy-center-resource/firearm-recovery.

[7] See the IACP Policy Center documents on Line-of-Duty Deaths available at https://www.theiacp.org/resources/policy-center-resource/line-of-duty-deaths.

- Location of injured persons
- Descriptions of at-large subjects and their mode and direction of travel, time elapsed since they fled and weapons that were available to them
- Descriptions and locations of any known victims or witnesses
- Description and location of any known evidence
- Information that would help ensure officer and public safety and assist in the apprehension of subjects

There may be legal or contractual limitations on questions that may be asked of involved officers. These factors must be incorporated into the types of questions being asked. It should be noted that some jurisdictions have policies or protocols in effect that preclude law enforcement personnel involved in an officer-involved shooting from talking with investigators for a fixed period of time. These prohibitions may be the result of national or regional guidelines, legislation, or collective bargaining or other agreements. Investigative personnel should be cognizant of these criteria. In addition, it may be appropriate to inform the agency's public information officer (PIO) so that this can be clarified publicly if questions related to the delayed questioning of law enforcement personnel arise.

## B. INTERACTIONS WITH INVOLVED OFFICERS

All personnel should be aware that involved officers may be experiencing post-incident psychological, emotional, and physical reactions. If this is the case, they should be handled in a manner consistent with agency policy and professional practice.[8] For example, the involved officer(s) should be moved away from the immediate scene and a companion officer should be assigned. The companion officer should not elicit statements or entertain conversation about specifics of the incident—but rather should provide whatever company and comfort to the involved officer as is necessary and appropriate.

Involved officers should be instructed not to talk about the incident to persons other than their attorneys, mental health providers, or authorized investigators. However, involved officers will inevitably discuss the incident with their loved ones. In these situations, officers should be cautioned against providing specific details or confidential information regarding the incident to friends or family members, as these communications may become part of future legal proceedings. In addition, involved officers should be prohibited from posting about the incident on social media.

## C. DOCUMENTATION AND EVIDENCE COLLECTION

The overall scene should be diagrammed, indicating the location and relative distances between key points and items of evidence. The positions of involved officers and any subjects at the time of the officer-involved shooting should be determined and marked. Then, photographs and, where possible, a video recording should be made of the overall scene and all pieces of evidence.

If possible, it is also a good practice to video record and/or photograph, in a general manner, any bystanders or onlookers who may be at the scene. Some of these individuals may be witnesses to the incident but may disperse before their identities can be determined. Some may fail to come forward as witnesses, fail to provide information if questioned, or provide false identification. A visual image may assist investigators at a later time in identifying and locating these individuals, if necessary.

If the involved officer is still at the scene of the incident and it is reasonably possible to do so, it is highly advisable to take photographs of their physical appearance and any wounds or injuries that were sustained. Should this not be possible at the scene, such photographs should be taken later with consent of the officer and in consultation with hospital staff, where applicable.

Voice transmissions are also potentially important pieces of information or evidence. Arrangements should be made to identify and interview the communications personnel who handled the incident and to secure and review all recorded voice and data transmissions surrounding the incident, to include the logs of mobile data terminals where employed. Video recordings, audio recordings, or both may also be available through devices mounted in patrol vehicles and on electronic control weapons, body-worn cameras, and commercial or governmental surveillance cameras.

---

[8] See the IACP Policy Center documents on Critical Incident Stress Management available at https://www.theiacp.org/resources/policy-center-resource/critical-incident-stress-management.

In addition to collecting the video and other electronic evidence, a canvass by investigators may also determine if other business or private video or photographs of the actions leading up to, during, or following the incident are available. All efforts should be made to procure this evidence voluntarily from these individuals.[9] If these individuals decline to cooperate, the investigator involved should contact the local prosecutor for further assistance. All related videos and photos available via social or traditional media should also be reviewed for prospective evidentiary value and to determine the validity of this potential evidence. The agency's PIO should request that all such material be presented to the law enforcement agency or investigative authority involved as soon as possible.

In obtaining statements during the course of the investigation, investigators should not overlook information and observations made by emergency service personnel, such as paramedics and firefighters, and other first responders at the scene. Their initial impressions concerning the circumstances of the incident upon their arrival, what was said by those involved, actions taken at the scene, and other matters can be of great value to the investigation.

Interviews should be conducted with each involved officer, irrespective of statements made previously at the scene. These interviews should be conducted in a private location away from the sight and hearing of other agency members and persons who do not have a need and a right to the information solicited from the officers. All interviews should be recorded to ensure the existence of an accurate record. In addition, each involved officer should prepare a written report on the incident that should be attached to the final report. Agencies may elect not to conduct group interviews since group dynamics may negatively influence individual recall and judgment. Individual involved officers may also be disinclined to offer views and opinions that differ from the majority of the officers present.

At some point following the incident, whether at the hospital or another facility, involved officers should be tested to determine if alcohol or drugs are in their system, as authorized by state law and contractual agreement. This information will be essential to defend against any future allegations that the involved officers were impaired when the officer-involved shooting took place.

***Procedures Specific to Officer-Involved Shootings.*** Following an officer-involved shooting, the involved officer's firearm should be secured safely until it can be examined by investigators or other designated law enforcement personnel and the officer should be provided with another firearm that they are qualified to use. The firearm should not be removed if it is holstered, nor should it be reloaded or tampered with in any other manner. In some instances, the involved officer's or subject's firearm may have been dropped at the scene. In such cases, it should be left in place if this can be done safely. If safety precludes this, the location and position of the firearm should be marked and it should be secured in a holster or in another acceptable manner. However, the preferred procedure is that weapons, expended cartridge casings, bullets, speed loaders, magazines, and related items be left in place undisturbed until the arrival of the appropriate investigative personnel. At an appropriate juncture, the serial number, make, model, and caliber of all officer and subject weapons used at the scene should be recorded. Weapons, expended bullets, and cartridge casings should be marked, photographed in place, and eventually collected as evidence for forensic examination.[10] All expended bullets should be accounted for as part of the evidence collection process. This may include examining walls or other structures and determining if there are any additional victims who may require medical treatment.

The primary and backup firearms of the involved officer and any officers who may have been at the scene during the incident should be inspected to determine if they were fired. In so doing, an agency may be able to respond more accurately to potential allegations or concerns about additional shots fired by law enforcement personnel. The results of this inspection should be documented within the preliminary report detailing the circumstances of the event.

Involved officer and subject clothing should be preserved, as it can often provide useful information. In officer-involved shooting investigations, this may include the proximity of the involved officer(s); the position of the subject's arms (either up or down); the distance and trajectory of shots that were fired; or entrance and exit points. Examination of the clothing can help prove or refute charges that the involved officer fired shots while the subject was handcuffed, lying on the ground, standing with hands and arms raised, or when the subject was not a threat to the involved officer. Therefore, investigators should ensure that arrangements have been made to secure this clothing before it is discarded by emergency service workers, hospital personnel, or others.

---

[9] See the IACP Public Recording of Police project at https://www.theiacp.org/prop.

[10] See the IACP Policy Center documents on Firearm Recovery available at https://www.theiacp.org/resources/policy-center-resource/firearm-recovery.

## D. INCIDENT COMMANDER (IC) RESPONSIBILITIES

***Incident Assessment and Establishing Command.*** An incident command system is appropriate for use in an officer-involved shooting where many tasks need to be performed concurrently and cooperatively.[11] The IC's role is to assign, where necessary, individual responsibility for the implementation of standard incident response protocols.

The IC's first responsibility is to ensure that the safety, security, and welfare of involved officers and others at the scene has been adequately addressed. The potential threat from assailants or unruly and uncooperative individuals should be addressed first, and any subjects at the scene should be detained or arrested, as appropriate. Emergency medical personnel should be summoned if not previously requested. The IC should ensure that emergency medical personnel conduct a medical screening, even if preliminary, of the involved officers. Particular attention should be paid to symptoms of physiological stress, such as elevated blood pressure and heart rate and tinnitus or other hearing-related conditions.

The IC should take measures to secure the incident scene and maintain its integrity until investigators arrive. As personnel arrive and assignments are made, the perimeter should be secured, and all nonessential personnel should be precluded from entering the incident scene. Any items of potential evidentiary value should be protected. If emergency, fire, or medical personnel need to move persons or items in order to provide medical assistance, their original position and condition should be noted. Official photographs or video recordings of the scene should be taken as soon as possible to assist in evidence preservation.

The IC should then focus attention on any other tasks not previously completed. That is, there may still be a need to broadcast lookouts for subjects; request backup and related support services; identify persons who may have been at or within close proximity to the scene of the incident; and identify witnesses and request their cooperation.

The IC should determine, based on the particular circumstances at the scene, the need for specific actions and make assignments of responsibility for their completion. These tasks may include, but are not limited to, the following:

- Locating and securing in place the involved officers' weapon(s) and expended casings
- Locating and securing in place weapons used by subjects
- Securing any clothing that may have been removed from subjects or involved officers by emergency medical personnel
- Marking the location(s) of all involved officers and subjects at the scene

***Notifications.*** In addition to the request for backup and specialized assistance previously mentioned, other necessary personnel in the agency should be contacted depending upon the seriousness of the incident and the requirements of agency policy. Such notifications may include the agency's chief executive, patrol commander, lead investigator, specialized investigative teams, professional standards personnel, evidence technicians, PIO, coroner or medical examiner, legal advisor, chaplain, law enforcement advocate, qualified mental health professional, and/or peer support coordinator.

***Command Post.*** It may also be necessary and prudent to establish a command post in the immediate vicinity of the incident in order to better coordinate the personnel involved in the investigation and when an extended period of time will be required to complete on-scene investigative activities. In these circumstances, it is also a good idea to appoint one officer to make a detailed record of events and relevant information involving the officer-involved shooting. The duties of this officer will be to document the event and establish a chronological record of the activities at the scene. This record should include, but need not be limited to, the identities of all persons present and those who entered the incident scene; actions taken by law enforcement personnel; evidence processed; and any other matters of significance.

It may also be necessary to establish a staging area in situations that are likely to attract crowds and significant media attention. Law enforcement officer-involved shootings invariably draw sizeable contingents of media representatives. If the agency has a PIO, this individual may be used to coordinate with media representatives and provide them with information as available and appropriate. Should a PIO not be employed or readily available, the IC should appoint an officer at the scene to liaise with these individuals and provide them with the basic details of the incident as they become available and as they are

---

[11] See the IACP Policy Center document on Incident Command available at https://www.theiacp.org/resources/policy-center-resource/incident-command.

appropriate for release. Caution should be exercised in the release of any information at the scene prior to a more complete investigation of the incident.[12] In addition, the deployment of law enforcement community relations, community policing, or community affairs personnel to the scene may prove beneficial.

### E. LEAD INVESTIGATOR'S RESPONSIBILITIES

After being briefed by the IC, the lead investigator should assume responsibility of the scene. Supervisory officers and other law enforcement personnel at the scene should, from that point on, endeavor to fully cooperate and assist the identified investigative team. The lead investigator should determine the degree to which the foregoing on-scene tasks have been completed and, where deficiencies exist, ensure that these tasks are fully undertaken.

Investigators should ensure that all essential details of the incident have been or are being documented. These include, where applicable,

- the nature of the call to which the officer was responding;
- the time it was received, dispatched, and time of arrival;
- the number of officers present;
- the general circumstances in which subjects were encountered;
- the identity of the subject;
- potential for injury to the public, involved officer(s), and subject(s);
- the time of day of the incident;
- the weather and lighting conditions;
- the full identity and assignment of involved officers;
- the identities of all persons with access to the scene;
- the time of dispatch and arrival of any backup officers;
- whether the involved officers were in uniform or, if in plainclothes, whether they were identifiable as law enforcement officers at the time of the incident; and
- the types of vehicles used by involved officers and subjects, if appropriate.

If force was used by involved officers or the subject is taken into custody, the following information should be documented

- the relative age, size, strength, and physical prowess of the involved officer(s) compared to the subject(s);
- experience and training of the involved officer(s);
- force options available to the involved officer(s);
- degree and length of time of subject resistance;
- means used to control or restrain the subject;
- legal basis for use of force or custody;
- the behaviors and reactions of the subject (e.g., did the subject become calm or continue to struggle and act physically and verbally combative);
- whether emergency medical services was called and, if so, at what point; and
- if the subject was seriously injured or admitted to a medical facility, what were the nature and severity of the injuries and were the injuries consistent with the incident as described by involved officers?

If the subject is arrested or otherwise in law enforcement custody, officers should note where and how the subject was situated (e.g., placed facedown on the ground, in a seated position, in a law enforcement vehicle sitting or lying down) and whether the subject's condition (such as breathing and consciousness) was monitored after arrest. If the subject became unresponsive, agencies should document who was present at the time, and what steps were taken by the involved officer(s).[13]

---

[12] For a detailed discussion of information that may and may not be released at the scene of these and other incidents, see the Policy Center documents on Police-Media Relations available at https://www.theiacp.org/resources/policy-center-resource/police-media-relations.

[13] See the IACP Policy Center documents on Excited Delirium available at https://www.theiacp.org/resources/policy-center-resource/excited-delirium.

In addition, information should be gathered regarding the subject, where appropriate, to include
- information provided by the reporting party;
- involved officer observations of the subject's behavior in the course of the interaction;
- whether others indicated that the subject had been drinking heavily, using drugs, or both;
- whether the subject had been involved with law enforcement on prior occasions;
- subject's proximity to weapons and whether or not the subject was threatening to use them; and
- whether the subject was visibly injured in any way when law enforcement arrived and what, if any injuries were sustained during the interaction with officers.

When interviewing witnesses, investigators should be aware of the fragile nature of perception and memory. This is particularly the case if eyewitnesses have had time to confer with one another about what they saw or believed they saw. Investigators should focus on gathering, verifying, and corroborating eyewitness statements. They should never share their opinions or divulge investigative information in an effort to elicit information or statements from witnesses.

While law enforcement officers are trained to be exacting in both observation and descriptions, they also are not immune to these same problems of perception. In addition, involved officer judgments and perceptions can be influenced by heightened levels of fear or anxiety when operating in dangerous environments as well as the psychological trauma of the actual incident.

With these issues in mind at the scene of an officer-involved shooting, investigative officers should ensure that all pertinent evidence has been or is in the process of being collected. When time permits, investigators may follow up on leads and additional points of contact. For example, all pertinent subject information should be obtained, such as a complete description and any prior criminal records to include parole or probation history. Search warrants for residences, other buildings, and any vehicles involved in the incident should be obtained, and searches conducted where appropriate in a timely manner.

If someone has died, it is particularly important to work closely with the coroner or medical examiner's office, including attending the autopsies. Among issues of importance for officer-involved shooting investigations may include those related to the determination of entrance and exit wounds, estimates of shooters' positions, and the presence of any controlled substances in the decedent's blood.[14]

The lead investigator should brief the agency chief executive as soon as practical once preliminary results of the investigation have been established.[15] Following this, with approval of the chief executive or their designee, a staff memorandum should be prepared that provides the general facts of the incident. This memorandum should be posted or distributed to all personnel as soon as possible following the shooting. By doing so, staff rumors can be kept to a minimum and concerns over unknown circumstances of the event can be resolved before speculation supplants fact.

In addition, in order to counter misleading or false information about the incident that may be conveyed via social or traditional media mechanisms, the PIO should be provided with timely and relevant information about the incident that can be released, ensuring that this information does not compromise the ongoing investigation.

An additional briefing of the prosecutor's office should be conducted in a timely manner following the officer-involved shooting. In some cases, a member of the prosecutor's office will respond to an officer-involved shooting as a matter of established protocol. Nonetheless, the law enforcement agency should make a preliminary statement of facts as soon as possible to the prosecutor's office and work with them closely throughout the investigation. This statement may then be released to the media with the approval of the agency chief executive or other designated personnel.

---

[14] The importance of employing experienced officers who are completely familiar with shooting investigations cannot be overemphasized. For example, research has demonstrated that normal delays in the reaction time of officers in hostile shooting encounters often explain unusual bullet entrance and exit wounds of subjects and others, to include seemingly unexplained and suspicious shots to the subject's or victim's back. The entrance wounds of bullets do not always provide a full explanation of the circumstances surrounding the shooting event. Only highly trained and experienced investigators can decipher the full range of potential evidence involved in a complex shooting investigation.

[15] For a discussion of procedures to be used in the event that criminal or administrative charges are brought against an officer in the course of a shooting or other investigation, see IACP Policy Center documents on Investigation of Allegations of Employee Misconduct available at https://www.theiacp.org/resources/policy-center-resource/employee-misconduct.

## F. ADMINISTRATIVE INVESTIGATION

Law enforcement agencies vary with regard to the unit assigned responsibility for the preliminary investigation of an officer-involved shooting. The options for the preliminary and the overall comprehensive investigations may involve the lead being taken by the agency directly concerned, by a regional law enforcement agency as part of a preexisting protocol or mutual agreement, or by another identified entity, for example the local or special prosecutor's office.

Depending on the seriousness of the incident, the circumstances involved, and the protocols of the specific agency, parallel administrative and criminal investigations of officer-involved shootings may be conducted. The goal of the administrative investigation is to determine whether violations of agency policy, procedures, rules, or training occurred and, if so, whether corrective action should be recommended or modifications to policy, procedures, or training should be considered.[16] However, there are several considerations when conducting these investigations. In the United States, criminal investigators may not be present during administrative questioning and any information gained as a result of administrative interviews must not be shared with criminal investigators. All interviews should be audio- and preferably video-recorded. In addition, investigators should be cognizant of symptoms of post-traumatic stress when conducting interviews with involved officers. These may include time and space distortions, confusion, auditory and visual distortions, and emotional impairment during questioning.

In officer-involved shooting situations, involved officers who discharged their weapons or used deadly force should be placed on mandatory leave with pay or on administrative assignment. This ensures that the agency's investigation into the incident can take place without interference. Placing involved officers on leave or administrative assignment also communicates to the public that the agency is responding to the incident appropriately. However, agencies should be prepared for the investigation to take an extended period of time, especially in cases where the administrative and criminal investigations are not conducted concurrently and should develop policies related to administrative leave with this in mind.

## G. FORCE REVIEW BOARD

Once an investigation is completed, some agencies elect to bring these findings in front of an ad hoc group of individuals for review. This group may comprise command level officers, supervisory personnel not involved in the investigation, and first responders. Some agencies may also choose to include external or public involvement. The scope and intent of these forums is to assess such incidents to determine whether they have any implications for the agency's training function, policies, and procedures. These forums are an effort to bring together all elements of an investigation in a risk management context to improve the agency's response to these critical incidents and to make any corrections in agency practice or procedure that will help avoid identified problems in the future.

## H. TRAINING

In order to encourage a cohesive response to the investigation of officer-involved shootings and other serious incidents, it is important that all officers receive initial and regular training on this topic. Officers should have a comprehensive understanding of agency policy and applicable laws regarding officer-involved shooting investigations. Training should also include an explanation of the potential negative effects on an officer's well-being during and following a shooting incident, including possible emotional, psychological, and physical reactions. Agencies should provide information on and bring awareness to related resources for officers to utilize if they are experiencing these adverse effects.[17] Officers should also be trained on what to expect after an officer-involved shooting, to include the procedures used during the interview process and potential legal restrictions that may exist regarding what information officers are allowed to discuss and with whom.

## III.  ADDITIONAL ITEMS FOR CONSIDERATION

There is no consensus on exactly how the following items should be addressed in law enforcement policy and procedures. However, agencies should consider these items and, in consultation with their legal advisor, determine how each will be addressed in policy prior to an officer-involved shooting occurring.

*Timing of Interviews.* Agencies may choose not to conduct in-depth interviews with officers immediately following their involvement in an officer-involved shooting. Interviews conducted after the involved officer has had the opportunity to regain their composure and after undergoing a thorough medical screening or evaluation, may be more productive. Furthermore, an

---

[16] Ibid.

[17] See the IACP Policy Center documents on Critical Incident Stress Management, Employee Mental Health Services, and Post-Shooting Personnel Support available at https://www.theiacp.org/policycenter.

officer's mental and physical wellness and memory consolidation processes may be dependent upon sufficient sleep, and thus allowing for the option of at least one sleep cycle prior to interviewing an involved officer is sometimes beneficial. However, investigators should be available if involved officers voluntarily choose to participate in an interview immediately following the officer-involved shooting. Additional guidance is available from the IACP Psychological Services Section.[18]

***Allowing Involved Officers to Watch Videos Prior to Writing Reports and/or Being Interviewed.*** In situations where video footage exists of the incident, such as that captured by body-worn, in-car, and/or surveillance cameras, agencies should consider whether officers should be allowed to view the videos prior to writing their reports and/or being interviewed.

An individual's ability to accurately process and recall details following an officer-involved shooting can be severely impacted by the stressful and traumatic nature of the incident. The information captured in the video may enhance the officer's recollection of the event.

However, memory is fallible and easily impressionable. An officer's recollection of the event may forever be changed by watching the video. In this instance, the officer's memories of the shooting may no longer be based solely on what the officer viewed, heard, or felt, but may be colored by what was captured by the video. In addition, an officer may, either consciously or subconsciously, change their story to more accurately reflect what is shown in the video footage, potentially undermining the legitimacy of the officer's statements.[19]

It is also worth noting that involved officers sometimes experience intense negative emotions resulting from viewing footage of an incident, and, therefore, agencies may wish to consider offering a companion officer, peer support, professional referrals, or other support resources to officers who may experience such a reaction.

No matter which option an agency elects to adopt in its policy, this information should be provided to the public to promote transparency of these investigations and enhance community trust.

***Release of Involved Officers' Names to the Public.*** In response to the increased media attention following an officer-involved shooting, agencies should consider in advance and include in policy when and how the names of the involved officer(s) should be released to the public. When making this decision, agencies should consider any threats that have been made and work to promote the safety of the officer and the officer's family prior to release of the name. In all situations, it is strongly suggested that the name not be released until after the officer has made their statement and the officer has been provided with an opportunity to notify the officer's family and others who may be directly affected. Once the decision has been made, the officer should be notified prior to the release of the officer's name.

Some agencies elect to release the names of involved officer(s) within a relatively short period of time, such as 24–48 hours after the incident, with the goal of increasing transparency to the public. However, other agencies choose to wait until the full investigation has been completed before releasing names. Either way, the agency should keep the public informed of its policy on the matter.

***Releasing Video to the Public.*** If video footage exists of the incident, agency policy and procedures should address when and if the video is released to the public. Agencies should consult their legal advisor when developing policy in this area to ensure that any decisions are consistent with applicable law and that release of the video will not interfere with any legal proceedings. In addition, the agency should consider community dynamics, to include the public's response to the shooting. However, in all cases, the video should not be released until the involved officer(s) have been notified of the intent to release and have been provided with an opportunity to view it.

---

[18] For more information, please see the *Officer-Involved Shooting Guidelines* found at https://www.theiacp.org/sites/default/files/all/p-r/Psych-OfficerInvolvedShooting.pdf.

[19] See Rebecca H. Grady, Brendon J. Butler, and Elizabeth F. Loftus, "What Should Happen After an Officer-Involved Shooting? Memory Concerns in Police Reporting Procedures," *Journal of Applied Research in Memory and Cognition* 5 (2016): 246–251.

> Every effort has been made to ensure that this document incorporates the most current information and contemporary professional judgment on this issue. Readers outside of the United States should note that, while this document promotes procedures reflective of a democratic society, its legal basis follows United States Supreme Court rulings and other federal laws and statutes.
>
> Law enforcement administrators should be cautioned that each law enforcement agency operates in a unique environment of court rulings, state laws, local ordinances, regulations, judicial and administrative decisions and collective bargaining agreements that must be considered, and should therefore consult its legal advisor before implementing any policy.

© Copyright 2019. Departments are encouraged to use this policy to establish one customized to their agency and jurisdiction. However, copyright is held by the International Association of Chiefs of Police, Alexandria, Virginia U.S.A. All rights reserved under both international and Pan-American copyright conventions. Further dissemination of this material is prohibited without prior written consent of the copyright holder.

# IACP
Law Enforcement Policy Center

**EXHIBIT 120**

## Model Policy

Updated: April 2019

# Investigation of Officer-Involved Shootings and Other Serious Incidents

## I. PURPOSE

The purpose of this policy is to provide guidelines for the investigation of officer-involved shootings and other serious incidents, as defined herein.

## II. POLICY

It is the policy of this agency that officer-involved shootings and other serious incidents be investigated to determine whether the actions of involved officers conform to applicable law and agency rules, policies, procedures, and training.[1]

## III. DEFINITIONS

*Incident Commander (IC):* The individual responsible for all incident activities, including the development of strategies and tactics and the ordering and release of resources. The IC has overall authority and responsibility for conducting incident operations and is responsible for the management of all operations at the incident site.

*Involved Officer(s):* Unless otherwise indicated, those sworn officers in on-duty or off-duty status who are involved in a serious incident or are direct witnesses to such an event.

*Qualified Mental Health Professional (QMHP):* An individual who is licensed as a mental health professional and has an in-depth understanding of trauma-related disorders and the law enforcement culture.

*Serious Incident:* For the purposes of this document, a serious incident includes, but is not limited to, the following:

- Any use of deadly force, regardless of whether the employee's actions resulted in injury or death, except as provided below
- Any death or serious injury resulting from, or that occurs during, the course of an agency operation
- Pursuits resulting in serious injury or death
- Employee-involved collisions resulting in death or serious injury
- Matters of an unusually serious nature involving agency employees, to include large-scale event response

*Serious Injury:* Injury that involves a substantial risk of death, protracted and obvious disfigurement, or extended loss or impairment of the function of a body part or organ.

## IV. PROCEDURES

The following procedures are tailored to address an officer-involved shooting. However, the general guidelines and principles can be used when investigating any serious incident.

A. Officers involved in an officer-involved shooting shall, to the degree reasonably possible, take initial steps to ensure that any threat from the subject has been eliminated, protect the safety of themselves and others, render first aid where necessary, and preserve evidence.

B. Incident Command (IC) Responsibilities
   The IC shall be responsible for ensuring that standard incident response protocols have been implemented.[2] In addition, the IC shall ensure that the following tasks are addressed, if not previously completed.
   1. Any remaining threats are identified and necessary action is taken.
   2. The physical condition of the involved officer(s), subject(s), and third parties is determined, emergency first aid is provided, if

---

[1] The investigation of officer-involved shootings and other serious incidents shall normally be conducted in two separate parts and by separate authorities—a criminal investigation and an administrative investigation. This discussion focuses on the administrative investigation.

[2] See the IACP Policy Center document on Incident Command available at https://www.theiacp.org/resources/policy-center-resource/incident-command.

necessary, and emergency medical assistance is summoned.[3]

3. A brief public safety statement is taken, preferably by a supervisor, individually from the involved officer(s), covering only information necessary to focus initial law enforcement response and direct the preliminary investigation into the officer-involved shooting. Information obtained should include, where appropriate,
    a. type of force and weapons used;
    b. direction and approximate number of shots fired by involved officer(s) and subjects;
    c. location of injured persons;
    d. description of at-large subjects and their direction of travel, time elapsed since the subjects were last seen, and any weapons;
    e. description and location of any known victims or witnesses;
    f. description and location of any known evidence; and
    g. any other information necessary to ensure officer and public safety and to assist in the apprehension of at-large subjects.
4. All necessary agency notifications are made, such as those to the
    a. chief executive;
    b. patrol commander;
    c. lead investigator/officer-involved shooting investigation team;
    d. office of professional standards personnel;[4]
    e. evidence technicians;
    f. public information officer;
    g. coroner or medical examiner;
    h. legal advisor and/or prosecutor; and
    i. agency chaplain, labor representative, mental health professional, and peer support program coordinator.
5. An adequate inner perimeter is established.
6. An outer perimeter is established to prevent anyone from entering except those who have a specific function to perform.
7. A media staging area is identified beyond the outer perimeter and that it is appropriately staffed.
8. A command post is established when it appears that an extended on-site investigation will be necessary.
9. An officer is appointed to serve as a "recorder," with responsibility for making a chronological record of activities at the scene, to include persons present and those who have been at the scene and actions taken by law enforcement or other official personnel.
10. Photographs are taken as soon as possible of the involved officer(s) as they appear at the scene, to include any injuries sustained.
11. Involved officer(s) are directed not to discuss any aspects of the shooting among themselves or with others, with the exception of their attorney, a qualified mental health professional, or authorized investigative personnel.
12. Involved officer(s) are separated and removed from the immediate scene and assigned a companion officer to ensure the physical needs of the involved officer(s) are met and that no statements regarding the incident are made.
13. All potential witnesses are identified and separated and asked to remain on hand to provide a statement. If witnesses wish to leave and there is no legal obligation to detain them, officers should obtain their contact information for future communications.
14. If equipment is available, video recordings are made of the entire incident scene and those present, including witnesses and bystanders.
15. Determinations are made whether video recordings were made by in-car cameras; body-worn cameras; electronic control weapons; and agency, business or private surveillance cameras and that they have been secured as evidence as soon as reasonably possible.
16. Available information is collected about the subject and law enforcement actions from witnesses at the scene.
17. Any clothing or other personal items that may have been discarded or removed from subjects or involved officer(s) by medical personnel are located and secured as evidence.
18. The involved officer(s) weapon(s) is located and secured—or secured in place—and expended ammunition casings are marked.
19. The firearms and other weapons of involved officer(s) are physically checked for evidence of a discharge.[5] Weapons that were fired shall

---

[3] For the purposes of this document, the term subject is used to describe any individual who has contact with law enforcement officers and may include criminal suspects.

[4] Note that the term "office of professional standards" is used in this document to indicate the designated employee(s) or unit, which may be external to the agency, with primary responsibility for addressing internal matters within the agency. This may also be known as internal affairs or professional responsibility.

[5] See the IACP Policy Center documents on Firearm Recovery available at https://www.theiacp.org/resources/policy-center-resource/firearm-recovery.

be secured as evidence, and primary service firearms shall be replaced by a similar firearm as soon as reasonably possible.
20. Where applicable, weapons, ammunition, and expended cartridges used by the subject are located and secured in place.
21. The position(s) of the involved officer(s) and the subject at the time of the shooting are determined and marked.
22. All expended bullets are accounted for. This may include examining walls or other structures and determining if there are any additional victims who may require medical treatment.
23. If an involved officer is transported to the hospital, someone, such as a companion officer or peer support personnel, accompanies or meets them there.[6]
24. If the involved officer is incapable of calling, another agency member notifies the involved officer's immediate family as soon as possible and in person, when reasonably possible. The notification should provide the family members with basic information on the status of the involved officer and when and where they will be able to see the officer.[7]

C. Lead Investigator Responsibilities
Whenever possible, the lead investigator shall do the following:
1. Receive a briefing from the IC.
2. Confirm that the public safety statement has been collected.
3. Confirm that all items of potential evidentiary value are identified and properly collected.
4. Obtain audio- and/or video-recorded preliminary statements from subjects and witnesses.
5. Canvas the immediate area for potential witnesses who have not come forth and obtain information or statements as available.
6. Obtain search warrants for any vehicles, containers, homes, or vehicles as may be necessary.
7. Where possible, audio- or video-record interviews with emergency medical personnel, fire department personnel, and first responding officers regarding conditions at the incident scene when they arrived to include any action that may have been taken to move or otherwise alter persons or objects of potential evidentiary value.
8. Collect information regarding the subject, where appropriate, to include
   a. information provided by the reporting party;
   b. involved officer observations of the subject's behavior in the course of the interaction;
   c. whether others indicated that the subject had been consuming alcohol, using drugs, or both;
   d. whether the subject had been involved with law enforcement on prior occasions;
   e. the subject's proximity to weapons and whether or not the subject was threatening to use them; and
   f. whether the subject was visibly injured in any way when law enforcement arrived and what, if any injuries were sustained during the interaction with officers.
9. Gather information regarding the response to the call, to include, where applicable,
   a. the number of involved officer(s) present;
   b. the relative age, size, strength, and physical ability of the involved officer(s) compared to the subject(s) involved;
   c. experience and training of the involved officer(s);
   d. force options available to the involved officer(s);
   e. basis for subject contact, to include seriousness of offense, if any;
   f. potential for injury to the public, involved officer(s), or subject(s);
   g. risk of escape of the subject;
   h. degree and length of time of subject resistance;
   i. means used to control or restrain subject;
   j. legal basis for use of force or custody;
   k. the behaviors and reactions of the subject once detained or in custody;
   l. whether emergency medical services was called and, if so, at what point;
   m. If the subject was seriously injured or admitted to a medical facility:
      (1) What were the nature and severity of the injuries?
      (2) Were the injuries consistent with the incident as described by the involved officer(s)?

---

[6] See the IACP Policy Center document on Line-of-Duty Deaths and Serious Injuries available at https://www.theiacp.org/resources/policy-center-resource/line-of-duty-deaths-and-serious-injury.
[7] See the IACP Policy Center documents on Death Notification and Line-of-Duty Deaths available at https://www.theiacp.org/policycenter.

10. In the event of death, consult with the coroner or medical examiner at the scene and at, or subsequent to, the autopsy.
11. Prepare a summary report regarding the nature of the officer-involved shooting and include the involved officers' use-of-force reports, where applicable, for submission to the chief executive officer.

D. Administrative Investigation

The goal of the administrative investigation is to determine whether violations of agency policy, procedures, rules, or training occurred and, if so, whether disciplinary action should be recommended or modifications to policy, procedures, or training considered.[8]

1. Criminal investigators shall not be present during administrative questioning, and any information gained as a result of administrative interviews cannot be shared with criminal investigators.
2. All interviews should be audio- and preferably video-recorded.
3. Investigators shall be trained in and take into account symptoms of post-traumatic stress during involved officer interviews, such as time and space distortions, confusion, and hearing and visual distortions associated with recalling details of the incident, as well as emotional impairment during questioning.
4. As appropriate, involved officers who discharged their weapons or used deadly force should be placed on mandatory leave with pay or on administrative assignment.

E. Training

All officers should receive initial and regular training regarding

1. agency policy and applicable laws regarding the investigation of officer-involved shootings;
2. potential negative emotional, psychological, and physical reactions following officer-involved shootings and related available resources; and
3. what to expect following an officer-involved shooting.

---

[8] See the IACP Policy Center Document on Investigation of Allegations of Employee Misconduct available at https://www.theiacp.org/resources/policy-center-resource/employee-misconduct.

Every effort has been made to ensure that this document incorporates the most current information and contemporary professional judgment on this issue. Readers outside of the United States should note that, while this document promotes procedures reflective of a democratic society, its legal basis follows United States Supreme Court rulings and other federal laws and statutes.

Law enforcement administrators should be cautioned that each law enforcement agency operates in a unique environment of court rulings, state laws, local ordinances, regulations, judicial and administrative decisions and collective bargaining agreements that must be considered, and should therefore consult its legal advisor before implementing any policy.

This document is not intended to be a national standard.

© Copyright 2019. Departments are encouraged to use this policy to establish one customized to their agency and jurisdiction. However, copyright is held by the International Association of Chiefs of Police, Alexandria, Virginia U.S.A. All rights reserved under both international and Pan-American copyright conventions. Further dissemination of this material is prohibited without prior written consent of the copyright holder.