UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONNA LOU, ET AL. | * | CIVIL ACTION |
|     Plaintiffs | * | |
| | * | NO: 21-80 |
| VERSUS | * | |
| | * | SECTION: D-2 |
| | * | |
| SHERIFF JOSEPH LOPINTO, III ET AL. | * | |
|     Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*\*

## **OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE*, REC. DOC. 151**

**MAY IT PLEASE THE COURT:**

Defendants oppose Plaintiffs' Motion in *Limine*, R. Doc. 151, upon submitting the following.

## **GENERAL STATEMENT**

This case involves the death of an individual (E.P.) who **violently attacked his father and the responding Deputy** that was called to the scene in the parking lot of the Westgate Shopping Center in Metairie, La. on January 19, 2020. The call for service was made by a horrified onlooker. R. Doc. 1.

The Defendant J.P.S.O. Deputies were **called to the scene** based upon a report from a business manager that E.P. was **violently out of control and severely beating his own father**, Plaintiff, in the parking lot. *Id*.

1

The Defendant J.P.S.O. Deputies arrived to find a horrifying scene. E.P. had severely injured his father. **E.P. had bitten a piece of his fathers face off**, leaving open and obvious trauma.

The Defendant J.P.S.O. Deputies did as best they could to manage E.P. While trying to gain control over E.P., **E.P. bit Deputy Pitfield, causing injury**.

The entire incident was caught on surveillance cameras, the video of which is attached as Exhibit 1 to Defendants' Motion for Partial Summary Judgment (R. Doc. 154). *See* R. Doc. 154-3.

The video speaks for itself and clearly shows that the scene was never secure prior to E.P.'s demise. *Id*.

The reason that the Defendants bring this to the Court's attention is because Plaintiffs have since the inception of this case, beginning with their initial meandering, hyperbolic, shotgun pleading (R. Doc. 1) and in every single pleading since, stated to this Court that E.P. was some sort of hapless, helpless, docile child that the Defendants attacked for no reason. The video belies this assertion.

In their disclosures, discovery responses, deposition inquiries, and in the presentation of their theory of the case throughout these proceedings, Plaintiffs have maintained this fallacy.

Plaintiffs have indicated that they intend to call witness and offer exhibits to perpetuate this falsehood. Indeed, Plaintiffs intend to call character witnesses and

witnesses to testify that E.P. had visited the Laser Tag venue before, without incident.

In the instant motion, Plaintiffs again seek to preclude the Defendants from offering evidence to contradict Plaintiffs' theory.

Additionally, as elucidated below, Plaintiffs' Motion is largely premature, overly general, speculative, vague, and otherwise ill-advised.

Plaintiffs' Motion should be DENIED.

## PLAINTIFFS' MOTION

Plaintiffs pray that this Court preclude the Defendants from offering the following evidence at trial:

1. Evidence of E.P.'s behaviorial and medical history that Defendants were unaware of at the time, because it could not have influenced Defendants' decision-making.

2. Irrelevant JPSO training documents about serial killers, gossip, tactical driving, etc.

3. Defendants' 30+ witnesses not listed on Defendants' initial disclosures.

4. Any testimony that JPSO provided accommodations for E.P.'s disability, as JPSO has conceded no accommodations were provided.

5. Any testimony about a "Deescalation with Autism" training module, as there is no indication that such a module exists.

6. Any statement to the effect that Plaintiffs are "seeking to profit" from the death of their child.

7. Any argument that Plaintiffs or their lawyers are "outsiders" or "out-of-

town" people.

8. Any evidence contrary to 30(b)(6) testimony without prior court permission.

9. Any lay opinion testimony without prior notice to the Court.

10. Any argument of a qualified immunity or "good faith" defense on behalf of JPSO.

11. Any evidence of Defendants' commendations or awards.

12. Any demonstrative exhibits that have not been provided in advance.

R. Doc. 151-1, p. 1.

The foregoing will be addressed in the order that they appear.

**I.   EVIDENCE OF E.P.'S BEHAVIORAL AND MEDICAL HISTORY THAT DEFENDANTS WERE UNAWARE OF AT THE TIME, BECAUSE IT COULD NOT HAVE INFLUENCED DEFENDANTS' DECISION-MAKING.**

Plaintiffs' motion is specious. Plaintiffs themselves put this evidence squarely at issue from the inception of, and all throughout, this case.

First, the evidence is relevant and admissible.

Fed. R. Evid. 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." "Implicit in the above definition are two distinct requirements: (1) the evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action."

*Nale v. Finley*, 505 F.Supp.3d 635, 638 (W.D. La. 2020); citing *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981). "Whether a proposition is of consequence to the determination of the action is a question that is governed by the substantive law. Simply stated, the proposition to be proved must be part of the hypothesis governing the case a matter that is in issue, or probative of a matter that is in issue, in the litigation." *Id*.

Here, Plaintiffs have alleged that the Defendants were negligent under state law. R. Doc. 1, ¶¶ 457-481. Under Louisiana law, a Sheriff's Deputy's conduct, for purposes of determining negligence, is analyzed pursuant to the duty-risk analysis. *Hardy v. Bowie*, 744 So.2d 606 (La. 1999). Thus, Plaintiffs have placed **squarely at issue** the doctrine of comparative fault, which governs negligence claims under Louisiana law. La. C.C. Art. 2323. Article 2323 provides thusly:

> Art. 2323. Comparative fault
>
> A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined, regardless of whether the person is a party to the action or a nonparty, and regardless of the person's insolvency, ability to pay, immunity by statute, including but not limited to the provisions of R.S. 23:1032, or that the other person's identity is not known or reasonably ascertainable. If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.

> B. The provisions of Paragraph A shall apply to any claim for recovery of damages for injury, death, or loss asserted under any law or legal doctrine or theory of liability, regardless of the basis of liability.

Simply, there is no question that the evidence of E.P.'s numerous violent outbursts in public settings, often while one or both of his parents were present, "is of consequence in determining" the [issue of comparative fault]" on behalf of E.P., his parents, and others not party to this suit. Fed. R. Evid. 401; La. C.C. Art. 2323.

Further, Plaintiffs cannot "have their cake and eat it too." Plaintiffs intend to offer evidence that E.P. had been to the Laser Tag previously without incident, the only possible reason for such evidence being to suggest that the outburst in question was somehow out of character for E.P. and, inferentially, somehow caused by the Defendants. Clearly, then, the Defendants are entitled to offer evidence that wholly belies such a rank fallacy.

Second, the probative value of the evidence outweighs any potential prejudice. Fed. R. Evid. 403 states that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." An "[u]nfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Nale*, 505 F.Supp.3d 635, 638-639; citing FED R. EVID. 403, 1972 Advisory Committee

Note.

Plaintiffs' assert in their motion that evidence of E.P.'s prior history of violent acts should be excluded because they allege it will unfairly prejudice the jury.

Again, this simply can not be fairly stated. Squarely at issue in this case, which Plaintiffs placed at issue, is the issue of comparative fault. Squarely at issue, placed at issue by the Plaintiffs, is E.P.'s history of violent outbursts.

The immutable fact is that the evidence that Plaintiffs seek to exclude is wholly relevant, vital to the determination of the issues, and its probative value far outweighs any potential prejudice.

Plaintiffs' motion should be DENIED.

## II. IRRELEVANT JPSO TRAINING DOCUMENTS ABOUT SERIAL KILLERS, GOSSIP, TACTICAL DRIVING, ETC.

This issue is not properly before the Court. Plaintiffs' motion in this regard is entirely too general to require either a response from the Defendants or consideration by this Court.

Plaintiffs, again, submit a shotgun laundry list of the things they want excluded without a scintilla of argument, citation to legal authority, or scholarly analysis. Defendants are not advised what specific policies Plaintiffs seek to exclude, and are left guessing. Plaintiffs' motion is too vague to require a

meaningful response form Defendants or from the Court.

While some of the items identified are obvious (e.g., "Serial Killers" and "Tactical Police Driving"), Plaintiffs offer no legal reason why the vast majority of the identified policies are irrelevant or inadmissible.

Further, it appears that Plaintiffs' motion is disingenuous, as the Court can plainly see that some of the identified policies have to do with use of force policy and practices, deescalation policies and practices, bias training, etc., which, again, Plaintiffs have placed squarely at issue in this case.

Plaintiffs' Motion should be DENIED.

## III.  DEFENDANTS' 30+ WITNESSES NOT LISTED ON DEFENDANTS' INITIAL DISCLOSURES.

Plaintiffs' Motion is disingenuous.

The Fifth Circuit has provided a four-factor standard for courts to consider when deciding whether a failure to comply with the Rule 26 disclosure requirement is "substantially justified or is harmless." S*ee Sierra Club, Lone Star Chapter v. Cedar Point Oil Co.*, 73 F.3d 546, 572 (5th Cir.1996) (listing the four factors that the Fifth Circuit will examine to determine if the district court abused its discretion in excluding an expert's testimony as a sanction against a party for violating the disclosure requirements of Rule 26(a)). To avoid abusing their discretion, courts must: (1) examine the importance of the witness's testimony; (2) consider the

prejudice, if any, to the opposing party of allowing the witness to testify; (3) decide whether there is a possibility of curing such prejudice by granting a continuance; and (4) consider the explanation, if any, for the party's failure to comply with the discovery requirements. *Id*. at 572.

Here, there is no credible argument that the Plaintiffs would be prejudiced by the mere technicality that the Defendants may not have expressly included in their Rule 26 disclosures every witness listed in their timely filed witness list. Plaintiffs knew of the subject witnesses and exhibits prior to filing suit. They made the same part of their suit. They have questioned Defendants regarding the warrants that produced the evidence they seek to exclude and have filed a motion for partial summary judgment regarding said warrants.

These witnesses are all in, and were gleaned from the Police Incident Report of the subject incident, which Plaintiffs had prior to filing suit, and which was produced to Plaintiffs almost immediately thereafter.

Indeed, Plaintiffs filed motions to quash the warrants, which were issued to the St. Charles Parish public Schools and the hospitals that treated E.P. in ***state court*** during the relevant investigation into E.P.'s death and produced the subject evidence, prior to filing suit.

Plaintiffs included in their lawsuit claims related to the identification of these witnesses, and have filed for summary judgment on these claims.

9

These witnesses were identified in discovery and Plaintiffs have examined the JPSO Investigators at length regarding their investigation of E.P.'s death, which included these witnesses.

The Defendants listed these witnesses in their timely filed witness and exhibit lists.

The Plaintiffs have known of the Defendants' intention to possibly call these witnesses since before they filed suit.

There was no surprise here.

Plaintiffs are not prejudiced by the mere technicality that the witnesses whom Plaintiffs' have been aware since prior to filing suit were not individually and expressly listed in Defendants' Rule 26 disclosures.

Plaintiffs' motion is disingenuous and should be DENIED.

IV. **ANY TESTIMONY THAT JPSO PROVIDED ACCOMMODATIONS FOR E.P.'S DISABILITY, AS JPSO HAS CONCEDED NO ACCOMMODATIONS WERE PROVIDED.**

Here, again, Plaintiffs' motion is disingenuous. While the Defendants do not deny what it is the Sheriff testified to, Plaintiffs take the Sheriff's testimony out of context and misstate the same.

The fact is, the Plaintiffs themselves have heretofore failed or refused to state what accommodations were allegedly due to E.P. as he violently attacked his father and the responding Deputies vis-a-vis the ADA and RA. The law does not so

inform the Defendants, either.

Notwithstanding the ADA and RA, Defendants submit, and it is a fact, that E.P. was treated differently and was "accommodated." For instance, the Defendants allowed E.P.'s parents to be next to E.P. on scene, even assisting them with trying to control E.P. This is not a usual occurrence in law enforcement when handling dangerous scenes such as the one at issue here. Likewise, the Defendants were judicious in their use of force. No force options were used such as pepper spray, a TASER, an expandable baton, etc. These are facts, and these facts are evidence.

Plaintiffs' Motion should be DENIED.

**V – VII.   DEFENDANTS DO NOT OBJECT TO ITEMS 5, 6, 7 (ABOVE)**

Defendants do not object to the exclusion of Items 5, 6, and 7, above, namely: 5. Any testimony about a "Deescalation with Autism" training module, as there is no indication that such a module exists. 6. Any statement to the effect that Plaintiffs are "seeking to profit" from the death of their child. 7. Any argument that Plaintiffs or their lawyers are "outsiders" or "out-of-town" people.

**VIII. ANY EVIDENCE CONTRARY TO 30(B)(6) TESTIMONY WITHOUT PRIOR COURT PERMISSION.**

Defendants suggest, with respect to the district court in *Imani*, that this request is premature. Defendants suggest that to the extent that this would or could be an issue, it would be an issue more properly dealt with by means of cross-

1

examination or the presentation of impeachment evidence.

Unlike in *Imani*, Plaintiffs have not identified any specific 30(B)(6) testimony that they believe is subject to contravention. Nor have they stated any reason why they believe the Defendants intend to contravene any prior testimony. The Court in *Imani* had a clear picture of the precise evidence that the Defendants intended to refute (reduced to a chart that was previously in evidence) and clear evidence that the Defendants intended to refute it (an email from defense counsel to Plaintiffs' counsel indicating that Defendants "intend to controvert the 30(b)(6) testimony with 'officers on scene that I haven't interviewed yet.'"). *Imani v. Baton Rouge*, 17-cv-00439-JWD-EWD, R. Doc. 348-1 at *15-16 (M.D. La. Jul. 25, 2022). Such is obviously not the case here.

Any concerns Plaintiffs have can be addressed through traditional means of cross-examination and the presentation of impeachment evidence.

Plaintiffs' motion should be DENIED.

### IV. ANY LAY OPINION TESTIMONY WITHOUT PRIOR NOTICE TO THE COURT.

Again, Defendants are left confused. Plaintiffs do not cite to any legal authority, and no legal authority exists for the relief requested.

This is an issue best addressed by traditional means of contemporary objections, cross-examination, and the presentation of contrary evidence. Indeed,

Plaintiffs also misstate the ruling in *Imani v. Baton Rouge* which held the same. *Imani v. Baton Rouge*, 17-cv-00439-JWD-EWD, R. Doc. 376 at *2 (M.D. La. Dec. 20, 2022).

In *Imani*, the district court denied in part Plaintiffs' Motion seeking the same relief Plaintiffs seek here, but instructed the parties "that before they proceed with any lay opinion testimony, they notify the Court and counsel out of the presence of the jury so that the Court can hear argument and possibly foundational testimony to assure that the testimony comports with Rule 701." *Id*.

Further, unlike in *Imani*, Plaintiffs have not specifically identified what lay opinion they anticipate. Id., R. Doc. 348-1 at *12-14 (M.D. La. Jul. 25, 2022). Again, Plaintiffs' request is far too speculative and general for either the Defendants or the Court to meaningfully respond.

Plaintiff's Motion should be denied.

X.  **ANY ARGUMENT OF A QUALIFIED IMMUNITY OR "GOOD FAITH" DEFENSE ON BEHALF OF JPSO.**

The Defendants are again left confused.

There is no such legal entity as the JPSO.

To the extent that Plaintiffs seek to preclude the Sheriff from asserting a qualified immunity defense in his official capacity, the well established law is clear.

Likewise, the Pattern Jury charges are clear.

This is not an issue, let alone an issue properly raised in a Motion in Limine.

Plaintiffs' Motion should be DENIED.

## XI. ANY EVIDENCE OF DEFENDANTS' COMMENDATIONS OR AWARDS.

Defendants submit that this issue is simply premature. This is an issue best addressed at trial.

Indeed, Plaintiffs have indicated that they may seek to introduce alleged bad character evidence against some of the Defendants.

Plaintiffs' Motion should be DENIED.

## XI. ANY DEMONSTRATIVE EXHIBITS THAT HAVE NOT BEEN PROVIDED IN ADVANCE.

Again, this request is admittedly, on its face, premature.

Plaintiffs' Motion should be DENIED.

## XI. CONCLUSION

For the foregoing reasons, Plaintiffs' motion should be DENIED.

                      Respectfully submitted,

                      **/s/ James B. Mullaly**

                      _____
                      **FRANZ L. ZIBILICH, LSB# 14912**
                      **JAMES B. MULLALY, LSB#28296**
                      **MARTINY & ASSOCIATES, LLC**
                      131 Airline Highway

Suite 201
Metairie, Louisiana 70001
(504) 834-7676
(504) 834-5409 (fax)
e-mail: danny@martinylaw.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing motion has been served upon all parties via CM/ECF (PACER), and or U.S. Mail, properly addressed and postage prepaid, this 24th day of April 2023.

/s/ James B. Mullaly
_____
**JAMES B. MULLALY**

1