UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DONNA LOU and DAREN PARSA, on their own behalf and on behalf of their deceased minor child, E.P.** | * * * | CIVIL ACTION NO.: 2:21-cv-00080 |
| | * | SECTION "D" |
| **versus** | * * | DIVISION (2) |
| **SHERIFF JOSEPH P. LOPINTO, III, et al.** | * | JUDGE WENDY B. VITTER |
| | | MAGISTRATE JUDGE DONNA P. CURRAULT |

### DEFENDANTS VICTORY REAL ESTATE INVESTMENTS LA, LLC AND WESTGATE INVESTORS NO, LLC d/b/a WESTGATE SHOPPING CENTER'S OPPOSITION TO PLAINTIFF'S MOTION *IN LIMINE*

**MAY IT PLEASE THE COURT:**

Defendants Victory Real Estate Investments LA, LLC and Westgate Investors NO, LLC d/b/a Westgate Shopping Center (collectively, "Westgate Defendants") respectfully oppose Plaintiffs' *Motion in Limine*.[1]

Evidence of E.P.'s past behavioral and medical history is demonstrative of the level of threat faced by the Jefferson Parish Sheriff's Office (JPSO) deputies during the incident at issue. Furthermore, E.P.'s past behavior and medical history is indicative of the unreasonable risks taken by Plaintiffs in exposing him without greater precautions to the conditions that gave rise to the incident at issue. Plaintiffs' contributive negligence depends on E.P.'s past behavioral and medical history. Therefore, this evidence is relevant and illustrative of key components of this case and should not be excluded.

---

[1] Ct. R. Doc. 151, ¶ 1.

## FACTUAL BACKGROUND

On January 14, 2021, Plaintiffs Donna Lou and Daren Parsa ("Plaintiffs") filed the *Complaint* on their behalf and on behalf of their minor son, E.P.[2] Plaintiffs allege that their 16-year-old child, E.P., who was severely autistic, died while in the custody and care of Jefferson Parish Sheriff's Office (JPSO) deputies while in the parking lot of the Westgate Shopping Center.[3] E.P. was allegedly "held down in a prone position, on his stomach, handcuffed, shackled, arms and legs held down, head, shoulder and neck encircled by the arm of a deputy, with JPSO deputies applying their own body weight as a restraint, while he was suffering from an acute sensory episode…".[4] Plaintiffs allege that JPSO deputies "persisted in dangerously and forcefully restraining E.P. without appropriately monitoring his condition, until they killed him."[5]

According to Plaintiffs, Westgate Defendants "hired, authorized and/or provided security officers for its tenants, customers and visitors."[6] JPSO Deputy Chad Pitfield ("Defendant Pitfield") was a member of the security team.[7] Defendant Pitfield was allegedly a JPSO Reserve Deputy who was assigned to Westgate Defendants' property for JPSO and who was working "off-duty"/ "public assignment" on Westgate Defendants' property at the time of the incident.[8] When Defendant Pitfield arrived on the scene of the conflict between E.P and his father, Plaintiff Daren Parsa, Defendant Pitfield was "acting as an agent, servant, and borrowed employee of [Westgate Defendants], in the course and scope of his employment," according to Plaintiffs.[9]

---

[2] *Complaint*, Doc. 1.
[3] Doc. 1, ¶¶ 1-2.
[4] Doc. 1, ¶ 2.
[5] Doc. 1, ¶ 3.
[6] Doc. 1, ¶ 43.
[7] Doc. 1, ¶ 44.
[8] Doc. 1, ¶ 46.
[9] Doc. 1, ¶¶ 48-63.

Plaintiffs allege that Westgate Defendants are directly liable for their own negligence, and are liable on grounds of apparent and implied agency and vicarious liability for the actions of their "special detail" security guard.[10] In the "Causes of Action" section of their *Complaint*, Plaintiffs bring one count against Westgate Defendants: "Violation of Louisiana Constitution and State Law."[11] The only allegation involving Westgate Defendants contained in this count is that Westgate Defendants "[are] liable for the actions and omissions of Defendant Pitfield, as stated herein, in his capacity as working a 'special detail' on 'public assignment' on the premises of the Westgate Shopping Center, and acting in the course and scope of his employment or agency, at all relevant times herein."[12]

## DISCUSSION

**I.   Evidence of E.P's past behavioral and medical history are necessary for an understanding of his physical capabilities.**

In their *motion in limine*, Plaintiffs contend that all evidence of E.P.'s past behavioral and medical history should be excluded "because they do not reflect information available to the officers at the time, and so are irrelevant to the legal analysis."[13] This includes, for example, medical records from prior to the date of death, photographs of a physical incident involving E.P. in September 2017, records and emails reflecting past outbursts by E.P., and testimony describing prior outbursts by E.P.[14] A pivotal question in this matter is whether the level of force implemented by Defendant Pitfield was commensurate with the "risks and dangers faced by" Defendant Pitfield. *See Kyle v. City of New Orleans*, 353 So.2d 969 (La. 1977). The evidence which Plaintiffs seek to

---

[10] Doc. 1, ¶ 27.
[11] SMF, ¶ 4; Doc. 1, ¶ 477.
[12] SMF, ¶ 4; Doc. 1, ¶ 477.
[13] R. Doc. 151-1, p. 4.
[14] R. Doc. 151-1, pp. 3-4.

exclude illustrates E.P.'s physical capabilities, thus is necessary to help a jury understand the risks and dangers faced by Defendant Pitfield when physically engaging with E.P.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The "basic standard of relevance … is a liberal one." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993). "Deciding whether a fact if 'of consequence in determining the action' generally requires considering the substantive issues the case presents." *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019) (quoting Fed. R. Evid. 401).

To prove negligence under La. C.C. art. 2315, a plaintiff must establish: (1) the conduct in question was the cause-in-fact of the resulting harm; (2) the defendant owed a duty of care to the plaintiff; (3) the requisite duty was breached by the defendant; (4) the risk of harm was within the scope of protection afforded by the duty breached; and (5) actual damages.[15] *Faucheaux v. Terrebonne Consolidated Government*, 615 So.2d 289, 292 (La. 1993). All five elements must be met for a plaintiff to recover. *Mathieu v. Imperial Toy Corp.*, 94-0952 (La. 11/30/94), 646 So.2d 318, 322. The third element, breach of duty, is grounded in the reasonableness of police officers' actions under the particular circumstances of a case. *Mathieu*, 646 So.2d at 323. This is determined through consideration of the factors discussed in *Kyle*. *Id.* at 322.

In *Kyle*, the Louisiana Supreme Court provided the following seven factors to determine whether officers act reasonably under the circumstances: (1) the known character of the arrestee; (2) the risks and dangers faced by the officers; (3) the nature of the offense involved; (4) the chance of the arrestee's escape if the particular means are not employed; (5) the existence of alternative

---

[15] As a private actor, Westgate Defendants are not subject to liability under the United States or Louisiana Constitutions. *See United States v. Bazan*, 807 F.2d 1200, 1203 (5th Cir. 1986); *Brennan v. Board of Trustees for University of Louisiana Systems*, 95-2396 (La. App. 1 Cir. 3/27/97), 691 So.2d 324, 328.

methods of arrest; (6) the physical size, strength, and weaponry of the officers as compared to the arrestee; and (7) the exigency of the moment. *Kyle*, 353 So.2d at 973.

The evidence at issue is relevant to the second and sixth factors. The second factor – requiring a determination of the risks and dangers faced by Defendant Pitfield – demands an inquiry into E.P.'s capacity for violence. *See id.* If Defendant Pitfield was facing a threat to his safety, it would be more reasonable for him to respond with greater force. *See Mathieu*, 646 So.2d at 323, *Kyle*, 353 So.2d at 973. Similarly, the sixth factor – comparing the physical size, strength, and weaponry of Defendant Pitfield to E.P. – asks how physically strong E.P. was. *See Kyle*, 353 So.2d at 973.

Medical records from prior to the date of E.P.'s death, photographs of a physical incident involving E.P. in September 2017, records and emails reflecting past outbursts by E.P., and testimony describing prior outbursts by E.P. all have a tendency to make a consequential fact – whether E.P. posed a threat commensurate with Defendant Pitfield's use of force – more or less probable than it would be without the evidence. *See* Fed. R. Evid. 401; *Scoma v. City of New York*, 2021 WL 1784385, at *9-10 (E.D.N.Y. May 4, 2021) (allowing evidence of plaintiff's Facebook photo and steroid use, which was unknown to the officers at the time of the incident, because it was relevant to plaintiff's appearance and conduct on the date of his arrest). The evidence of E.P.'s prior outbursts and prior physical damage will illustrate to the jury the risk and danger faced by Defendant Pitfield because it shows the damage E.P. was capable of causing when in a similar state to that he was in when engaging with Defendant Pitfield. *See Mathieu*, 646 So.2d at 323, *Kyle*, 353 So.2d at 973. Similarly, such evidence, as well as evidence of the restraint system installed in Plaintiffs' vehicle, demonstrates the physical strength of E.P.: essential evidence for determination of the sixth *Kyle* factor. *See Kyle*, 353 So.2d at 973.

Without this evidence, a jury would not understand the scope of risks and dangers faced by Defendant Pitfield, nor would the jury have any understanding of the strength with which Defendant Pitfield was contending. It would be prejudicial to Westgate Defendants – who are allegedly vicariously liable for Defendant Pitifield's actions – to preclude any evidence of E.P.'s prior medical and behavioral history, as without such evidence it would be impossible for a jury to comprehend E.P.'s strength and ability to cause injury. *See* Fed. R. Evid. 401; *Mathieu*, 646 So.2d at 323, *Kyle*, 353 So.2d at 973.

Finally, none of the cases cited by Plaintiffs in support of their motion discuss the admissibility of evidence that illustrates the nature of the circumstances faced by the officers at the time of the use of force. Therefore, Plaintiffs' cases are easily distinguishable.

**II.     Evidence of E.P's past behavioral and medical history are necessary to establish Plaintiffs' contributory negligence.**

Contributory negligence is an affirmative defense which must be specifically pled by the defendant. *McCarthy v. Entergy Gulf States, Inc.*, 2011-600 (La. App. 3 Cir. 12/7/11), 82 So.3d 336, 351. The defendant must prove by a preponderance of the evidence that the plaintiff's contributory negligence was a cause-in-fact and a legal cause of his damages. *Id.*

Here, Westgate Defendants have pled the affirmative defense of contributory negligence on the part of Plaintiffs.[16] Plaintiffs' negligence will be established through evidence that – given their knowledge of E.P.'s risk to the public – they were unreasonable in subjecting E.P. to the conditions which led to the incident at issue. To establish that Plaintiffs were unreasonable in their conduct, it will be necessary for Westgate Defendants to proffer evidence of E.P.'s past behavior, including prior outbursts, medical history, and preventative measures taken by Plaintiffs under other conditions. Such evidence makes it more or less probable that an incident such as this was

---

[16] R. Doc. 10, p. 2.

foreseeable, a fact consequential to whether Plaintiffs' negligence contributed to their alleged damages. *See* Fed. R. Evid. 401. Westgate Defendants would be severely prejudiced if such evidence were precluded.

### III. Adoption of Jefferson Parish Sherriff's Office Defendants' Arguments Raised in Ct. R. Doc. 151.

Defendants hereby adopt, incorporate and re-plead, as if copied here *in extenso*, all arguments raised in the *Opposition to Plaintiffs' Motion in Limine, Rec. Doc. 151* filed by the Jefferson Parish Sherriff's Office Defendants in Ct. R. Doc. 157 to all topics sought to be excluded by Plaintiffs. The same arguments thereto proffered by the Jefferson Parish Sherriff's Office Defendants apply to the Westgate Defendants.

### CONCLUSION

Plaintiffs' motion in limine seeking exclusion of any evidence of E.P.'s behavioral and medical history that Defendants were unaware of at the time of the incident should be denied. To understand the reasonableness of Defendant Pitfield's force, it is necessary for the jury to understand the risks and dangers E.P. posed, as well as E.P.'s physical strength. *See Kyle*, 353 So.2d at 973. These facts can only be illustrated through evidence of E.P.'s past behavioral and medical history. The effects of his prior outbursts, the medical documentation of how his condition manifests, and the precautions taken by Plaintiffs reveal the risks, dangers, and physical strength that Defendant Pitfield was up against during the incident at issue. It would be prejudicial to Westgate Defendants if such evidence were precluded, as there is no other way to demonstrate the risks, dangers, and strength of E.P.

Furthermore, Westgate Defendants intend to establish that Plaintiff were contributorily negligent in exposing E.P. to the conditions that led to the subject incident. The foreseeability of the subject incident will rely on evidence of E.P.'s behavioral and medical history. Thus, Westgate

Defendants would be unable to present their claim of contributory negligence if this evidence were excluded.

In addition to these arguments, the arguments raised by the Jefferson Parish Sherriff's Office Defendants to this topic and the remaining topics in Plaintiffs' *Motion in Limine* are herein adopted by the Westgate Defendants for the same reasons as proffered by the Jefferson Parish Sherriff's Office Defendants.

Respectfully submitted,

**THOMPSON COE COUSINS & IRONS, LLP**

By: /s/ *Mark A. Hill*
**CHRISTOPHER W. KAUL (33213), T.A.**
**MARK A. HILL (33891)**
601 Poydras Street, Suite 1850
New Orleans, Louisiana 70130
Telephone: (504) 526-4350
Facsimile: (504) 526-4310
Email: ckaul@thompsoncoe.com
mhill@thompsoncoe.com

**ATTORNEYS FOR VICTORY REAL ESTATE INVESTMENTS LA, LLC and WESTGATE INVESTORS NO, LLC D/B/A WESTGATE SHOPPING CENTER**

## CERTIFICATE OF SERVICE

I hereby certify that to the best of my knowledge all counsel of record consent to and participate in receiving electronic notification from the CM/ECF system, and that the Clerk of the Court for the Eastern District of Louisiana, using the CM/ECF system, will electronically send notification of the filing of this pleading to all counsel of record.

/s/ *Mark A. Hill*
**MARK A. HILL**