UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONNA LOU, ET AL. | * | CIVIL ACTION NO. 21-80 |
| VERSUS | * | SECTION "D" (2) |
| SHERIFF JOSEPH P, LOPINTO, III, ET AL. | * | Judge Wendy B. Vitter<br>Magistrate Judge Donna P. Currault |

**Reply in Support of Plaintiffs' Motions *in Limine*** 

In this matter, Plaintiffs filed Motions *in Limine* on twelve topics. R. Doc. 151. JPSO Defendants (R. Doc. 157) and Westgate Defendants (R. Doc. 158) each filed oppositions.

JPSO Defendants oppose the substance of Topics 1, 2, 3, 4, and 10.

JPSO Defendants consent to Topics 5, 6, and 7.

JPSO Defendants oppose as premature Topics 8, 9, 11, and 12.

Westgate Defendants provide argument in opposition to Topic 1, and otherwise adopt JPSO Defendants' opposition and consent.

Here, Plaintiffs provide a brief reply to some of these issues as follows.[1]

---

[1] Note: In their brief, JPSO Defendants contend that Plaintiffs have "in every single pleading . . . stated to this Court that E.P. was some sort of hapless, helpless, docile child that the Defendants attacked for no reason." R. Doc. 157.

That accusation is not consistent with the truth. Plaintiffs have described E.P.'s outburst as violent from their very first pleading to their most recent pleading. *See* R. Doc. 1 at ¶ 40 ("During this outburst, E.P. bit his father, who was bleeding."); ¶ 68 ("As Deputy Pitfield turned away, E.P. began slapping at Pitfield."); and ¶ 70 ("Deputy Pitfield then stated that E.P. bit his leg."). R. Doc. 156 at 5 ("As a result of his outburst, he began flailing his arms, slapping his head and then grabbed, slapped and bit his father.") Even in the motion at issue here, Plaintiffs described E.P. as having "violent outbursts." R. Doc. 151-1 at pg. 4

E.P. was who he was: a youth with severe autism disorder, whose disability sometimes manifested itself in violent outbursts. On the day of his death, he acted violently towards his father and Deputy Pitfield. Plaintiffs do not question the propriety of law enforcement getting involved, or object to Deputy Pitfield's initial actions to secure E.P. What Plaintiffs object to is that Defendants secured E.P. facedown, handcuffed his hands behind his back, and shackled his legs – and then chose not to roll him over to breathe. Instead, they sat on E.P. until he asphyxiated and died. That is the subject of this lawsuit.

1

A.     Discussion

**Topic 1:     Pre-Incident Behavioral and Medical Records**

JPSO Defendants oppose the exclusion of E.P.'s school and medical records, even though those records were not available to the officers on the scene. JPSO's theory is that the records are relevant to rebut an argument by Plaintiffs at trial that "the outburst in question was somehow out of character for E.P. and, inferentially, somehow caused by the Defendants." R. Doc. 157 at 6.

Plaintiffs, however, stipulate that they will not argue that the outburst in question was out of character for E.P., or that it was caused by any of the Defendants. JPSO Defendants' opposition is thus resolved.

Westgate Defendants also oppose the exclusion on these records, raising two theories. First, they argue that the records are relevant to Plaintiffs' negligence claim under *Kyle v. City of New Orleans,* 353 So.2d 969 (La. 1977); specifically, to evaluate whether Defendants breached their duty of care. But breach of duty of care is evaluated based on what was known <u>at the time</u>; not unavailable information stored in medical offices or school records far from the scene of the incident. *See Nix v. Brasly*, 489 So. 2d 1038, 1044 (La. Ct. App. 1986) ("In view of the information available to DOTD at that time, we are unable to find this conclusion unreasonable or negligent.") Indeed, *Kyle* itself asks the finder of fact to assess "the <u>known</u> character of the arrestee." *Id*. at 973 (emphasis added).

Westgate points to *Kyle* factors like the "risks and dangers faced by Defendant Pitfield." R. Doc. 158. But the caselaw shows that these factors are also evaluated in terms of what the officers knew about the risks and dangers – not all the *unknown* information. For example, in *Mathieu v. Imperial Toy Corp*., 94-0952 ( La. 11/30/94), 646 So. 2d 318, 324, the court evaluated the "risks and dangers faced by the officer" factor of *Kyle* by assessing what the "officers believed," what the officers "knew," and what the officers "faced" based on what they knew. The court did not look to the past medical or school records of the person force was used against. So too in *Dawson*

*v. Falgout*, 16-373 ( La. App. 5 Cir 12/21/16), 215 So. 3d 373, 379, in which the court compared what the officers "observed" and "did not observe" to assess the risk. The court did not look at information unknown to the officers to evaluate the reasonableness of their conduct.

And neither the Westgate nor the JPSO Defendants explain why this evidence would not run afoul of Rule 404(a)(1), which bars evidence of character or traits "to prove that on a particular occasion the person acted in accordance with the character or trait."

Second, Westgate argues that the records are relevant to the contributory negligence of E.P.'s parents. But the only issue of contributory negligence defense that is raised clearly in Westgate's answer is E.P.'s negligence – not that of his parents, which is what Westgate is arguing here.[2] Accordingly, the motion should be granted with regard to Topic 1.

**Topic 2:    Irrelevant JPSO training documents about serial killers, gossip, tactical driving, etc.**

Plaintiffs moved to exclude the dozens of Defendants' training document exhibits that are irrelevant to this case, including trainings about serial killers, not gossiping, marital fidelity, driving techniques, etc. Defendants oppose this as a "shotgun laundry list." But if the list is a "shotgun laundry list," the problem is with Defendants for listing the extraneous exhibits, not Plaintiffs for objecting to them. Defendants even concede that some of the items are irrelevant. The listed documents should be excluded, and if Defendants wish to argue that some specific trainings are relevant, this Court could allow them to make a motion to that effect.

**Topic 3:    Defendants' 30+ witnesses not listed on Defendants' initial disclosures.**

Plaintiffs moved to exclude witnesses not disclosed in initial disclosures. Defendants argue in respond that these 30+ witnesses "are all in, and were gleaned from the Police Incident Report

---

[2] See R. Doc. 10 at pg. 2 (Third Defense: "That the Plaintiffs' decedent, E.P., by virtue of his own actions and conduct, was guilty of negligence and/or contributory negligence and/or assumption of the risk, all of which will be more fully shown at the trial of this matter.") Contributory negligence is raised also in the Seventh Defense, but by "Plaintiff" singular – suggesting that Westgate was referring to E.P., not his parents. There is no clear statement that Westgate intended to raise the contributory negligence of E.P.'s parents.

3

of the subject incident." R. Doc. 157 at 9.

That is untrue. Witnesses who were neither in Defendants' initial disclosures nor the Police Incident Report include: Raquel Jackson, Constance Alphonse, Mandi Mohr, Chelsey Gobert, Deborah Barrette, Dy. Frietas, Steven Gutierrez, Shawn Schexnaydre, Edward Carter, Mindy Van Hoven, Ian Graham, Karen Madere, Antoinette Walker, *etc., etc.*

Accordingly, the motion should be granted with regard to Topic 3.

**Topic 4:** **Any testimony that JPSO provided accommodations for E.P.'s disability, as JPSO has conceded no accommodations were provided.**

Plaintiffs moved to exclude evidence that JPSO provided E.P. with disability accommodations, considering that JPSO's interrogatory responses and 30(b)(6) testimony admitted that no such accommodations were provided.

In response to that sworn evidence, Defendants provide only the suggestion of their counsel that perhaps JPSO accommodated E.P.'s disabilities when JPSO deputies did not pepper spray him, did hit him with a baton, did use a TASER on him, and did not send his parents away from the scene. R. Doc. 157 at 11. But statements of counsel are not evidence. *See* Fifth Circuit Pattern Jury Instructions § 3.1 ("statements of counsel are not evidence"); *U.S. v. Parr*, 516 F.2d 458, 471 (5th Cir. 1975) ("arguments of counsel are not evidence"). Because Defendants have rebutted sworn evidence with only the musings of counsel, the motion should be granted with regard to Topic 4.

**Topic 8:** **Evidence contrary to 30(b)(6) testimony without prior court permission.**

JPSO Defendants oppose the exclusion of evidence contrary to their 30(b)(6) testimony as premature, on the theory that Plaintiffs have not "stated any reason why they believe the Defendants intend to contravene any prior testimony." R. Doc. 157 at 12.

But that reason is reflected in JPSO Defendants' brief. JPSO's 30(b)(6) witness testified that no accommodations were provided to E.P. By contrast, in their opposition, the JPSO Defendants argue that E.P. "was 'accommodated.'" R. Doc. 157 at 11. Thus, just as in *Imani*, there

4

is an indication that defendants intend to contradict their own 30(b)(6) testimony at trial. Plaintiffs therefore ask that this Court follow the *Imani* procedure, and require notice and argument regarding good cause prior to putting on any 30b6-contradicting evidence.

### B.  Conclusion

For the reasons in the motion and this Reply, Plaintiffs motion should be granted.

RESPECTFULLY SUBMITTED,

Andrew C. Clarke (TN BPR # 15409)
The Cochran Firm Midsouth
One Commerce Square, Suite 1700
(901) 523-1222 (Telephone)
aclarke@cochranfirmmidsouth.com

*/s/ William Most*
WILLIAM MOST (BPR # 36914)
Most & Associates
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (504) 509-5023
williammost@gmail.com