UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONNA LOU, ET AL. | * | CIVIL ACTION |
| Plaintiffs | * | |
| | * | NO: 21-80 |
| VERSUS | * | |
| | * | SECTION: D-2 |
| | * | |
| SHERIFF JOSEPH LOPINTO, III ET AL. | * | |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY
JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

**MAY IT PLEASE THE COURT:**

Defendants, RYAN VAUGHT, STEVEN MEHRTENS, SHANNON GUIDRY, MICHAEL ESTRADA AND MYRON GAUDET, have moved for partial summary judgment as a matter of law. They submit that Plaintiffs have failed to demonstrate that there remain any genuine issues of material fact to be tried with regard to their "bystander liability" claims under Section 1983 against these Defendants.

First, Plaintiffs' claims fail because Plaintiffs have failed to make any showing that these Defendants failed to take reasonable measures to protect E.P. from another officer's use of excessive force.

Second, and in the further alternative, the Defendants are entitled to qualified immunity as a matter of law.

## I.   LEGAL STANDARD

### A.   SUMMARY JUDGMENT

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Disraeli v. Rotunda*, 489 F.3d 628, 631 (5th Cir. 2007)(*quoting* Fed. R. Civ. P. 56(c)).

Once the moving party shows that no genuine issue of material fact exists, the non-movant must respond by "set[ting] forth specific facts showing that there is a genuine issue for trial." *Beard v. Banks*, 548 U.S. 521, 529 (2006) (*quoting Celotex Corp. v. Catrett*, 447 U.S. 317, 323 (1986)) (*quoting* Fed. R. Civ. P. 56(e)) (emphasis added by *Beard* Court).  All reasonable inferences are drawn in favor of the nonmoving party. Yet a court only draws reasonable inferences in favor of the nonmovant "when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990)).  Further, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (*citing Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir.2007) (additional citation omitted).

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The substantive law identifies which facts are material. *Id*. Material facts are not genuinely disputed when a rational trier of fact could not find for the nonmoving party upon a review of the record taken as a whole. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Equal Emp't Opportunity Comm'n v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

After the movant demonstrates the absence of a genuine dispute, the nonmovant must articulate specific facts and point to supporting, competent evidence that may be presented in a form admissible at trial. *See Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998); Fed.R.Civ.P. 56(c)(1)(A) & (c)(2). Such facts must create more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When the nonmovant will bear the burden of proof at trial on the dispositive issue, the moving party may simply point to insufficient admissible evidence to establish an essential element of the nonmovant's claim in order to satisfy its summary judgment burden. *See Celotex*, 477 U.S. at 322-25; Fed.R.Civ.P. 56(c)(B). Unless there is a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075-76.

At the summary judgment stage of a Section 1983 action,

a defendant asserting immunity is not required to establish the defense beyond peradventure, as he would have to do for other affirmative defenses. "The moving party is not required to put forth evidence to meet its summary judgment burden for a claim of immunity. It is sufficient that the movant in good faith pleads that it is entitled to absolute or qualified immunity." "Once the [movant] asserts this affirmative defense, the burden shifts to the plaintiff to rebut it."

*Cousin v. Small*, 325 F.3d 627, 632 (5th Cir. 2003).

3

Indeed, although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised. *Collier v. Montgomery*, 569 F.3d 214, 217-18 (5th Cir. 2009). As a matter of law, qualified immunity is a defense from suit, not just liability, and once invoked the burden shifts to Plaintiff to overcome the defense. *Harlow v. Fitzgerald*, 457 U.S. 800, 806, 102 S.Ct. 2727 2731, 73 L.Ed.2d 396 (1982); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir.1994) ("The burden of negating the [qualified immunity] defense lies with the plaintiffs.").

### B.    SECTION 1983 AND QUALIFIED IMMUNITY

Federal law provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."  42 U.S.C. § 1983. This statute is considered the primary vehicle for bringing constitutional claims against local governments and officials.

There are two essential elements to a § 1983 claim: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor,* 451 U.S. 527, 535, 1010 S.Ct. 1908 (1981).  There must be a "direct causal link between the alleged constitutional deprivations and the official

conduct by defendants causing the deprivations." *Bieros v. Nicola,* 839 F.Supp. 332 (E.D. Pa. 1993).

If plaintiff cannot show with specificity that the officer's actions were objectively unreasonable, the officer is entitled to qualified immunity.  Public officials, whose positions entail the exercise of discretion, enjoy the special protections of qualified immunity from personal liability in Section 1983 damage actions. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727 (1982).  In *Saucier v. Katz*, 553 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the Supreme Court prescribed as follows:

> A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry.  If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.  On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established.  (citations omitted).

*Saucier*, 553 U.S. 194, 121 S.Ct. 2151.

For several years, the Supreme Court required that the first of these criteria-whether plaintiffs' facts allege a constitutional violation-must be decided at the outset as set forth in *Saucier,* 533 U.S. 194, 201.  However, the Court has reversed course and now permits lower courts to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the

circumstances in the particular case at hand. *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).1

## II.  STATEMENT OF THE CASE

### A.  PLAINTIFFS' CLAIMS

Plaintiffs bring this action under 42 U.S.C. §1983. R. Doc. 22.

Plaintiffs allege that "[t]he JPSO Deputy Defendants and JPSO John Doe Deputy Defendants had knowledge of the wrongs done and conspired to be done as described herein, had the power to prevent or aid in the prevention of same, yet failed or refused to do so, in violation of 42 USC 1983." R. Doc. 1 at ¶ 388.

Plaintiffs allege that "[d]uring the events described herein, JPSO Deputy Defendants were aware of the use of excessive force and restraint but did not intervene to prevent the violation of E.P.'s constitutional rights, even though they had the opportunity and duty to do so." *Id.* at at ¶ 389.

### B.  STATEMENT OF THE UNCONTESTED MATERIAL FACTS

This case involves the death of an individual (E.P.) who violently attacked his father and the responding Deputy that was called to the scene in the parking lot of the Westgate Shopping Center in Metairie, La. on January 19, 2020. The call for service was made by a horrified onlooker. R. Doc. 1.

---

1  S*ee also Lytle v. Bexar County, Tex.*, 560 F.3d 404 (5th Cir. 2009)(although *Saucier*'s rigid "order of battle" - requiring courts to always address the constitutional issue of whether alleged conduct violated the constitution - is now advisory under *Pearson*, courts still have discretion to conduct a full *Saucier* inquiry).

The Defendant J.P.S.O. Deputies were called to the scene based upon a report from a business manager that E.P. was violently out of control and severely beating his own father, Plaintiff, in the parking lot. *Id.*

The Defendant J.P.S.O. Deputies arrived to find a horrifying scene. E.P. had severely injured his father. E.P. had bitten a piece of his fathers face off, leaving open and obvious trauma.

The Defendant J.P.S.O. Deputies did as best they could to manage E.P. While trying to gain control over E.P., E.P. bit Deputy Pitfield, causing injury.

Regrettably, E.P. expired on the scene.

The entire incident was caught on surveillance cameras, the video of which is before the Court at R. Doc. 154-3.

The video speaks for itself and clearly shows that the scene was never secure prior to E.P.'s demise. *Id.*

It is uncontested, and the video clearly shows that E.P.'s parents, who were both present at the scene, themselves never took any action to intervene in or bring a stop to the Deputies' actions. *Id.*

It is uncontested, and the video clearly shows that these Defendants did not view or perceive any use of force that was excessive or that necessitated an intervention.

With regard to each Defendant, individually:

**1.     Deputy Vaught**

Deputy Vaught can be seen at the 14:13 mark of the video wearing a blue, buttoned down dress shirt (R. Doc. 154-3). Deputy Vaught arrives on scene and attempts

to help Deputy Pitfield secure E.P.'s hands in handcuffs. *Id*. He places one set of handcuffs on E.P.'s left wrist and attempts to secure that hand with the right hand. *Id*. Deputy Vaught goes hands off of E.P. at the 14:33 mark. *Id*. At the 18:09 mark, he attempts to place the leg shackles on E.P. with the help of Estrada.

Deputy Vaught was the first Deputy to arrive on scene after Deputy Pitfield; he assisted Pitfield in handcuffing E.P. and then left to speak with E.P.'s father believing that it was safe for him to do so. *See* Deposition of Deputy Vaught, attached as Exhibit 2, at 121-124.

Deputy Vaught "figured [that E.P.'s] mother was there talking to him, and she could do a little bit more good than maybe [he] could do." *Id*. at 138:11-13.

At or about the 17:34 mark, Deputy Vaught returns to where Deputy Vega has now taken over for Deputy Pitfield. R. Doc. 154-3.

Deputy Vaught at no time saw Deputy Vega choke E.P. or apply any type of choke hold; he never heard anyone, including E.P.'s parents complain that E.P. was being choked. Exhibit 2, 156-157.

## 2. Deputy Mehrtens

Deputy Mehrtens, wearing a windbreaker with "Sheriff" on the back is seen arriving on scene at the 14:25 mark. R. Doc. 154-3.

Upon his arrival on-scene, Deputy Mehrtens did not perceive a need to assist Deputy Pitfield. *See* Deposition of Deputy Mehrtens, attached as Exhibit 3, at 66:17-20.

Deputy Mehrtens did observe E.P.'s resistance to Deputy Pitfield's efforts to control him. *Id*. at 67-68.

Deputy Mehrtens observed Deptuy Pitfield to be sitting on E.P.'s "buttocks." *Id*. at 69:10-11.

At about the 17:14 mark of the video, R. Doc. 154-3, Mehrtens is assisting Deputy Vega in attempting to control E.P.; Deputy Mehrtens is holding E.P.'s right arm and Deputy Vega is attempting to prevent E.P. from biting. Exhibit 2, at 84-86.

Deputy Mehrtens did not observe Deputy Vega place his hands on E.P.'s throat; he did not observe Deputy Vega choking him or applying a choke hold. *Id*., at 86-87; 88:8-10, 21-23; 89:-34.  He did not hear anyone complain that E.P. was being choked. *Id*. at 87, 105.

The moment that E.P. ceased resisting, Deputy Mehrtens and Deputy Vega placed him in the recovery position. *Id*., at 91-93.

### 3.      Deputy Guidry

Deputy Guidry, dressed in Uniform with a baseball hat, is seen putting on blue gloves and comes into frame of the video at the 15:10 mark. She never has any physical interaction with E.P. or the other Deputies. R. Doc. 154-3.

"When Deputy Guidry] arrived on the scene, Deputy Pitfield was in the process of securing [E.P.]. It was still an active scene. [Deputy Pitfield] was still trying to get [E.P.] under control. He had him under control for the most part, but [E.P.] was still bucking and trying to bite. And when [Deputy Guidry] arrived on scene, he [Deputy Pitfield] told [her], he said, 'Shannon, I pretty much have him under control. There is not much you can do,' looking at my size. And there were two other detectives already on the scene as well." *See* Deposition of Deputy Guidry, attached as Exhibit 4, at 50:5-14.

"E.P. "was on the ground, and Pitfield was securing [him], but [Pitfield] was sitting on [E.P.'s] legs closer to where the back of his knee bends, trying to keep him under control, calm him down until we could get EMS on the scene." *Id*. at 51:21-25.

After her initial approach to the scene, Deputy Guidry begins to assist Mr. Parsa and did not observe the interactions between E.P. and the other Deputies. *Id*. at 53.

Deputy Guidry did not observe Deputy Vega use any "pain complaince" technique; she observed E.P. trying to get up and pull his hands in front of him and Deputy Vega trying to maintain control. *Id*., at 66.

Deputy Guidry did not observe Deputy Vega choke or use a choke hold on E.P.. *Id*. at 66-67.

Deputy Guidry did not hear anyone say anything about E.P. being choked or unable to breath. *Id*. at 75-76.

Deputy Guidry did not perceive any need to "intervene," because "[n]o one was doing anything wrong." *Id*. at 73:20-21.

At some point, Deputy Guidry does recall Deputy Gaudet say "[l]et's put [E.P.] in the recovery position." *Id*. at 78:16-18.

### 4.    Deputy Estrada

 Deputy Estrada, in full JPSO uniform with sunglasses, can be seen next to Guidry at the 15:30 part of the video; he arrives on scene at the 14:57 mark of video. R. Doc. 154-3. At the 17:31 mark, he can be seen opening his trunk to get leg shackles from his car. *Id*.

When Deputy Estrada arrived on scene he did not observe anything that required is assistance or intervention. *See* Deposition of Deputy Estrada, attached as Exhibit 5, at 97-100.

Deputy Estrada did not observe Deptuy Vega choke E.P. or use any sort of choke hold on E.P. *Id*., at 113.

Deputy Estrada did not hear E.P.'s mother or father, or anyone else say anything to the effect that E.P. was being choked. *Id*. at 118.

Deputy Estrada was able to apply leg shackles to E.P. to prevent E.P. from kicking. *Id*. at 114-15.

By the time that E.P. "went blue" other Deputies and EMS were already attending to E.P. *Id*., at 118.  Deputy Estrada "wasn't hands-on. As soon as [E.P.] went blue in the face, then, [E.P.] was[placed] in [the] recovery [position]." *Id*. at 122:8-10.

### 5.    Deputy Gaudet

Deputy Gaudet arrives in frame at the 17:53 mark and is seen approaching E.P.'s left side. R. Doc. 154-3.

Upon Deputy Gaudet's arrival, he assisted in placing E.P. in the recovery position; Deputy Gaudet had no other interaction with E.P. or the other Deputies and did not observe any of the interactions between E.P. and the other Deputies prior to that point. *See* Deposition of Deputy Gaudet, attached as Exhibit 6, at 101-103.

## III. PLAINTIFFS' BYSTANDER CLAIMS UNDER SECTION 1983 SHOULD BE DISMISSED AS A MATTER OF LAW.

Plaintiffs' claims against these Defendants is one of "bystander liability;" that they were present at the scene and failed to intervene to stop another officer's alleged use of excessive force.

In *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir.1995), the Fifth Circuit found that "an officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under Section 1983." *See also Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013); citing *Hale*, 45 F.3d 914, 919.

In *Whitley*, the Fifth Circuit explained that "[o]ur holding in *Hale* is consistent with other circuits' determination that an officer may be liable under § 1983 under a theory of bystander liability. *Whitley*, 726 F.3d 631, 646; citing *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 (4th Cir.2002) (footnote omitted); see, e.g., *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir.2009); *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir.2002); see also *Nowell v. Acadian Ambulance Serv.*, 147 F.Supp.2d 495, 507 (W.D.La.2001).

Within the Fifth Circuit, "[a]n officer is liable for failure to intervene when that officer: (1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but nevertheless, (4) chose not to act." *Timpa v. Dillard,* 20 F.4th 1020, 1038 (5th Cir. 2021).

A bystander officer's liability is analyzed under a "deliberate indifference standard," that requires a plaintiff to demonstrate that the officer actually knew of an excessive risk to a person's safety and disregarded that risk. *Oby v. Sander*, 2015 WL 4496426, \*3 (N.D. Miss. July 23, 2015). Mere negligence or even gross negligence is not enough. *See E.A.F.F. v. Gonzalez,* 600 Fed. Appx. 205, 210 (5th Cir.), cert. denied, ___ U.S. ___, 135 S.Ct. 2364 (2015). The officer "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The Fifth Circuit has explained that "[d]eliberate indifference is an extremely high standard to meet. ... [T]he plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for [his] needs." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quotation marks omitted).

An official cannot be held liable "unless the official ***knows of and disregards*** an excessive risk to [] health or safety; ***the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference***."[2]  "Mere negligence or a failure to act reasonably is not enough.  The officer must have the subjective intent to do harm."[3]

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a *stringent* standard of fault, requiring proof that a municipal actor disregarded a known or obvious

---

[2] *Id* at 837 (emphasis added).
[3] *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003).

consequence of his action.[4] […] The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."[5]

"'Subjective recklessness,' as is used in the criminal law, is the appropriate test for deliberate indifference."[6] A finding of deliberate indifference "must rest on facts clearly evincing 'wanton' actions on the parts of the defendants,"[7] a standard now equated with the standard for criminal recklessness.[8]

This means that a bystander claim has (1) a knowledge element, (2) a presence element, (3) an opportunity element, and (4) an indifference element.

### A.   KNOWLEDGE

A plaintiff must establish that the officer "knows that a fellow officer is violating an individual's constitutional rights." *See McDonald v. McClelland*, 779 Fed.Appx. 222, 226 (5th Cir. 2019) (per curiam). Further, "[m]ere presence at the scene of the alleged use of excessive force, without more, does not give rise to bystander liability." *Vasquez v. Chacon*, 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009); see also *Brown v. Wilkinson Cty. Sheriff Dep't*, 742 Fed.Appx. 883, 884 (5th Cir. 2018) (per curiam) ("[plaintiff] concedes that he was harmed by three inmates and that an officer's mere presence, without more, does not give rise to a bystander liability claim.") The officer must have a

---

[4] *Board of the County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 117 S.Ct. 1382, 1391 (1997).

[5] *Southard v. Texas Bd. Of Crim. Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted) (emphasis added).

[6] *Norton*, 122 F.3d at 291.

[7] *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir.1985).

[8] *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970; *see also Hare v. City of Corinth,* 74 F.3d 633, 647-48 (5th Cir.1996).

"reasonable opportunity to realize the excessive nature of the force and to intervene to stop it." *Hale*, 45 F.3d 914, 919.

In this case, none of the Defendants herein had any knowledge or awareness, or witnessed Deputy Pitfield or Deputy Vega use any force that was excessive to the need. *See* Exhibits 2-6.

The Defendants are entitled to judgment in their favor as a matter of law.

### B.    PRESENCE

The *Whitley* Court made certain to hold that "liability will not attach where an officer is not present at the scene of the constitutional violation." *Id*. at 746-747; citing *Snyder v. Trepagnier*, 142 F.3d 791, 801 n. 11 (5th Cir.1998) (citing *Hale*, 45 F.3d at 919);see also *Gilbert v. French*, 364 Fed.Appx. 76, 83 (5th Cir.2010) (per curiam) (unpublished); *Ibarra v. Harris Cnty. Tex.*, 243 Fed.Appx. 830, 835 & n. 8 (5th Cir.2007) (per curiam) (unpublished) ("A bystander liability claim requires the plaintiffs to show that the officer was present at the scene and did not take reasonable measures to protect a suspect from excessive force.").

The Fifth Circuit in *Whitley* found that several Defendant Officers were not present during the alleged use of excessive force; therefore, the Court held, they were "not within the scope of a bystander liability claim." *Whitley*, 726 F.3d at 747; citing *Hale*, 45 F.3d at 919; *Ibarra*, 243 Fed.Appx. at 835 & n. 8.

Further, "[m]ere presence at the scene of the alleged use of excessive force, without more, does not give rise to bystander liability." *Vasquez v. Chacon*, No. 08-2046, 2009 WL 2169017, at *6 (N.D. Tex. July 20, 2009) (citing *Nowell v. Acadian Ambulance*

15

*Serv.*, 147 F.Supp.2d 495, 507 (W.D. La. 2001);*see also Garrett v. Crawford*, No. 15-261, 2016 WL 843391, at *9 (W.D. Tex. Mar. 1, 2016) ("Simply being present at the scene of the alleged use of excessive force, without more, does not give rise to a cognizable claim for failure to intervene." (citing *Vasquez*, 2009 WL 2169017, at *6)); *Montgomery v. Hollins*, No. 18-1954, 2019 WL 2424053, at *3 (N.D. Tex. May 8, 2019) ("an officer's 'mere presence at the scene, without more, does not by some mysterious alchemy render him legally responsible under section 1983 for the actions of a fellow officer.' " (quoting *Calvi v. Knox Cty.*, 470 F.3d 422, 428 & n.3 (1st Cir. 2006), report and recommendation adopted, No. 18-1954, 2019 WL 2422493 (N.D. Tex. June 10, 2019)). The officer must have a "reasonable opportunity to realize the excessive nature of the force and to intervene to stop it." See *Hale*, 45 F.3d at 919; *Nowell*, 147 F.Supp.2d at 507 (same).

.    Here, again, the Defendants submit that mere presence at the scene is insufficient to trigger bystander liability. These Defendants did not view any force being used by any Deputy that was excessive to the need. There was no excessive force used.

Further, "plaintiffs may not lump Defendants together, without specifying separate factual allegations specific to each Defendant, as 'referring to the Defendants collectively prevents the Court from drawing the inference that [one individual Defendant] personally (or any other individual Defendant) acted with subjective deliberate indifference.'" *Mixon v. Pohlmann*, 2021 WL 6072501, at *9 (E.D. La. Dec. 23, 2021).

Here, it would seem that this issue would be relatively simple to resolve. Alas, it is not. Plaintiffs' do not specifically allege which Defendant(s) were "present" when E.P.

expired, let alone where and how close they were or what they were doing at the time. *See* R. Doc. 1. Rather, Plaintiffs "lump Defendants together," preventing the Court from being able to properly consider the issue of whether any or all Defendants personally acted with subjective deliberate indifference. It is not enough for Plaintiffs to state the legal conclusion that all were, generally speaking, "present."

The Defendants are entitled to judgment in their favor as a matter of law.

## C.    OPPORTUNITY AND CHOICE NOT TO ACT

The Court in *Whitley* maintained that "[i]n resolving whether a plaintiff has sufficiently alleged a bystander liability claim we also consider whether an officer 'acquiesce[d] in' the alleged constitutional violation. *Id.* at 747; citing *Hale*, 45 F.3d at 919; *Baker v. Monroe Twp.*, 50 F.3d 1186, 1193–94 (3d Cir.1995) (premising liability on senior officer's knowledge of, and acquiescence in, treatment of victim); *see also Peavy v. Dall. Indep. Sch. Dist.*, 57 F.Supp.2d 382, 390 n. 4 (N.D.Tex.1999) (*Hale* inapplicable where defendant did not acquiesce in any conduct violating plaintiff's constitutional rights).

"In making the determination of whether or not an officer "acquiesced to the excessive force, courts consider the duration of the alleged use of force and the location of the suspect in relationship to the observing officer." *Garrett v. Crawford*, 2016 WL 843391, at *9 (W.D. Tx. March 1, 2016).

The Court also clarified what it is to "acquiesce" in another officer's use force, explaining that "[t]he rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the

17

unconstitutional act of his fellow officer."). *Id*.; citing *Randall v. Prince George's Cty.*, 302 F.3d 188, 204 n. 24 (4th Cir. 2002).

In this case, again, Plaintiffs' claims should be dismissed because Plaintiffs improperly lump all Defendants together, the allegations are "supported by mere conclusory statements," and there are no facts showing any Defendant acted with subjective deliberate indifference to another Deputy' use of unauthorized force. *Mixon*, 2021 WL 6072501, at *9.

Indeed, the Court can plainly see from the video in evidence as well as the deposition testimony that these Defendants' actions by no means came close to meeting the subjective deliberate indifference standard. There is no evidence that any of these Defendants knew of and deliberately disregarded an excessive risk of harm to E.P. vis-a-vis another officer's use of alleged force.

The Defendants are entitled to summary judgment as a matter of law.

### B.    ALTERNATIVELY, THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY AS A MATTER OF LAW.

The Fifth Circuit has set out the test for establishing a defense based on qualified immunity:

> Evaluating qualified immunity is a two-step process. First, we determine whether the plaintiff has alleged a violation of a clearly established constitutional or statutory right. A right is clearly established if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right. If the plaintiff has alleged a violation of a clearly established right, the next step for us is to determine whether the official's conduct was objectively reasonable under the law at the time of the incident. The plaintiff bears the burden of proving that a government official is not entitled to qualified immunity.

*Michalik v. Hermann*, 422 F.3d 252, 257-258 (5th Cir. 2005)(quotation marks and citations omitted).

It is established that these Defendants did not violate E.P.'s rights.  Nonetheless, the Defendants are entitled to summary judgment because their conduct was reasonable in light of clearly established law.  The second prong of the qualified immunity inquiry is whether the Defendants' conduct was objectively reasonable in light of clearly established law.

In order to overcome qualified immunity, "pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Sorenson v. Ferrie*, 134 F.3d 325, 330 (*citing Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997)).  The analysis does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.  *Malley v. Briggs*, 475 U. S. 335, 341 (1986).  When properly applied, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley*, 475 U. S., at 341.

Critically, "**each individual defendant's entitlement to qualified immunity [should be examined] separately**." *Jacobs v. West Feliciana Sheriff's Dept.*, 228 F.3d 388, 395 (5th Cir. 2000)(citation omitted)(emphasis added).

### 1.    Deputy Vaught

Deputy Vaught can be seen at the 14:13 mark of the video wearing a blue, buttoned down dress shirt (R. Doc. 154-3). Deputy Vaught arrives on scene and attempts to help Deputy Pitfield secure E.P.'s hands in handcuffs. He places one set of handcuffs on E.P.'s left wrist and attempts to secure that hand with the right hand. Deputy Vaught goes hands off of E.P. at the 14:33 mark. At the 18:09 mark, he attempts to place the leg shackles on E.P. with the help of Estrada.

Deputy Vaught was the first Deputy to arrive on scene after Deputy Pitfield; he assisted Pitfield in handcuffing E.P. and then left to speak with E.P.'s father believing that it was safe for him to do so. *See* Deposition of Deputy Vaught, attached as Exhibit 2, at 121-124.

Deputy Vaught "figured [that E.P.'s] mother was there talking to him, and she could do a little bit more good than maybe [he] could do." *Id*. at 138:11-13.

At or about the 17:34 mark, Deputy Vaught returns to where Deputy Vega has now taken over for Deputy Pitfield. R. Doc. 154-3.

Deputy Vaught at no time saw Deputy Vega choke E.P. or apply any type of choke hold; he never heard anyone, including E.P.'s parents complain that E.P. was being choked. Exhibit 2, 156-157.

There is no evidence that Deputy Vaught was "plainly incompetent or knowingly violated the law" and he is entitled to judgment in his favor as a matter of law. *Malley*, 475 U. S., at 341.

**2.     Deputy Mehrtens**

Deputy Mehrtens, wearing a windbreaker with "Sheriff" on the back is seen arriving on scene at the 14:25 mark. R. Doc. 154-3.

Upon his arrival on-scene, Deputy Mehrtens did not perceive a need to assist Deputy Pitfield. *See* Deposition of Deputy Mehrtens, attached as Exhibit 3, at 66:17-20.

Deputy Mehrtens did observe E.P.'s resistance to Deputy Pitfield's efforts to control him. *Id*. at 67-68.

Deputy Mehrtens observed Deputy Pitfield to be sitting on E.P.'s "buttocks." *Id*. at 69:10-11.

At about the 17:14 mark of the video, R. Doc. 154-3, Mehrtens is assisting Deputy Vega in attempting to control E.P.; Deputy Mehrtens is holding E.P.'s right arm and Deputy Vega is attempting to prevent E.P. from biting. Exhibit 2, at 84-86.

Deputy Mehrtens did not observe Deputy Vega place his hands on E.P.'s throat; he did not observe Deputy Vega choking him or applying a choke hold. *Id*., at 86-87; 88:8-10, 21-23; 89:-34.  He did not hear anyone complain that E.P. was being choked. *Id*. at 87, 105.

The moment that E.P. ceased resisting, Deputy Mehrtens and Deputy Vega placed him in the recovery position. *Id*., at 91-93.

There is no evidence that Deputy Mehrtens was "plainly incompetent or knowingly violated the law" and he is entitled to judgment in his favor as a matter of law. *Malley*, 475 U. S., at 341.

**3.    Deputy Guidry**

Deputy Guidry, dressed in Uniform with a baseball hat, is seen putting on blue gloves and comes into frame of the video at the 15:10 mark. She never has any physical interaction with E.P. or the other Deputies. R. Doc. 154-3.

"When Deputy Guidry] arrived on the scene, Deputy Pitfield was in the process of securing [E.P.]. It was still an active scene. [Deputy Pitfield] was still trying to get [E.P.] under control. He had him under control for the most part, but [E.P.] was still bucking and trying to bite. And when [Deputy Guidry] arrived on scene, he [Deputy Pitfield] told [her], he said, 'Shannon, I pretty much have him under control. There is not much you can do,' looking at my size. And there were two other detectives already on the scene as well." *See* Deposition of Deputy Guidry, attached as Exhibit 4, at 50:5-14.

"E.P. "was on the ground, and Pitfield was securing [him], but [Pitfield] was sitting on [E.P.'s] legs closer to where the back of his knee bends, trying to keep him under control, calm him down until we could get EMS on the scene." Id. at 51:21-25.

After her initial approach to the scene, Deputy Guidry begins to assist Mr. Parsa and did not observe the interactions between E.P. and the other Deputies. *Id*. at 53.

Deputy Guidry did not observe Deputy Vega use any "pain complaince" technique; she observed E.P. trying to get up and pull his hands in front of him and Deputy Vega trying to maintain control. *Id*., at 66.

Deputy Guidry did not observe Deputy Vega choke or use a choke hold on E.P.. *Id*. at 66-67.

Deputy Guidry did not hear anyone say anything about E.P. being choked or unable to breathe. *Id*. at 75-76.

Deputy Guidry did not perceive any need to "intervene," because "[n]o one was doing anything wrong." *Id*. at 73:20-21.

At some point, Deputy Guidry does recall Deputy Gaudet say "[l]et's put [E.P.] in the recovery position." *Id*. at 78:16-18.

There is no evidence that Deputy Guidry was "plainly incompetent or knowingly violated the law" and she is entitled to judgment in his favor as a matter of law. *Malley*, 475 U. S., at 341.

### 4.    Deputy Estrada

Deputy Estrada, in full JPSO uniform with sunglasses, can be seen next to Guidry at the 15:30 part of the video; he arrives on scene at the 14:57 mark of video. R. Doc. 154-3. At the 17:31 mark, he can be seen opening his trunk to get leg shackles from his car. *Id*.

When Deputy Estrada arrived on scene he did not observe anything that required his assistance or intervention. *See* Deposition of Deputy Estrada, attached as Exhibit 5, at 97-100.

Deputy Estrada did not observe Deptuy Vega choke E.P. or use any sort of choke hold on E.P. *Id*., at 113.

Deputy Estrada did not hear E.P.'s mother or father, or anyone else say anything to the effect that E.P. was being choked. *Id*. at 118.

Deputy Estrada was able to apply leg shackles to E.P. to prevent E.P. from kicking. *Id*. at 114-15.

By the time that E.P. "went blue" other Deputies and EMS were already attending to E.P. *Id*., at 118.  Deputy Estrada "wasn't hands-on. As soon as [E.P.] went blue in the face, then, [E.P.] was[placed] in [the] recovery [position]." *Id*. at 122:8-10.

There is no evidence that Deputy Estrada was "plainly incompetent or knowingly violated the law" and he is entitled to judgment in his favor as a matter of law. *Malley*, 475 U. S., at 341.

### 5.    Deputy Gaudet

Deputy Gaudet arrives in frame at the 17:53 mark and is seen approaching E.P.'s left side. R. Doc. 154-3.

Upon Deputy Gaudet's arrival, he assisted in placing E.P. in the recovery position; Deputy Gaudet had no other interaction with E.P. or the other Deputies and did not observe any of the interactions between E.P. and the other Deputies prior to that point. *See* Deposition of Deputy Gaudet, attached as Exhibit 6, at 101-103.

There is no evidence that Deputy Gaudet was "plainly incompetent or knowingly violated the law" and he is entitled to judgment in his favor as a matter of law. *Malley*, 475 U. S., at 341.

### CONCLUSION

First, Plaintiffs' claims fail because Plaintiffs have failed to make any showing that these Defendants failed to take reasonable measures to protect E.P. from another officer's use of excessive force and their bystander claims under Section 1983 fail.

Second, and in the further alternative, the Defendants are entitled to qualified immunity and judgment in their favor as a matter of law.

Respectfully submitted,

**/s/ James B. Mullaly**

_____

**FRANZ L. ZIBILICH, LSB# 14912**
**JAMES B. MULLALY, LSB# 28296**
**MARTINY & ASSOCIATES, LLC**
131 Airline Highway
Suite 201
Metairie, Louisiana 70001
(504) 834-7676
(504) 834-5409 (fax)
e-mail: fzibilich@gmail.com


## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing motion has been served upon all parties via

CM/ECF (PACER), and or U.S. Mail, properly addressed and postage prepaid, this 1st

day of May 2023.


/s/ James B. Mullaly
_____
**JAMES B. MULLALY**