UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONNA LOU, ET AL. | * | CIVIL ACTION |
|     Plaintiffs | * | |
| | * | NO: 21-80 |
| VERSUS | * | |
| | * | SECTION: D-2 |
| | * | |
| SHERIFF JOSEPH LOPINTO, III ET AL. | * | |
|     Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*\*\*

**STATEMENT OF UNCONTESTED FACTS IN SUPPORT OF ALL JPSO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

**MAY IT PLEASE THE COURT:**

Defendants, **RYAN VAUGHT, STEVEN MEHRTENS, SHANNON GUIDRY, MICHAEL ESTRADA AND MYRON GAUDET** submit the following statement of uncontested material facts in support of their Motion for Partial Summary Judgment to Dismiss Plaintiffs' Section 1983 bystander claims:

1. This case involves the death of an individual (E.P.) who violently attacked his father and the responding Deputy that was called to the scene in the parking lot of the Westgate Shopping Center in Metairie, La. on January 19, 2020. The call for service was made by a horrified onlooker. R. Doc. 1.

2.     The Defendant J.P.S.O. Deputies were called to the scene based upon a report from a business manager that E.P. was violently out of control and severely beating his own father, Plaintiff, in the parking lot. *Id*.

3.     The Defendant J.P.S.O. Deputies arrived to find a horrifying scene. E.P. had severely injured his father. E.P. had bitten a piece of his fathers face off, leaving open and obvious trauma.

4.     The Defendant J.P.S.O. Deputies did as best they could to manage E.P. While trying to gain control over E.P., E.P. bit Deputy Pitfield, causing injury.

5.     Regrettably, E.P. expired on the scene.

6.     The entire incident was caught on surveillance cameras, the video of which is attached as Exhibit 1.

7.     The video speaks for itself and clearly shows that the scene was never secure prior to E.P.'s demise. *Id*.

8.     It is uncontested, and the video clearly shows that E.P.'s parents, who were both present at the scene, themselves never took any action to intervene in or bring a stop to the Deputies' actions. *Id*.

9.     It is uncontested, and the video clearly shows that these Defendants did not view or perceive any use of force that was excessive or that necessitated an intervention.

With regard to each Defendant, individually:

### 1. Deputy Vaught

10. Deputy Vaught can be seen at the 14:13 mark of the video wearing a blue, buttoned down dress shirt (Exhibit 1). Deputy Vaught arrives on scene and attempts to help Deputy Pitfield secure E.P.'s hands in handcuffs. *Id*. He places one set of handcuffs on E.P.'s left wrist and attempts to secure that hand with the right hand. *Id*. Deputy Vaught goes hands off of E.P. at the 14:33 mark. *Id*. At the 18:09 mark, he attempts to place the leg shackles on E.P. with the help of Estrada.

11. Deputy Vaught was the first Deputy to arrive on scene after Deputy Pitfield; he assisted Pitfield in handcuffing E.P. and then left to speak with E.P.'s father believing that it was safe for him to do so. *See* Deposition of Deputy Vaught, attached as Exhibit 2, at 121-124.

12. Deputy Vaught "figured [that E.P.'s] mother was there talking to him, and she could do a little bit more good than maybe [he] could do." *Id*. at 138:11-13.

13. At or about the 17:34 mark, Deputy Vaught returns to where Deputy Vega has now taken over for Deputy Pitfield. Exhibit 1.

14. Deputy Vaught at no time saw Deputy Vega choke E.P. or apply any type of choke hold; he never heard anyone, including E.P.'s parents complain that E.P. was being choked. Exhibit 2, 156-157.

### 2. Deputy Mehrtens

15. Deputy Mehrtens, wearing a windbreaker with "Sheriff" on the back is seen arriving on scene at the 14:25 mark. Exhibit 1.

16. Upon his arrival on-scene, Deputy Mehrtens did not perceive a need to assist Deputy Pitfield. *See* Deposition of Deputy Mehrtens, attached as Exhibit 3, at 66:17-20.

17. Deputy Mehrtens did observe E.P.'s resistance to Deputy Pitfield's efforts to control him. *Id.* at 67-68.

18. Deputy Mehrtens observed Deptuy Pitfield to be sitting on E.P.'s "buttocks." *Id.* at 69:10-11.

19. At about the 17:14 mark of the video, Exhibit 1, Mehrtens is assisting Deputy Vega in attempting to control E.P.; Deputy Mehrtens is holding E.P.'s right arm and Deputy Vega is attempting to prevent E.P. from biting. Exhibit 2, at 84-86.

20. Deputy Mehrtens did not observe Deputy Vega place his hands on E.P.'s throat; he did not observe Deputy Vega choking him or applying a choke hold. *Id.*, at 86-87; 88:8-10, 21-23; 89:-34. He did not hear anyone complain that E.P. was being choked. *Id.* at 87, 105.

21. The moment that E.P. ceased resisting, Deputy Mehrtens and Deputy Vega placed him in the recovery position. *Id.*, at 91-93.

### 3. Deputy Guidry

22. Deputy Guidry, dressed in Uniform with a baseball hat, is seen putting on blue gloves and comes into frame of the video at the 15:10 mark. She never has any physical interaction with E.P. or the other Deputies. Exhibit 1.

23. "When Deputy Guidry] arrived on the scene, Deputy Pitfield was in the process of securing [E.P.]. It was still an active scene. [Deputy Pitfield] was still trying to get [E.P.] under control. He had him under control for the most part, but [E.P.] was still bucking and trying to bite. And when [Deputy Guidry] arrived on scene, he [Deputy Pitfield] told [her], he said, 'Shannon, I pretty much have him under control. There is not much you can do,' looking at my size. And there were two other detectives already on the scene as well." *See* Deposition of Deputy Guidry, attached as Exhibit 4, at 50:5-14.

24. "E.P. "was on the ground, and Pitfield was securing [him], but [Pitfield] was sitting on [E.P.'s] legs closer to where the back of his knee bends, trying to keep him under control, calm him down until we could get EMS on the scene." Id. at 51:21-25.

25. After her initial approach to the scene, Deputy Guidry begins to assist Mr. Parsa and did not observe the interactions between E.P. and the other Deputies. *Id*. at 53.

26. Deputy Guidry did not observe Deputy Vega use any "pain complaince" technique; she observed E.P. trying to get up and pull his hands in front of him and Deputy Vega trying to maintain control. *Id.*, at 66.

27. Deputy Guidry did not observe Deputy Vega choke or use a choke hold on E.P.. *Id*. at 66-67.

28. Deputy Guidry did not hear anyone say anything about E.P. being choked or unable to breath. *Id*. at 75-76.

29. Deputy Guidry did not perceive any need to "intervene," because "[n]o one was doing anything wrong." *Id*. at 73:20-21.

30. At some point, Deputy Guidry does recall Deputy Gaudet say "[l]et's put [E.P.] in the recovery position." *Id*. at 78:16-18.

   **4.     Deputy Estrada**

31. Deputy Estrada, in full JPSO uniform with sunglasses, can be seen next to Guidry at the 15:30 part of the video; he arrives on scene at the 14:57 mark of video. Exhibit 1. At the 17:31 mark, he can be seen opening his trunk to get leg shackles from his car. *Id*.

32. When Deputy Estrada arrived on scene he did not observe anything that required is assistance or intervention. *See* Deposition of Deputy Estrada, attached as Exhibit 5, at 97-100.

33.     Deputy Estrada did not observe Deptuy Vega choke E.P. or use any sort of choke hold on E.P. *Id*., at 113.

34.     Deputy Estrada did not hear E.P.'s mother or father, or anyone else say anything to the effect that E.P. was being choked. *Id*. at 118.

35.     Deputy Estrada was able to apply leg shackles to E.P. to prevent E.P. from kicking. *Id*. at 114-15.

36.     By the time that E.P. "went blue" other Deputies and EMS were already attending to E.P. *Id*., at 118.  Deputy Estrada "wasn't hands-on. As soon as [E.P.] went blue in the face, then, [E.P.] was[placed] in [the] recovery [position]." *Id*. at 122:8-10.

        **5.     Deputy Gaudet**

37.     Deputy Gaudet arrives in frame at the 17:53 mark and is seen approaching E.P.'s left side. Exhibit 1.

38.     Upon Deputy Gaudet's arrival, he assisted in placing E.P. in the recovery position; Deputy Gaudet had no other interaction with E.P. or the other Deputies and did not observe any of the interactions between E.P. and the other Deputies prior to that point. *See* Deposition of Deputy Gaudet, attached as Exhibit 6, at 101-103.

        Respectfully submitted,

        **/s/ James B. Mullaly**

_____
**FRANZ L. ZIBILICH, LSB# 14912**
**JAMES B. MULLALY, LSB#28296**
**MARTINY & ASSOCIATES, LLC**
131 Airline Highway
Suite 201
Metairie, Louisiana 70001
(504) 834-7676
(504) 834-5409 (fax)
e-mail: danny@martinylaw.com