UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONNA LOU, ET AL | * | CIVIL ACTION NO: 21-CV-80 |
| Plaintiffs | * | |
| | * | SECTION: D-2 |
| VERSUS | * | |
| | * | JUDGE: VITTER |
| | * | |
| JOSEPH P. LOPINTO, III, ET AL. | * | MAGISTRATE: CURRAULT |
| Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56, R. Doc. 144

**MAY IT PLEASE THE COURT:**

Defendant, Sheriff JOSEPH LOPINTO III, in his official capacity as the Sheriff of Jefferson Parish ("the Sheriff"), submits the following Reply Memorandum in support of his Motion for Summary Judgment (R. Doc. 144):

### GENERAL REPLY

First, as they have since the inception of this litigation with their "shotgun" Complaint, Plaintiffs' Opposition Memorandum (R. Doc. 156) bombards the Court with meaningless statements, legal conclusions not connected to any viable legal theory, immaterial and non-genuine statements of purported fact, legal conclusions, rank conjecture and speculation about, and inferences to be drawn from inferences not connected to legitimate facts.

For purposes of this Reply, Defendants do not address the first 16 pages of

Plaintiffs' opposition. There would be no point; there is not a single relevant, salient point.

## IV. PLAINTIFF HAS *NO* EVIDENCE TO SUPPORT A *MONELL* CLAIM VIA RATIFICATION, FAILURE TO TRAIN, AND FAILURE TO SUPERVISE/INVESTIGATE.

Here again, Plaintiffs seemingly recognize the appropriate legal standard, but choose to ignore it, misapply it, or both.

### A. RATIFICATION

This argument has been briefed and is before the Court. R. Docs. 150, 167. Defendants adopt and incorporate by reference as if copied *in extenso* the arguments submitted in opposition to Plaintiffs' Motion for Partial Summary Judgment on this issue pursuant to Fed. R. Civ. P. (10)(c). R. Doc. 167.

### B. FAILURE TO TRAIN OR SUPERVISE

Here, again, Plaintiffs would mislead the Court; they suggest subsets of *Monell* liability that are not as distinct as they would have the Court believe.

A Plaintiff can prove municipal liability by showing "either (1) that the policy itself violated federal law or authorized or directed the deprivation of federal rights or (2) that the policy was adopted or maintained by the municipality's policymakers `with `deliberate indifference' as to its known or obvious consequences.'" *Johnson v. Deep E. Tea. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (quoting *Bd. of County Comm'rs of Bryan County*

*v. Brown*, 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)).

A municipality can be liable for failure to train, supervise, or discipline its employees "when the municipality's failure shows a deliberate indifference to the rights of its inhabitants." *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). Deliberate indifference requires more than mere negligence. *See id*. A plaintiff must establish that "in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonable be said to have been deliberately indifferent to the need." *Id*. Deliberate indifference is difficult to base on a single incident. *See id*. "Claims of inadequate training generally require that the plaintiff demonstrate a pattern." *Id*. Moreover, the previous acts must be "fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act must have involved injury to a third party." *Id*. *Monell* plaintiffs must also establish both the causal link ("moving force") and the City's degree of culpability ("deliberate indifference" to federally protected rights). *Piotrowski v. City of Houston,* 237 F.3d 567, 580 (5th Cir. 2001).

The Supreme Court has stated "that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to

deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). In determining deliberate indifference on the basis of failure to train, the court, looks to whether the city's policymakers knew to a "moral certainty" that their police officers would be required to undertake certain common investigative actions. *Id*. at 390, 109 S.Ct. 1197 (stating that because city policymaker's know to a moral certainty that police must chase fleeing felons, failure to train officers on constitutional limitations imposed on use of deadly force against fleeing felons could amount to "deliberate indifference" to constitutional rights).

Normally "deliberate indifference" based on a failure to train theory requires proof of a pattern of constitutional violations. *See e.g., Roberts v. City of Shreveport*, 397 F.3d 287 (5th Cir.2005); *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir.2003) (stating that "to satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations"). The Supreme Court, however, has carved out a very narrow exception to the general rule, namely the "single incident" exception. *Id*. at 295 (citing *Bryan County*, 520 U.S. 397, 117 S.Ct. 1382). In analyzing the single incident exception, the Fifth Circuit stated: In [*Bryan*], the Supreme Court clarified pervious decisions that allow, in certain extreme circumstances, a single act by a municipal employee to form the basis of municipal liability apart from a pattern of unconstitutional activity. To rely on this

exception, a plaintiff must prove that the "highly predictable" consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the "moving force" behind the constitutional violation. Id. at 295. The court went on to state, "[t]his circuit, in conformity with the Supreme Court's jurisprudence, has been highly reluctant to permit this exception to swallow the rule that forbids mere *respondeat superior* liability." *Id*.

"That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *Harris*, 489 U.S. at 390-91, 109 S.Ct. 1197.

Moreover, "[i]t is not enough to say that more or different training ... would have prevented the result… in order to attach *Monell* liability." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 386 (5th Cir.2005). The *Harris* court warned that municipal liability was not to be so open-ended lest the municipality be open to *respondeat superior* liability. *Harris*, 489 U.S. at 392, 109 S.Ct. 1197.

To be fair, Plaintiffs clearly recognize that there is no pattern of similar unconstitutional conduct. Plaintiffs cite to one case where there was a finding of liability, *Williams v. Lee*, Case No. 89-11943 (Civil District for the Parish of Orleans). The incident in that case was over thirty (30) years old at the time of the

subject incident.

Plaintiffs thus recognize that their claim in this case, albeit wanting, is one arising out of the "single incident" exception.

In *Brown*, the Fifth Circuit found the single incident exception to apply when there was an utter failure to train and supervise. *Brown v. Bryan County, Okla.*, 219 F.3d 450, 462 (5th Cir. 2000). The Fifth Circuit later stated in *Cozzo v. Tangipahoa Parish Council*, 279 F.3d 273 (5th Cir. 2002), that the single incident exception applied in *Brown* because the county in that case "failed to provide any training or supervision for a young, inexperienced officer with a record of recklessness." *Cozzo*, 279 F.3d at 288 (internal quotation marks and citations omitted). The court also noted that "there is a difference between a complete failure to train as in [*Brown*] and a failure to train in one limited area."

Here, unlike *Brown*, there is simply no credible argument that the Defendants' training constituted a "complete failure to train." *Id*.

Plaintiffs do not even argue as much.

Rather, Plaintiffs submit wholly irrelevant, conclusory statements such as the training was "inadequate" or that the Sheriff failed to "properly" train the Defendants. Plaintiffs, and the Court, no doubt know well that these kinds of naked assertions fall far from *Monell* liability.

Indeed, Plaintiffs do not even acknowledge the extensive training referenced

in the Sheriff's Motion, let alone argue how it was somehow deficient.

Furthermore, Plaintiffs do not acknowledge the massive amount of training that the JPSO coordinated through the Coroner's Office that is directly relevant to this case. The training materials are so large that they cannot be uploaded for purposes of Defendants' Motion. However, a small fraction of the training materials is attached hereto as Exhibit 3 (a presentation on "law Enforcement Responses to People with Mental Illness).

The uncontradicted fact is that the Sheriff provided extensive training to JPSO Deputies in each, and every area of concern identified by Plaintiffs in this litigation.

This can end the Court's inquiry into this issue.

Moreover, and notwithstanding the foregoing, Plaintiffs failed to plead or to make any showing, even in the most cursory fashion, that any promulgated policy, pattern of misconduct, or alleged negligent training, supervision, etc. was the *moving force* behind the death of E.P.

Indeed, and again, Plaintiffs simply ignore this element.

There is simply no evidence adduced to support culpability or causation whatsoever.

Thus, even assuming Plaintiffs had made a showing of unconstitutionality, Plaintiffs' claims would still fail. Plaintiff is unable to offer any empirical evidence

relating to Defendants that could connect Plaintiffs' general theory to the facts of this case.

Accordingly, Plaintiffs' claims against the Sheriff in his official capacity should be dismissed as a matter of law.

### C. WRITTEN POLICY

Again, Plaintiffs offer mere argument and conclusory statements. Plaintiffs aver that "the [Sheriff's] policies fail to identify and provide policy guidance regarding active/passive resistance, positional asphyxia, prone restraint, the Americans with Disabilities Act, dealing with persons with intellectual disabilities/autism and the investigation of critical incidents and officer misconduct." R. Doc. 156, p. 23.

The Court does not have to accept Plaintiffs' mere conclusory statements. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949-1950 (2009).

There is no written policy, or a lack thereof. Even if there were, Plaintiffs would still fail, as there is no causation or culpability alleged or shown.

### CONCLUSION

For the foregoing reasons, as well of the reasons set forth in his original memorandum, the Sheriff, in his official capacity, is entitled to summary judgment.

Respectfully submitted,

**/s/ James B. Mullaly**

                                                                         _____
                                                              **FRANZ L. ZIBILICH, LSB#14914**
                                                              JAMES B. MULLALY, LSB#28296
                                                              MARTINY & ASSOCIATES, LLC
                                                              131 Airline Drive
                                                              Suite 201
                                                              Metairie, Louisiana 70001
                                                              Telephone: (504) 834-7676
                                                              Facsimile: (504) 834-5409
                                                              Email: mulljtc@gmail.com

## CERTIFICATE OF SERVICE

I do hereby certify that on this 1st day of May 2023, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system. I also certify that a copy of the foregoing will be sent to all non-CM/ECF participants by United States Mail, properly addressed and postage prepaid.

                                                                                                 *s/ James B. Mullaly*