UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONNA LOU, ET AL. | * | CIVIL ACTION NO. 21-80 |
| VERSUS | * | SECTION "D" (2) |
| SHERIFF JOSEPH P, LOPINTO, III, ET AL. | * | Judge Wendy B. Vitter<br>Magistrate Judge Donna P. Currault |

**Plaintiffs' Opposition to Defendants' Motions in Limine**

This case is about JPSO officers, including one hired for private detail work by Westgate, who secured a severely autistic child by putting him face down on the ground and then handcuffing his arms and shackling his legs. JPSO officers took turns sitting on the child until he asphyxiated and died.

Defendants have filed Motions in Limine. JPSO Defendants seek to exclude:

1. Evidence regarding certain allegations of the complaint.
2. Evidence of past misconduct by Defendants.

Plaintiffs oppose these two motions *in limine*.

Westgate Defendants seek to exclude:

1. Any mention of an insurance coverage, contract, and/or policy, including but not limited to that any judgment would be paid by an insurance policy.
2. Any mention of any insurance company that is not a party to this lawsuit
3. Evidence and/or testimony of prior incidents occurring on property owned by Westgate Defendants
4. Medical opinions from laypersons
5. References to settlement discussions
6. Evidence of other instances of wrongful arrests and the use of excessive force in making those arrests.

Of these, Plaintiffs oppose # 4 and 6 in part. They do not oppose # 1, 2, 3, and 5.

Plaintiffs' reasoning follows.

1

A.      **This Court should deny JPSO's motion regarding "paragraphs" of the complaint.**

JPSO Defendants moved to exclude: "any testimony or evidence of, or argument or reference to any allegations in Paragraphs 273-279, 289, 292, 294-295, 297, 305, 307, 309-312, 320-321, 325, 343-345, 350, 356-357, 365-384, and 391 (subparagraphs A, E, F, and I)." R. Doc. 182-1 at 1.

JPSO Defendants do not explain <u>why</u> evidence regarding these paragraphs should be excluded, except to say generally such evidence would be "not relevant to any claim before the Court and are beyond the scope of the litigation." *Id.* That is incorrect, as summarized in the following chart:

| Paragraphs | Description of Content | Relevance |
|---|---|---|
| 273-279 | These paragraphs discuss how E.P.'s parents were detained at the scene after E.P.'s death. | This evidence is relevant to Plaintiffs' claim for unlawful seizure. *See* R. Doc. 1 at ¶ 392(h) ("Unreasonable seizure without reasonable suspicion or probable cause, and a violation of substantive due process, in that Defendants prevented Donna Lou and Daren Parsa from leaving the scene to go the hospital.") |
| 289 | This paragraph discusses problems with the coroner's office's investigatory processes. | Defendants have listed coroner's office employees as witnesses, and the coroner's report as an exhibit. The coroner's processes are relevant to evaluating the reliability of that evidence. |
| 292, 294-295 | These paragraphs talk about past JPSO positional asphyxia deaths, and a 1994 JPSO memo addressing the risks of restraint in causing positional asphyxia. | This evidence shows that JPSO officials were or should have been aware of the risks of positional asphyxia.[1] |
| 297 | This paragraph discusses the "in-custody death of Keeven Robinson on May 10, 2018 related to asphyxia and blunt force injuries." | This evidence shows that JPSO officials were or should have been aware of the risks of positional asphyxia. |

---

[1] *See Darden v. City of Fort Worth*, 880 F.3d 722, fn 8 (5th Cir. 2018), noting that in *Gutierrez v. City of San Antonio*, 139 F.3d 441, 448–449 (5th Cir. 1998), the court found relevant to a restraint case that "San Antonio Police Department may have prohibited the practice or had notice of its potential dangers through a law enforcement study it possessed."

| 305 | This paragraph is an allegation regarding JPSO's "properly supervise, discipline or otherwise hold accountable deputies who failed to comply with the law, JPSO policy and training, including in this incident, and failed to exercise due care to properly protect individuals in JPSO custody from the known dangers of positional/compression asphyxia." | This evidence is related to Plaintiffs' *Monell* claim for failure to supervise and train.[2] |
| --- | --- | --- |
| 307 | This paragraph discusses JPSO's failure to use body-worn cameras, which could provide evidence. | This evidence is related to Plaintiffs' Monell claim for failure to supervise and train. |
| 309-312, 320-321 | These paragraphs discuss JPSO's failure to conduct post-critical incident reviews of in-custody deaths, and failure to discipline any deputies. | This evidence is related to Plaintiffs' *Monell* claim for failure to supervise and train. |
| 325 | "Triggers to E.P.'s behavioral outbursts included loud noises, such as yelling, loudspeakers, loud rumbling noises like garbage trucks, fire alarms, and too many people around him if he was experiencing an outburst." | This evidence is relevant to Plaintiffs' ADA claim, in that it is relevant to what accommodations could have been provided. |
| 343-345 | This paragraph discusses publicity regarding the "in-custody asphyxial death of Ethan Saylor, a 26-year-old with Down syndrome on January 12, 2013 in Maryland." | This evidence shows that JPSO officials were or should have been aware of the risks of positional asphyxia, particularly in the context of persons with developmental disabilities. |
| 350 | This paragraph discusses how persons with autism are more likely to have "low muscle tone, making them potentially more susceptible to injury or positional/compressional asphyxia related to prone restraint" and "respiratory issues such as asthma." | This evidence is relevant to Plaintiffs' ADA claim, in that it is relevant to what accommodations could have been provided. Further, this evidence is relevant to Plaintiffs' *Monell* claims for failure to train. Finally, this evidence is relevant for causation. |
| 356-357 | These paragraphs allege that it was "foreseeable that JPSO deputies would encounter persons who are autistic" and that deputies may have to "physically restrain persons who have ASD and | This evidence is relevant to Plaintiffs' ADA claim, in that it goes to the foreseeability of JPSO officers interacting with persons with autism. Further, this evidence is relevant to Plaintiffs' *Monell* claims for failure to train. |

---

[2] *Monell* can be proven by a government entity's deliberately indifferent failure to screen, train, or supervise its employees when the failure to act and the "inadequacy [of the existing practice is] so likely to result in the violation of constitutional rights, that the policymaker ... can reasonably be said to have been deliberately indifferent to the [plaintiff's rights]." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)); *Gomez v. Galman*, 18 F. 4th 769, 778 (5th Cir. 2021).

| | other intellectual and developmental disabilities." | |
|---|---|---|
| 365-384 | These paragraphs describe specific accommodations that Plaintiffs allege could have been provided to E.P. by Defendants. | This evidence is relevant to Plaintiffs' ADA claim, for the purpose of showing accommodations that could have been provided. Further, this evidence is relevant to Plaintiffs' Monell claims for failure to train. |
| 391 (subparagraphs A, E, F, and I) | These subparagraphs detail some of the constitutional rights that Plaintiffs allege Defendants violated. | This list of rights is relevant to Plaintiffs' constitutional claims under 42 USC § 1983. |

Accordingly, JPSO Defendants' motion should be denied in this regard.

**B.  Westgate's motion should be denied regarding "medical opinions from laypersons," insofar as it would excessively limit Plaintiffs' testimony.**

Westgate Defendants have asked this Court to order that "order that Plaintiffs, Plaintiffs' counsel, and Plaintiffs' non-expert witnesses ask no questions, make no comments, and give no testimony concerning any medical condition, medical diagnosis, or other inappropriate medical opinions." R. Doc. 185-1 at 2-3.

Their reasoning is that such testimony would violate the requirement for "the requisite expert disclosures." *Id*. at 2. Plaintiffs Dr. Lou and Dr. Parsa are both medical doctors, and Westgate Defendants' concern appears to be that Plaintiffs will attempt to offer expert opinion even though they were not designated as experts.

Plaintiffs do not intend to offer expert testimony. But it is too broad to forbid them from giving any "testimony concerning any medical condition," as they will need to be able to speak in plain terms about their son's autism and how it affected his life. Any opinion testimony offered by the Plaintiffs will be Rule 701 testimony – *i.e.*, opinion testimony by a lay witness that is rationally based on the witness's perception and not based on scientific, technical, or other specialized knowledge. For example, the Plaintiffs might offer their observation that keeping to a consistent, routine schedule of activities helped their son manage the symptoms of his autism.

For that reason, Plaintiffs suggest that this Court deny Westgate defendant's motion without

4

prejudice to them raising any concerns at trial.

**C.     Defendants' motions should be denied insofar as they seek to exclude evidence of individual defendants' past misconduct, as that is relevant to Plaintiffs' *Monell* and negligent supervision claims.**

Both JPSO and Westgate Defendants ask this Court to exclude any reference to past uses of force or other misconduct by defendants. R. Doc. 182-1 at 2 *et seq*.; 185-1 at 3-4.

Westgate argues that such evidence is not relevant because it is "not probative of the issue at hand," and would be confusing and prejudicial. R. Doc. 185-1 at 4. JPSO argues that such evidence is not relevant, and would be improper "prior bad acts" evidence that is not admissible "to prove the character of a person in order to show that he acted in conformity therewith." R. Doc. 182-1 at 2 *et seq*.

But if Plaintiffs offer any evidence regarding past misconduct at trial, it will be to support their *Monell* claim or their negligence claim – and not "to prove the character of a person." In this case, Plaintiffs plead a *Monell* theory of Failure to Supervise.[3] That claim is based on Fifth Circuit caselaw that *Monell* can be established where a government entity's deliberately indifferent failure to screen, train, or supervise its employees is "so likely to result in the violation of constitutional rights, that the policymaker ... can reasonably be said to have been deliberately indifferent to the [plaintiff's rights]."[4] Plaintiffs also plead a claim for negligent supervision.[5] That claim is based on Louisiana law that allows for tort liability "based on the employer's alleged direct negligence in hiring, retaining, or supervising the employee."[6] JPSO Defendants did not file a dispositive motion regarding either theory.[7]

Individual defendant's past misconduct is relevant for these claims. To the extent that

---

[3] R. Doc. 1 at ¶¶ 305, 309, 409, 417(f)
[4] *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)); *Gomez v. Galman,* 18 F. 4th 769, 778 (5th Cir. 2021).
[5] R. Doc. 1 at ¶ 474.
[6] *Gomez, citing Kelley v. Dyson*, 10 So. 3d 283, 287 (La. App. 5 Cir. 2009).
[7] See R. Doc. 144-1 at 10 et seq. (motion for summary judgment on *Monell* addressed only with failure-to-train theory).

5

individual defendants have a history of misconduct, then the Sheriff may have been negligent or deliberately indifferent in hiring or retaining them despite the misconduct, or in failing to discipline them along the way. For this reason, the evidence would not be barred by Rule 608(b) – because it is not offered "for the purpose of attacking or supporting the witness' credibility." It would not be barred by 404(b), because it is not offered to prove the character of a person in order "to show that he acted in conformity therewith." And it is more probative than prejudicial, because it is difficult to show a failure to supervise without reference to specific failures of supervision.

### D. Conclusion

Defendants' Motions should be denied as described above.

RESPECTFULLY SUBMITTED,

Andrew C. Clarke (TN BPR # 15409)
The Cochran Firm Midsouth
One Commerce Square, Suite 1700
(901) 523-1222 (Telephone)
aclarke@cochranfirmmidsouth.com

*/s/ William Most*
WILLIAM MOST (BPR # 36914)
Most & Associates
201 St. Charles Ave., Ste. 114 #101
New Orleans, LA 70170
Tel: (504) 509-5023
williammost@gmail.com