## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DONNA LOU, ET AL.**                              **CIVIL ACTION**

**VERSUS**                                                      **NO. 21-80**

**JOSEPH P. LOPINTO, III, ET AL.**          **SECTION: D (2)**

### ORDER AND REASONS

Before the Court is Plaintiff's [sic] Motion For Partial Summary Judgment, filed by Donna Lou and Daren Parsa (collectively, "Plaintiffs").[1] Defendant, Sheriff Joseph P. Lopinto, III, in his official capacity as the Sheriff of Jefferson Parish ("Sheriff Lopinto"), opposes the Motion,[2] and Plaintiffs have filed a Reply.[3] Plaintiffs have also filed a Supplement in Support of Motion for Partial Summary Judgment,[4] and a Notice of Supplemental Authority.[5]

After careful consideration of the parties' memoranda and the applicable law, the Motion is **DENIED in part and DENIED in part, as moot.**

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This is a civil rights case brought pursuant to 42 U.S.C. § 1983 stemming from the death of E.P., Plaintiffs' 16-year-old child who suffered from severe autism, at the hands of Jefferson Parish Sheriff's Office ("JPSO") deputies on January 19, 2020. Plaintiffs allege that on January 19, 2020, E.P. accompanied his parents on an outing to Laser Tag located in the Westgate Shopping Center in Metairie, Louisiana, and

---

[1] R. Doc. 93.
[2] R. Doc. 96.
[3] R. Doc. 101.
[4] R. Doc. 104.
[5] R. Doc. 131.

that as they were returning to their car in the parking lot, E.P. began to experience a sudden sensory outburst or "meltdown" caused by and related to his severe autism.[6] Plaintiffs claim that E.P. began slapping himself in the head, which is a common physical trait for many persons with severe autism, and began slapping and grabbing at his father, and even bit his father, during his meltdown.[7]  According to Plaintiffs, the manager at the Laser Tag, who was familiar with the family, asked Donna Lou if she wanted the manager to call the police on the family's behalf for assistance and Plaintiffs responded affirmatively.[8]

Plaintiffs assert that the shopping center where Laser Tag is located, Westgate Shopping Center, is owned and operated by Victory Real Estate Investments LA, LLC, and that Victory d/b/a Westgate Shopping Center hired, authorized, and/or provided security officers for its tenants, customers, and visitors.[9]  Plaintiffs allege that the manager of Laser Tag called Deputy Pitfield, "a JPSO Reserve Deputy, assigned to Crime Scene for the Sheriff's office and working 'off-duty'/'public assignment' on the premises of the Westgate Shopping Center.[10]  Plaintiffs allege that the Laser Tag manager informed Deputy Pitfield that a man and his autistic son were in a confrontation outside and assistance was needed.[11]  According to Plaintiffs, defendant, Deputy Chad Pitfield, arrived on the scene first.[12]  Plaintiffs allege that E. P. began slapping at himself, his father, and Deputy Pitfield and that Deputy

---

[6] R. Doc. 1 at ¶¶ 29-33.
[7] *Id*. at ¶¶ 35-40.
[8] *Id*. at ¶ 41.
[9] *Id*. at ¶¶ 42-43.
[10] *Id*. at ¶¶ 46-47.
[11] *Id*. at ¶¶ 48.
[12] *Id*. at ¶¶ 56-59.

Pitfield took E.P. to the ground.[13]   Plaintiffs assert that several JPSO officers subsequently arrived on the scene minutes later.[14]   Plaintiffs allege that when the officers arrived, E.P. was held down in a prone position, on his stomach, handcuffed, shackled, arms and legs held down, head, shoulder, and neck encircled by the arm of a deputy, with JPSO deputies applying their own body weight as a restraint, while E.P. was suffering from an acute sensory episode or "outburst" related to, and caused by, his severe autism.[15]   Plaintiffs also allege that the JPSO deputies knew E.P. was obese and that he was autistic, but that they persisted in "dangerously and forcefully retaining E.P. without appropriately monitoring his condition, until they killed him."[16]

Pertinent to the instant Motion, Plaintiffs allege that instead of conducting a critical incident review of E.P.'s death, JPSO officers "engaged in an attempt to use their police powers to collect information in an effort to insulate themselves from liability."[17]   Plaintiffs allege that JPSO obtained and served several criminal search warrants on E.P.'s doctors, even though JPSO "conceded that it was not investigating a crime."[18]   Plaintiffs also allege that JPSO caused the St. Charles Parish Sheriff's Office to request and obtain a search warrant for E.P.'s school records on the basis of a "violation of a pending death investigation" and "generalized law enforcement

---

[13] *Id*. at ¶¶ 67-68.
[14] *Id*. at ¶¶ 47-48, 56-60, 64-76, 82-83, 107, 126, 136, & 157.
[15] *Id*. at ¶ 2.
[16] *Id*. at ¶ 3.
[17] *Id*. at ¶ 313.
[18] *Id*.

inspection."[19]  Plaintiffs allege that these warrants were absurd on their face because they did not seek the fruits, instrumentalities, or evidence of a crime.[20]

On January 14, 2021, Plaintiffs filed an 80-page Complaint in this Court, asserting four causes of action against several individuals and entities, including the JPSO deputies involved in E.P.'s death, Chad Pitfield, Ryan Vaught, Steven Mehrtens, Shannon Guidry, Nick Vega, Manuel Estrada, and Myron Gaudet (collectively, the "JPSO Deputy Defendants"), in their individual and official capacities, as well as Sheriff Lopinto, in both his individual and official capacities.[21] In Count One, Plaintiffs assert civil rights claims pursuant to 42 U.S.C. § 1983 against the JPSO Deputy Defendants, in their individual and official capacities, alleging that their actions in using excessive and unreasonable  force in the seizure and restraint of E.P. and in  failing to intervene or act to prevent such actions violated E.P.'s  and Plaintiffs' rights under the First, Fourth, Ninth, and Fourteenth Amendments.[22]  In Count Two, Plaintiffs assert civil rights claims pursuant to § 1983 against Sheriff Lopinto, in his individual and official capacities, alleging that the actions of the JPSO Deputy Defendants which contributed to and resulted in E.P.'s death and Sheriff Lopinto's deliberately indifferent policies, practices, and customs violated the federal and state constitutional and statutory rights of E.P. and Plaintiffs.[23]  In Count Three, Plaintiffs assert official capacity claims against Sheriff

---

[19] *Id*. at ¶ 314.
[20] *Id*. at ¶ 315 (citation omitted).
[21] *Id*. at ¶¶ 16-24.
[22] *Id*. at ¶¶ 385-404.  *See, Id*. at ¶ 386.
[23] *Id*. at ¶¶ 405-429.  *See, Id*. at ¶ 408.

Lopinto based upon violations of Title II of the Americans with Disabilities Act (the "ADA") and Section 504 of the Rehabilitation Act ("RA"), alleging that the JPSO Deputy Defendants knew that E.P. had autism and failed to reasonably accommodate him or to avoid discriminating against him based upon his disability.[24]  Finally, in Count Four, Plaintiffs assert claims against all of the defendants "in all capacities" under Louisiana constitutional and state law and, specifically, Louisiana's wrongful death and survival action statutes.[25]

In the instant Motion, Plaintiffs seek summary judgment "on their Fourth Amendment claim for unconstitutional search warrants" against Sheriff Lopinto, in his official capacity.[26]  Plaintiffs allege that on January 20, 2020, the day after E.P.'s death, JPSO began seeking criminal search warrants for information about E.P.'s background, including his medical and school records.  Specifically, Plaintiffs assert that JPSO's Keith Dowling submitted warrant applications and obtained seven warrants pertaining to the following: (1) E.P.'s East Jefferson General Hospital EMS records; (2) any and all medical records from E.P.'s hospital visit on January 19, 2020; (3) Daren Parsa's (E.P.'s father's) East Jefferson medical records; (4) E.P.'s high school records in St. Charles Parish (through the St. Charles Parish Sheriff's Office); (5) all of E.P.'s pediatric medical records from Ormond Pediatrics and Doctor Thomas Babin; (6) unedited video footage in the possession of WWL TV station (through the

---

[24] *Id.* at ¶¶ 430-456.
[25] *Id.* at ¶¶ 457-481.  *See, Id.* at ¶ 466.
[26] R. Doc. 93 at pp. 1 & 2; R. Doc. 93-1 at p. 1.

New Orleans Police Department); and (7) the contents of a DVR device obtained from E.P.'s school, containing video surveillance of E.P. in the classroom.[27]

Plaintiffs assert that none of the search warrant applications identify an alleged crime, that a JPSO representative testified that JPSO had no reason to suspect that a crime had been committed, and that, as such, the warrants violate the Fourth Amendment.[28]  Plaintiffs point out that the JPSO representative also testified that the use of these search warrants was consistent with JPSO and Sheriff Lopinto's directives.[29]  Plaintiffs contend that they seek to hold Sheriff Lopinto liable in his official capacity for constitutional violations under *Monell v. Department of Social Services of City of New York*, which imposes liability upon a policymaker when there is an official policy and a violation of constitutional rights whose "moving force" is the policy or custom.[30]  Plaintiffs then seem to assert that the warrants obtained by JPSO violate the Fourth Amendment,[31] and that, "the constitutional violations either flowed from JPSO policy or were subject to subsequent ratification – either of which is sufficient to satisfy *Monell*."[32]  Plaintiffs further assert that because there cannot be any suppression of evidence in this context, when there is no suspected crime, "The *only* legal check on these constitutional violations is through Section 1983."[33]  As such, Plaintiffs assert that they are entitled to partial summary judgment "on

---

[27] R. Doc. 93-1 at pp. 2-4 (*citing* R. Doc. 93-4).
[28] R. Doc. 93 at p. 1; R. Doc. 93-1 at pp. 1-6 (*citing* R. Docs. 93-4 & 93-5).
[29] R. Doc. 93-1 at pp. 6-7 (*quoting* R. Doc. 93-5).
[30] R. Doc. 93-1 at p. 10 (citing *Monell*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).
[31] R. Doc. 93-1 at p. 13.
[32] *Id.* at p. 15.
[33] *Id.* at p. 16 (emphasis in original).

Plaintiffs' Fourth Amendment claim for unconstitutional use of search warrants, against Sheriff Lopinto in his official capacity."[34]

Sheriff Lopinto argues that the Motion should be denied because Plaintiffs lack standing to sue for any alleged search of E.P.'s records.[35]  Sheriff Lopinto also asserts that Plaintiffs did not plead a cause of action and otherwise have no actionable privacy right regarding the records sought from WWL TV station,[36] Plaintiffs did not plead a cause of action for any alleged unlawful search of Darren Parsa's medical records,[37] and Plaintiffs have failed to show that Sheriff Lopinto had an unconstitutional policy or practice that was the moving force behind any alleged constitutional violation because there was no underlying constitutional violation.[38] The majority of the Opposition brief is dedicated to Sheriff Lopinto's argument that Plaintiffs' Motion as to the fourth warrant, concerning Darren Parsa's medical records from January 19, 2020, should be denied on the merits because Plaintiffs have failed to show an underlying constitutional violation to support their *Monell* claim.[39] Sheriff Lopinto claims that the Louisiana Supreme Court has "expressly acknowledged and ratified the existence of investigatory warrants,"[40] and that Plaintiffs' suggestion that the affidavit lacks probable cause under the totality of the circumstances "in a case involving the undetermined cause of death of a minor during

---

[34] *Id.*
[35] R. Doc. 96 at pp. 4-8.
[36] *Id.* at pp. 8-10.
[37] *Id.* at p. 9.
[38] *Id.* at pp. 1, 3, & 10-22.
[39] *Id.* at pp. 10-22.
[40] *Id.* at p. 21 (citing *State v. Skinner*, 2008-2522 (La. 5/5/09), 10 So.3d 1212, 1218).

an interaction with law enforcement is beyond the pale of absurd."[41]   Sheriff Lopinto asserts that, given the totality of the circumstances, the affidavit stated probable cause that the records sought had a sufficient nexus to the potential criminal activity that was being investigated – the use of force by law enforcement officials.[42]   As such, Sheriff Lopinto argues that the Motion should be denied.

In response, Plaintiffs withdraw their Fourth Amendment claim as to the warrant pertaining to the WWL TV station video footage, but maintain that they are otherwise entitled to summary judgment on their Fourth Amendment claim.[43] Plaintiffs assert that Sheriff Lopinto failed to present any evidence to show that there are material facts in dispute.[44]   Plaintiffs also assert that they have standing to sue on E.P.'s behalf under 42 U.S.C. § 1988 and Louisiana's survival action and wrongful death statutes.[45]   As to Sheriff Lopinto's assertion that Plaintiffs have not alleged a cause of action regarding the warrant for the WWL TV video footage or the warrant for Darren Parsa's medical records, Plaintiffs claim that the Complaint alleged sufficient facts to establish a plausible Fourth Amendment claim regarding the warrants.[46]   Alternatively, Plaintiffs request leave to amend their Complaint "to list each unconstitutional search warrant."[47]   Finally, Plaintiffs assert that Sheriff Lopinto's counsel's argument regarding probable cause as to the warrant pertaining to Darren Parsa's medical records contradicts the deposition testimony of the JPSO

---

[41] R. Doc. 96 at p. 22.
[42] *Id.*
[43] R. Doc. 101 at pp. 1-2.
[44] *Id.* at pp. 2-4.
[45] *Id.* at pp. 4-6.
[46] *Id.* at pp. 6-7 (*citing* R. Doc. 1 at ¶¶ 12, 313-314, 315-318, 368, & 391).
[47] R. Doc. 101 at p. 7.

corporate representative that there was no suspicion that an officer had committed a crime when the warrants were sought.[48]

Plaintiffs filed a Supplemental Brief in further support of their Motion, advising the Court that during a September 13, 2022 deposition, Detective Keith Dowling of the JPSO testified that he did not have probable cause for the search warrants that he sought, obtained, and executed.[49]  Plaintiffs also filed a Notice of Supplemental Authority, alerting the Court to a recent decision from another Section of this Court, *Nevarez v. Coleman*, Civ. A. No. 21-1855, which involved similar issues and which may be helpful in the Court's review of Plaintiffs' Motion.[50]

## II.   LEGAL STANDARD

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[51]  A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[52]  If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can

---

[48] *Id.* at pp. 7-9.
[49] R. Doc. 104.
[50] R. Doc. 131 (*citing* R. Doc. 131-1).
[51] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).
[52] *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

satisfy a reasonable jury that it is entitled to a verdict in its favor.[53]  This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[54]  Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[55]  In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[56]

## III.   ANALYSIS

### A. Plaintiffs are not entitled to summary judgment because it is unclear whether they have alleged a Fourth Amendment claim against Sheriff Lopinto, in his official capacity, based upon the criminal search warrants.

In light of Plaintiffs' decision to "withdraw their Fourth Amendment claim regarding" the WWL TV station warrant,[57] the Court denies the Motion, as moot, as to Plaintiffs' request for summary judgment on that claim.  Turning to the remainder of Plaintiffs' Motion, Plaintiffs repeatedly assert that they are entitled to partial summary judgment on their "Fourth Amendment claim for unconstitutional use of

---

[53] *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.
[54] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[55] *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.
[56] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[57] R. Doc. 101 at p. 2.

search warrants, against Sheriff Lopinto in his official capacity."[58]  Plaintiffs claim that there are no facts in dispute and that the only question before the Court is a legal one: whether it was "constitutional for Sheriff Lopinto's deputies to seek, obtain, and execute criminal search warrants in the absence of any suspected crime."[59]  After careful review of the allegations in the Complaint, however, the Court finds that Plaintiffs have not asserted a Fourth Amendment claim against Sheriff Lopinto, in his official capacity, based upon the criminal search warrants obtained by JPSO shortly after E.P.'s death.

The Court recognizes that the Complaint contains allegations regarding some of the criminal search warrants obtained by JPSO shortly after E.P.'s death, namely the warrants concerning E.P.'s medical and school records.[60]  In the Complaint's statement of facts, Plaintiffs allege that, "Instead of conducting a critical incident review of an in-custody death, JPSO officers engaged in an attempt to use their police powers to collect information in an effort to insulate themselves from liability," and that "JPSO" obtained and served criminal search warrants upon E.P.'s doctor "even though JPSO conceded that it was not investigating a crime."[61]  Plaintiffs also allege that, "JPSO caused St. Charles Parish Sheriff's Office to request and obtain a search warrant for E.P.'s school records, on the basis of a 'violation of a pending death investigation' and 'generalized law enforcement inspection."[62]  Plaintiffs then allege

---

[58] R. Doc. 93-1 at p. 16; *See, Id*. at p.  2; R. Doc. 93 at p. 2.
[59] R. Doc. 93-1 at p. 2.
[60] R. Doc. 1 at ¶¶ 312-319.
[61] *Id*. at ¶¶ 312-313.
[62] *Id*. at ¶ 314.

that, "These warrants were on their face absurd.  A proper search warrant can only seek the fruits, instrumentalities, or evidence of a crime,"[63] and that neither a "violation of a pending death investigation" nor "generalized law enforcement inspection" describes a crime.[64]  Plaintiffs allege that, "In choosing to inadequately and inappropriately investigate the cause of E.P.'s death, Sheriff Lopinto ratified the JPSO Deputy Defendants' actions which led to E.P.'s death."[65]  Plaintiffs further assert that Sheriff Lopinto acted with deliberate indifference in failing to require or conduct an "Internal Affairs or critical incident investigation" of E.P.'s death and in failing to take disciplinary action against any of the deputies involved, thereby ratifying and condoning the actions of his deputies.[66]  The Complaint, however, contains no other reference to the criminal search warrants or a purported Fourth Amendment violation stemming therefrom.

A review of the four causes of action alleged in the Complaint further demonstrates that Plaintiffs have not asserted a Fourth Amendment claim against Sheriff Lopinto, in his official capacity, based upon the criminal search warrants.  In Count One, Plaintiffs assert claims against the JPSO Deputy Defendants, in their individual and official capacities, pursuant to 42 U.S.C. § 1983, based upon the actions leading up to, and shortly after, E.P.'s death.[67]  Specifically, Plaintiffs allege that:

---

[63] *Id*. at ¶ 315 (citing *United States v. Lefkowitz*, 285 U.S. 452, 465-66, 52 S.Ct. 420, 76 L.Ed.2d 877 (1932)).
[64] R. Doc. 1 at ¶ 316.
[65] *Id*. at ¶ 319.
[66] *Id*. at ¶¶ 320-322.
[67] *Id*. at ¶¶ 385-404.

386. The actions of the seven JPSO Deputy Defendants . . . in using excessive and unreasonable force in the seizure and restraint of E.P. and in failing to intervene or act to prevent such actions . . . violated the rights of E.P.. [sic] and his parents, Donna Lou and Daren Parsa, as guaranteed under the First, Fourth, Ninth, and Fourteenth Amendments to the U.S. Constitution, to privacy, liberty, due process, equal protection, to be free from unreasonable search and seizure and to be free from the unjustifiable and excessive use of force, all in violation of 42 USC 1983.[68]

Plaintiffs also assert that the JPSO Deputy Defendants unlawfully seized and prevented Plaintiffs "from going to the hospital to be near and with their son E.P.," and failed to intervene or act to prevent such seizure, which "violated the plaintiffs' rights as guaranteed under the First, Fourth, Ninth, and Fourteenth Amendments to the U.S. Constitution, to privacy, liberty, due process, equal protection, to be free from unreasonable seizure [sic]."[69]  Plaintiffs further assert that, "The Fifth Circuit has held that a suspect's mental impairment is an important fact in determining whether force was reasonable in the context of [sic] constitutional analysis,"[70] and that, "The force used on E.P. – specifically, a quarter-ton of weight on E.P.'s chest for the nine minutes and six seconds – was excessive."[71]  Count One does not reference the criminal search warrants obtained by JPSO.  Additionally, none of the JPSO

---

[68] *Id*. at ¶ 386.  *See. Id*. at ¶ 391 (alleging that the JPSO Deputy Defendants violated E.P.'s rights under the First, Fourth, Ninth, and Fourteenth Amendments in violation of § 1983, including, in pertinent part, "The right to freedom from unreasonable seizure," and, "The right to freedom from the use of unreasonable, unjustified, and excessive force and summary punishment.").

[69] *Id*. at ¶ 390.  *See, Id*. at ¶ 392(h) (alleging that the JPSO Deputy Defendants violated Plaintiffs' rights under the First, Fourth, Ninth, and Fourteenth Amendments in violation of § 1983, including, in pertinent part, "Unreasonable seizure without reasonable suspicion or probable cause, and a violation of substantive due process, in that Defendants prevented Donna Lou and Daren Parsa from leaving the scene to go the [sic] hospital.").

[70] *Id*. at ¶ 395 (citing *Rockwell v. Brown* 664 F.3d 985, 992 (5th Cir. 2011)).

[71] R. Doc. 1 at ¶ 402.

Deputy Defendants are alleged to have been the individuals who sought, obtained, or executed the warrants at issue.[72]

Viewing these allegations in the light most favorable to the non-moving party, Sheriff Lopinto, as this Court is bound to do,[73] the Court finds that Count One does not assert a Fourth Amendment claim against Sheriff Lopinto, in his official capacity, or against the JPSO Deputy Defendants based upon the criminal search warrants obtained by JPSO.

Turning to Count Two, which contains "Constitutional and Civil Rights Claims Against Sheriff Joseph P. Lopinto III in his Individual and Official Capacity,"[74] Plaintiffs allege that as a direct result of the actions of the JPSO Deputy Defendants and "the deliberately indifferent policies, practices and customs of the defendant Sheriff Lopinto, the constitutional and statutory rights, federal and state, of E.P. and his parents, were violated . . . ."[75] Plaintiffs allege that, "Sheriff Lopinto failed to properly screen, hire, train, investigate and discipline officers, including the Officer-Defendants,"[76] and that, "Sheriff Lopinto permitted, encouraged, tolerated, and knowingly acquiesced in an official pattern, practice or custom of JPSO Deputies, including JPSO Defendant Deputies, of violating the constitutional rights of the public at large, including E.P. and the Plaintiffs."[77] Plaintiffs further allege that,

---

[72] Plaintiffs allege in their Motion and Supplemental Brief that "JPSO's Keith Dowling" sought, obtained, and executed the search warrants for the hospital, EMS, and pediatric medical records and requested that St. Charles Parish Sheriff's Office request and obtain a search warrant for E.P.'s school records. *See,* R. Doc. 93-1 at pp. 2-4 (*citing* R. Doc. 93-4); R. Doc. 104 at pp. 1 & 2;  R. Doc. 1, ¶ 314.
[73] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[74] R. Doc. 1 at p. 65.
[75] *Id*. at ¶ 408.
[76] *Id*. at ¶ 410.
[77] *Id*. at ¶ 411.

"Sheriff Lopinto had been put on notice of the need for policy and training due to the past positional and compressional asphyxiation deaths of persons in JPSO custody."[78] Only one paragraph in Count Two lists the constitutional rights allegedly violated by Sheriff Lopinto, wherein Plaintiffs allege that:

> 414. The actions of the JPSO Deputy Defendants as described herein, were unjustified, unreasonable, unconstitutional, excessive and grossly disproportionate to the actions of E.P., if any, and constituted an *unreasonable search and seizure effectuated through the use of excessive and deadly force* and a deprivation of Plaintiffs and E.P.'s constitutional rights secured to them by the First, *Fourth*, Ninth, and Fourteenth Amendment of the United States Constitution.[79]

There is no other reference to the Fourth Amendment and no reference to an unconstitutional search or seizure related to the application for or execution of search warrants in Count Two of the Complaint.[80]

Plaintiffs further allege in Count Two that Sheriff Lopinto, individually and in his official capacity, was under a constitutional duty to provide his deputies, including the JPSO Deputy Defendants, "proper policy guidance" and "proper training" to perform law enforcement functions including stops, searches, seizures, . . . use of force, including deadly force, use of restraints, and the protection of individual's civil rights . . . ."[81] Plaintiffs allege that Sheriff Lopinto also had a constitutional duty "to properly monitor and supervise his deputies, including the Defendant Deputies, for compliance with the policies, practices and customs of the JPSO with respect to stops,

---

[78] *Id.* at ¶ 412.
[79] *Id.* at ¶ 414 (emphasis added).
[80] *See*, *Id.* at ¶¶ 405-429.
[81] *Id.* at ¶ 409.

searches, seizures, . . . use of force, . . . and the protection of individual's civil rights."[82] The Court notes that while Plaintiffs reference searches in this paragraph of the Complaint, there is no reference to the Fourth Amendment or to the warrants at issue.  Plaintiffs further allege that, "Sheriff Lopinto is liable for the unconstitutional and discriminatory actions of the defendant deputies as described herein, due to the following policies, procedures, rules, practices, customs and/or usages of JPSO which were in effect at the time of this incident and which were the underlying cause of the death of E.P. and the injuries of the Plaintiffs . . . ."[83]  Plaintiffs then proceed to list seven categories of such policies, procedures, or customs, including a failure to have adequate written policy guidance or training regarding certain law enforcement activities, including "2) searches; 3) seizures" and "7) use of force, including deadly force," and a failure to train and educate officers regarding use of force applications "which he knew, must have known or should have known, that deputies were utilizing in the field and which posed a serious risk of injury or death . . . ."[84]  The Court again notes that while Plaintiffs reference searches, there is no specific reference to a Fourth Amendment violation or to the criminal search warrants at issue.

Plaintiffs do not reference any policy or custom regarding the acquisition of criminal search warrants in Count Two.  Instead, Plaintiffs assert that the constitutional violations alleged in Count Two are based upon policies "which were in effect at the time of this incident and which were the underlying cause of the death

---

[82] *Id*.
[83] *Id*. at ¶ 417.
[84] *Id*. at 417(a)-(g).

of E.P. and the injuries of the Plaintiffs . . . ."[85]   While Plaintiffs allege that Sheriff

Lopinto "is also directly responsible for the actions of the JPSO Deputy Defendants .

. . by virtue of the fact that he failed to require or perform an adequate investigation

of this critical incident involving an in-custody death of an autistic 16-year old

minor,"[86] there is no allegation that either the JPSO Deputy Defendants or Sheriff

Lopinto violated the Fourth Amendment through the criminal search warrants

obtained by JPSO.   Nonetheless, it remains unclear to the Court whether Plaintiffs

have alleged a Fourth Amendment claim against Sheriff Lopinto, in his official

capacity, based upon the criminal search warrants in Count Four of the Complaint.

Additionally, Sheriff Lopinto did not argue in his Opposition brief that Plaintiffs

failed to allege a Fourth Amendment claim based upon the criminal search warrants

concerning E.P.'s school and medical records.[87]   While Sheriff Lopinto asserts that,

"Plaintiffs simply did not plead in their exhaustive Complaint any claim arising out

of any alleged search of Mr. Darren Parsa's medical records from January 19, 2020,"[88]

Sheriff Lopinto devotes the majority of his brief arguing the merits of Plaintiffs'

---

[85] *Id*. at ¶ 417.

[86] *Id*. at ¶ 424.  *See also*, *Id*. at ¶ 409 (alleging that Sheriff Lopinto "was under a constitutional duty: .
. . (5) to properly investigate, discipline and hold accountable his deputies, including the Defendant
Deputies, for violation of the policies, practices and customs of the JPSO."); ¶ 416 (alleging that Sheriff
Lopinto condoned the actions of the JPSO Deputy Defendants "by failing to properly investigate,
discipline and hold accountable the JPSO Deputy Defendants for their actions."); ¶ 417(g) (alleging
that Sheriff Lopinto had a policy of failing "to adequately respond to and investigate critical incidents
and/or complaints by civilians regarding misconduct by JPSO deputies, including Defendant Deputies,
with respect to . . . 2) searches; 3) seizures; . . . 7) use of force, including deadly force . . . .").

[87] The Court notes that Sheriff Lopinto argued that, "Plaintiffs did not plead a cause of action and
otherwise have no actionable privacy right with regard to the *records* sought from WWLTV," and that,
"Plaintiffs did not plead a cause of action for any alleged unlawful search of Mr. Parsa's medical
records."  R. Doc. 96 at pp. 3 & 8-10 (emphasis added).

[88] *Id*. at p. 10 (*citing* R. Doc. 1).

Motion with respect to the warrant pertaining to Darren Parsa's medical records.[89] As such, it remains unclear to the Court whether Count Two contains a Fourth Amendment claim against Sheriff Lopinto, in his official capacity, based upon the criminal search warrants sought by JPSO.

In Count Three, Plaintiffs assert claims against Sheriff Lopinto, in his official capacity, based upon violations of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act ("RA").[90] Plaintiffs allege that, "In compliance with the 5th Circuit's ruling in *Hainze*, Plaintiffs assert their ADA/RA claims against Defendants for their actions *after* E.P. was fully handcuffed by defendants Pitfield and Vaught, following which the Officer-Defendants . . . treated E.P. in ways inappropriate to his disability even *after* securing the scene, as described herein."[91] Plaintiffs further assert that, "the Fifth Circuit's decision in *Hainze* should be revisited and reconsidered as in error," and clarify that they are also asserting "violations of the ADA and Rehabilitation Act in the events leading up to the initial restraint of E.P."[92] While not a model of clarify, Plaintiffs seem to allege that the JPSO Deputy Defendants knew that E.P. had autism and chose to both discriminate against him and to not accommodate him.[93] Specifically, Plaintiffs allege that, "Despite the Defendants' knowledge of the obligation to accommodate persons with disabilities and avoid discrimination – including individuals that have autism –

---

[89] R. Doc. 96 at pp. 10-22.
[90] R. Doc. 1 at ¶¶ 430-456.
[91] *Id*. at ¶ 438 (emphasis in original) (citing *Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000)).
[92] R. Doc. 1 at ¶ 439.
[93] *Id*. at ¶¶ 442-451.

Defendants did not take adequate steps to accommodate E.P. nor did the Defendants take adequate steps to avoid discrimination on the basis of disability." [94] Alternatively, Plaintiffs allege that, "Defendants' failure to promulgate policies and/or practices to accommodate individuals with autism has and had a predictable disparate impact on persons with disabilities, including E.P." [95]   According to Plaintiffs, "Because Defendants failed to reasonably accommodate E.P.'s disability, he suffered greater injury, suffering, indignity and death, than individuals without an intellectual/developmental disability who are handcuffed, secured and then placed in recovery position while in custody of the JPSO." [96]   Count Three contains no reference to the Fourth Amendment or to the criminal search warrants obtained by JPSO.   Accordingly, the Court finds that Plaintiffs have not alleged a Fourth Amendment claim against Sheriff Lopinto, in his official capacity, based upon the search warrants in Count Three.

Finally, Count Four alleges violations of the Louisiana Constitution and Louisiana state law "against all Defendants in All Capacities." [97]   Plaintiffs allege that the "actions of the defendants as described herein" violated the Louisiana Constitution because they resulted in wrongful death, assault, battery, false arrest, false imprisonment, intentional infliction of emotional distress, loss of liberty, and violation of the rights to be secure against unreasonable seizures, the unjustifiable and excessive use of force and the right to privacy, as well as the right to equal

---

[94] *Id.* at ¶ 452.
[95] *Id.* at ¶ 453.
[96] *Id.* at ¶ 545.
[97] *Id.* at p. 74; *See, Id.* at ¶¶ 457-481.

protection of the laws and to be protected from unreasonable discrimination because of a physical condition, the right to due process, and the right to freedom of movement.[98]   Plaintiffs allege that they are the surviving parents of E.P. and, therefore, are the proper plaintiffs under La. Civ. Code arts. 2315.1 and 2315.2 to bring wrongful death and survival action claims.[99]   Plaintiffs then allege that, by virtue of their profession, the JPSO Deputy Defendants had a duty to exercise due care,[100] and that they breached that duty by failing to do several things once E.P. was secured, including removing weight and rolling E.P. into the "recovery position."[101] Plaintiffs allege that Sheriff Lopinto "is vicariously liable" for the acts and omissions of the JPSO Deputy Defendants under La. Civ. Code art. 2320,[102] and that Sheriff Lopinto is directly liable for his own actions because he "negligently hired, retained, supervised, failed to discipline and entrusted the defendant deputies in violation of Louisiana law . . . ."[103]

Plaintiffs further allege in Count Four that Sheriff Lopinto failed to ensure that, "policies, procedures and practices of the JPSO prohibiting the actions of the defendants as described herein, relative to excessive use of force, unreasonable and dangerous use of restraints, and discrimination against persons with mental and behavioral disabilities . . . were enforced," and that Sheriff Lopinto "condoned, ratified or excused violations by his deputies, including the defendant deputies herein, so as

---

[98] *Id.* at ¶ 459.
[99] *Id.* at ¶ 466.
[100] *Id.* at ¶ 467.
[101] *Id.* at ¶ 471.
[102] *Id.* at ¶ 472.
[103] *Id.* at ¶ 474.

to create a culture within the JPSO where these official policies, procedures and practices were ignored or rendered meaningless, with no consequence."[104]  While the remainder of Count Four contains allegations regarding the entity-defendants and their respective insurers,[105] there is no reference to the criminal search warrants obtained by JPSO.  Thus, the Court concludes that Count Four does not contain a Fourth Amendment claim against Sheriff Lopinto, in his official capacity, based upon the criminal search warrants obtained by JPSO.

As set forth above, and contrary to Plaintiffs' assertions in their Motion, it is unclear to the Court whether Plaintiffs have asserted a "Fourth Amendment claim for unconstitutional search warrants" against Sheriff Lopinto in his official capacity in Count Two of the Complaint.[106]  In their Reply brief, in response to Sheriff Lopinto's assertion that Plaintiffs did not allege a cause of action regarding the warrants for the WWL TV station video footage and for Daren Parsa's medical records, Plaintiffs assert that their Complaint "sufficiently provided a short and plain statement of the Fourth Amendment claim, and Defendants cite no case law for the proposition that a complaint must list every single illegal act by a Defendant."[107]  In support of their claim that they asserted a Fourth Amendment cause of action regarding the search warrants, Plaintiffs point to paragraphs 12, 315, 317, 386, and 391 of the Complaint.[108] According to Plaintiffs, the Complaint "articulated that

---

[104] *Id*. at ¶ 475.
[105] *Id*. at ¶¶ 476-481.
[106] R. Doc. 93 at pp. 1 & 2; R. Doc. 93-1 at pp. 2 & 16.
[107] R. Doc. 101 at pp. 2 & 6-7.
[108] *Id*. at p. 7, n.25.

JPSO used search warrants without evidence or description of a crime,"[109] it provided specific examples of warrants sought for E.P.'s medical and school records,[110] and "it alleged that the Fourth Amendment was thus violated."[111]   While it is true that Plaintiffs reference several of the criminal search warrants in the Complaint and further allege that they were unconstitutional,[112] there is no specific allegation in the Complaint that Sheriff Lopinto, acting in his official capacity, violated the Fourth Amendment based upon the criminal search warrants obtained by JPSO.

The Court points out that the only two paragraphs in the Complaint cited by Plaintiffs that specifically reference the Fourth Amendment, Paragraphs 386 and 391, allege constitutional violations based upon the action or inaction of the JPSO Deputy Defendants "in using excessive and unreasonable force in the seizure and restraint of E.P. and in failing to intervene or act to prevent such actions, despite having the opportunity to do so,"[113] and in violating, among other things, E.P.'s "right to freedom from unreasonable seizure" and "right to freedom from the use of unreasonable, unjustified, and excessive force and summary punishment."[114] Plaintiffs fail to direct the Court to any allegations in the Complaint that tie the purportedly unconstitutional criminal search warrants to a Fourth Amendment violation by Sheriff Lopinto.[115]   Accordingly, because it remains unclear to the Court

---

[109] *Id*. at p. 7 (*citing* R. Doc. 1 at ¶¶ 316-317).

[110] R. Doc. 101 at p. 7 (*citing* R. Doc. 1 at ¶¶ 313-314).

[111] R. Doc. 101 at p. 7 (*citing* R. Doc. 1 at ¶¶ 12, 315, 317, 386, & 391).

[112] R. Doc. 1 at ¶¶ 312-318.

[113] *Id*. at ¶ 386.

[114] *Id*. at ¶ 391(a) & (b).

[115] The Court notes that Plaintiffs' Supplemental Brief merely alerts the Court to the fact that Deputy Keith Dowling, the JPSO officer who sought, obtained, and executed the criminal search warrants at issue, testified during his deposition that he lacked probable cause for the warrants.  R. Doc. 104.  The

whether Plaintiffs have even asserted a Fourth Amendment claim against Sheriff Lopinto, in his official capacity, regarding the criminal search warrants, the Court finds that Plaintiffs have failed to carry their burden of proving that they are entitled to summary judgment on any such purported claim.

### B. Plaintiffs' request for leave to amend is granted.

In their Reply brief, Plaintiffs request "leave to amend their complaint to list each unconstitutional search warrant" if the Court denies their Motion.[116]  While the Court will "freely give leave [to amend] when justice so requires,"[117] leave to amend "is by no means automatic."[118]  In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[119]  "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."[120]

Applying those factors here, the Court finds it appropriate to grant Plaintiffs leave to amend their Complaint.  In doing so, the Court finds that Plaintiffs have not

---

Court likewise notes that Plaintiffs' Notice of Supplemental Authority alerts the Court to a recent decision from another Section of this Court that involved the legality of criminal search warrants that Plaintiffs claim were obtained under similar circumstances as those alleged in this case.  R. Docs. 131 & 131-1.  Neither pleading is helpful, however, to the Court's assessment of whether Plaintiffs have alleged a Fourth Amendment claim against Sheriff Lopinto, in his official capacity, based upon the criminal search warrants.

[116] R. Doc. 101 at p. 7.
[117] Fed. R. Civ. P. 15(a).
[118] *Halbert v. City of Sherman, Tex.*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).
[119] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).
[120] *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted).

acted with undue delay, bad faith, or dilatory motive in seeking leave to amend, nor have Plaintiffs failed to cure deficiencies in the Complaint with prior amendments. The Court is cognizant of the fact that, "when leave to amend is sought *after* the summary judgment motion is filed, courts routinely deny leave to amend."[121] However, leave to amend is typically denied in that context when it is sought in *response* to a motion for summary judgment because it could potentially undermine the opponent's "right to prevail on a motion that necessarily was prepared without reference to an unanticipated amended complaint."[122]  Such concerns are not at issue here, where the moving party is the party seeking leave to amend.  Accordingly, the Court, in exercising its discretion, grants Plaintiffs' request for leave to amend their Complaint.

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's [sic] Motion For Partial Summary Judgment[123] is **DENIED in part and DENIED in part, as moot.** The Motion is **DENIED as moot** to the extent that Plaintiffs seek summary judgment on their purported Fourth Amendment claim against Sheriff Lopinto, in his official capacity, based upon a criminal search warrant sought, obtained, and executed by JPSO on WWL TV station, as Plaintiffs withdrew that request in their Reply brief.  The Motion is otherwise **DENIED.**

---

[121] *Alexander v. Metrocare Servs.*, Civ. A. No. 3:08-CV-1398-D, 2009 WL 3378625, at *2, n.2 (N.D. Tex. Oct. 21, 2009) (Fitzwater, C.J.) (citing authority) (emphasis in original).

[122] *Overseas Inns S.A. P.A. v. U.S.*, 911 F.2d 1146, 1151 (5th Cir. 1990) (quoting *Pharo v. Smith*, 621 F.2d 656, 664 (5th Cir.), *reh'g granted cause remanded on other grounds*, 625 F.2d 1226 (1980) (motion to amend denied because filed nine months after a motion for summary judgment)) (internal quotation marks omitted).

[123] R. Doc. 93.

**IT IS FURTHER ORDERED** that Plaintiffs shall have **fourteen (14) days** from the date of this Order, if appropriate, to file a comprehensive, amended complaint, without further leave of Court, as requested in their Reply brief.

New Orleans, Louisiana, May 18, 2023.

**WENDY B. VITTER**
**United States District Judge**