**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DONNA LOU, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-80** |
| **SHERIFF JOSEPH P. LOPINTO, III, ET AL.** | **SECTION: D (2)** |

### ORDER AND REASONS

Before the Court is Partial Motion to Dismiss the Federal Claims Against Sheriff Lopinto in His Individual Capacity Pursuant to Fed. R. Civ. P. 12(c) or, Alternatively, for Summary Judgment Pursuant to Fed. R. Civ. P. 56, filed by defendant Sheriff Joseph P. Lopinto, III ("Sheriff Lopinto").[1] Plaintiffs oppose the Motion[2] and Sheriff Lopinto has filed a Reply.[3] After careful consideration of the parties' memoranda and the applicable law, the motion is **DENIED**.

### I.   FACTUAL AND PROCEDURAL BACKGROUND[4]

In the instant Motion, Sheriff Lopinto seeks partial judgment, either on the pleadings or on summary judgment, dismissing as a matter of law Plaintiffs' federal claims asserted against him in his individual capacity.[5] Sheriff Lopinto contends that it is well settled that supervisory officials cannot be held vicariously liable for their subordinates' actions under § 1983 unless they either affirmatively participate in acts that cause the constitutional deprivation or implement unconstitutional polices that

---

[1] R. Doc. 49.
[2] R. Doc. 51.
[3] R. Doc. 67.
[4] The Court set forth the facts of this case in great detail in its May 18, 2023 Order and Reasons (R. Doc. 208) and, for the sake of brevity, they will not be repeated here.
[5] R. Doc. 49.

causally result in the plaintiff's injury.[6] Sheriff Lopinto asserts that Plaintiffs' claims against him in his individual capacity should be dismissed because Plaintiffs fail to allege or provide evidence demonstrating that he participated directly in the events giving rise to this litigation. Sheriff Lopinto does not seek dismissal or summary judgment based on qualified immunity in this Motion.

Plaintiffs assert that Sheriff Lopinto's argument is premised upon an error of law, and that a supervisor like Sheriff Lopinto need not be at the scene or participate directly in physical actions to be liable for a constitutional claim.[7] Plaintiffs assert that supervisors may be liable for failures of training, policy, and supervision that cause constitutional injuries, and that Sheriff Lopinto concedes as much in his Motion.[8] Plaintiffs point out that they are not suing Sheriff Lopinto for his presence or actions on the scene at the time of the injury, but for the actions and omissions he personally took in his role as a supervisor and policymaker.[9] Plaintiffs contend that their Complaint specifically articulates that the theory of liability against Sheriff Lopinto individually is based upon his failures regarding policy, hiring, training, discipline, and supervision, and not his individual participation in the underlying actions of the deputies.[10] Plaintiffs claim that, "The allegations are bolstered by factual detail and agency history, ensuring that they satisfy the *Iqbal/Twobly* [sic]

---

[6] R. Doc. 49-1 at p. 6 (quoting *Mouille v. City of Live Oak, Texas*, 977 F.2d 924, 929 (5th Cir. 1992)) (internal quotation marks omitted). The Court notes that Sheriff Lopinto's citation to a Louisiana Fifth Circuit Court of Appeals case by the same name appears to be in error.
[7] R. Doc. 51 at pp. 1 & 2.
[8] R. Doc. 51 at p. 1 (*citing* R. Doc. 49-1 at p. 6).
[9] R. Doc. 51 at p. 3 (*citing* R. Doc. 1 at ¶ 6).
[10] R. Doc. 51 at p. 3 (*citing* R. Doc. 1 at ¶¶ 408-29).

plausibility standard."[11]   Plaintiffs assert that, because Sheriff Lopinto wrongly assumes that he must have been physically present or participating directly to be liable, his Motion should be denied.

In response, Sheriff Lopinto submits that Plaintiffs have now clarified that their individual capacity claims are policy-related and, as such, they are duplicative of Plaintiffs' claims asserted against him in his official capacity.[12]  As "acknowledged in his original brief," Sheriff Lopinto recognizes that the Fifth Circuit has held that a sheriff not personally involved in acts that deprived the plaintiff of his constitutional rights is liable under § 1983 if the sheriff failed to train or supervise the officers involved, there is a causal connection between the alleged failure to supervise or train and the alleged violation of rights, and the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.[13]   Sheriff Lopinto asserts, however, that Plaintiffs cannot defeat his Motion because they failed to argue or provide any summary judgment evidence indicating that he had knowledge of, was deliberately indifferent to an obvious need to train the defendant deputies regarding the specific issues in this case, or that his deliberate indifference caused the constitutional deprivation.[14]

---

[11] R. Doc. 51 at p. 3 (*citing* R. Doc. 1 at ¶ 29, *et al.* and ¶ 290, *et al.*).
[12] R. Doc. 67 at pp. 1-2 & 2.
[13] R. Doc. 67 at p. 3 (quoting *Cozzo v. Tangipahoa Parish Council -- President Gov't*, 279 F.3d 273, 286 (5th Cir. 2002)) (internal quotation marks omitted).
[14] R. Doc. 67 at pp. 3-5.

## II.   LEGAL STANDARD

### A. Rule 12(c) Motion for Judgment on the Pleadings.

Federal Rule of Civil Procedure 12(c) permits any party to move for a judgment on the pleadings after the pleadings are closed, provided that the motion is made early enough to avoid delaying trial. Such motions are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."[15] Rule 12(c) motions are subject to the same standard as motions to dismiss filed under Fed. R. Civ. P. 12(b)(6).[16] In ruling on a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[17] Additionally, on a Rule 12(b)(6) motion to dismiss, the Court is generally prohibited from considering information outside the pleadings, but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[18] The Court can also take judicial notice of matters that are of public record, including pleadings that have been filed in a federal or state court.[19] The Fifth Circuit has instructed that when reviewing a Rule 12(c) motion, pleadings should be "construed

---

[15] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990)) (internal quotation marks omitted). *See*, *Addy's Burger, LLC v. Paradigm Investment Group, LLC*, Civ. A. No. 17-2400, 2018 WL 2569928, at *2 (E.D. La. June 4, 2018) (North, M.J.) (citing *Great Plains*, *supra*).
[16] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Great Plains*, 313 F.3d at 313 n.8).
[17] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).
[18] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed.Appx. 336, 340-41 (5th Cir. 2011).
[19] *In re American Intern. Refinery*, 402 B.R. 728, 749 (W.D. La. 2008) (citing *Cisco Systems, Inc. v. Alcatel USA, Inc.*, 301 F. Supp. 2d 599, 602 n.3 (E.D. Tex. 2004)).

liberally."[20] In this Circuit, a Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted."[21]

### B. Rule 56 Motion for Summary Judgment.

Summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law.[22] A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact.[23] If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor.[24] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[25] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at

---

[20] *Great Plains*, 313 F.3d at 312 (quotation and internal quotation marks omitted).
[21] *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (citation omitted).
[22] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-10, 91 L.Ed.2d 202 (1986).
[23] *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.
[24] *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.
[25] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

trial.[26] In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[27]

### C. Individual Capacity Claims Brought Under 42 U.S.C. § 1983.

The Fifth Circuit has held that, "An official cannot be held liable in his individual capacity merely because a subordinate committed some constitutional violation; '[s]ection 1983 does not impose vicarious liability or respondeat-superior liability.'"[28]  "Instead, a defendant must either be 'personally involved in the constitutional violation' or commit 'acts [that] are causally connected to the constitutional violation alleged."[29]  Stated another way, a "supervisor is not personally liable for his subordinate's actions in which he had no involvement."[30] Further, a supervisor not personally involved in the acts that deprive a plaintiff of his constitutional rights can be held liable under § 1983 if he "implements unconstitutional policies that causally result in the constitutional injury."[31] According to the Fifth Circuit, this "policy-focused inquiry is akin to the standard for

---

[26] *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. at 2552.
[27] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[28] *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 251 (5th Cir. 2022) (quoting *Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir. 1988)) (reversing district court's denial of qualified immunity where plaintiff failed to allege any personal involvement of the sheriff in the purported wrongdoing).
[29] *Magnolia Island Plantation*, 29 F.4th at 251 (quoting *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999)).
[30] *Magnolia Island Plantation*, 29 F.4th at 251 (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)) (internal quotation marks omitted).
[31] *Romero v. Brown*, 937 F.3d 514, 523 (5th Cir. 2019) (citing *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).

municipal liability."[32] "That is, for a supervisor to act with 'deliberate indifference,' she must usually know about a 'pattern of similar violations.'"[33]

Individual capacity claims are usually anchored to a supervisory official's failure to train or to the supervisory official's implementation of "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."[34] When individual capacity liability is tied to a supervisor's failure to train, the plaintiff must allege and prove the following: (1) that the supervisor failed to train or supervise the employees directly involved in the constitutional violation; (2) that there is a causal connection between the alleged failure to train or supervise and the alleged constitutional violation; and (3) that the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.[35] "Proof of a single instance, rather than a pattern of similar violations, normally will not sustain a plaintiff's claim that such a lack of training or supervision caused a violation of her constitutional rights."[36] The Fifth Circuit has further held that the training's inadequacy "must be obvious and obviously likely to result in a constitutional violation."[37]

In contrast, when an individual capacity claim is anchored to a supervisor's official policy, the plaintiff first must identify an official policy implemented by the

---

[32] *Romero*, 937 F.3d at 523 (citing *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 426 (5th Cir. 2006)).
[33] *Romero*, 937 F.3d at 523 (quoting *Rios*, 444 F.3d at 427).
[34] *Cozzo v. Tangipahoa Parish Council -- President Gov't*, 279 F.3d 273, 286, 289 (5th Cir. 2002) (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)) (internal quotation marks omitted).
[35] *Cozzo*, 279 F.3d at 286 (quoting *Thompson v. Upshur County, Tex.*, 245 F.3d 447,459 (5th Cir. 2001)) (internal quotation marks omitted).
[36] *Cozzo,* 279 F.3d at 286-87 (citing *Thompson*, 245 F.3d at 459).
[37] *Cozzo*, 279 F.3d at 287 (quoting *Thompson*, 245 F.3d at 459).

supervisor.  The Fifth Circuit has explained that an "official policy" is, "A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] . . . or by an official to whom the [entity] ha[s] delegated policy-making authority," or, "A persistent, widespread practice of . . . officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the entity's] policy."[38]  A plaintiff can also establish a custom or policy "based on an isolated decision made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered."[39]  In addition to identifying the existence of an official policy or custom, the plaintiff must allege and show that the supervisory official implemented the policy or custom and that it was "so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation."[40]

### III.  ANALYSIS

In the instant Motion, Sheriff Lopinto does not seek qualified immunity, nor does he challenge the allegations or evidentiary basis predicating Plaintiffs' claims against him in his official capacity.  Instead, Sheriff Lopinto asserts that his Motion should be granted because Plaintiffs "failed to allege or establish that he participated

---

[38] *Cozzo*, 279 F.3d at 289 (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)) (internal quotation marks omitted).
[39] *Cozzo*, 279 F.3d at 289 (citing authority).
[40] *Cozzo*, 279 F.3d at 289 (quoting *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987)) (internal quotation marks omitted) (holding that the district court erred in concluding that the sheriff did not enjoy qualified immunity against the plaintiff's failure to train and official policy claims).

directly in any of the alleged dilatory conduct and, therefore, ha[ve] failed to establish a federal claim against him in his individual capacity."[41] Sheriff Lopinto claims that it is uncontested that he "was not on scene [sic] during any of the relevant events," that he "did not participate in any of the subject events," and that he "did not direct any of the actions of the Defendant Deputies."[42] Sheriff Lopinto then concludes the Motion by asserting that, "Plaintiffs do not allege and cannot show, nor is there any evidence in the record from which the Court could possibly infer that Sheriff Lopinto participated directly in any of the subject events," and that, "Plaintiffs do not even all [sic] allege that the Sheriff was at the scene."[43] Plaintiffs assert that Sheriff Lopinto's argument is premised upon a legal error, since a supervisor may be liable for implementing unconstitutional policies that causally result in a plaintiff's constitutional violation, and that Sheriff Lopinto "concedes as much" in his Motion.[44] In support, Plaintiffs point to numerous paragraphs in their Complaint in which they allege that Sheriff Lopinto is liable in his individual capacity for his role in the policies, procedures, training, assignments, supervision, and discipline of JPSO deputies, which contributed to E.P.'s death.[45] Sheriff Lopinto fails to address these arguments in his Reply brief and seems to abandon his request for a Rule 12(c) judgment on the pleadings, asserting instead that "undue discovery" in this matter has been "abusive, harassing, and wholly unnecessary" and that summary judgment

---

[41] R. Doc. 49 at p. 1; R. Doc. 49-1 at p. 1.
[42] R. Doc. 49-1 at p. 3 (*citing* R. Doc. 1).
[43] R. Doc. 49-1 at p. 7.
[44] R. Doc. 51 at pp. 1 & 2-4.
[45] *Id.* at pp. 3-4 (*citing* R. Doc. 1 at ¶¶ 16, 29, 298-322, & 408-429).

must be granted because Plaintiffs fail to offer "a scintilla of evidence" of Sheriff Lopinto's deliberate indifference.[46]

### A. Sheriff Lopinto Is Not Entitled to Judgment on the Pleadings Under Rule 12(c).

To the extent Sheriff Lopinto seeks judgment on the pleadings as to Plaintiffs' individual capacity claims, the Motion is denied. While Sheriff Lopinto seeks dismissal based solely on his lack of direct involvement in the events that occurred on January 19, 2020 that led to E.P.'s death, he completely ignores that a supervisor can be held liable under § 1983 if "(1) [s]he affirmatively participates in the acts that cause the constitutional deprivation, or (2) [s]he implements unconstitutional policies that causally result in the constitutional injury."[47] The Court finds this striking, since Sheriff Lopinto acknowledges in his own Motion that supervisory officials can be held liable under § 1983 "only if: (i) they affirmatively participate in acts that cause constitutional deprivation; *or (ii) implement unconstitutional policies that causally result in plaintiff's injury*."[48] As Plaintiffs correctly point out in their Opposition brief,[49] the Fifth Circuit has held that supervisors can also be held liable under § 1983 for failure to adopt policies[50] and for failure to supervise or train subordinates.[51] The

---

[46] R. Doc. 67 at pp. 2-5.
[47] *Romero v. Brown*, 937 F.3d 514, 523 (5th Cir. 2019) (quoting *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)) (internal quotation marks omitted).
[48] R. Doc. 49-1 at p. 6 (quoting *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir. 1992)) (internal quotation marks omitted) (emphasis added).
[49] R. Doc. 51 at p. 3.
[50] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)) (internal quotation marks omitted).
[51] *Cozzo v. Tangipahoa Parish Council -- President Gov't*, 279 F.3d 273, 286-87 (5th Cir. 2002) (quoting *Thompson v. Upshur County, TX*, 245 F.3d 447, 459 (5th Cir. 2001)).

Fifth Circuit has further clarified that, "In order to establish supervisor liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates."[52]

In the Complaint, Plaintiffs allege that Sheriff Lopinto "is the final policy maker," and that he "is responsible for the staffing, supervision, administration, policies, practices, procedures, and customs of the JPSO."[53] Plaintiffs also allege that Sheriff Lopinto "is responsible for the hiring, training, supervision, discipline, and control of the JPSO staff, supervisors, and deputies."[54] Plaintiffs further allege that JPSO policies, including those regarding the use of force, restraints, positional/compression asphyxia, and encounters and interactions with persons with developmental disabilities, are contrary to law,[55] and that Sheriff Lopinto is liable for the actions of his deputies due to certain policies, procedures, rules, practices, customs and/or usages of JPSO that were in effect at the time of, and contributed to, E.P.'s death, and Plaintiffs proceed to list those policies.[56] Plaintiffs also allege that Sheriff Lopinto's policies, practices and/or customs demonstrated a deliberate indifference to the constitutional rights of the public, including E.P. and Plaintiffs,

---

[52] *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (quoting *Gates v Texas Dep't of Port. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)) (internal quotation marks omitted) (emphasis in original).
[53] R. Doc. 1 at ¶ 16.
[54] *Id.*
[55] *Id.* at ¶ 306. *See, Id.* at ¶¶ 290-322.
[56] *Id.* at ¶ 417. *See, Id.* at ¶¶ 417-429.

and that they were the proximate cause of their injuries and damages.[57] Sheriff Lopinto does not address, much less contest, these allegations in his Reply brief.

Accepting all well-pleaded facts as true and viewing those facts in the light most favorable to Plaintiffs, as the Court is bound to do,[58] the Court finds that Plaintiffs have alleged sufficient facts to state a § 1983 claim against Sheriff Lopinto in his individual capacity based upon his alleged failure to train the defendant deputies and his alleged implementation of unconstitutional policies that violated the constitutional rights of Plaintiffs and E.P. and contributed to E.P.'s death. Accordingly, the Motion is denied to the extent that Sheriff Lopinto seeks a Rule 12(c) judgment on the pleadings as to Plaintiffs' individual capacity claims.

### B. Sheriff Lopinto Is Not Entitled To Summary Judgment Under Rule 56.

Sheriff Lopinto fares no better under Fed. R. Civ. P. 56, as he has failed to carry his burden of demonstrating how the summary judgment record discloses no genuine dispute regarding any material fact as to Plaintiffs' individual capacity claims. Sheriff Lopinto's Motion fails to brief the applicable law and, in so doing, fails to even identify any relevant (let alone material) facts about which there are no genuine dispute. In his Statement of Uncontested Material Facts, filed in support of the Motion, Sheriff Lopinto merely regurgitates the factual allegations made in his

---

[57] *Id.* at ¶¶ 421-429.
[58] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

Motion.[59]  The only "undisputed facts" that are marginally pertinent to the instant Motion include the following:

> 6. It is uncontested that Sheriff Lopinto was not on scene [sic] during any of the relevant events; Plaintiffs do not allege otherwise. R. Doc. 1.
> 7. It is uncontested that Sheriff Lopinto did not participate in any of the subject events; Plaintiffs do not allege otherwise. *Id*.
> 8. It is uncontested that Sheriff Lopinto did not direct any of the actions of the Defendant Deputies; Plaintiffs do not allege otherwise. *Id*.[60]

As explained above, however, these undisputed facts are not relevant to the individual capacity claims, where Plaintiffs seek to hold Sheriff Lopinto liable for his implementation of unconstitutional policies that violated the constitutional rights of Plaintiffs and E.P. and for his failure to train and supervise the JPSO Deputy Defendants and the JPSO John Doe Deputy Defendants.  Sheriff Lopinto's Motion fails to raise any dispute of material fact as to these claims.  As such, Sheriff Lopinto has failed to show that he is entitled to summary judgment.

In his Reply brief, Sheriff Lopinto asserts for the first time that he is entitled to summary judgment because Plaintiffs have failed to offer any competent summary judgment evidence or argument to establish that he had knowledge of, was deliberately indifferent to an obvious need to train the defendant-deputies regarding the specific issues in this case, and that his deliberate indifference caused the alleged harm.[61]  Both the Fifth Circuit and other Sections of this Court have held that,

---

[59] *Compare* R. Doc. 49-3 *to* R. Doc. 49-1 at pp. 2-3.
[60] R. Doc. 49-3 at p. 2.
[61] R. Doc. 67 at pp. 4-5.

"Arguments raised for the first time in a reply brief are generally waived."[62]  As explained by one of our sister courts, "it is improper for the movant to sandbag and raise wholly new issues in a reply memorandum.  The scope of the reply should be limited to addressing the arguments raised by the memorandum in opposition."[63]  This Court agrees.  Here, Sheriff Lopinto clearly abandoned the arguments raised in his Motion after reading Plaintiffs' Opposition brief by raising entirely new arguments regarding deliberate indifference in his Reply brief.  The Court will not entertain such tactics and, therefore, will not consider the arguments raised by Sheriff Lopinto for the first time in his Reply brief.

At this juncture and on this briefing, Sheriff Lopinto has failed to persuade the Court that he is entitled to summary judgment dismissing Plaintiff's § 1983 claims against him in his individual capacity.  Sheriff Lopinto's sparse Statement of Uncontested Material Facts does not support entry of judgment as a matter of law on Plaintiffs' § 1983 individual capacity claims, as it contains only the undisputed fact that Sheriff Lopinto was not physically present on the scene on the day of E.P.'s death.  Additionally, Sheriff Lopinto does not dispute that Plaintiffs make multiple allegations in their 80-page Complaint concerning his failure-to-train and official-policy theories of individual capacity liability.  Reviewing the facts and inferences in

---

[62] *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) (citing *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005); *Iteld, Bernstein & Associates, LLC v. Hanover Ins. Group*, Civ. A. No. 06-3418, 2009 WL 2496552, at *4 (E.D. La. Aug. 12, 2009) (Vance, J.) ("[A]rguments raised for the first time in a Reply brief are waived.").  *See*, *Little Tchefuncte River Association v. Artesian Utility Company, Inc.*, 155 F. Supp. 3d 637, 657 (E.D. La. 2015) ("[A]rguments cannot be raised for the first time in a reply brief.") (quoting *Benefit Recovery, Inc. v. Donelon*, 521 F.3d 326, 329 (5th Cir. 2008)).
[63] *Weems v. Hodnett*, Civ. A. No. 10-CV-1452, 2011 WL 2731263, at *1 (W.D. La. July 13, 2011) (Hornsby, M.J.) (citation omitted).

the light most favorable to Plaintiffs, who are the non-moving parties,[64] the Court finds that Sheriff Lopinto has failed to show that he is entitled to summary judgment and dismissal of Plaintiffs' § 1983 claims asserted against him in his individual capacity.

## IV.  CONCLUSION

Based on the foregoing findings, **IT IS HEREBY ORDERED** that the Partial Motion to Dismiss the Federal Claims Against Sheriff Lopinto in His Individual Capacity Pursuant to Fed. R. Civ. P. 12(c) or, Alternatively, for Summary Judgment Pursuant to Fed. R. Civ. P. 56[65] is **DENIED**.

New Orleans, Louisiana, May 19, 2023.

_____
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

---

[64] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).
[65] R. Doc. 49.